1

2

3

4

5

6

7

8

Honorable John C. Coughenour

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12    STEVEN FLOYD, individually and on behalf
      of all other similarly situated,

13                    Plaintiff,

14         v.

15    AMAZON.COM INC. and APPLE INC.,

16                    Defendants.

Case No. 2:22-cv-01599 JCC

**APPLE INC.'S MOTION TO DISMISS**

**[PUBLIC REDACTED VERSION]**

Noted for Hearing: April 28, 2023

ORAL ARGUMENT REQUESTED

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1
2

**TABLE OF CONTENTS**

3
4

INTRODUCTION ............................................................................................................. 1

STATEMENT OF PLEADED FACTS ............................................................................. 3

    A.    Apple and Amazon's Business Relationship ....................................................... 3

    B.    The Global Tenets Agreement ............................................................................. 4

    C.    Plaintiff's Complaint ........................................................................................... 5

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT .................................................................................................................... 6

I.    The *Per Se* Standard is Inapplicable .......................................................................... 6

    A.    Plaintiff's Factual Allegations Make Clear That the Per Se Standard Is Inapplicable ......... 7

    B.    Binding Law Requires Application of the Rule of Reason to a Dual Distribution Model ... 9

II.    Plaintiff's Alternative Rule of Reason Claim Must Be Dismissed ..................................... 10

    A.    The Alleged Relevant Market is Not Plausible .................................................. 11

    B.    Plaintiff Does Not Plead Market Power ............................................................ 16

    C.    Plaintiff Does Not Adequately Allege Injury to Competition ........................... 17

CONCLUSION ................................................................................................................ 20

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

*i*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A.H. Cox & Co. v. Star Machinery Co.*,
    653 F.2d 1302 (9th Cir. 1981)..................................................................... 2, 18, 19, 20

5

*Apple Inc. v. Mobile Star, LLC*,
    No. 3:16-cv-06001-WHO (N.D. Cal. Aug. 30, 2016)........................................ 1, 4, 15

6

7

*Apple Inc. v. Psystar Corp.*,
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................. 14

8

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 6, 17, 18, 20

10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 7

11

12

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012)....................................................................... *passim*

13

14

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962) ........................................................................................... 16

15

16

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
    485 U.S. 717 (1988) ............................................................................................. 8

17

*Calculators Haw., Inc. v. Brandt, Inc.*,
    724 F.2d 1332 (9th Cir. 1983)............................................................................... 8

18

19

*Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*,
    No. 2:12-cv-02910-TLN-DB, 2020 WL 6742889 (E.D. Cal. Nov. 17, 2020)........................ 8

20

21

*Conklin v. Univ. of Wash. Med.*,
    798 F. App'x 180 (9th Cir. 2020)......................................................................... 19

22

*Cont'l T. V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ............................................................................................. 18

23

24

*Coronavirus Rep. v. Apple Inc.*,
    No. 21-cv-05567-EMC, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ................... 11

25

*Deslandes v. McDonald's USA, LLC*,
    No. 17 C 4857, 2022 WL 2316187 (N.D. Ill. June 28, 2022)................................ 10

26

27

*Dimidowich v. Bell & Howell*,
    803 F.2d 1473 (9th Cir. 1986), *as modified*, 810 F.2d 1517 (9th Cir. 1987) ................... 7, 8, 9

28

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
  129 F.3d 240 (2d Cir. 1997) ........................................................................................ 9

*Eliott v. Lions Gate Ent. Corp.*,
  No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662 (C.D. Cal. Nov. 8, 2022) ...................... 4

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ..................................................................................... 20

*Flaa v. Hollywood Foreign Press Ass'n*,
  55 F. 4th 680 (9th Cir. 2022) .......................................................................... 10, 16, 17

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ................................................................................ 11, 19

*In re German Auto. Mfrs. Antitrust Litig.*,
  497 F. Supp. 3d 745 (N.D. Cal. 2020), *aff'd*, No. 20-17139, 2021 WL 4958987
  (9th Cir. Oct. 26, 2021) ............................................................................................. 15

*Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*,
  433 F. App'x 598 (9th Cir. 2011) ........................................................................... 13, 14

*Heisen v. Pac. Coast Bldg. Prods., Inc.*,
  26 F.3d 130 (9th Cir. 1994) ........................................................................................ 19

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ......................................................................... 6, 11, 16

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  No. 21-16817, 2022 WL 16756365 (9th Cir. Nov. 8, 2022) .......................................... 13, 20

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  No. 21-2989-MDL, 2022 WL 1522054 (S.D. Fla. May 13, 2022) ........................................ 13

*Joplin Enters. v. Allen*,
  795 F. Supp. 349 (W.D. Wash. 1992) ........................................................................... 14

*Kingray, Inc. v. NBA, Inc.*,
  188 F. Supp. 2d 1177 (S.D. Cal. 2002) ........................................................................... 8

*Krehl v. Baskin-Robbins Ice Cream Co.*,
  664 F.2d 1348 (9th Cir. 1982) ................................................................................... 8, 9

*Laurence J. Gordon, Inc. v. Brandt, Inc.*,
  554 F. Supp. 1144 (W.D. Wash. 1983) ........................................................................... 9

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ................................................................................................. 6, 7

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

ii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel +1-206-839-4300

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
884 F.2d 504 (9th Cir. 1989) ...................................................................... 11

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
202 F.3d 1088 (9th Cir. 2000) .................................................................. 6, 8

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
472 U.S. 284 (1985) ...................................................................................... 6

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) ...................................................................................... 7

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
939 F. Supp. 2d 1002 (N.D. Cal. 2013) ...................................................... 19

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021) ......................................... 6, 11, 12

*Pennsylvania Ave. Funds v. Borey*,
569 F. Supp. 2d 1126 (W.D. Wash. 2008) .................................................. 17

*Pimentel-Estrada v. Barr*,
458 F. Supp. 3d 1226 (W.D. Wash. 2020) .................................................... 4

*Pistacchio v. Apple Inc.*,
No. 4:20-cv-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ................. 15

*Reilly v. Apple Inc.*,
578 F. Supp. 3d 1098 (N.D. Cal. 2022) ................................... 11, 13, 20

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ............................................................... 18, 19

*Sambreel Holdings v. Facebook, Inc.*,
906 F. Supp. 2d 1070 (S.D. Cal. 2012) ........................................................ 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ...................................................................... 20

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) .......................................................................................... 6

*Stubhub, Inc. v. Golden State Warriors, LLC*,
No. C 15-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ..................... 15

*Tanaka v. Univ. of S. Cal.*,
252 F.3d 1059 (9th Cir. 2001) .................................................................... 11

