1

2

3

4

5

6

7

8

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

STEVEN FLOYD, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC., a Delaware corporation,
and APPLE INC., a California corporation,

Defendants.

No. C22-01599-JCC

**AMAZON.COM'S
MOTION TO DISMISS THE
AMENDED COMPLAINT**

**Noted for consideration:
May 19, 2023**

*Oral argument requested*

MOTION TO DISMISS (C22-01599-JCC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

FACTUAL ALLEGATIONS ...................................................................................... 3

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................. 7

I.      PLAINTIFF STATES NO VALID *PER SE* CLAIM. ........................................ 8

        A.      The *Per Se* Claim Contradicts Settled "Dual Distribution" Precedent. ............... 8

        B.      The *Per Se* Claim Contradicts the Amended Complaint's Own Factual
                Allegations. ................................................................................................. 12

II.     PLAINTIFF'S ALTERNATIVE RULE-OF-REASON CLAIM SHOULD BE
        DISMISSED. ...................................................................................................... 12

        A.      Plaintiff's Proposed Markets Are Facially Untenable. ..................................... 13

                1.      Plaintiff's Primary "Market for Online Marketplaces" Is
                        Mismatched to His Theory of Harm. ......................................... 13

                2.      Plaintiff's Alternative Markets for Smartphone and Tablet Sales in
                        "Marketplaces" and "One-Stop Shops" Are Implausible Because
                        They Exclude Obvious Sales-Channel Substitutes. ........................... 15

        B.      The Facts Alleged in the Amended Complaint Are Insufficient To Show
                Anticompetitive Effect In Plaintiff's Proposed Markets. ................................. 20

                1.      Plaintiff Does Not Even Allege Harm to Competition Among
                        Competing "Online Marketplaces." ........................................... 20

                2.      Plaintiff Does Not Allege Facts Sufficient to Show Harm to
                        Competition in His Alternative Retail Markets. ........................... 20

                3.      Plaintiff Does Not Plausibly Allege Market Power in His Proposed
                        "One-Stop Shop" Market. ........................................................ 23

III.    PLAINTIFF HAS NOT PLEADED FACTS SUFFICIENT TO SHOW THAT HE
        PERSONALLY SUFFERED ANTITRUST INJURY. .......................................... 24

CONCLUSION ........................................................................................................ 27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.H. Cox & Co. v. Star Mach. Co.*,
   653 F.2d 1302 (9th Cir. 1981) ............................................................................11

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999) ....................................................................13, 26

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
   92 F.3d 781 (9th Cir. 1996) ................................................................................8

*Apple Inc. v. Mobile Star, LLC*,
   2017 WL 4297209 (N.D. Cal. Aug. 30, 2017) ..................................................4

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)..............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................6, 16, 21, 26

*AT&T Corp. v. JMC Telecom, LLC*,
   470 F.3d 525 (3d Cir. 2006) ..............................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................*passim*

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ...........................................................3, 7, 21, 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)..........................................................................................15

*Chicago Pro. Sports Ltd. P'ship v. NBA*,
   95 F.3d 593 (7th Cir. 1996) ........................................................................21, 22

*Continental T.V., Inc. v. G.T.E. Sylvania Inc.*,
   694 F.2d 1132 (9th Cir. 1982) ..........................................................................10

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
   433 U.S. 36 (1977)............................................................................................10

*Coronavirus Reporter v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ..........................................13, 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Davis-Watkins Co. v. Serv. Merch.*,
   686 F.2d 1190 (6th Cir. 1982) ........................................................................11

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) ..........................................................................9

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ........................................................................13

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods.*,
   129 F.3d 240 (2d Cir. 1997)..............................................................................9

*Flaa v. Hollywood Foreign Press Ass'n*,
   55 F. 4th 680 (9th Cir. 2022) .........................................................................23

*Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.*,
   312 F. Supp. 2d 379 (E.D.N.Y. 2004) ............................................................11

*Fresno Mobile Radio, Inc. v. FCC*,
   165 F.3d 965 (D.C. Cir. 1999)........................................................................24

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) .............................................................13, 14, 20

*Hernandez v. Select Portfolio Servicing, Inc.*,
   2015 WL 3914741 (C.D. Cal. June 25, 2015) ................................................12

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ................................................................ *passim*

*Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*,
   889 F.2d 751 (7th Cir. 1989) ....................................................................10, 11

*In re German Auto. Mfrs. Antitrust Litig.*,
   497 F. Supp. 3d 745 (N.D. Cal. 2020) ......................................................16, 19

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   2022 WL 1522054 (S.D. Fla. May 13, 2022) ................................................13

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .....................................................................7, 22

*Krehl v. Baskin-Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1982) .......................................................2, 9, 10, 11

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)..........................................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ..................................................................................7

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
   734 F.2d 705 (11th Cir. 1984) ...............................................................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)..................................................................................................6

*NCAA v. Bd. of Regents of Univ. of Oklahoma*,
   468 U.S. 85 (1984)....................................................................................................8

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ................................................................16, 19, 23

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018)......................................................................................14, 20

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) ..............................................................................9, 11

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ................................................................................25

*Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*,
   637 F.2d 1001 (5th Cir. 1981) ...........................................................................10, 11

*Rutman Wine Co. v. E&J Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ..................................................................................6

*Simon v. E. Kentucky Welfare Rts. Org.*,
   426 U.S. 26 (1976)..................................................................................................24

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ...........................................................12, 24, 25, 26

*St. Martin v. KFC Corp.*,
   935 F. Supp. 898 (W.D. Ky. 1996)........................................................................11

*Street v. Amazon.com Servs., LLC*,
   2022 WL 3683811 (W.D. Wash. Aug. 25, 2022) ...............................................22

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) .........................................................................12, 20

*Time Warner Ent. Co., L.P., v. FCC*,
   240 F.3d 1126 (D.C. Cir. 2001)...........................................................................23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) ............................................................................................................6

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................................1

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .......................................................................................7, 19

*Zunum Aero, Inc. v. Boeing Co.*,
    2022 WL 3346398 (W.D. Wash. Aug. 12, 2022) ........................................................7, 19

**Federal Statutes**

15 U.S.C. § 1 ...........................................................................................................6, 7, 9, 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................12, 13

Fed. R. Evid. 201 ..................................................................................................................4

**Other Authorities**

Ben Lovejoy, *Can You Guess What Percentage of Macs, iPads & iPhones are bought direct from
    Apple?* (Oct. 19, 2017), https://9to5mac.com/2017/10/19/apple-store-sales-cirp/ ......................3

Chance Miller, *Most iPhone Buyers Don't Actually Make Their Purchases From Apple Directly,
    Data Shows* (Dec. 12, 2022), https://9to5mac.com/2022/12/12/where-do-most-people-buy-
    iphones/ ...........................................................................................................................3

Jacob Kastrenakes, *Amazon Extinguishes the Fire Phone*, The Verge (Sept. 9, 2015),
    https://www.theverge.com/2015/9/9/9292695/amazon-fire-phone-sales-end ............................5

Jeffrey Bezos, Founder & CEO of Amazon, Letter to Amazon Shareholders (2005) (attached to
    2005 Amazon Annual Report),
    https://www.sec.gov/Archives/edgar/data/1018724/000119312506084815/dex991.htm ............6

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and
    Their Application* ¶ 1402a3 (online 4th & 5th eds. 2018-2022) ....................................................6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**INTRODUCTION AND SUMMARY**

Consumers buy new iPhones and iPads from a wide range of sellers. Many order them from wireless carriers such as AT&T, T-Mobile, and Verizon. Others buy them directly from Apple on its website or at one of its stores. Still others obtain them from big-box retailers such as Walmart, Target, or Best Buy. Only a small percentage of consumers shopping for these devices buy them on Amazon.com. And an even smaller fraction purchased them on Amazon.com before 2018. Amazon itself rarely sold iPhones and iPads to consumers then because Apple had not yet made it an authorized reseller. Some third-party sellers did episodically sell those devices on Amazon.com before 2018, but their supplies were unpredictable and their shipping was too often slow, resulting in consumer dissatisfaction. Apple also contended that some third-party sellers had sold counterfeit or mislabeled goods through Amazon's store.

To boost availability of authentic Apple products on Amazon.com, Apple and Amazon entered into the Agreement here.[1] The Agreement made Amazon an authorized retailer of new iPads and iPhones and more generally gave it, for the first time, "a steady supply of Apple goods" for resale to consumers. Amended Complaint ¶ 7. The Agreement also provided that Apple would designate the authorized resellers who could sell its products on Amazon.com, thereby ensuring that consumers who order a new Apple device on that website (among their many other options) would promptly receive exactly what they ordered.