*Texas v. Google LLC (In re Google Digit. Advert. Antitrust Litig.)*,
No. 21-md-3010 (PKC), 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) .............. 9

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC
iii
Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
875 F.2d 1369 (9th Cir. 1989) ................................................................................................ 14

*United States v. Am. Express Co.*,
838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S.
Ct. 2274 (2018) ........................................................................................................ 7, 12, 13

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) ................................................................................................................ 2

*Universal Grading Serv. v. eBay, Inc.*,
No. C-09-2755-RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012), *aff'd*, 563 F.
App'x 571 (9th Cir. 2014) ...................................................................................................... 13

*W. Wholesale Supply, Inc. v. Holladay*,
No. Civ. 97-0297-S-BLW, 2000 WL 33716996 (D. Idaho Feb. 29, 2000) ........................... 10

*Zunum Aero, Inc. v. Boeing Co.*,
No. C21-0896JLR, 2022 WL 3346398 (W.D. Wash. Aug. 12, 2022) ...................................... 8

**Statutes**

Sherman Act .................................................................................................................... 2, 5, 6, 11

**Other Authorities**

Phillip E. Areeda & Herbert Hovencamp, *Antitrust Law: An Analysis of Antitrust
Principles and Their Application* (4th and 5th eds., 2015-2021) ........................................... 10

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

iv

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

**INTRODUCTION**

Apple cares deeply about customer experience and its brand integrity, which it relies on to attract customers to choose its products over that of competitors. Customers can purchase an iPhone or an iPad from a wide variety of sellers in a variety of channels. Whether purchased directly from Apple.com or an Apple Store, in person or online at retailers like Best Buy or Target, through a carrier like Verizon or AT&T, or on Amazon.com, Apple strives to ensure that every customer has a quality purchasing experience and receives the genuine, safe Apple product for which they paid. Accordingly, Apple has safeguards in place to protect this customer experience, including safeguards to identify and remove counterfeit products to prevent its customers from being duped into purchasing counterfeit Apple products.

As part of Apple's ongoing efforts to improve its customers' experience, in the mid-2010s, Apple identified a significant, recurring problem with customers receiving counterfeit products purchased on Amazon.com. The problem was so significant that, in 2016, Apple sued nine entities involved in the sale of counterfeit Apple products advertised to customers as genuine Apple products "sold by Amazon.com."[1] But pursuing counterfeiters after the fact was only a partial solution: protecting customers from the harms and risks associated with counterfeits also required proactive efforts to stop the sale of counterfeits in the first place. This lawsuit is about one of the additional steps that Apple took to protect its brand integrity and to improve the customer experience when purchasing Apple products.

In 2018, Apple, as manufacturer, and Amazon, as reseller, negotiated a new agreement between the parties known as the Global Tenets Agreement ("GTA").[2] The GTA implemented measures to reduce counterfeiting of Apple products by allowing Apple to identify a set of authorized resellers permitted to sell Apple products on Amazon.com. The GTA thus protects consumers against purchasing unsafe knock-off or counterfeit products and requires a significantly improved customer experience for consumers shopping for Apple products on Amazon.com.

---

[1] Second Amended Complaint ¶ 36, *Apple Inc. v. Mobile Star, LLC*, No. 3:16-cv-06001-WHO, 2017 WL 4297209 (N.D. Cal. Aug. 30, 2016).

[2] A copy of the GTA, which Plaintiff refers to and incorporates by reference into his complaint, is attached as Exhibit A.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

1

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

Plaintiff ignores this fundamental purpose of the GTA and instead alleges that the GTA violates antitrust law. But his claim suffers from a number of fatal defects. Most fundamentally, Plaintiff misstates the nature of the relevant relationship between Apple and Amazon, contending that the GTA is a horizontal restraint among competitors and *per se* unlawful. But well-established law makes it clear the *per se* standard does not apply here because the GTA is a vertical agreement between manufacturer and reseller properly analyzed under the rule of reason. Vertical agreements like the GTA are commonplace, and the Supreme Court and Ninth Circuit have routinely recognized that such agreements are procompetitive and not unlawful. Indeed, it has been the law for more than a century that the Sherman Act "does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *A.H. Cox & Co. v. Star Machinery Co.*, 653 F.2d 1302, 1306 (9th Cir. 1981) ("[c]ompetition is promoted when manufacturers are given wide latitude in establishing their method of distribution and in choosing their particular distributors"). Further, cases nationwide (including in the Ninth Circuit) require analyzing "dual distribution" models—such as where Apple is both a manufacturer and seller of its own product—under the rule of reason. Accordingly, the Court must dismiss Plaintiff's *per se* claim.

Plaintiff also fails to plead a rule of reason claim for three independent reasons. First, Plaintiff's proposed relevant market is legally deficient. He asserts that the relevant market is "Online Consumer Electronics Marketplaces" like Amazon.com and eBay. This proposed market is both too broad and too narrow. It is too broad because "consumer electronics" includes a variety of products like headphones and fitness trackers that are not reasonably interchangeable with smartphones and tablets. It is too narrow because the limitation to "marketplaces" (or even "online retailers") excludes obvious alternative sources for the purchase of smartphones and tablets, such as the Apple Store, Best Buy, Target, and Verizon. The relevant market must include the area of effective competition—both the products that compete with iPhones and iPads (such as Android phones and Fire tablets), and the channels of commerce through which they may be acquired (online and in the physical world). Plaintiff's proposed market—which is not even tied to his theory

2

1    of harm—fails in all respects.

2          Second, because Plaintiff fails to plead a relevant market, he cannot plead that Defendants

3    have market power in such a market. Plaintiff also does not—and cannot—plead that Amazon has

4    market power over the resale of smartphones and tablets. His own Complaint concedes that there

5    are several different channels for customers to purchase these products—such as Best Buy, AT&T

6    and Apple itself—but inexplicably excludes these other channels from his litigation-driven,

7    implausible relevant market.

8          Third, Plaintiff fails to plead a plausible injury to competition. The GTA is a vertical

9    distribution agreement like those that courts routinely hold are not anticompetitive because they

10   promote interbrand competition. No law requires Apple to sell through any third-party reseller.

11   Apple may select an exclusive dealer for its products and, indeed, could lawfully elect to sell its

12   products exclusively through its own retail storefronts. Yet, Plaintiff claims an illegal restraint

13   based on a commonplace business agreement that enables *additional*, authorized resellers of

14   authentic Apple products on Amazon.com.  In actuality, the GTA increases legitimate consumer

15   purchase options and the resulting improved purchasing experience further allows Apple to

16   compete more effectively with manufacturers of competing brands. The GTA, accordingly, is

17   procompetitive and Plaintiff's assertions that it caused higher prices or excluded third-party

18   resellers cannot meet his pleading burden because both effects are "fully consistent with a free,

19   competitive market," *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012)—

20   particularly because he does not allege facts to support any decrease in output in genuine iPhones

21   and iPads sold on Amazon.com.