Plaintiff claims that the Agreement injured him and a putative class of others who purchased new iPhones and iPads on Amazon.com by reducing the number of third-party sellers who sold those products there. Of course, the facts pleaded in the Amended Complaint must be taken as true at this stage. But here the alleged facts are fully consistent with the conclusion that the Agreement was procompetitive and lawful. And because Plaintiff has now tried and failed to

---

[1] The Global Tenets Agreement ("Agreement") between Apple and Amazon, signed in late 2018, is attached as Exhibit A to Apple's contemporaneously filed Motion to Dismiss ("Apple MTD"). The Agreement is "incorporated by reference into [the] [C]omplaint" for motion-to-dismiss purposes because Plaintiff "refers extensively" to it and, indeed, it "forms the basis of [his] claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    fix the fundamental conceptual flaws in his case through amendment, dismissal with prejudice is

2    appropriate.

3       *First*, Plaintiff's *per se* claim contradicts basic antitrust doctrine. He urges the Court to

4    condemn the Agreement out of hand, without considering its obvious consumer benefits, simply

5    because Apple and Amazon both sell iPhones and iPads to consumers. But Plaintiff

6    acknowledges that the Agreement is a "dual distribution" arrangement between a retailer

7    (Amazon) and a supplier (Apple) that also sells its own products directly. More than 40 years of

8    precedent holds that such arrangements are properly characterized as vertical, not horizontal, and

9    are subject at most to antitrust's rule of reason, not *per se* condemnation. *See*, *e.g.*, *Krehl v.*

10   *Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1355-57 (9th Cir. 1982). In contending

11   otherwise, Plaintiff contradicts not only that well-settled precedent, but also his own Amended

12   Complaint, which elsewhere insists that Apple does *not* compete in the same relevant market as

13   Amazon.

14      *Second*, Plaintiff's rule-of-reason claim fails for multiple independent reasons. To begin

15   with, he has not done what any rule-of-reason plaintiff must do: define a "relevant market" that

16   plausibly became less competitive as a result of the defendants' conduct. The primary market he

17   proposes to define consists not of devices like the one he bought, but of rival "online

18   marketplaces" such as eBay and Walmart Marketplace. Plaintiff does not (and could not

19   plausibly) allege that the challenged Agreement reduced the competitiveness of *that* putative

20   market. For example, eBay is no less capable of competing with Amazon.com than it was before

21   the Agreement, and Plaintiff does not even contend otherwise. Plaintiff fares no better in alleging

22   alternative markets for the sale of new smartphones and tablets to consumers through

23   "marketplaces" and "one-stop shops." These made-for-litigation "markets" implausibly exclude

24   the sales channels that most consumers actually use to purchase these devices, including the

25   Apple Store and all major wireless carriers.

26      Beyond that, the Amended Complaint also does not plausibly plead anticompetitive

27   effects, another essential element of any rule-of-reason claim. Under controlling precedent, "a

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

complaint's allegation of a practice that may or may not injure competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, the Amended Complaint's factual allegations fail because they are, if anything, more consistent with net consumer benefits than with any inference of anticompetitive effects.

*Third*, Plaintiff has not alleged facts sufficient to show that he personally suffered antitrust injury—*i.e.*, that he paid a higher price for his iPad in 2021 than he would have paid but for the Agreement. That pleading failure independently requires dismissal of both the *per se* and the rule-of-reason claims.

## FACTUAL ALLEGATIONS

This case involves the sale of a single brand of new products (Apple's) through a single company's store (Amazon's). The sole named plaintiff is a consumer who "purchased a new Apple iPad … on Amazon Marketplace" in 2021 (¶ 23), and he purports to represent a class of others who "purchased any new iPhone or iPad from the Buy Box on Amazon.com." ¶ 145.[2] Plaintiff acknowledges that consumers can and often do buy new iPhones and iPads through non-Amazon channels. Those other channels include the heavily trafficked websites and ubiquitous stores of (1) Apple itself, (2) big-box retailers such as Walmart, Target, and Best Buy, and (3) wireless carriers such as AT&T, T-Mobile, and Verizon, which routinely advertise special deals for Apple products. Plaintiff alleges no facts contradicting the widely understood reality that many consumers (indeed, the overwhelming majority) buy Apple products through one of these other sales channels rather than through Amazon.com.[3]

---

[2] Paragraph citations in this motion denote paragraphs of the Amended Complaint.

[3] *See, e.g.*, Chance Miller, *Most iPhone Buyers Don't Actually Make Their Purchases From Apple Directly, Data Shows*, 9to5Mac (Dec. 12, 2022), https://9to5mac.com/2022/12/12/where-do-most-people-buy-iphones/ ("[Wireless] carrier stores, both physical and online, account for the majority of iPhone sales in the United States. Apple Stores are the second most common place people buy iPhones, while third-party retailer Best Buy makes up an even smaller percentage of sales.") (all cited websites visited Mar. 23, 2023); Ben Lovejoy, *Can You Guess What Percentage of Macs, iPads & iPhones are bought direct from Apple?*, 9to5Mac (Oct. 19, 2017), https://9to5mac.com/2017/10/19/apple-store-sales-cirp/ (identifying top three sales channels for iPads as Best Buy, Apple, and wireless carriers). This Court may take judicial notice of the fact that iPhones and iPads are readily

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiff attacks a 2018 vertical agreement between Apple as a manufacturer and Amazon as a retail store for Apple products. The Agreement designated Amazon as an authorized reseller of iPhones and iPads and more generally gave it, for the first time, "a steady supply of Apple goods" for resale to consumers. ¶¶ 6-7. Amazon and Apple also agreed to coordinate more closely to protect against sales of counterfeit devices by third-party sellers in Amazon's online store; to ensure accurate, informative, and high-quality product descriptions of Apple products sold there; and to ensure that offers of used or open box Apple products were clearly marked as such. *See* Apple MTD Exh. A at 3-7.[4] To the same ends, Apple reserved the right to designate which third-party sellers could offer new iPhones and iPads on Amazon.com. *See id.* at 1-2. Plaintiff alleges that Apple ultimately chose seven authorized Apple resellers for that purpose in the United States. ¶ 7.

Plaintiff claims that the Agreement "harmed competition" in the sale of new[5] smartphones and tablets, ¶ 164, even though (1) it provided Amazon's retail operations with "a steady, discounted supply of Apple products" for the first time, ¶ 12, (2) at least seven other authorized resellers besides Amazon continued selling the devices in the Amazon.com sales channel, ¶ 7, (3) that sales channel in turn accounts for only a small percentage of new iPhone and iPad sales overall, and (4) the Agreement had no effect whatsoever on non-Apple smartphones and tablets. Plaintiff bases his claim of competitive harm on the allegation that this

---

available for sale in numerous brick-and-mortar stores and on apple.com, verizon.com, att.com, t-mobile.com, bestbuy.com, walmart.com, and target.com, among many other online sales channels. *See* Fed. R. Evid. 201 (court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known …, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[4] Plaintiff alleges that the Agreement was not intended to address counterfeiting concerns, but that allegation is foreclosed by the Agreement's express terms. *See* Apple MTD Exh. A at 2-3, 5, 9, 12 (extensive measures to prevent sale of counterfeit goods). Indeed, Apple was so concerned about counterfeit Apple products on Amazon.com that it filed suit against alleged counterfeiters in 2017, a year before this Agreement. *See* Complaint, *Apple Inc. v. Mobile Star, LLC*, 2017 WL 4297209 (N.D. Cal. Aug. 30, 2017). Plaintiff relies for his allegation on the contested findings of an Italian agency, but a reviewing Italian court "annulled" those findings as unreliable. ¶ 26 n.17.

[5] The Amended Complaint acknowledges that the Agreement generally relates only to sales of *new* Apple devices and imposes no relevant restrictions on sales of used or refurbished devices. *See* ¶¶ 8, 13, 50-51, 72, 162. The Amended Complaint accordingly defines the putative class as persons who, like Plaintiff, "purchased any *new* iPhone or iPad" on Amazon.com. ¶ 145 (emphasis added).

MOTION TO DISMISS (C22-01599-JCC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

new arrangement precluded "hundreds" of additional third-party sellers—those not selected by Apple—from selling ostensibly authentic and new iPhones and iPads on Amazon.com. ¶ 165.[6] But like the original Complaint, the Amended Complaint fails to allege either the identity of any of these sellers or their individual, average, or aggregate sales volumes. The complaints' allegations are thus consistent with the possibility that many of these third-party sellers sold only a single device of undisclosed provenance.