22         Plaintiff's Complaint should be dismissed with prejudice because it fails at every turn and

23   cannot be corrected by amendment because of its entrenched, incurable flaws and contradictions.

### STATEMENT OF PLEADED FACTS

**A.**     **Apple and Amazon's Business Relationship**

26         Apple manufactures a wide variety of products, including iPads and iPhones relevant to

27   Plaintiff's claims. Compl. ¶¶ 9, 108. It "distributes its products through two channels," otherwise

28   known as a "dual distribution" strategy. *Id*. ¶ 25 & p. 8. The first channel is Apple's own online

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

store (apple.com) and its physical retail stores (Apple Stores). *Id*. ¶ 25. The second channel is a "network of third-party distributors and resellers" which "must enter into an Authorized Reseller Agreement with Apple." *Id*. These resellers include service providers like AT&T, retail outlets (both physical and online) like Best Buy, Target, and Staples, and other online resellers like Amazon. *Id*. ¶¶ 1, 25. In addition to Amazon, Apple permits certain authorized resellers to sell products as third-party merchants through Amazon.com. *Id*. ¶ 50. Plaintiff pleads that "[d]irect sales" by Apple—through the Apple Store and apple.com—is "a major part of Apple's business[.]" *Id*. ¶ 1.

### B.     The Global Tenets Agreement

Apple identified a widespread problem with counterfeit Apple products sold on Amazon.com by third-party merchants long before execution of the GTA. *See id*. ¶ 71. In an effort to protect consumers and Apple's brand integrity, Apple took action. In October 2016, it sued Mobile Star, alleging Amazon.com sold counterfeits obtained from Mobile Star "through its internet-based e-commerce platform located at www.amazon.com." *See* Complaint ¶ 1, *Apple Inc. v. Mobile Star LLC*, No. 3:16-cv-06001-WHO, 2016 WL 6110683 (N.D. Cal. Oct. 17, 2016).[3] *See also Apple Inc. v. Mobile Star LLC*, 2017 WL 4005468, at *1 (N.D. Cal. Sept. 12, 2017) ("Apple filed this case alleging Mobile Star supplied Amazon and Groupon with counterfeit Apple-branded products."). Apple ultimately added eight more parties to the complaint who played a role in the sale of counterfeit Apple products on Amazon.com.

Apple's *Mobile Star* complaint alleged detailed findings of Apple's internal investigation, through which it conducted test buys for products listed as "sold by Amazon.com" and identified that, despite listings claiming "genuine Apple products," those products were indeed counterfeit. *See, e.g.*, Second Amended Complaint ¶¶ 36-37, *supra* note 1. While the litigation named as defendants Mobile Star and other entities involved in supplying Amazon with counterfeits to sell, the court noted the "central role" that Amazon "played in the underlying events" dealing with

---

[3] Apple requests that the Court take judicial notice of the referenced documents from the *Mobile Star* litigation. This Court "can take judicial notice of records in other cases" *Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226, 1238 n.7 (W.D. Wash. 2020). This includes taking notice of information regarding "what was argued by the parties[.]" *Eliott v. Lions Gate Ent. Corp.*, No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662, at *3 (C.D. Cal. Nov. 8, 2022).

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

counterfeit sales on its platform. *Mobile Star*, 2017 WL 4005486, at *4.

The *Mobile Star* litigation ultimately settled, but the removal of a few counterfeiters did not solve the problem, particularly given the hundreds of other "third-party Apple resellers" that were active on Amazon.com at the beginning of 2018. Compl. ¶ 5. Indeed, while Plaintiff does not (and cannot) attest to the authenticity of the Apple products these resellers were offering,[4] he notes that at least some of these third-party merchants were "offering steep discounts," which is consistent with the sale of non-genuine products. *Id*. In response, Apple, as manufacturer of Apple products, entered into the GTA with Amazon, a reseller, on October 31, 2018. *See id*. ¶ 49. Through the GTA, Apple ensured brand integrity by exercising its well-established ability to decide which resellers may sell its product (and under what circumstances). *See id*. ¶¶ 49-50; *see also* Ex. A, ¶ 1(a)-(b) ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████. Apple's enforcement of its quality standards resulted in the identification of a select number of trusted Authorized Resellers, interested in selling on Amazon.com. *See id*. Amazon received additional benefits to increase its sales of Apple products on its platform, including increased access to Apple products. *See* Compl. ¶ 52; *see also* Ex. A, ¶ 3.2.

### C. Plaintiff's Complaint

More than four years after Apple and Amazon entered into the GTA, Plaintiff brings a lawsuit alleging a violation of Section 1 of the Sherman Act for an unlawful group boycott. *See* Compl. ¶¶ 119-30. He bases his theory largely on an annulled Italian agency decision that does not apply the Sherman Act or U.S. law. *See id*. ¶ 25 n.15.

Plaintiff is an individual consumer who alleges he purchased an iPad on Amazon.com on February 26, 2021. *See id*. ¶ 22. Plaintiff alleges that he purchased a new iPad for $319.99 (*id*.), but does not indicate how this price compared to other prices for the same iPad available from other

---

[4] While the Complaint pleads (¶ 26) that "Unauthorized Apple resellers are not proscribed or illicit[,]" Plaintiff does not, and cannot, plead that all Apple resellers on Amazon were selling genuine Apple products.

retailers like Best Buy, Staples, or even directly from Apple. He alleges that he and members of a nationwide class of new iPhone and iPad purchasers (*id*. ¶ 108) were "forced to pay more for th[eir] purchases than they would have if Amazon and Apple had not entered [into] the [GTA] to eliminate third-party Apple resellers from Amazon Marketplace." *Id*. ¶ 118. While he asserts that third-party merchants were harmed by the GTA (*e.g. id*. ¶¶ 63-66), Plaintiff himself is not a third-party merchant.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In antitrust cases, Plaintiff's allegations must "'raise a reasonable expectation that discovery will reveal evidence of' an injury to competition." *Brantley*, 675 F.3d at 1198 (quoting *Twombly*, 550 U.S. at 556). "Thus, a complaint's allegation of a practice that may or may not injure competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557). "Applying this standard is a 'context-specific task' that requires drawing on 'judicial experience and common sense.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).