Similarly, Plaintiff asserts no facts suggesting that the overall volume of Apple products sold on Amazon.com was greater before Apple and Amazon entered into the Agreement. The facts asserted in the Complaint are at least equally consistent with the contrary proposition because, as Plaintiff concedes, the Agreement transformed Amazon from a "virtually non-existent" retailer of Apple products to an authorized reseller with access to "a steady supply of Apple goods … at discounted wholesale prices." ¶¶ 6-7; *see also* ¶ 12. In short, Plaintiff asserts no facts supporting his conclusory assertion that the Agreement reduced, rather than increased, overall output of Apple products on Amazon.com.

Plaintiff also assumes without foundation that Amazon finds it more profitable to buy goods at wholesale and resell them at retail than to charge fees to third-party sellers for the use of Amazon's website and rely on those sellers to obtain their own inventories. *See*, *e.g.*, ¶ 12 ("Amazon and Apple cut out the third-party merchants and divided the spoils."). Plaintiff alleges no facts supporting that assumption, and the facts he does allege tend to contradict it. *See*, *e.g.*, ¶ 106 (alleging that Amazon profits from charging high fees to third-party sellers). Plaintiff's factual allegations are thus entirely consistent with the proposition that Amazon entered into this Agreement not to harm third-party sellers at the expense of consumers, but to improve the

---

[6] Because the Agreement pertains only to Apple products, the Amended Complaint focuses on "intra-brand" competition and raises no genuine issue of "inter-brand" competition between Apple and non-Apple products. *Cf.* ¶ 38. For example, even assuming that Amazon's Fire tablet competes with the iPad, ¶ 39, Plaintiff does not (and could not plausibly) allege that the Agreement impaired such competition. Plaintiff's reference to Amazon's "Fire Phone" (¶ 38) is perplexing because Amazon discontinued that product in 2015, several years before the challenged Agreement. *See* Jacob Kastrenakes, *Amazon Extinguishes the Fire Phone*, The Verge (Sept. 9, 2015), https://www.theverge.com/2015/9/9/9292695/amazon-fire-phone-sales-end.

MOTION TO DISMISS (C22-01599-JCC) - 5

1   customer experience by ensuring, for the first time, a broad supply of authentic and genuinely

2   new Apple products.

3   　　　　Finally, although Plaintiff insists that "[t]his case is … not about Apple independently

4   selecting its trading partners or Amazon independently enforcing its own platform rules" (¶ 13),

5   either Apple or Amazon acting alone could have winnowed the number of sellers of Apple

6   products on Amazon.com without any agreement at all. As the manufacturer, Apple has the

7   unilateral legal right to designate the third parties (if any) who may offer new Apple products as

8   authorized resellers. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984);

9   *United States v. Colgate & Co.*, 250 U.S. 300, 306-07 (1919). Indeed, Apple could have named

10   Amazon the *exclusive* independent reseller of new Apple products, thereby precluding sales of

11   those products by *any* third-party seller. *See, e.g.*, *Rutman Wine Co. v. E&J Gallo Winery*, 829

12   F.2d 729, 735 (9th Cir. 1987). Similarly, Amazon has no legal obligation to allow third-party

13   sellers to use its website in the first place.[7] This case thus does not implicate "[t]he core concern

14   of Sherman Act § 1": that competitors will pool their market power to "effect an anticompetitive

15   restraint that could not otherwise be achieved." Phillip E. Areeda & Herbert Hovenkamp,

16   *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1402a3 (online 4th &

17   5th eds. 2018-2022) ("Areeda & Hovenkamp").

18   　　　　　　　　　　　　　　　**LEGAL STANDARD**

19   　　　"[A] complaint must contain sufficient factual matter, [if] accepted as true, to 'state a

20   claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

21   *Twombly*, 550 U.S. at 570), and that rises "above the speculative level," *Twombly*, 550 U.S. at

22   555. "Determining whether a complaint states a plausible claim for relief will … be a

23   context-specific task that requires the reviewing court to draw on its judicial experience and

24   common sense." *Iqbal*, 556 U.S. at 679.

25

26   _____

[7] Amazon began in 1994 as a pure first-party retailer. In 2000, it opened its website to third-party sellers for the first

27   time. Letter from Jeffrey Bezos, Founder & CEO, to Amazon Shareholders (2005) (attached to 2005 Amazon
Annual Report), https://www.sec.gov/Archives/edgar/data/1018724/000119312506084815/dex991.htm.

MOTION TO DISMISS (C22-01599-JCC) - 6

1    Rigorous application of these standards is particularly important in the antitrust context

2    "because discovery in antitrust cases frequently causes substantial expenditures and gives the

3    plaintiff the opportunity to extort large settlements even where he does not have much of a case."

4    *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008). Accordingly, an antitrust

5    plaintiff must plead facts more consistent with anticompetitive outcomes than competitively

6    neutral or beneficial ones: "a complaint's allegation of a practice that may or may not injure

7    competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley*, 675

8    F.3d at 1198 (quoting *Twombly*, 550 U.S. at 557); *see also Les Shockley Racing, Inc. v. Nat'l Hot

9    *Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989) (an antitrust plaintiff "may not merely recite the

10   bare legal conclusion that competition has been restrained unreasonably").

11   Where, as here, a plaintiff amends his original complaint in an attempt to cure

12   deficiencies and "failed to correct these deficiencies," such failure "is a strong indication that the

13   plaintiff[] ha[s] no additional facts to plead'" and that the amended complaint should be

14   dismissed with prejudice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir.

15   2009) (internal quotation marks); *see also Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 3346398, at

16   *11 (W.D. Wash. Aug. 12, 2022) (dismissing with prejudice where plaintiff's "[a]lleged

17   [m]arkets are facially unsustainable" and plaintiff "already had an opportunity to remedy the

18   deficiencies with respect to its [a]lleged [m]arkets").

19   ### ARGUMENT

20   The Amended Complaint should be dismissed in its entirety. Plaintiff's *per se* claim

21   contradicts both controlling "dual distribution" precedent and Plaintiff's own factual allegations.

22   § I, *infra*. His separate rule-of-reason claim also fails for multiple reasons. First, plaintiff's

23   primary market definition—the supposed "online marketplaces market," in which Amazon

24   competes with eBay, Walmart Marketplace, and others—is disconnected from his theory of

25   harm, among other flaws. § II.A.1, *infra*. His alternative proposed markets for smartphone and

26   tablet sales on "marketplaces" and "one-stop shops" are implausible because they arbitrarily

27   exclude the sales channels that most consumers use to buy those devices. § II.A.2, *infra*. Second,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    irrespective of market definition, the facts Plaintiff alleges are fully consistent with

2    procompetitive outcomes and thus insufficient to show anticompetitive effects. § II.B, *infra*.

3    Finally, Plaintiff does not plausibly allege that he personally suffered antitrust injury, and that

4    pleading failure independently requires dismissal of both the *per se* and the rule-of-reason

5    claims. *See* § III, *infra*.

6    **I.      Plaintiff States No Valid *Per Se* Claim.**

7            Plaintiff asks the Court to condemn the Agreement as illegal *per se*, without

8    consideration of its business justifications and consumer benefits, on the theory that it is an

9    unlawful "horizontal" agreement between two retail competitors rather than a vertical

10   distribution agreement between a vertically integrated manufacturer and a retailer. That claim

11   contradicts both (1) longstanding judicial precedent reviewing such "dual distribution"

12   arrangements under the rule of reason and (2) the Amended Complaint's own insistence that

13   Apple does not compete with Amazon in the relevant market.

14   **A.      The *Per Se* Claim Contradicts Settled "Dual Distribution" Precedent.**

15           Certain types of agreements between competitors, such as naked price-fixing

16   conspiracies, are categorically deemed to have such "manifestly anticompetitive effects," and to

17   so "lack any redeeming virtue," that courts condemn them as unlawful *per se* without market-

18   specific consideration of costs and benefits. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,

19   551 U.S. 877, 886 (2007) (cleaned up); *see also NCAA v. Bd. of Regents of Univ. of Oklahoma*,

20   468 U.S. 85, 100 (1984); *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784-85 (9th Cir. 1996)

21   ("The Supreme Court has repeatedly explained that the *per se* approach is not to be readily

22   expanded to new arrangements or to business relationships with which the courts are

23   inexperienced."). Only certain types of horizontal agreements between competitors are subject to

24   *per se* condemnation. In contrast, any vertical agreement between a manufacturer and a

25   distributor or retailer is always subject to the rule of reason, with full consideration of

26   competitive effects in the relevant market, including any consumer benefits. *See Leegin*, 551

27   U.S. at 888–89.

MOTION TO DISMISS (C22-01599-JCC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The Agreement here is a classic "dual distribution" arrangement between a vertically integrated supplier and a third-party distributor. *See* Areeda & Hovenkamp ¶ 1605a. Apple is both a manufacturer/supplier and a retailer: it sells its products through various channels, including not only its own physical stores and website, but also wireless carriers, big-box stores, and Amazon (among others). Indeed, Plaintiff himself uses the term "dual distribution" to describe this distribution model. *See* Amended Complaint § IV.A (section heading).