**ARGUMENT**

## I.     The *Per Se* Standard is Inapplicable

The Sherman Act "outlaw[s] only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1" of the Sherman Act. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007); *see also PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178 (W.D. Wash. 2021) ("The rule of reason is the presumptive, default standard[.]"). *Per se* antitrust liability, by contrast, is reserved solely for a narrow set of claims that "relate to conduct that is manifestly anticompetitive . . . [*i.e.*] agreements or practices which because of their pernicious

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

6

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal[.]" *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th Cir. 2000) (citation omitted); *see also Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985). *Per se* review is "confined" to specific restraints, like "horizontal agreements among competitors to fix prices or to divide markets" and is appropriate "only if courts can predict with confidence that [the restraint at issue] would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 886-87 (citations omitted); *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) ("[P]recedent limits the *per se* rule in the boycott context to cases involving *horizontal agreements* among direct competitors.") (emphasis added). By contrast, courts analyze vertical agreements, like those between a manufacturer and a reseller, under the rule of reason. *See United States v. Am. Express Co.*, 838 F.3d 179, 194 n.41 (2d Cir. 2016) ("[B]oth vertical price restraints and vertical non-price restraints are analyzed under the rule of reason."), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*").

Plaintiff tries to avoid the rule of reason analysis by invoking the *per se* standard and asserting that the GTA is a horizontal restraint. *See* Compl. ¶¶ 2, 4, 7, 12-13, 29, 36, 70, 121-22, 124, 126. The Court, however, cannot accept Plaintiff's pleadings of legal conclusions that the *per se* standard applies or that the GTA is a horizontal agreement. *See Twombly*, 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation.") (citation omitted). This Court must reject Plaintiff's conclusory invocation of the *per se* standard because it fails to match the factual allegations pled in the Complaint and flouts binding law.

### A.   Plaintiff's Factual Allegations Make Clear That the Per Se Standard Is Inapplicable

Courts determine whether a particular restraint is horizontal or vertical by "examining the economic relationship between the parties" with respect to the particular agreement at issue. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480 (9th Cir. 1986), *as modified*, 810 F.2d 1517 (9th Cir. 1987). Here, Plaintiff's factual allegations describe vertical conduct between a manufacturer and reseller, not a "horizontal agreement[] among direct competitors." *NYNEX Corp.*,

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

7

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

525 U.S. at 135. Plaintiff pleads that the GTA was a distribution agreement whereby "Apple agreed to provide Amazon consistent supplies at a discount of up to 10%[.]" Compl. ¶ 7. The relevant restriction according to the Complaint is the restriction that the GTA placed on the identity of resellers of iPhones and iPads sold on one specific channel:  Amazon.com. *E.g. id.* ¶ 108. It is undisputed that, as to the sale of those iPhones and iPads on Amazon.com, Apple and Amazon have a *vertical* relationship. That is, Apple is a manufacturer of those products while Amazon is a reseller of the same products on its platform. *See id.* ¶¶ 1, 25. So, while Apple and Amazon may be horizontal competitors as manufacturers of their own devices (*i.e.* Amazon's Fire Tablet vs. Apple's iPad), they are *vertically* situated as manufacturer and reseller for Apple products sold on Amazon.com and under the agreement at issue here. *See Dimidowich*, 803 F.2d at 1480; *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, No. 2:12-cv-02910-TLN-DB, 2020 WL 6742889, at \*4 (E.D. Cal. Nov. 17, 2020) (applying *Dimidowich* to analyze the "relationship between the [entities]."). As such, well-established law is clear that the rule of reason applies where the alleged restriction is a vertical one relating to the distribution of products between a manufacturer and retailer. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) (Restraints "imposed by agreement between firms at different levels of distribution [have been denominated] as vertical restraints."); *Calculators Haw., Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1337 n.2 (9th Cir. 1983) ("Any 'group boycott' therefore consisted of a vertical agreement, to which the rule of reason applies."); *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2022 WL 3346398, at \*5 (W.D. Wash. Aug. 12, 2022) (quoting *NYNEX Corp.*).

Moreover, Plaintiff cannot plead facts to establish that the GTA lacks "any redeeming virtue[.]" *Nova Designs*, 202 F.3d at 1091. His repeated citation to the *per se* standard ignores the obvious business rationale for the GTA—combatting the pervasive counterfeiting problem on Amazon.com and protecting Apple's brand integrity by ensuring resellers provide a premium purchasing experience. *See* Compl. ¶¶ 46, 72. These legitimate, pro-competitive business justifications are hallmarks of legal, vertical restraints. *See, e.g., Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356-57 (9th Cir. 1982) ("Competition is promoted when manufacturers are given wide latitude in establishing their method of distribution and in choosing

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC
8
Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

particular distributors.") (citation omitted); *Kingray, Inc. v. NBA, Inc*., 188 F. Supp. 2d 1177, 1188 (S.D. Cal. 2002). Apple's efforts to limit resellers on Amazon's platform to trusted Authorized Resellers (Ex. A., ¶ 1(a)-(b)) serves to promote interbrand competition because it ensures that customers looking to buy Apple products have a positive customer service experience and get the genuine Apple product they desire. Accordingly, "there are legitimate business justifications for [Apple's] conduct" requiring application of the rule of reason, even at the pleading stage. *Sambreel Holdings v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1078 (S.D. Cal. 2012) (holding Facebook had legitimate business justifications for "maintaining a list of approved Advertising Partners and ensuring that such partners adhere to its requirements").

### B. Binding Law Requires Application of the Rule of Reason to a Dual Distribution Model

Binding precedent also forecloses Plaintiff's *per se* claim, which is clear that the rule of reason applies to situations where a manufacturer uses a "dual distribution" model. Plaintiff agrees that Apple uses such a model, pleading (accurately) that Apple manufactures Apple products and sells those products to Amazon (a reseller) while concurrently selling those same products as a retailer through its own channel. *See*, *e.g.*, Compl. ¶ 25 ("Apple distributes its products through two channels."); p. 8 ("Apple's Dual Distribution Scheme"); and ¶ 41 ("Amazon has been a reseller of Apple products since at least 2012.").