Plaintiff nonetheless ignores the well-known legal consequence of that characterization: for decades, vertical restraints that dual distributors commonly impose on their distributors have been subject at most to rule-of-reason review rather than *per se* condemnation. In the words of the leading antitrust treatise, "dual distribution restraints differ significantly from conventional horizontal agreements" because they often produce significant efficiencies, including enhanced inter-brand competition, and are thus "generally … governed by the 'rule of reason' rather than by a rule of *per se* illegality applied to many conventional horizontal agreements." Areeda & Hovenkamp ¶ 1605a; *see, e.g.*, *Baskin-Robbins*, 664 F.2d at 1355-57 (citing efficiency benefits of dual distribution arrangements and "conclud[ing] that, in the absence of proof of anti-competitive purpose or effect, dual distribution systems must be evaluated under the traditional rule of reason standard"); *see also Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986) ("We have categorized restrictions imposed in the context of dual distributorships as vertical and analyzed them under the rule of reason."), *modified on other grounds*, 810 F.2d 1517 (9th Cir. 1987).[8]

---

[8] *See also Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 243-44 (2d Cir. 1997) ("This is a so-called vertical restraint …. This is so even if the distributor and manufacturer also compete at the distribution level, where, as here, the manufacturer distributes its products through a distributor and independently (so-called 'dual-distribution' arrangements) …. Although two brand names are involved, this is essentially a dispute about the way one product is distributed, a question of intrabrand competition."); *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) ("Vertical restraints are generally not *per se* violations of the Sherman Act, even where a distributor and manufacturer also compete at the distribution level, *i.e.*, have some form of horizontal relationship (a/k/a/ dual distributor arrangement), as is the case here."); *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 420 (5th Cir. 2010) (rejecting argument that, "because Leegin is a dual distributor, operating as both a manufacturer and retailer of Brighton goods, the RPM policy is a horizontal restraint").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   These precedents follow from basic economic logic, as illustrated by the Fifth Circuit's

2   decision in *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001 (5th Cir. 1981).

3   The two defendants there were a vertically integrated manufacturer and an independent

4   distributor of products that the manufacturer also distributed itself. Their agreement prohibited

5   the independent distributor from selling the vertically integrated firm's products at wholesale to

6   unauthorized third-party distributors. Even though the defendants were competitors, the Fifth

7   Circuit explained that the agreement "was a vertical one," that "the restrictions imposed [we]re

8   vertical restrictions" subject to the rule of reason, and "[t]hat [the manufacturer] also distributed

9   some of its own goods does not alter the situation." *Id.* at 1004. The court explained:

10
11   > When a producer elects to market its goods through distributors,
   > the latter are not, in an economic sense, competitors of the
   > producer even though the producer also markets some of its goods
12   > itself; rather, the distributors are 'agents' of the producer,
   > employed because the producer has determined that it can supply
13   > its goods to consumers more efficiently by using distributors than
   > it can by marketing them entirely by itself.

14   *Id.* at 1005. The court added that because the manufacturer could have lawfully decided "to do

15   all of its own distributing … by either internal expansion or merger, either of which would have

16   an even greater impact on intrabrand competition, we fail to see why it would have been

17   unreasonable for [the manufacturer] to accomplish the same ends by contract." *Id.* at 1006-07;

18   *see also Baskin-Robbins,* 664 F.2d at 1355-57; *Continental T.V., Inc. v. G.T.E. Sylvania Inc.*, 694

19   F.2d 1132, 1139 (9th Cir. 1982) (following *Red Diamond*).

20   Here, Apple, as the manufacturer, likewise stands in a vertical relationship with Amazon

21   as the distributor, and the fact that Apple "also distribute[s] some of its own goods does not alter

22   the situation," let alone trigger any rule of *per se* condemnation. *Red Diamond*, 637 F.2d at 1004.

23   "To hold otherwise would in general simply create 'an incentive for vertical integration into the

24   distribution system, thereby eliminating to that extent the role of independent business[es]'"

25   altogether. *Id.* at 1007 (quoting *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 47 n.26

26   (1977)); *see also Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir.

27   1989) ("[d]ual distribution" models are not "subject to the *per se* ban" because the "antitrust laws

MOTION TO DISMISS (C22-01599-JCC) - 10

1    encourage rather than forbid [the] extra competition" afforded by a supplier that is also a rival).

2    The Ninth Circuit agrees: "'Competition is promoted when manufacturers are given wide latitude

3    in establishing their method of distribution and in choosing particular distributors. Judicial

4    deference to the manufacturer's business judgment is grounded in large part on the assumption

5    that the manufacturer's interest in minimum distribution costs will benefit the consumer.'"

6    *Baskin-Robbins*, 664 F.2d at 1356-57 (quoting *A.H. Cox & Co. v. Star Mach. Co.*, 653 F.2d

7    1302, 1306 (9th Cir. 1981)).

8            Indeed, dual distribution arrangements of the sort presented here—in which a

9    manufacturer/retailer makes supplies available to some independent retailers while excluding

10   others—are ubiquitous and usually highly efficient, even though, like other distribution

11   agreements, they may disadvantage certain sellers. *See Illinois Corp. Travel*, 889 F.2d at 753.

12   For example, an apparel or household-appliance brand might sell both through its own brand-

13   specific stores and also through designated independent stores while restricting the latter stores'

14   ability to resell in bulk to third-party discount retailers. *See, e.g.*, *PSKS, Inc. v. Leegin Creative*

15   *Leather Prods.*, 615 F.3d 412, 420-21 (5th Cir. 2010); *Davis-Watkins Co. v. Serv. Merch.*, 686

16   F.2d 1190, 1201 (6th Cir. 1982). A manufacturer might distribute its goods both directly and

17   indirectly through authorized independent distributors, whom it prohibits from reselling to other

18   would-be distributors. *See, e.g.*, *Red Diamond*, 637 F.2d at 1005-07; *Flash Elecs., Inc. v.*

19   *Universal Music & Video Distrib. Corp.*, 312 F. Supp. 2d 379, 387-88 (E.D.N.Y. 2004). And a

20   fast-food franchisor might operate through a combination of owned-and-operated restaurants and

21   independent franchisees, selling food products to the latter while restricting the territories in

22   which they can operate and the rival fast-food franchises they can own. *See, e.g.*, *St. Martin v.*

23   *KFC Corp.*, 935 F. Supp. 898, 904 (W.D. Ky. 1996); *Midwestern Waffles, Inc. v. Waffle House,*

24   *Inc.*, 734 F.2d 705, 720 (11th Cir. 1984); *see also Baskin-Robbins*, 664 F.2d at 1356-57. Given

25   the ubiquity of such arrangements, extending the *per se* rule to condemn them out of hand,

26   without consideration of their efficiency benefits, would have radically far-reaching and

27   disruptive effects for the U.S. economy.

MOTION TO DISMISS (C22-01599-JCC) - 11

### B.   The *Per Se* Claim Contradicts the Amended Complaint's Own Factual Allegations.

Plaintiff's own factual allegations also independently undermine his *per se* claim. That claim rests on the essential premise that "Apple and Amazon have been and are horizontal competitors that compete with one another." ¶ 160. But the Amended Complaint elsewhere claims the opposite: that Apple's online and brick-and-mortar retail operations fall *outside* of the "relevant market" in which Amazon competes because they do not constitute an "online marketplace" and (Plaintiff says) are somehow not a genuine alternative for consumers who might otherwise buy new Apple products on Amazon.com. *See, e.g.*, ¶¶ 84-85 ("non-platform online stores" such as "the online Apple Store … are not in the same relevant market as Online Marketplaces" such as Amazon and "do not compete with [them] for transactions") (emphasis omitted).

That argument, whatever its merit, forecloses any assertion in the same Amended Complaint that Apple and Amazon are head-to-head retail competitors capable of a "horizontal" agreement. Plaintiff cannot have it both ways: Apple's retail operations cannot both (1) compete with Amazon's for purposes of calling this agreement "horizontal" and (2) *not* compete with Amazon's for purposes of market definition. Such self-contradictory factual allegations require dismissal. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (affirming Rule 12(b)(6) dismissal of complaint because factual allegations "d[id] not square" with theory of harm); *Hernandez v. Select Portfolio Servicing, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) (dismissing complaint containing contradictory allegations because "[c]ontradictory allegations … are inherently implausible").