Such a distribution model is vertical in nature and subject to the rule of reason. This is binding law in the Ninth Circuit and nationwide. *See Dimidowich*, 803 F.2d at 1481 ("We have categorized restrictions imposed in the context of dual distributorships as vertical and analyzed them under the rule of reason."); *Baskin-Robbins*, 664 F.2d at 1357 ("[D]ual distribution systems must be evaluated under the traditional rule of reason standard."); *Laurence J. Gordon, Inc. v. Brandt, Inc*., 554 F. Supp. 1144, 1152 (W.D. Wash. 1983) (explaining that under Ninth Circuit precedent "a dual distribution system would be tested under a rule of reason"); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243-44 (2d Cir. 1997) (defendants are in a vertical relationship subject to rule of reason scrutiny "if the distributor and manufacturer also compete at the distribution level, where, as here, the manufacturer distributes its products through

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

9

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

a distributor and independently (so-called 'dual distribution' arrangements)."); *Texas v. Google LLC (In re Google Digit. Advert. Antitrust Litig.)*, No. 21-md-3010 (PKC), 2022 WL 4226932, at *16 (S.D.N.Y. Sept. 13, 2022) (dual distribution agreement between Google and Facebook was "principally a vertical agreement, with potential horizontal consequences" and should therefore be scrutinized under the rule of reason). A leading treatise agrees: courts judge dual distribution arrangements, like the GTA, whereby a "manufacturer simultaneously sells to independent dealers and to those who might otherwise be customers of those dealers" under the rule of reason, because the restraints generally "serve legitimate purposes without harming market competition." Phillip E. Areeda & Herbert Hovencamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 1605a, 1605c (4th and 5th eds., 2015-2021).[5]

Plaintiff's recognition of Apple's "dual distribution" model and the challenge to a vertical agreement between Apple and Amazon means the rule of reason must apply. This Court should dismiss Plaintiff's claim to the extent it relies on the inapplicable *per se* standard.

## II.    Plaintiff's Alternative Rule of Reason Claim Must Be Dismissed

Under the rule of reason, Plaintiff must plead facts to prove (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce; (3) that actually injures competition; and (4) antitrust injury as a result of the restraint. *See Brantley*, 675 F.3d at 1197. To meet this test, Plaintiff must "allege both that a 'relevant market' exists and that the defendant has power within that market.'" *Flaa v. Hollywood Foreign Press Ass'n*, 55 F. 4th 680, 693 (9th Cir. 2022) (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008)).

Plaintiff's attempt to meet this standard fails at every turn. *First*, the alleged relevant market is not plausible and does not track his theory of alleged harm. *Second*, Plaintiff's failure to establish a relevant market dooms his ability to plead market power. *Third*, Plaintiff does not (and cannot)

---

[5] *See also W. Wholesale Supply, Inc. v. Holladay*, No. Civ. 97-0297-S-BLW, 2000 WL 33716996, at *10 (D. Idaho Feb. 29, 2000) ("The vertical classification adopted by ... courts simply expresses the correct conclusion that dual distribution restraints should generally be governed by the rule of reason rather than by a rule of *per se* illegality applied to many conventional horizontal agreements.") (quoting Areeda, *Antitrust Law* ¶ 1605); *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2022 WL 2316187, at *5 (N.D. Ill. June 28, 2022) (quoting Areeda, *Antitrust Law* ¶ 1605a).

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

10

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1  adequately allege that the GTA actually injures competition, as the alleged restraint is consistent

2  with procompetitive behavior (as courts have recognized for more than a century).

3  **A.      The Alleged Relevant Market is Not Plausible**

4       An antitrust plaintiff must plead a plausible relevant market—including "both a geographic

5  market and a product market"—to state a claim. *Hicks*, 897 F.3d at 1120; *see also Les Shockley*

6  *Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (plaintiff's complaint must

7  "include proof of the relevant geographic and product markets"). The alleged relevant product

8  market "must encompass the product at issue as well as all economic substitutes for the product."

9  *PBTM LLC*, 511 F. Supp. 3d at 1179 (quoting *Newcal Indus.*, 513 F.3d at 1045). "Economic

10  substitutes have a 'reasonable interchangeability of use' or sufficient 'cross-elasticity of demand'

11  with the relevant product." *Id.* (quoting *Newcal Indus.*, 513 F.3d at 1045). "Failure to identify a

12  relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*,

13  252 F.3d 1059, 1063 (9th Cir. 2001).

14       Plaintiff's alleged "Online Consumer Electronics Marketplaces" relevant product market

15  (and his alternative "Broader Online Electronics Retail Market") is facially implausible for three

16  reasons. First, the alleged market is not tailored to the relevant products (iPads and iPhones) that

17  he claims are subject to the alleged anticompetitive agreement (the GTA). Second, the set of

18  products it purports to include in this alleged relevant market (all "consumer electronics") is

19  overbroad as it *includes* products like fitness trackers, which are not reasonably interchangeable

20  with smartphones or tablets. Third, it is hopelessly narrow as to the relevant sellers in the market,

21  as it *excludes*, for example, new iPads sold at the Apple Store. This contrived relevant market is

22  simply not a cognizable or plausible product market for Plaintiff's claims here. *See Hicks*, 897 F.3d

23  at 1121 (affirming grant of motion to dismiss where plaintiff alleged contrived product market that

24  defied common sense and was "contorted to meet their litigation needs."); *Coronavirus Rep. v.*

25  *Apple Inc.*, No. 21-cv-05567-EMC, 2021 WL 5936910, at *12 (N.D. Cal. Nov. 30, 2021) (rejecting

26  market definition that was "artificial" and "entirely litigation driven, misconceived, and bearing

27  little relationship to the reality of the marketplace") (alteration adopted).

28       1.  *First*, Plaintiff's claim fails because he does not allege a relevant product market that

fits his alleged harm. *See Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1106 (N.D. Cal. 2022) ("A threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'") (citation omitted); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (courts analyze anticompetitive effects "in the market where competition is [allegedly] being restrained.") (alteration in original) (citation omitted). Plaintiff is an individual purchaser of an iPad and alleges injury in that he and class members overpaid for new iPads and iPhones purchased on Amazon.com because of the GTA. *See* Compl. ¶¶ 25, 108, 118.

Despite these allegations and governing law, Plaintiff does not define the relevant market in relation to this alleged restriction on iPads and iPhones. Instead, he claims the "relevant market" is "Online Consumer Electronics Marketplaces," examples of which are Amazon.com, eBay, and Walmart Marketplace. *See id.* ¶ 73. This alleged market of a "market for marketplace transactions," and his allegations in support of it are untethered from a market for "the product at issue" (iPads and iPhones) and "all economic substitutes for the product" at issue (like competing tablets and smartphones). *PBTM LLC*, 511 F. Supp. 3d at 1179. Plaintiff alleges that the GTA has led to increased prices in iPads and iPhones on one platform (Amazon.com). He does not claim any competitive harm among Online Consumer Electronics Marketplaces because the GTA does not affect competition among Amazon, eBay, and Walmart, or transaction charges on online marketplaces. To the contrary, the GTA governs the resale of Apple products on just one platform.