## II.   Plaintiff's Alternative Rule-of-Reason Claim Should Be Dismissed.

To survive a motion to dismiss, a plaintiff asserting a rule-of-reason claim must allege facts plausibly showing (1) "a relevant market" as to which (2) the defendant's conduct "produces 'significant anticompetitive effects.'" *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). Plaintiff's rule-of-reason claim (¶ 166) fails both criteria.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**A.     Plaintiff's Proposed Markets Are Facially Untenable.**

**1.     Plaintiff's Primary "Market for Online Marketplaces" Is Mismatched to His Theory of Harm.**

An antitrust complaint should be dismissed under Rule 12(b)(6) "if [its] 'relevant market' definition is facially unsustainable." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (internal quotation marks omitted). Here, there is a basic mismatch between Plaintiff's proposed "Online Marketplaces Market" and his theory of harm because he does not even allege that the Agreement makes that proposed market less competitive.

The central function of market definition in antitrust cases is to identify the "area of effective competition" that, according to the plaintiff, the challenged conduct has made less competitive. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020); *see id.* ("courts must focus on anticompetitive effects 'in the market where competition is [allegedly] being restrained'") (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)). Courts thus reject any "garbled market theory" in which "the alleged harm to competition occurred in an entirely separate market from the market[]" defined in the complaint. *In re Jan. 2021 Short Squeeze Trading Litig.*, 2022 WL 1522054, at *28 (S.D. Fla. May 13, 2022); *see also Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022) (affirming dismissal of rule-of-reason claim where plaintiff "expressly tied" a claim to a particular market but "did not identify any actions by [defendant] that tended to harm competition *in that market*") (emphasis added); *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, at *11 (N.D. Cal. Nov. 30, 2021) (granting motion to dismiss because, *inter alia*, "none of Plaintiffs' antitrust claims about Apple's actions are shown to impact th[e] market" defined in the complaint).

Plaintiff violates this basic requirement of market definition. Rather than focus on the actual product he purchased, he proposes to define an "Online Marketplace Market" (¶ 74) consisting of mutually competing "marketplaces," in which intermediaries connect numerous buyers and sellers. Amazon is listed as one participant in that proposed market, "but there are others, the largest being eBay and Walmart Market[place]." ¶ 74. The conduct challenged here,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   however, could not possibly reduce the competitiveness of that proposed market. The Agreement

2   affects only one "marketplace" (Amazon's) and is not even alleged to impair competition *among*

3   marketplaces in the putative "market for marketplaces." For example, under Plaintiff's account

4   of the facts, eBay and Walmart Marketplace would be no less competitive with Amazon post-

5   Agreement than they were before. If anything, those rival marketplaces might be *more*

6   competitive with Amazon in the sense that the allegedly excluded Apple resellers are now more

7   likely to shift sales to eBay and other non-Amazon marketplaces, and consumers are thus more

8   likely to shift their attention to them too. For that reason alone, the Amended Complaint does not

9   even attempt to define, as it must, a relevant antitrust market that is allegedly less competitive

10  because of the Agreement. *See Qualcomm*, 969 F.3d at 992; *Coronavirus Reporter*, 2021 WL

11  5936910, at *11.[9]

12        For the same reason, *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018), on which

13  Plaintiff relies (¶¶ 75-78, 89), does not support his market-definition strategy. *Amex* holds that

14  credit card companies such as Visa, MasterCard, and American Express compete with one

15  another in the sale of "only one product—transactions" between merchants on the one hand and

16  cardholders on the other. 138 S. Ct. at 2286 (cleaned up). Thus, when one credit card company

17  imposes contractual restrictions on merchants to disadvantage other credit card companies,

18  courts must "analyze the two-sided market for credit-card transactions as a whole" (rather than

19  simply the fees that merchants pay) to determine whether the restrictions harm competition

20  *among credit card companies.* 138 S. Ct. at 2287. But that holding is irrelevant here whether or

21  not, as Plaintiff contends, retail "marketplaces" are analogous to credit card companies. Again,

22  Plaintiff is not even alleging that the challenged Agreement impaired competition *among*

23

24  [9] The same mismatch undermines Plaintiff's effort to define double-sided "submarkets" for smartphone and tablet
    "transactions on Online Marketplaces" (¶ 79): nothing about this Agreement plausibly impedes eBay or Walmart

25  Marketplace from competing with Amazon to offer third-party sellers of smartphones or tablets access to
    consumers. *See* note 12, *infra*. Beyond that, those notional submarkets are also invalid for the independent reason

26  discussed in Section II.A.2, *infra*: consumers routinely comparison-shop between "marketplaces" and non-
    "marketplace" retailers such as Apple, AT&T, Best Buy, Walmart (as a first-party retailer), Target (as the same),

27  and many others.

MOTION TO DISMISS (C22-01599-JCC) - 14

*marketplaces* such as Amazon, eBay, and Walmart Marketplace. He is instead alleging, implausibly, that the Agreement harmed competition *in the retail sale of devices to consumers*. Nothing in *Amex* suggests that consumers care (or even know) whether they are buying from a "marketplace" or a first-party retail seller; they simply want to purchase products from whatever source offers them the best deal.

Plaintiff unwittingly highlights this mismatch between his primary market definition and his theory of harm to consumers by relying for market-definition purposes on allegations about harm to *sellers* of smartphones and tablets. *See*, *e.g.*, ¶ 85 (ordinary distribution channels for smartphones and tablets do not "offer intermediation services to third party sellers"); ¶ 87 ("single-merchant stores" are not a substitute for third-party seller, who "cannot … sell iPhones on Best Buy's website or within Apple's online store"). Of course, the lone plaintiff here is not a third-party seller; he is a consumer.[10] The question from consumers' perspective is not whether third-party *sellers* can substitute between "marketplaces" and first-party retailers such as Apple, AT&T, and Best Buy, but whether *consumers* can. They can and routinely do, as next discussed.

### 2. Plaintiff's Alternative Markets for Smartphone and Tablet Sales in "Marketplaces" and "One-Stop Shops" Are Implausible Because They Exclude Obvious Sales-Channel Substitutes.

Apart from his primary "market for marketplaces," Plaintiff also alleges two alternative "one-sided" markets: for sales of new smartphones or tablets to consumers on, respectively, (1) "Online Marketplaces" (¶ 123 & n.112) and (2) "Online One-Stop Shops" (¶ 133).[11] In both cases, the market definitions fail because they arbitrarily and implausibly exclude obvious sales-channel alternatives.

---

[10] Even if Plaintiff were a third-party seller rather than a consumer, he could not state a valid antitrust claim simply by alleging that the Agreement excluded him because "[t]he antitrust laws … were enacted for the protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (internal quotation marks omitted).

[11] Plaintiff alleges four of these alternative markets—one each for sales of (1) smartphones and (2) tablets by, in each case, (1) sellers on marketplaces and (2) "one-stop shops." For simplicity, we refer to sales (of either device) on marketplaces and by one-stop shops, respectively. We also use the term "marketplace" rather than "online transaction platform." *See* ¶ 123 n.112 (noting that those terms are synonymous).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    A relevant market "must encompass the product at issue as well as *all* economic

2    substitutes for the product." *Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d 1038, 1045 (9th Cir.

3    2008) (emphasis added). On a motion to dismiss, a court will reject as "facially unsustainable"

4    purported markets that "omit many economic substitutes" or otherwise "are 'not natural,'

5    'artificial,' and 'contorted to meet [plaintiff's] litigation needs.'" *Hicks*, 897 F.3d at 1120-21;

6    *see, e.g.*, *In re German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d 745, 757 (N.D. Cal. 2020)

7    (quoting *Newcal*, 513 F.3d at 1045) (rejecting plaintiff's proposed market at the motion-to-

8    dismiss stage "because that market would exclude obvious economic substitutes") (cleaned up).