Plaintiff's allegations about the features of online marketplaces related to transactions (*see* Compl. ¶¶ 73-92) are irrelevant, and his attempted reliance on the Supreme Court's *Amex* decision is misplaced, 138 S. Ct. 2274 (2018) (Compl. ¶ 74)). Plaintiff complains of allegedly increased prices for specific Apple products on Amazon.com (*id.* ¶ 118), not any increase in the cost of online transactions.[6] Nor does Plaintiff allege that the GTA has resulted in a decrease in the number of transactions (on Amazon.com, let alone all online marketplaces).[7] The relevant product here

---

[6] Indeed, Plaintiff alleges that Amazon actually charges a transaction fee (Compl. ¶ 31), but that is unrelated to any alleged effect of the GTA.

[7] Plaintiff also does not plead a reduction in third-party merchants selling on Amazon.com overall. Quite the opposite, he pleads that between 2015 and 2020 the number of third-party merchants has tripled. Compl. ¶ 87.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

12

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

alleged by Plaintiff is iPhones and iPads, which consumers may purchase through many channels in addition to online marketplaces. Plaintiff does not allege (nor could he) that the GTA reduces competition *between* Amazon.com and other online marketplaces, and thus the *Amex* framework is inapplicable to the particular agreement challenged here.

For these reasons, the Court should dismiss the Complaint for Plaintiff's failure to identify a relevant market that matches his asserted theory of harm. *See Intel Corp. v. Fortress Inv. Grp. LLC*, No. 21-16817, 2022 WL 16756365, at *3 (9th Cir. Nov. 8, 2022) (dismissing complaint where Intel alleged output restriction in "markets that Fortress does not control"); *Coronavirus Rep.*, 2021 WL 5936910, at *11 (granting motion to dismiss where antitrust claims did not impact market identified in complaint); *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2022 WL 1522054, at *28 (S.D. Fla. May 13, 2022).

2. *Second*, Plaintiff's proposed relevant "consumer electronics" market is facially overbroad and implausible because all "consumer electronics" are not reasonably interchangeable or do not have a "cross-elasticity of demand" with the iPhones and iPads at issue in this case. *See, e.g.*, Compl. ¶¶ 1, 3, 77, 86. The Complaint pays little attention to defining the products his broad "consumer electronics" market encompasses, but states that it "includ[es] Apple products" (*id.* ¶ 3) and also references the Fire Tablet (*id.* ¶ 37) and products sold by Dell (*id.* ¶ 86), like computers, webcams, and Nest thermostats. It also appears to include countless other unspecified "consumer electronics" like game consoles, speakers, televisions and fitness trackers.[8] Courts routinely dismiss complaints alleging such broad and amorphous market definitions. *See, e.g.*, *Reilly*, 578 F. Supp. 3d. at 1106; *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755-RMW, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012) (dismissing complaint where plaintiff "provide[d] no authority supporting such an overbroad and amorphous market definition, which would theoretically encompass the market for every one of the millions of items sold through eBay"), *aff'd*, 563 F. App'x 571 (9th Cir. 2014).

The Ninth Circuit's rejection of the proposed market in *Golden Gate Pharmacy Services,*

---

[8] *See* Statista, *Consumer Electronics – Statistics & Facts*, https://www.statista.com/topics/4408/consumer-electronics/ (last visited Feb. 1, 2023).

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

13

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011), is instructive. There, the plaintiff pharmacies alleged that there was a relevant product market consisting of "the pharmaceutical industry" which included "pharmaceutical products." *Id*. The Ninth Circuit affirmed the dismissal of this "facially unsustainable" market because the pharmacies could not plead that "all pharmaceutical products are interchangeable for the same purpose." *Id*. The same is true here. Simply put, while an individual searching for a new smartphone may consider an iPhone, along with other devices made by competitors such as Samsung, Google, and LG, he or she is unlikely to buy a computer monitor or headphones instead. Plaintiff's reliance on the overbroad "Online Consumer Electronics Marketplace" market or the "Broader Online Electronics Retail Market," fails to plead a plausible relevant market tied to his allegations of anticompetitive injury here.[9]

3. *Third*, dismissal is also appropriate because the alleged relevant market is simultaneously too narrow. The relevant market must include any parties "who have actual or potential ability to deprive each other of significant levels of business." *Thurman Indus., Inc. v. Pay 'N Pak Stores*, *Inc*., 875 F.2d 1369, 1374 (9th Cir. 1989). Yet, Plaintiff's contorted, litigation-driven limitation to "consumer electronics" sold on online "marketplaces" fails to capture a large number of other avenues for a customer to purchase smartphones and tablets. *See Joplin Enters. v. Allen*, 795 F. Supp. 349, 352-53 (W.D. Wash. 1992) (Coughenour, J.) (dismissing antitrust claim where market proposed was "too narrow to support a cause of action.") (collecting cases).

In fact, Plaintiff's allegations concede substitutability between "Online Consumer Electronics Marketplaces" and other channels. He states: "An iPad purchased on Apple's website is an iPad not purchased from an Amazon retailer. And vice versa." Compl. ¶ 39. Yet, Plaintiff's gerrymandered market definition excludes purchases from Apple's website (and Apple Stores, and other retail outlets). The Complaint also admits that Apple has the ability to drive sales of its products to its own website and retail stores and away from Amazon.com and other third-party

---

[9] Plaintiff cannot cure this problem by restricting the relevant product market to iPhones and iPads. Courts in this Circuit and nationwide routinely reject the existence of a "single brand" market, except in the inapplicable circumstance of an "aftermarket." *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008); *Coronavirus Rep.*, 2021 WL 5936910, at *10.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

14

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

sellers. *Id.* ¶ 28. It is thus implausible that a purchaser like Plaintiff would not find apple.com or an Apple Store as a reasonable substitute to purchase *Apple* products, let alone other locations that sell competing devices. *Id.* ¶ 37. So too with so-called "single-merchant online stores" (*id.* ¶ 77) and brick-and-mortar stores (*id.* ¶ 88), which sell significant numbers of tablets and smartphones. The inability to "one stop shop" (*id.* ¶ 81) at these some of these retailers does not make them unreasonable substitutes for someone looking to buy "consumer electronics."