9    For these purposes, courts routinely rely on "'judicial experience and common sense'" to reject

10    implausible market definitions. *Hicks*, 897 F.3d at 1121 (quoting *Iqbal*, 556 U.S. at 679). This

11    Court should do so here.

12    Consider first Plaintiff's tortured effort to define a "one-sided" (*i.e.*, consumer-facing)

13    market consisting of sales of new smartphones or tablets to consumers—but only on "online

14    marketplaces."[12] Plaintiff implausibly alleges that consumers interested in buying those devices

15    would not comparison-shop between (1) deals offered on "marketplaces" such as Amazon.com

16    and eBay and (2) deals offered by the online and brick-and-mortar operations of Best Buy,

17    Walmart, Target, AT&T, Verizon, T-Mobile, the Apple Store, and many other retailers. ¶ 123.

18    This is nonsense; indeed, the overwhelming majority of consumers buy new iPhones and iPads

19    from one of those first-party retailers rather than on Amazon.com or any other "online

20    marketplace." *See* note 3, *supra.* Plaintiff theorizes that consumers value marketplaces because

21    they offer one-stop shopping (¶¶ 91-94), "customer review mechanisms" (¶ 95), and loyalty

22

23

24

---

25    [12] In discussing his proposed "Online Marketplace market," plaintiff alleges a two-sided "submarket for smartphone [or tablet] *transactions* on Online Marketplaces," in which Amazon is alleged to compete with eBay and Walmart Marketplace (among others). ¶ 79 (emphasis added); *see also* ¶ 81. That proposed market is mismatched to

26    Plaintiff's theory of harm and fails for the reasons discussed both in Section II.A.1 above (and here). *See* note 9, *supra*. *This* subsection II.A.2, by contrast, focuses on Plaintiff's obscure effort to define a "one-sided market for

27    smartphone [or tablet] *sales*" to consumers, but only on online marketplaces. ¶ 123.

MOTION TO DISMISS (C22-01599-JCC) - 16

1   programs (¶¶ 96-98).[13] But those features do not remotely distinguish "marketplaces" from other

2   online retailers, which also offer one-stop shopping, customer review mechanisms, and loyalty

3   programs.[14]

4          Plaintiff fares no better in his effort to define a second alternative market for sales of new

5   smartphones or tablets on "Online One-Stop Shops" that sell "diverse retail goods." ¶ 133. This

6   proposed market definition at least includes the online operations of big-box retailers such as

7   Best Buy, Walmart, and Target. But it arbitrarily excludes not only those retailers' ubiquitous

8   brick-and-mortar stores, but also the online *and* brick-and-mortar operations of Apple itself and

9   the major wireless carriers, even though they sell tens of millions of these devices every year.

10  *See* note 3, *supra*. By alleging this gerrymandered market, Plaintiff is arguing that if "one-stop

11  shops" such as Amazon or Best Buy raised prices on iPhones or iPads, consumers would not turn

12  to Apple, AT&T, T-Mobile, Verizon, or other specialized retailers in search of better deals on

13  the same devices. Instead, he suggests, consumers would ignore those better deals simply

14  because they could not buy *unrelated* items from the same specialized retailers at the same time,

15  such as office supplies, groceries, TV sets, and power tools. ¶¶ 133, 140. Plaintiff alleges no

16  facts to support that bizarre assertion, which this Court should reject as implausible. *See Hicks*,

17  897 F.3d at 1121 (citing "'judicial experience and common sense'" to reject proposed markets

18  "omit[ted] many economic substitutes" and were "'contorted to meet [plaintiff's] litigation

19  needs'") (quoting *Iqbal*, 556 U.S. at 679).

20  _____

21  [13] Relying on a 2011 news article, Plaintiff alleges that prices for some products on Amazon fluctuated slightly by
    day of the week twelve years ago. ¶ 108. But neither Plaintiff nor the cited source alleges that this was true for

22  smartphones and tablets, let alone true today. In any event, such minor price fluctuations would not somehow mean
    that Amazon's store is insulated from competition by other sales channels, which might well be subject to their own
    price fluctuations in response to periodic changes in supply and demand.

23  [14] Would-be tablet purchasers can, for example, go to bestbuy.com, read reviews about and buy an iPad, purchase a

24  host of unrelated consumer goods, and earn My Best Buy rewards on the entirety of the purchase. *See, e.g.*,
    https://www.bestbuy.com/site/apple-11-inch-ipad-pro-latest-model-with-wi-fi-128gb-space-
    gray/5498400.p?skuId=5498400  (Best Buy reviews); https://www.bestbuy.com/site/misc/my-best-

25  buy/pcmcat309300050007.c?id=pcmcat309300050007 ("My Best Buy" loyalty program). Other major retailers
    offer comparable benefits. *See, e.g.*, https://www.costco.com/ipad-(10th-generation).product.100813037.html

26  (Costco reviews); https://www.costco.com/join-costco.html (Costco membership); https://www.staples.com/apple-
    ipad-10th-generation-10-9-tablet-64gb-wifi-silver-mpq03ll-a/product_24548614 (Staples reviews);

27  https://www.staples.com/grs/rewards/programoverview (Staples Rewards).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Plaintiff does argue that, "[a]nalogously," some shoppers prefer to buy "baked goods"

2   from a "supermarket" rather than "a bakery" even at higher prices. ¶ 91. But that example is in

3   fact highly *dis*analogous—and instructively so. Consumers shopping for grocery items in

4   brick-and-mortar stores might well prefer, in plaintiff's words, "[t]he convenience of obtaining

5   many goods together" (*id.*) to avoid time spent driving to and parking at multiple locations. But

6   unlike individual food items, a new smartphone or tablet is a major purchase that a typical

7   consumer buys in a shopping experience devoted to that purchase. And a consumer who makes

8   the purchase online does not need to drive anywhere; with a few keystrokes, the consumer can

9   instantly compare competing websites for the best deals. Again, it is implausible to assert, as

10  Plaintiff does without foundation (¶ 140), that consumers would nonetheless pay significantly

11  more to a "online one-stop shop" for such a major purchase simply because its website offers

12  completely unrelated products too.

13  Plaintiff's other efforts to defend his proposed "one-stop shop" market are both

14  implausible and untethered to any actual distinctions between "one-stop shops" and more

15  product-specific retailers. For example, Plaintiff asserts that Apple and wireless providers

16  "provide technical services" to purchasers but that Amazon does not. ¶ 138. To begin with, the

17  provision of technical support is logically unrelated to a retailer's status as a one-stop shop.

18  Equally important, technical support makes a retailer *more* attractive to consumers—and thus a

19  stronger competitor to retailers that do not offer such support, all else held equal. That fact

20  directly contradicts Plaintiff's theory for excluding Apple and wireless providers from the

21  relevant market (¶¶ 133, 140)—the notion that their lack of "one-stop shop" status makes them

22  *less* attractive retailers of these devices than Amazon.com. Plaintiff also tries in vain to exclude

23  the Apple Store from his proposed market on the ground that it sells only the last few generations

24  of devices. ¶ 137. But Plaintiff frames this case in terms of *new* products, which by definition

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   tend to exclude long-superseded models, and the Agreement imposes no relevant restrictions on

2   the sale of refurbished devices. *See* note 5, *supra.*[15]

3        Plaintiff also proposes to exclude all wireless carriers from its proposed market even

4   though they sell the overwhelming majority of iPhones to consumers and a substantial

5   percentage of iPads as well. *See* note 3, *supra.* Plaintiff notes that wireless carriers typically

6   include cell service when selling devices. ¶ 136. But that is not a plausible or even coherent basis

7   for defining a "one-stop shop" market that excludes wireless carriers. In the only respect that

8   matters, carriers *are* a one-stop shop: smartphone users (and many tablet users) need cell service

9   for their devices to work as intended, and the fact that wireless carriers do not also sell groceries

10  or other unrelated items is irrelevant. Plaintiff is also wrong to suggest (*id.*) that consumers who

11  buy new devices from wireless providers must lock themselves into a service contract. Instead,

12  they can pay either up front or in installments.[16] In any event, wireless carriers obviously do not

13  take themselves out of competition with Amazon and other retailers of these devices by giving

14  consumers the *option* to pay off the cost of a device in monthly installments.

15       In sum, Plaintiff's proposed markets "omit many economic substitutes" and otherwise

16  "are 'not natural,' 'artificial,' and 'contorted to meet [plaintiff's] litigation needs.'" *Hicks*, 897

17  F.3d at 1121; *see also German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d at 757. The Amended

18  Complaint should thus be dismissed—and dismissed with prejudice, given that Plaintiff has

19  already tried and failed to cure the fatal market-definition flaws in his original Complaint. *See*

20  *Zucco Partners*, 552 F.3d at 1007; *Zunum Aero*, 2022 WL 3346398, at *11 (dismissing with

21  prejudice because plaintiff's "[a]lleged [m]arkets are facially unsustainable" (citing *Newcal*, 513

22

23

---

24  [15] Plaintiff further notes that Apple "offer[s] no discounts" (¶ 137), but Apple essentially sets price floors for new
    standalone iPhones and iPads by unilaterally setting the wholesale prices for those devices as well as the terms on
25  which it supplies them to authorized retailers. *See* p. 6, *supra* (noting Apple's unilateral power as the manufacturer
    to choose its wholesaler buyers and the terms of sale). In any event, a retailer does not create a distinct retail market
26  for a product simply because it withholds a discount that others offer *for the same product.*

27  [16] *See, e.g.*, https://www.att.com/buy/phones/apple-iphone-14.html; https://www.t-mobile.com/cell-phone/apple-
    iphone-14-pro?sku=194253401896.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

F.3d at 1045) and plaintiff "already had an opportunity to remedy the deficiencies with respect to its [a]lleged [m]arkets" (citing cases)).