While online marketplaces like Amazon.com are one way to purchase a smartphone, there are dozens of alternative channels through which a consumer can obtain a smartphone or tablet. Plaintiff's failure to include these alternative channels in his relevant market "defies common sense" and is fatal to his contention that the relevant product market here is only an online marketplace. *See In re German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d 745, 757 (N.D. Cal. 2020), *aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) ("It simply defies common sense to assert that other vehicles, including other purportedly environmentally friendly vehicles, lack the 'potential ability to deprive' diesel passenger vehicles of 'significant levels of business.'"); *Stubhub, Inc. v. Golden State Warriors, LLC*, No. C 15-1436 MMC, 2015 WL 6755594, at *3 (N.D. Cal. Nov. 5, 2015) (rejecting argument that primary and secondary tickets were separate markets because "both primary and secondary tickets are used for the purpose of obtaining entry to a Warriors game"); *Pistacchio v. Apple Inc.*, No. 4:20-cv-07034-YGR, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021) (dismissing claim where the complaint "offer[ed] no specific allegations supporting the sole focus of the market definition on cloud gaming alternatives as opposed to the broader video game market generally, including those individually sold both in the Apple App Store or by competitors on computer or console platforms").[10]

Plaintiff's other allegations are contradictory, irrelevant, or both. He contends that Apple and Amazon are horizontal competitors, but then when describing the relevant market, says that Apple (as a single-merchant outlet) (Compl. ¶¶ 77-87) is not in the relevant market. In particular,

---

[10] Plaintiff's "Broader Online Electronics Retail Market" does not solve the problem, as it still does not include brick and mortar retailers, the Apple Store, and many other Apple authorized resellers like Verizon and AT&T.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

15

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

Plaintiff contends that "while a price increase by a single-merchant outlet may drive significant consumer defections to a competing marketplace, a price increase by a marketplace is less likely to cause significant defections to single-merchant outlets." *Id.* ¶ 81; *see also id.* ¶ 92 (similar allegation regarding brick and mortar stores). This is in significant tension with Plaintiff's theory of horizontal competition and simply defies common sense for the reasons explained above. Moreover, it is irrelevant that other avenues like brick-and-mortar retail stores are not "interchangeable" with online "marketplaces" from the perspective of third-party sellers. *See id.* ¶ 91. Plaintiff's alleged harm is the alleged increase in the price of his iPad, not his inability to sell as a third-party.

For all these reasons, Plaintiff does not (and cannot) plead a plausible product market to fit the alleged anticompetitive conduct in this case. "'[J]udicial experience and common sense' require rejecting" the implausible product markets alleged in the complaint. *Hicks*, 897 F.3d at 1121 (quoting *Iqbal*, 556 U.S. at 679); *Brown Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962) ("the definition of the relevant market" must "'correspond to the commercial realities' of the industry"). Plaintiff's failure to allege a plausible market requires dismissal.

### B.  Plaintiff Does Not Plead Market Power

Plaintiff's failure to plead a plausible relevant product market also dooms his ability to plead market power in the proper market. *See Flaa*, 55 F. 4th at 694-95 ("[L]ack of market power is fatal to [ ] claims under the rule of reason."); *Pennsylvania Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134-35 (W.D. Wash. 2008) (dismissing antitrust claim where plaintiff failed to sufficiently "allege that the defendant has market power within a 'relevant market'") (citation omitted). While the Complaint distracts on this point by citations to Amazon's large online presence generally (Compl. ¶ 94), these citations to "online marketplace" sales in general say nothing about Amazon's market power for the sales of smartphones and tablets relevant to Plaintiff's claim. The relevant market power is not, as Plaintiff contends, in the "market" for online "marketplaces," or avenues for third parties to sell, but rather in the market for the sale of specified Apple products and reasonable substitutes.

Plaintiff barely acknowledges this point, and when he does, it is fatal to his claim. The

1    Complaint recognizes the market reality once, pleading that Apple's "[d]irect sales" are "a major

2    part of Apple's business[.]" *Id.* ¶ 1. And Apple is not the only other avenue to purchase smartphones

3    and tablets. Indeed, the Complaint acknowledges other options like Best Buy and AT&T, but

4    excludes them from the market power discussion because its market fails to match Plaintiff's harm.

5    Plaintiff's hypothetical monopolist (or "SSNIP") test—which Plaintiff relies on to show that

6    Amazon has market power—clearly demonstrates the mismatch. Plaintiff claims market power

7    based on Amazon's ability to increase the commission it charges third-party merchants. *See id.* ¶

8    87. Plaintiff, however, does not claim injury based on increased commissions. Nor does his

9    misaligned SSNIP test account for the common-sense reality that a prospective purchaser unhappy

10   with the price of an iPhone or iPad on Amazon has a multitude of other avenues to buy one.

11   Customers are not locked into purchasing on Amazon.com.

12       Plaintiff's failure to address market power for the products actually relevant to his claim

13   requires dismissal. *See Flaa*, 55 F.4th at 693.

14       **C.    Plaintiff Does Not Adequately Allege Injury to Competition**

15       Plaintiff also bears the burden to plead facts that plausibly establish that the GTA injured

16   competition. Allegations that are "merely consistent" with liability "stop[ ] short of the line between

17   possibility and plausibility[.]" *Iqbal*, 556 U.S. at 678. None of Plaintiff's allegations meet this

18   threshold of ruling out legitimate justifications to implement the GTA. Courts routinely recognize

19   the benefits of distributor agreements in promoting interbrand competition by improving a

20   manufacturer's brand integrity. Plaintiff cannot make up for this failure by relying on alleged

21   increase prices and the reduction of third-party sellers alone. And, critically, his allegations do not

22   support a reduction in output of genuine Apple products sold on Amazon, let alone overall.

23   Plaintiff's myopic, unrealistic focus on resales through Amazon.com—a platform on which Apple

24   adopted procompetitive measures to combat counterfeits—is simply an attempt to cover up for his

25   failure to show that the GTA had *market-wide* effects.

26       1.  Plaintiff's entire Complaint rests on a challenge to Apple's business decision to enter

27   into a distribution agreement (the GTA) with a reseller (Amazon) and set certain requirements for

28   the sale of its products on Amazon.com. But such distribution agreements are consistent with

MOTION TO DISMISS                                17
Case No. 2:22-cv-01599 JCC

procompetitive contact, and Plaintiff's allegations about the effects of the GTA are insufficient to cross the "line between possibility and plausibility" of an anticompetitive effect. *Iqbal*, 556 U.S. at 678. As noted, the GTA set requirements on the sale of Apple products on its reseller's, Amazon.com, platform. *See* pp. 4-5, *supra*. These requirements addressed the counterfeit problem that the Complaint acknowledges Apple had identified (Compl. ¶ 71) and helped improve the customer experience for purchasers of Apple products. *See* pp. 4-5, *supra*. Such action by a manufacturer "while [a] restraint[] in one sense, nevertheless serve[s] to promote interbrand competition." *A.H. Cox*, 653 F.2d at 1306; *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("No antitrust violation occurs unless the exclusive agreement is intended to or actually does harm competition in the relevant market. That one distributor will be hurt when another succeeds in taking its line will be axiomatic in some markets ... but the intent to cause that result is not itself prohibited by the antitrust laws."); *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54-55 (1977) ("Economists have identified a number of ways in which manufacturers can use such restrictions to compete more effectively against other manufacturers."). At bottom, "[b]usinesses may choose the manner in which they do business absent an injury to competition." *Brantley*, 675 F.3d at 1202.[11] Plaintiff's reliance on the GTA's existence does not meet his burden to prove any such injury.