> **B.** **The Facts Alleged in the Amended Complaint Are Insufficient To Show Anticompetitive Effect In Plaintiff's Proposed Markets.**

A plaintiff challenging a commercial agreement under the rule of reason must plead not only a plausible relevant market, but also facts showing that the agreement had "significant anticompetitive effects"—*i.e.*, that the agreement made the relevant market less competitive than it otherwise would have been. *Tanaka*, 252 F.3d at 1063. Plaintiff's factual allegations fail to meet that standard for any of his proposed markets.

> **1.** **Plaintiff Does Not Even Allege Harm to Competition Among Competing "Online Marketplaces."**

The deficiency of Plaintiff's allegation of anticompetitive effects is particularly obvious in the case of his proposed "market for online marketplaces." As discussed in Section II.A.1 above, this proposed market is completely mismatched to Plaintiff's theory of harm because he does not even allege that the Agreement reduced competition *among competing marketplaces* in such a market. Again, Plaintiff does not allege—nor could he plausibly allege—that the Agreement made it more difficult for eBay or Walmart Marketplace to compete with Amazon as rival "marketplaces"; if anything, it increased such competition by shifting third-party sales to non-Amazon marketplaces.

> **2.** **Plaintiff Does Not Allege Facts Sufficient to Show Harm to Competition in His Alternative Retail Markets.**

Plaintiff also has not alleged sufficient facts to establish anticompetitive effects in his proposed (and independently invalid) markets for retail smartphone and tablet sales in "marketplaces" and "one-stop shops."

The goal of any rule-of-reason analysis "is to 'distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest,'" including those that "benefit[] consumers by 'increasing the quality and quantity'" of sales. *Qualcomm*, 969 F.3d at 989 (quoting *Amex*, 138

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    S. Ct. at 2284, 2290) (cleaned up). For these purposes, "[t]he core question in antitrust is output.

2    Unless a contract reduces output in some market, to the detriment of consumers, there is no

3    antitrust problem. A high price is not itself a violation of the Sherman Act." *Chicago Pro. Sports*

4    *Ltd. P'ship v. NBA*, 95 F.3d 593, 597 (7th Cir. 1996). These are requirements of pleading as well

5    as proof: "a complaint's allegation of a practice that may or may not injure competition is

6    insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley*, 675 F.3d at 1198

7    (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads

8    facts that are merely consistent with a defendant's liability, it stops short of the line between

9    possibility and plausibility of entitlement to relief.") (cleaned up).

10          The Amended Complaint fails this pleading requirement because its allegations are fully

11   consistent with competitively beneficial outcomes. It assumes that the challenged Agreement

12   must have harmed competition for the sale of iPhones and iPads in Amazon's store because it

13   reduced the absolute number of third-party sellers that sold those products there. But it does not

14   allege facts showing that the excluded sellers ever sold substantial volumes of those products,

15   particularly when compared to overall sales volumes for iPhones and iPads. Indeed, Plaintiff's

16   allegations are consistent with the proposition that many (if not most) of these sellers listed only

17   a single device for sale in Amazon's store.[17] In contrast, Plaintiff does acknowledge that, because

18   of this Agreement, Amazon (1) *can* sell significantly greater volumes of Apple products as a

19   retailer than before and (2) does so in competition with at least seven other Apple-authorized

20   resellers on Amazon.com (and, of course, with all *non*-Amazon-based retailers). *See*, *e.g.*, ¶¶ 6-7

21   (Amazon's sales of "Apple's most popular products" were "virtually non-existent" until, in the

22   Agreement, "Apple guaranteed a steady supply of Apple goods to Amazon"); ¶ 7 (Apple

23   authorized "seven Apple resellers to sell on Amazon Marketplace"); ¶ 12 (Agreement gave

24   Amazon "a steady, discounted supply of Apple products").

25

26

27   _____

[17] Amazon identified the same pleading deficiencies in its motion to dismiss the original Complaint. The Amended Complaint's failure to correct those deficiencies implies that Plaintiff has no relevant facts to plead.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    In short, the Amended Complaint's allegations comport with the conclusion that the

2    Agreement resulted in increased *overall* sales on Amazon.com, making consumers better off. *See*

3    *Chicago Pro. Sports Ltd. P'ship*, 95 F.3d at 597. And the Amended Complaint should thus be

4    dismissed because, again, an "allegation of a practice that may or may not injure competition is

5    insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley*, 675 F.3d at 1198

6    (quoting *Twombly*, 550 U.S. at 570); *see also Kendall*, 518 F.3d at 1049.

7    Plaintiff tries and fails to patch that hole with several ambiguous price charts of

8    undisclosed provenance. *See* ¶¶ 53, 58-59. Even taken at face value, those charts say nothing

9    about before-and-after *sales volumes* and thus cannot support any allegation that the Agreement

10   reduced overall output—an essential element of "anticompetitive effect." *See Chicago Pro.*

11   *Sports Ltd. P'ship*, 95 F.3d at 597 ("[u]nless a contract reduces output in some market, to the

12   detriment of consumers, there is no antitrust problem," irrespective of price). Beyond that,

13   Plaintiff does not even explain what these charts mean. For example, are their figures limited to

14   sales of *new* Apple devices, or do they also encompass sales of open-box, used, and refurbished

15   devices? Do they account for Apple's concern that third-party sellers had sold inauthentic or

16   mislabeled products before the Agreement? What happened during this period to the prices of

17   competing, non-Apple devices? We do not know the answers to those and other critical

18   questions, but without those answers, these unsourced charts reveal nothing about competitive

19   effects within Plaintiff's alleged markets. *See Street v. Amazon.com Servs., LLC*, 2022 WL

20   3683811, at *3 (W.D. Wash. Aug. 25, 2022) ("[I]nformation and belief pleading … must still be

21   'based on factual information that makes the inference of culpability plausible.'") (quoting *Arista*

22   *Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). For all of these reasons, the Amended

23   Complaint should be dismissed for failing to plead facts necessary to show such an effect. *See*

24   *Brantley*, 675 F.3d at 1198; *Kendall*, 518 F.3d at 1048-49.

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 3. Plaintiff Does Not Plausibly Allege Market Power in His Proposed "One-Stop Shop" Market.

The pleading deficiencies discussed above apply to all of Plaintiff's proposed retail markets. Beyond those, the Amended Complaint also fails to allege facts sufficient to show that Amazon has *market power* in any alleged market for smartphone or tablet sales in "online one-stop shops."[18] That fact is independently fatal to any rule-of-reason claim relating to that alleged market because a "lack of market power is fatal to … claims under the rule of reason," and a plaintiff must therefore adequately "'allege both that a 'relevant market' exists and that the defendant has power within that market.'" *Flaa v. Hollywood Foreign Press Ass'n*, 55 F. 4th 680, 693-95 (9th Cir. 2022) (quoting *Newcal*, 513 F.3d at 1044).

Specifically, even if there were a properly defined market for smartphone or tablet sales by "one-stop shop" retailers but not by the Apple Store or the major wireless carriers, Amazon would still face intense competition within that market from (among others) such major big-box retailers as Walmart, Target, Costco, Best Buy, and CDW, all of which prominently offer iPhones and iPads for sale on their websites. Plaintiff alleges no facts regarding Amazon's relative sales of smartphones and tablets within this supposed market. Equally important, Plaintiff does not explain why these prominent online retailers would be incapable of constraining Amazon's ability to raise prices for these devices or reduce the quality of the sales experience. *See Time Warner Ent. Co., L.P., v. FCC*, 240 F.3d 1126, 1134 (D.C. Cir. 2001) (market power turns on the "*availability*" of alternatives) (emphasis in original).

Instead, Plaintiff alleges that Amazon is the largest online seller of "consumer electronics" as a general matter,[19] and from this he concludes that Amazon must also be a dominant seller of smartphones and tablets in particular. ¶¶ 129-30, 141. This is statistical nonsense. Amazon's sales volumes for "consumer electronics"—a vast category that

---

[18] Amazon does not concede that it has market power in any of Plaintiff's proposed markets. For purposes of this motion to dismiss, Amazon is focusing on market-power allegations as to "one-stop shops" because those allegations are implausible on their face.