2. Plaintiff attempts to make up for his failure to plead anticompetitve effects by claiming that the GTA increased prices for iPhones and iPads on Amazon.com, and reduced the number of third-party sellers on Amazon's platform.[12] Yet, Ninth Circuit law is clear that these allegations, standing alone, are not sufficient to plead an injury to competition because "[b]oth effects are fully consistent with a free, competitive market." *Brantley*, 675 F.3d at 1202 ("[A]llegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition."); *see also Conklin v. Univ. of Wash. Med.*, 798 F. App'x 180, 181 (9th Cir. 2020) (quoting *Brantley*, 675 F.3d at 1202); *Orchard Supply Hardware*

---

[11] For similar reasons, the Complaint's allegations regarding an alleged "strategy of scarcity" and allegation that "Apple's own profit margins are higher when it directly sells to consumers" (*e.g. id.* ¶¶ 25, 27-28) are simply recognition of Apple's legitimate business operations.

[12] *E.g.* Compl. ¶¶ 9, 12, 56-58, 67-70, 118, 124-25, 128.

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1010 (N.D. Cal. 2013) (failure to plead injury to competition based on vertical agreement between hardware store and power tool suppliers). In fact, the Ninth Circuit has routinely explained that an alleged reduction in third-party resellers does not adequately establish an intent to injure competition because it is simply the "axiomatic" result of a lawful vertical agreement between a manufacturer and reseller. *Rutman*, 829 F.2d at 735; *see also A.H. Cox*, 653 F.2d at 1306-07 (explaining such provisions promote interbrand competition). And monetary "injury" to the third-party resellers unable to sell on Amazon.com is not an "injury to the market or competition" actionable under the antitrust laws.[13] *See Heisen v. Pac. Coast Bldg. Prods., Inc.*, 26 F.3d 130, 130 (9th Cir. 1994).

Further, Plaintiff's alleged price statistics (*e.g.* Compl. ¶¶ 53, 57-59) are a red herring. Given counterfeit sales, such statistics are consistent with the increase in price that would naturally occur with an increase in genuine product sales, the improvement of customer purchasing experiences, and the elimination of cheaper, counterfeit products sold as real Apple products. Such allegations that are equally (if not more) consistent with an alternative lawful explanation do not state a claim. *See Iqbal*, 556 U.S. at 678. Likewise, the termination of third-party resellers is not an anticompetitve effect because manufacturers are permitted to select the dealers that sell their products and "even cut off" others. *A.H. Cox*, 653 F.2d at 1306.

3. Relatedly, Plaintiff does not support his boilerplate, conclusory claim of output reduction (Compl. ¶ 67) with any factual detail. *See Reilly*, 578 F. Supp. 3d at 1110 (rejecting "threadbare recital[ ]" of lowered output). Importantly, Plaintiff does not actually allege that the total number of genuine Apple products sold on Amazon.com decreased, or even that the total number of Apple products sold through any distribution channel decreased. Rather, Plaintiff points only to a reduction of third-party merchants, and posits an unexplained "counterfactual" contending that the reduction of third-party merchants created an output reduction. *E.g.* Compl. ¶¶ 57, 67. This does

---

[13] For this reason, Plaintiff's arguments regarding antitrust injury are also insufficient. Plaintiff cannot rely on injury to third party resellers to fill this gap, because "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Qualcomm*, 969 F.3d at 992 (citation omitted). For these reasons, and those explained by Amazon (which Apple incorporates herein), Plaintiff has not pled antitrust injury. *See* Amazon.com's Motion to Dismiss, Section III.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC
19
Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1    not consider or include any factual claims as to whether those merchants sold one Apple product

2    or millions or whether the sales by Authorized Resellers and Amazon itself made up for the

3    decrease in sales from the other merchants no longer permitted to sell on Amazon. The Complaint's

4    factual allegations are equally (if not more) consistent with an increase in output, as it recognizes

5    that the GTA provided Amazon "steady access to Apple products" (*id.* ¶¶ 52, 126) that actually

6    *increased* Amazon's offerings of genuine Apple products from previously "virtually non-existent"

7    (*id* ¶¶ 6-7).

8        Further, Plaintiff fails to differentiate between counterfeit and genuine Apple products

9    anywhere in the Complaint, leading to the equally possible scenario that the reduction of third-

10   party merchants reduced the number of fake products on the market but increased supply of genuine

11   products offered by Authorized Resellers and Amazon. For these reasons, Plaintiff's conclusory

12   assertion of output restriction, or reliance on the exclusion of third-party merchants selling an

13   unknown number of products (let alone *genuine* products), is not sufficient to establish an output

14   restriction. *See Intel*, 2022 WL 16756365, at *2-3 (affirming dismissal of complaint where

15   allegations were consistent with alternative explanation); *Somers v. Apple, Inc.*, 729 F.3d 953, 965

16   (9th Cir. 2013) (similar). Plaintiff cannot cure these failures by re-pleading, as output of Apple

17   products is not limited to those resold on Amazon.com.

18                                    **CONCLUSION**

19       For these reasons, Defendant Apple Inc. asks the Court to dismiss the Complaint with

20   prejudice. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

21   (explaining that dismissal with prejudice is warranted when amending complaint would be futile).

22

23

24

25

26

27

28

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

I certify that this memorandum contains 7,778 words, in compliance with the Local Civil Rules.

DATED this 6th day of February, 2023.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Mark S. Parris*
Mark S. Parris (WSBA No. 18370)
mparris@orrick.com

401 Union Street, Suite 3300
Seattle, WA  98101
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

WEIL GOTSHAL & MANGES, LLP

By: *s/Carrie C. Mahan*
Carrie C. Mahan (*Pro Hac Vice*)
carrie.mahan@weil.com

By: *s/Sandra Nicole Booth*
Sandra Nicole Booth (*Pro Hac Vice*)
nicole.booth@weil.com

2001 M. Street NW, Suite 600
Washington, DC 20036
Telephone: +1 202 682 7000

By: *s/Brian G. Liegel*
Brian G. Liegel (*Pro Hac Vice*)
brian.liegel@weil.com

1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: +1 305 577 3180

*Attorneys for Defendant Apple Inc.*

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

21

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

EXHIBIT A

FILED UNDER SEAL