[19] For this threshold proposition, Plaintiff appears to include sales by third-party sellers in Amazon's store in its tally of Amazon's supposed market share, but he does not explain why those third-party sales should be allocated to Amazon in the first place.

MOTION TO DISMISS (C22-01599-JCC) - 23

encompasses, among many other things, TV sets, home security devices, stereo equipment, laptops, desktop computers, videogame consoles, digital cameras, wi-fi routers, smartwatches, electric guitars, electric bikes, and various auto accessories—cannot begin to demonstrate Amazon's "dominance" (¶ 130) in online sales of smartphones and tablets. Of course, the reason why Plaintiff avoids estimating Amazon's actual sales of new smartphones and tablets is because they are competitively insignificant as a share of overall sales of the same devices. *See* note 3, *supra*.[20]

### III.   Plaintiff Has Not Pleaded Facts Sufficient To Show That He Personally Suffered Antitrust Injury.

"Named Plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Kentucky Welfare Rts. Org*., 426 U.S. 26, 40 n.20 (1976) (cleaned up). In private antitrust litigation in particular, "causal antitrust injury is a substantive element of an antitrust claim" and must be supported with adequate factual allegations "at the pleading stage." *Somers*, 729 F.3d at 963. Among other things, causal antitrust injury requires a plaintiff to "allege some credible injury caused by the" challenged conduct. *Id.* (cleaned up).

Here, Plaintiff had to plead facts showing that the Agreement injured him personally even though it allowed Amazon to sell Apple products in volume as an authorized reseller for the first time, and even though Amazon.com is only one of many distribution channels for Apple products. But just as Plaintiff has pleaded no facts tending to show anticompetitive effects on consumers in general, neither does he plead facts supporting an inference that he would have paid a lower price, or otherwise would have received a better deal, had Apple and Amazon never

---

[20] Plaintiff also suggests that Amazon Prime prevents competition from rivals, thereby giving Amazon market power. According to Plaintiff, subscribers will not shop for lower prices at other retailers because they feel irrationally compelled to "recoup[] the sunk costs of the[] Prime membership," even if doing so costs them more. ¶¶ 96–98, 116. This is a classic illustration of the sunk-cost fallacy, and, as such, "is a foolish notion that should not be entertained by anyone who has had even a single undergraduate course in economics." *Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 969 (D.C. Cir. 1999).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

entered into this Agreement. This pleading failure independently requires dismissal of the Amended Complaint, including both the *per se* and rule-of-reason claims. *See Rebel Oil Co., Inc. v. Atl. Richfield Co*., 51 F.3d 1421, 1433 (9th Cir. 1995) (Plaintiff must show antitrust injury "even if the defendant's conduct is illegal *per se*").

Plaintiff alleges that he "purchased a new Apple iPad from the buy box on Amazon Marketplace for $319.99" on February 26, 2021 and that "Amazon was the seller of record" (¶ 23). To show "causal antitrust injury," *Somers*, 729 F.3d at 963, Plaintiff would need to allege a plausible, non-speculative basis for inferring that he overpaid for this unspecified iPad model "relative to a counterfactual world without the … Agreement" (¶ 68). To that end, Plaintiff would need to allege facts (among others) sufficient to support all of the following inferences: (1) some third-party seller, whom this Agreement excluded from selling on Amazon.com, would have had wholesale access to that same new iPad model on the same date, (2) that seller would have offered that new iPad for sale at a lower price than those actually offered by any other seller, including Amazon itself, and (3) the incremental pricing pressure exerted by that seller would have resulted in a lower price for Plaintiff's transaction notwithstanding alternative distribution channels for iPads (and other manufacturers' tablets) that Plaintiff himself concedes are available.

Plaintiff pleads no facts to support any of those propositions. To be sure, Plaintiff asserts in conclusory fashion that if there were more Apple resellers on Amazon, he would have paid a lower price. ¶ 156. But as with the ambiguous price charts, he provides no information regarding the excluded third-party sellers' wholesale access or retail sales volumes. He also offers no facts suggesting that the seven authorized Apple resellers that currently compete with Amazon itself on Amazon.com—not to mention all the retailers on other sales channels—are somehow insufficient to provide full price competition. Similarly, he does not allege either (1) that the Agreement resulted in higher prices for iPads in other sales channels such as Best Buy, Walmart, and eBay or (2) that he was somehow incapable of conducting price comparisons among those other sales channels. Nor does he allege that rival tablets manufactured by Samsung, Microsoft,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  and other companies unaffected by the Agreement failed to discipline prices for these Apple

2  devices.[21] The only thing we know for certain is that, but for the Agreement, he would have

3  lacked even the option of making the purchase he did make—from Amazon itself as a newly

4  authorized reseller of Apple products. *See Somers*, 729 F.3d at 963 ("'There can be no antitrust

5  injury if the plaintiff stands to gain from the alleged unlawful conduct.'") (quoting *Am. Ad*

6  *Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999)).

7       In sum, Plaintiff has not alleged the basic facts necessary to show even a bare possibility

8  that he would have paid a lower price for his iPad but for the Agreement. But even if he had

9  alleged such facts, they would still be insufficient. "[T]o state a plausible antitrust injury," a

10  plaintiff must "allege specific facts that raise an antitrust claim above the speculative level,"

11  *Somers*, 729 F.3d at 965, and crosses "the line between possibility and plausibility of entitlement

12  to relief," *Iqbal*, 556 U.S. at 678 (cleaned up). The Amended Complaint should thus be

13  dismissed for failure to plead this essential element of antitrust liability.

14       Plaintiff seeks to obscure this pleading deficiency through misdirection—by focusing not

15  on injury to himself or other consumers, but rather on alleged harm to excluded third-party

16  sellers. Indeed, long passages in the Amended Complaint appear written as though the lone

17  named plaintiff were not a consumer, but a displaced seller whose only recourse post-Agreement

18  was to find some other "online marketplace" through which to reach consumers. *See, e.g.*,

19  ¶¶ 56-59, 87, 106 (discussing economic test addressing when third-party sellers would switch to

20  a non-Amazon marketplace). But any alleged harm to sellers cannot make up for Plaintiff's

21  failure to plead antitrust injury to himself as a consumer. Consumers who want to purchase

22  Apple devices simply want to buy them on favorable terms, regardless of whether that requires

23  interaction with a "marketplace" or "two-sided transaction platform." ¶¶ 78, 122. Again, Plaintiff

24

25

---

26  [21] Plaintiff alleges only that "[t]here is no evidence that retailers of other smartphones or tablets decreased their prices in response to the … Agreement[.]" ¶ 66. But it is Plaintiff's burden to allege facts showing that overall prices in relevant markets (which include non-Apple products) *increased* as a result of this Agreement. Plaintiff obviously

27  cannot satisfy that burden by citing a *lack* of evidence of a price *decrease*.

MOTION TO DISMISS (C22-01599-JCC) - 26

1    does not—and cannot—dispute that most consumers buy iPhones and iPads from sources other

2    than Amazon, including wireless carriers and Apple itself. *See* note 3, *supra*.

3                                        **CONCLUSION**

4        The Amended Complaint should be dismissed with prejudice.

5        DATED, this 27th day of March 2023.

6                                        Attorneys for AMAZON.COM, INC.

7
                                         By */s/ John Goldmark*
8                                            John Goldmark, WSBA #40980
                                             MaryAnn Almeida, WSBA #49086
9                                            DAVIS WRIGHT TREMAINE, LLP
                                             920 Fifth Avenue, Suite 3300
10                                           Seattle, Washington, 98104
                                             Phone: (206) 622-3150; Fax: (206) 757-7700
11                                           Email:    johngoldmark@dwt.com
12                                                     maryannalmeida@dwt.com

13                                       By */s/ Chad S. Hummel*
                                             Chad S. Hummel (*pro hac vice*)
14                                           SIDLEY AUSTIN LLP
                                             1999 Avenue of the Stars, 17th Floor
15                                           Los Angeles, CA 90067
16                                           Phone: (310) 595-9500; Fax: (310) 595-9501
                                             Email:    chummel@sidley.com
17
                                             Jonathan E. Nuechterlein (*pro hac vice*)
18                                           Benjamin M. Mundel (*pro hac vice*)
19                                           SIDLEY AUSTIN LLP
                                             1501 K Street, N.W.
20                                           Washington, D.C. 20005
                                             Phone: (202) 736-8000; Fax: (202) 736-8711
21                                           Email:    jnuechterlein@sidley.com
22                                                     bmundel@sidley.com

23
24       I certify that this memorandum contains 8,320 words, in compliance with the Local Civil
     Rules.

25                                       */s/ John Goldmark*
26                                           John Goldmark

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax