Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN FLOYD, individually and on behalf
of all other similarly situated,

Plaintiff,

v.

AMAZON.COM INC. and APPLE INC.,

Defendants.

Case No. 2:22-cv-01599 JCC

**APPLE INC.'S MOTION TO DISMISS**

Noted for Hearing: May 19, 2023

ORAL ARGUMENT REQUESTED

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION................................................................................................. 1

STATEMENT OF PLEADED FACTS ................................................................ 3

4

          A.     Apple and Amazon's Business Relationship ............................... 3

5

          B.     The Global Tenets Agreement ..................................................... 4

6

          C.     Plaintiff's Amended Complaint ................................................... 5

7

LEGAL STANDARD ......................................................................................... 6

ARGUMENT ...................................................................................................... 6

8

    I.     The Per Se Standard Is Inapplicable ................................................ 6

9

          A.     Plaintiff's Factual Allegations Make Clear That the Per Se Standard

10

                  Is Inapplicable ............................................................................ 7

11

          B.     Binding Law Requires Application of the Rule of Reason to a Dual

                  Distribution Model ..................................................................... 8

12

    II.    Plaintiff's Alternative Rule of Reason Claim Should Be Dismissed ..................... 9

13

          A.     The Alleged Relevant Market and Submarkets Are Not Plausible ........... 10

14

                1.     The Two-Sided Market Framework Does Not Apply to Plaintiff's Theory of Harm ............................................. 11

15

                2.     The Online Marketplaces Market Is Facially Overbroad.............. 12

16

                3.     Plaintiff's Relevant Market and Submarkets Are Also Fatally Narrow Because They Exclude Channels to Purchase the Identical Product ......................................... 13

17

          B.     Plaintiff Does Not Plausibly Allege Market Power ..................... 17

18

           C.     Plaintiff Does Not Adequately Allege Injury to Competition.................... 18

19

CONCLUSION .................................................................................................. 22

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

*i*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Cox & Co. v. Star Mach. Co.*,
 653 F.2d 1302 (9th Cir. 1981) ..................................................................... 2, 19, 20

*Apple Inc. v. Mobile Star LLC*,
 No. 3:16-cv-06001-WHO, 2017 WL 4005468 (N.D. Cal. Sept. 12, 2017) ............... 4

*Apple Inc. v. Mobile Star LLC*,
 No. 3:16-cv-06001-WHO, 2016 WL 6110683 (N.D. Cal. Oct. 17, 2016) ................ 4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .......................................................................... 6, 18, 19, 20

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................... 6, 7

*Brantley v. NBC Universal, Inc.*,
 675 F.3d 1192 (9th Cir. 2012) ............................................................ 6, 10, 19, 20

*Brown Shoe Co. v. United States*,
 370 U.S. 294 (1962) .................................................................................. 14

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
 485 U.S. 717 (1988) ................................................................................... 8

*Calculators Haw., Inc. v. Brandt, Inc.*,
 724 F.2d 1332 (9th Cir. 1983) ....................................................................... 8

*Chi. Pro. Sports Ltd. P'ship v. NBA*,
 95 F.3d 593 (7th Cir. 1996) .......................................................................... 21

*Conklin v. Univ. of Wash. Med.*,
 798 F. App'x 180 (9th Cir. 2020) .................................................................. 20

*Cont'l T. V., Inc. v. GTE Sylvania Inc.*,
 433 U.S. 36 (1977) .................................................................................... 19

*Coronavirus Rep. v. Apple Inc.*,
 No. 21-cv-05567-EMC, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ................ 12

*Dimidowich v. Bell & Howell*,
 803 F.2d 1473 (9th Cir. 1986), *as modified*, 810 F.2d 1517 (9th Cir. 1987) ............ 7, 9

*Eliott v. Lions Gate Ent. Corp.*,
 No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662 (C.D. Cal. Nov. 8, 2022) ........ 4

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

ii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................. 22

*Flaa v. Hollywood Foreign Press Ass'n*,
  55 F.4th 680 (9th Cir. 2022) .................................................................. 10, 17, 18

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ...................................................................... 11, 20

*Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*,
  433 F. App'x 598 (9th Cir. 2011) ......................................................................... 13

*Heisen v. Pac. Coast Bldg. Prods., Inc.*,
  26 F.3d 130 (9th Cir. 1994) ................................................................................. 20

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ....................................................................... *passim*

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  485 F. Supp. 1137 (N.D. Cal. 2020) .................................................................... 16

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  No 21-16817, 2022 WL 16756365 (9th Cir. Nov. 8, 2022) ........................... 12, 21

*Joplin Enters. v. Allen*,
  795 F. Supp. 349 (W.D. Wash. 1992) ................................................................. 13

*Kingray, Inc. v. NBA, Inc.*,
  188 F. Supp. 2d 1177 (S.D. Cal. 2002) ................................................................. 8

*Krehl v. Baskin-Robbins Ice Cream Co.*,
  664 F.2d 1348 (9th Cir. 1982) ........................................................................... 8, 9

*Laurence J. Gordon, Inc. v. Brandt, Inc.*,
  554 F. Supp. 1144 (W.D. Wash. 1983) ................................................................. 9

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) .......................................................................................... 6, 7

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
  884 F.2d 504 (9th Cir. 1989) .............................................................................. 10

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ............................................................................ 10

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
  202 F.3d 1088 (9th Cir. 2000) ........................................................................... 6, 8

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
  472 U.S. 284 (1985) ............................................................................................ 7

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

*iii*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) ........................................................................................... 7

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ............................................................................. 7, 11, 12

*PBTM LLC v. Football Nw., LLC*,
  511 F. Supp. 3d 1158 (W.D. Wash. 2021) ..................................... 6, 10, 11

*Pennsylvania Ave. Funds v. Borey*,
  569 F. Supp. 2d 1126 (W.D. Wash. 2008) ............................................... 17

*Pimentel-Estrada v. Barr*,
  458 F. Supp. 3d 1226 (W.D. Wash. 2020) ................................................. 4

*Pistacchio v. Apple Inc.*,
  No. 4:20-cv-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ........................ 14, 15

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ............................................... 12, 20

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ................................................................. 19, 20

*Sambreel Holdings v. Facebook, Inc.*,
  906 F. Supp. 2d 1070 (S.D. Cal. 2012) ..................................................... 8

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ................................................................... 21

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) ..................................................................................... 6

*Streamcast Networks, Inc. v. Skype Technologies, S.A.*,
  547 F. Supp. 2d 1086 (C.D. Cal. 2007) ....................................... 14, 15, 16

*Stubhub, Inc. v. Golden State Warriors, LLC*,
  No. C 15-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ............................ 14, 16

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) ................................................................. 10

*Texas v. Google LLC (In re Google Digit. Advert. Antitrust Litig.)*,
  No. 21-md-3010 (PKC), 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) ............................ 9

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ........................................................... 13, 15

*United States v. Am. Express Co.*,
  838 F.3d 179 (2d Cir. 2016) ..................................................................... 7

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

*iv*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) .......................................................................................... 2

*Universal Grading Serv. v. eBay, Inc.*,
    No. C-09-2755-RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ........................... 12

*Zunum Aero, Inc. v. Boeing Co.*,
    No. C21-0896-JLR, 2022 WL 3346398 (W.D. Wash. Aug. 12, 2022) .............................. 8, 10

**Other Authorities**

Phillip E. Areeda & Herbert Hovencamp, *Antitrust Law: An Analysis of Antitrust*
    *Principles and Their Application* ¶¶ 1605a, 1605c (4th and 5th eds., 2015-
    2021) .................................................................................................................. 9

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

*v*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1

**INTRODUCTION**

2        Customers can purchase an iPhone or an iPad from a wide variety of sellers in a wide variety

3   of channels. Whether purchased in person or online at retailers like Best Buy or Target, through a

4   carrier like Verizon or AT&T, or on Amazon.com, Apple strives to ensure that every customer has

5   a quality purchasing experience and receives the genuine, safe Apple product for which they paid.

6   Among other protections, Apple has safeguards in place to help identify and remove counterfeit

7   products to prevent its customers from being duped into purchasing counterfeit Apple products.

8        As part of Apple's ongoing efforts to maintain a premium customer experience, in the mid-

9   2010s, Apple identified a significant problem with customers receiving counterfeit products

10   purchased on Amazon.com. The problem was so significant that, in 2016, Apple sued nine entities

11   involved in supplying counterfeit Apple products to Amazon and advertised as "sold by

12   Amazon.com."[1] Pursuing counterfeiters after the fact was only a partial solution: protecting

13   customers from the harms and risks associated with counterfeits also required proactive efforts to

14   stop the sale of counterfeits in the first place. Plaintiff's lawsuit is about one of the additional steps

15   that Apple took to protect its brand integrity, reduce the sale of counterfeits, and improve the

16   customer experience when purchasing Apple products.

17        In 2018, Apple, as manufacturer, and Amazon, as reseller, negotiated an agreement known

18   as the Global Tenets Agreement ("GTA").[2] The GTA implemented measures to improve the

19   customer experience and to reduce the availability of counterfeit Apple products on Amazon.com.

20   One of those measures was permitting only Apple Authorized Resellers that Apple identified to

21   sell Apple products on Amazon.com. This measure helps safeguard the customer experience and

22   protect customers against the risk of purchasing unsafe knock-off or counterfeit products on

23   Amazon.com.

24        Plaintiff's Amended Complaint (Dkt. 37, "Am. Compl.") ignores the commercial purpose

25   of the GTA and instead alleges that the GTA violates antitrust law. This second attempt to plead a

26

27

28

---

[1] Second Amended Complaint ¶ 36, *Apple Inc. v. Mobile Star, LLC*, No. 3:16-cv-06001-WHO, 2017 WL 4297209 (N.D. Cal. Aug. 30, 2016).

[2] A copy of the GTA, which Plaintiff refers to and incorporates by reference into his Amended Complaint, is attached as Exhibit A.

claim is just as flawed as the first. Fundamentally, Plaintiff misstates the nature of the relevant relationship between Apple and Amazon, contending that the GTA is a horizontal restraint among competitors and *per se* unlawful. Well-established law makes it clear the *per se* standard does not apply here because the GTA is a vertical agreement between a manufacturer and a reseller, which is properly analyzed under the rule of reason. Vertical agreements like the GTA are commonplace, and the Supreme Court and Ninth Circuit have routinely recognized that such agreements are procompetitive and lawful. Indeed, it has been the law for more than a century that the Sherman Act "does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal[.]" *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *A.H. Cox & Co. v. Star Mach. Co.*, 653 F.2d 1302, 1306 (9th Cir. 1981) ("Competition is promoted when manufacturers are given wide latitude in establishing their method of distribution and in choosing particular distributors."). Further, cases nationwide (including in the Ninth Circuit) require analyzing "dual distribution" models—such as where Apple is both a manufacturer and seller of its own product—under the rule of reason. Accordingly, the Court should dismiss Plaintiff's *per se* claim.

Even under the rule of reason, Plaintiff's claim fails for three independent reasons. *First*, despite attempting to revise his market definition after Apple pointed out its numerous failings the first time, Plaintiff's new proposed market and submarkets remain legally deficient. He asserts that the relevant market is "Online Marketplaces" like Amazon.com and eBay, which are two-sided online platforms that "enable[ ] consumers to buy retail goods[.]" Am. Compl. ¶ 74. This proposed market fails at the threshold because Plaintiff's alleged "two-sided" relevant market bears no relationship to his theory of harm. Further, the new Online Marketplaces proposed market is too broad because the "retail goods" it encompasses include a variety of products like clothing, make-up, furniture, and small appliances that are not reasonably interchangeable with smartphones and tablets. Plaintiff's proposed limitation to Online Marketplaces is also too narrow because it excludes obvious alternative sources for the purchase of smartphones and tablets, such as the Apple Store, Best Buy, Target, and Verizon. Plaintiff's proposed submarkets likewise remain too narrow because each excludes obvious alternative sources for the same products, such as apple.com,

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

2

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

samsung.com, and verizon.com. Like many other courts have done in similar cases, this Court should reject Plaintiff's contorted relevant markets at the pleading stage.

*Second*, because Plaintiff fails to plead any plausible relevant market, he cannot plead that Defendants have market power. Plaintiff's allegations relating to market power ignore the products at issue (smartphones and tablets) and, instead, allege Amazon's market power in Online Marketplaces generally. Plaintiff admits that there are many different channels for customers to purchase smartphones and tablets—such as AT&T and Apple itself—but ignores these channels in his market power allegations. Plaintiff's failure to plead facts to show that Amazon or Apple have market power in the alleged market and submarkets is fatal.

*Third*, Plaintiff fails to plead a plausible injury to competition. No law requires Apple to sell through any third-party reseller. Apple may select an exclusive dealer for its products and, indeed, could lawfully elect to sell its products only through its own retail storefronts. Despite this, Plaintiff claims an illegal restraint based on a commonplace business agreement that enables multiple resellers of Apple products on Amazon.com. Indeed, Plaintiff's claim that the GTA enabled only certain Authorized Apple Resellers to sell on Amazon.com is consistent with the GTA's aim of improving the customer purchasing experience and allowing Apple to compete more effectively with manufacturers of competing brands. This interbrand competition is a reason why courts routinely hold that vertical distribution agreements like the GTA are not anticompetitive.

Plaintiff's amended allegations remain fatally deficient and, as a result, Plaintiff's Amended Complaint should be dismissed with prejudice.

## STATEMENT OF PLEADED FACTS

### A.      Apple and Amazon's Business Relationship

Apple manufactures a wide variety of products, including the iPads and iPhones relevant to Plaintiff's claims. Am. Compl. ¶¶ 9, 145. Apple "distributes its products through two channels[,]" otherwise known as a "dual distribution" strategy. *Id*. ¶ 26 & p. 9. The first channel is Apple's own online store (apple.com) and its physical retail stores (Apple Stores). *Id*. ¶ 26. The second channel is a "network of third-party distributors and resellers" which "must enter into an Authorized

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

3

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1  Reseller Agreement with Apple." *Id*. These resellers include service providers like AT&T, retail

2  outlets (both physical and online) like Best Buy, Target, and Staples, and other online resellers like

3  Amazon. *Id*. ¶¶ 1, 26. In addition to Amazon, Apple permits certain authorized resellers to sell

4  products as third-party merchants through Amazon.com. *Id*. ¶ 51.

5        **B.**    **The Global Tenets Agreement**

6        Long before the GTA was executed, Apple identified a widespread problem with

7  counterfeit Apple products sold on Amazon.com by third-party merchants. *See id*. ¶ 72. In an effort

8  to protect consumers and Apple's brand integrity, Apple took action. In October 2016, it sued

9  Mobile Star, alleging Amazon.com sold counterfeits obtained from Mobile Star through Amazon's

10  "internet-based e-commerce platform located at www.amazon.com." *See* Complaint ¶ 1, *Apple Inc.*

11  *v. Mobile Star LLC*, No. 3:16-cv-06001-WHO, 2016 WL 6110683 (N.D. Cal. Oct. 17, 2016).[3] *See*

12  *also Apple Inc. v. Mobile Star LLC*, 2017 WL 4005468, at *1 (N.D. Cal. Sept. 12, 2017) ("Apple

13  filed this case alleging Mobile Star supplied Amazon and Groupon with counterfeit Apple-branded

14  products."). Apple ultimately added eight more defendants that had played a role in the sale of

15  counterfeit Apple products on Amazon.com to its complaint.

16        Apple's *Mobile Star* complaint alleged detailed findings of Apple's internal investigation,

17  which included test buys for products listed as "sold by Amazon.com." The investigation

18  discovered that, despite listings claiming "genuine Apple products," those products were indeed

19  counterfeit. *See, e.g.*, Second Amended Complaint ¶¶ 36-37, *supra* note 1. While the litigation

20  named as defendants Mobile Star and other entities involved in supplying Amazon with

21  counterfeits to sell, the court noted the "central role" that Amazon "played in the underlying events"

22  dealing with counterfeit sales on its platform. *Mobile Star*, 2017 WL 4005486, at *4.

23        The *Mobile Star* litigation ultimately settled, but the removal of a few counterfeiters did not

24  solve the problem, particularly given the hundreds of other "third-party Apple resellers" that were

---

[3] Apple requests that the Court take judicial notice of the referenced documents from the *Mobile Star* litigation. This Court "can take judicial notice of records in other cases" *Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226, 1238 n.7 (W.D. Wash. 2020). This includes taking notice of information regarding "what was argued by the parties[.]" *Eliott v. Lions Gate Ent. Corp.*, No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662, at *3 (C.D. Cal. Nov. 8, 2022).

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

    4

active on Amazon.com at the beginning of 2018. Am. Compl. ¶ 5. Indeed, while Plaintiff does not (and cannot) attest to the authenticity of the Apple products these resellers were offering,[4] he notes that at least some of these third-party merchants were "offering steep discounts," which is consistent with the sale of non-genuine products. *Id*. Apple, as manufacturer of Apple products, entered into the GTA with Amazon, a reseller, on October 31, 2018. *See id*. ¶ 50. Through the GTA, Apple ensured brand integrity by exercising its lawful ability to decide which resellers may sell its product (and under what circumstances). *See id*. ¶¶ 50-51; *see also* Ex. A, ¶ 1(a)-(b) ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████ Apple's enforcement of its quality standards resulted in the identification of a select number of trusted Apple Authorized Resellers interested in selling on Amazon.com. *See id*. The GTA also provided Amazon with increased access to genuine Apple products. *See* Am. Compl. ¶ 53; *see also* Ex. A, ¶ 3.2.

### C.   Plaintiff's Amended Complaint

More than four years after Apple and Amazon entered into the GTA, Plaintiff brings a lawsuit alleging a violation of Section 1 of the Sherman Act for an unlawful group boycott. *See* Am. Compl. ¶¶ 158-69. He bases his theory largely on an annulled Italian agency decision that does not apply the Sherman Act or any other U.S. law. *See id*. ¶ 26 n.17.

Plaintiff is an individual consumer who alleges he purchased an iPad on Amazon.com on February 26, 2021. *See id*. ¶ 23. Plaintiff alleges that he purchased his new iPad for $319.99. *See id*. He does not indicate how this price compared to other prices for the same iPad available from other retailers like Best Buy, Staples, or directly from Apple. He alleges that he and members of a nationwide class of new iPhone and iPad purchasers (*id*. ¶ 145) were "forced to pay more for th[eir] purchases than they would have if Amazon and Apple had not entered [into] the [GTA] to eliminate third-party Apple resellers from the Amazon Marketplace." *Id*. ¶ 155. While he asserts that third-

---

[4] While the Amended Complaint pleads (¶ 27) that "Unauthorized Apple resellers are not proscribed or illicit[,]" Plaintiff does not, and cannot, plead that all Apple resellers on Amazon were selling genuine Apple products.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

5

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

party merchants were harmed by the GTA (*e.g. id.* ¶¶ 56-59), Plaintiff is not a third-party merchant.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In antitrust cases, Plaintiff's allegations must "'raise a reasonable expectation that discovery will reveal evidence of' an injury to competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (citation omitted). "Thus, a complaint's allegation of a practice that may or may not injure competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (citation omitted). "Applying this standard is a 'context-specific task' that requires drawing on 'judicial experience and common sense.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.       The *Per Se* Standard Is Inapplicable

The Sherman Act "outlaw[s] only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1" of the Sherman Act. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007); *see also PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178 (W.D. Wash. 2021) ("The rule of reason is the presumptive, default standard[.]"). *Per se* antitrust liability, by contrast, is reserved solely for a narrow set of claims that "relate to conduct that is manifestly anticompetitive . . . [*i.e.*] agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal" such as "horizontal agreements among competitors to fix prices or to divide markets[.]" *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th Cir. 2000) (citation omitted); *see also Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,

472 U.S. 284, 289 (1985); *Leegin*, 551 U.S. at 886-87 (citations omitted); *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) ("[P]recedent limits the *per se* rule in the boycott context to cases involving *horizontal agreements* among direct competitors.") (emphasis added). By contrast, courts analyze vertical agreements, like those between a manufacturer and a reseller, under the rule of reason. *See United States v. Am. Express Co.*, 838 F.3d 179, 194 n.41 (2d Cir. 2016) ("[B]oth vertical price restraints and vertical non-price restraints are analyzed under the rule of reason."), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*").

Plaintiff tries to avoid the rule of reason analysis by invoking the *per se* standard and asserting that the GTA is a horizontal restraint. However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citation omitted). This Court should reject Plaintiff's conclusory invocation of the *per se* standard because it fails to match the factual allegations of the Amended Complaint and flouts binding law.

### A.    Plaintiff's Factual Allegations Make Clear That the Per Se Standard Is Inapplicable

Courts determine whether a particular restraint is horizontal or vertical by "examining the economic relationship between the parties" with respect to the particular agreement at issue. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480 (9th Cir. 1986), *as modified*, 810 F.2d 1517 (9th Cir. 1987). Here, Plaintiff's factual allegations describe vertical conduct between a manufacturer and reseller, not a "horizontal agreement[] among direct competitors." *NYNEX Corp.*, 525 U.S. at 135. Plaintiff concedes that the GTA was a distribution agreement whereby "Apple agreed to provide Amazon consistent supplies at a discount of up to 10%[.]" Am. Compl. ¶ 7. It is undisputed that, as to the sale of iPhones and iPads on Amazon.com, Apple and Amazon have a *vertical* relationship where Apple is the manufacturer and Amazon is the reseller of Apple's products on Amazon's platform. *See id.* ¶¶ 1, 26. So, while Apple and Amazon may be horizontal competitors as manufacturers of their own devices (*i.e.* Amazon's Fire Tablet vs. Apple's iPad), they are *vertically* situated as manufacturer and reseller for Apple products sold on Amazon.com and under the agreement at issue here. *See Dimidowich*, 803 F.2d at 1480. Well-established law is clear that the rule of reason applies here, where the alleged restriction is a vertical one relating to

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

7

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

the distribution of products between a manufacturer and retailer. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) (Restraints "imposed by agreement between firms at different levels of distribution [have been denominated] as vertical restraints."); *Calculators Haw., Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1337 n.2 (9th Cir. 1983) ("Any 'group boycott' therefore consisted of a vertical agreement, to which the rule of reason applies."); *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896-JLR, 2022 WL 3346398, at *5 (W.D. Wash. Aug. 12, 2022).

Moreover, Plaintiff cannot plead facts to establish that the GTA lacks "any redeeming virtue[.]" *Nova Designs*, 202 F.3d at 1091. His repeated citation to the *per se* standard ignores the obvious business rationale for the GTA—combatting the pervasive counterfeiting problem on Amazon.com and protecting Apple's brand integrity by ensuring a premium purchasing experience on Amazon.com. *See* Am. Compl. ¶¶ 47, 73. These legitimate, pro-competitive business justifications are hallmarks of legal, vertical restraints. *See, e.g., Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356-57 (9th Cir. 1982) ("Competition is promoted when manufacturers are given wide latitude in establishing their method of distribution and in choosing particular distributors.") (citation omitted); *Kingray, Inc. v. NBA, Inc*., 188 F. Supp. 2d 1177, 1188 (S.D. Cal. 2002). Apple's efforts to limit resellers on Amazon's platform to trusted Authorized Resellers (Ex. A., ¶ 1(a)-(b)) serves to promote interbrand competition because it ensures that customers looking to buy Apple products will have access to genuine Apple products they desire, thereby providing a positive customer service experience. Accordingly, "there are legitimate business justifications for [Apple's] conduct" requiring application of the rule of reason, even at the pleading stage. *Sambreel Holdings v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1078 (S.D. Cal. 2012) (granting motion to dismiss and holding that Facebook had legitimate business justifications for "maintaining a list of approved Advertising Partners, and ensuring that such partners adhere to [its] requirements").

### B.   Binding Law Requires Application of the Rule of Reason to a Dual Distribution Model

Binding precedent also forecloses Plaintiff's *per se* claim because the rule of reason applies to situations where a manufacturer uses a "dual distribution" model. Plaintiff pleads that Apple

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

8

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1   uses such a model, whereby Apple manufactures Apple products and sells those products to

2   Amazon (a reseller) while concurrently selling those same products as a retailer through its own

3   channel. *See, e.g.*, Am. Compl. ¶ 26 ("Apple distributes its products through two channels."); p. 9

4   ("Apple's Dual Distribution Scheme"); ¶ 42 ("Amazon has been a reseller of Apple products since

5   at least 2012.").

6       This arrangement is vertical in nature and, under binding law in the Ninth Circuit and

7   nationwide, is subject to the rule of reason. *See Dimidowich*, 803 F.2d at 1481 ("We have

8   categorized restrictions imposed in the context of dual distributorships as vertical and analyzed

9   them under the rule of reason."); *Baskin-Robbins*, 664 F.2d at 1357 ("[D]ual distribution systems

10  must be evaluated under the traditional rule of reason standard."); *Laurence J. Gordon, Inc. v.*

11  *Brandt, Inc.*, 554 F. Supp. 1144, 1152 (W.D. Wash. 1983) (explaining that under Ninth Circuit

12  precedent "a dual distribution system would be tested under a rule of reason"); *Texas v. Google*

13  *LLC (In re Google Digit. Advert. Antitrust Litig.)*, No. 21-md-3010 (PKC), 2022 WL 4226932, at

14  *16 (S.D.N.Y. Sept. 13, 2022) (dual distribution agreement between Google and Facebook was

15  "principally a vertical agreement, with potential horizontal consequences" and should therefore be

16  scrutinized under the rule of reason). A leading treatise agrees: courts judge dual distribution

17  arrangements, like the GTA, under the rule of reason, because the restraints generally "serve

18  legitimate purposes without harming market competition." Phillip E. Areeda & Herbert

19  Hovencamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 1605a,

20  1605c (4th and 5th eds., 2015-2021).

21      Plaintiff's recognition of Apple's "dual distribution" model and his challenge to the vertical

22  agreement between Apple and Amazon means the rule of reason applies. This Court should dismiss

23  Plaintiff's claim to the extent it relies on the inapplicable *per se* standard.

24  **II.     Plaintiff's Alternative Rule of Reason Claim Should Be Dismissed**

25      Under the rule of reason, Plaintiff must plead facts to prove (1) a contract, combination or

26  conspiracy among two or more persons or distinct business entities; (2) by which the persons or

27  entities intended to harm or restrain trade or commerce; (3) that actually injures competition; and

28

(4) antitrust injury as a result of the restraint. *See Brantley*, 675 F.3d at 1197. To meet this test, Plaintiff must "allege both that a 'relevant market' exists and that the defendant has power within that market." *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693 (9th Cir. 2022) (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008)).

Plaintiff fails to meet this standard at every turn. *First*, the alleged relevant market and submarkets are not plausible and do not track the theory of alleged harm. *Second*, Plaintiff's failure to establish a relevant market dooms his ability to plead market power. *Third*, Plaintiff does not (and cannot) adequately allege that the GTA injures competition, as the alleged restraint is consistent with procompetitive behavior (as courts have recognized for more than a century).

### A.     The Alleged Relevant Market and Submarkets Are Not Plausible

An antitrust plaintiff must plead a plausible relevant market—including "both a geographic market and a product market"—to state a claim. *Hicks*, 897 F.3d at 1120; *see also Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989). The alleged relevant product market "must encompass the product at issue as well as all economic substitutes for the product." *PBTM LLC*, 511 F. Supp. 3d at 1179 (quoting *Newcal Indus.*, 513 F.3d at 1045). "Economic substitutes have a 'reasonable interchangeability of use' or sufficient 'cross-elasticity of demand' with the relevant product." *Id.* (quoting *Newcal Indus.*, 513 F.3d at 1045). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). Here, Plaintiff's alleged Online Marketplaces market and submarkets are facially implausible for several reasons, requiring dismissal of his Amended Complaint. *See Hicks*, 897 F.3d at 1121 (affirming grant of motion to dismiss where plaintiff alleged contrived product market that defied common sense and was "contorted to meet their litigation needs."). And, because he has already attempted to amend his market definition, that dismissal should be with prejudice. *See Zunum Aero*, 2022 WL 3346398, at *11 (dismissing with prejudice where plaintiff's "[a]lleged [m]arkets are facially unsustainable" and plaintiff "already had an opportunity to remedy the deficiencies with respect to its [a]lleged [m]arkets").

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC                    10

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1.   **The Two-Sided Market Framework Does Not Apply to Plaintiff's Theory of Harm**

First, Plaintiff's attempt to liken the relevant market for the sale of iPhones and iPads at issue here to a "two-sided market" under *Amex* should be rejected because it is not tailored to the relevant products (iPads and iPhones) subject to the alleged anticompetitive agreement (the GTA). *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (courts analyze anticompetitive effects "in the market where competition is allegedly being restrained.") (alteration adopted) (citation omitted). Plaintiff alleges that he and class members overpaid for new iPads and iPhones purchased on Amazon.com *because of the GTA*. *See* Am. Compl. ¶¶ 26, 145, 155. But, Plaintiff does not define the relevant market in relation to the effect of the GTA on iPads and iPhones. Instead, he claims the "relevant market" is Online Marketplaces, like Amazon.com, eBay, and Walmart Marketplace. *See id.* ¶ 74. This alleged "market for marketplace transactions," and his related allegations are untethered from a market for "the product[s] at issue" (iPads and iPhones) and "all economic substitutes for the product[s]" at issue (like competing tablets and smartphones). *PBTM LLC*, 511 F. Supp. 3d at 1179.

Plaintiff's allegations about the features of Online Marketplaces related to transactions (Am. Compl. ¶¶ 74-109) are irrelevant, and his attempt to liken this case to the Supreme Court's *Amex* decision is misplaced, 138 S. Ct. 2274 (2018) (Am. Compl. ¶¶ 15, 75). As he admits, the GTA governs the resale of Apple products on Amazon.com only, and it does not establish rules for any other online marketplace.[5] Further, Plaintiff complains of allegedly increased prices for specific Apple products on Amazon.com (*id*. ¶ 155), not any increase in the cost of online transactions.[6] Nor does Plaintiff allege that the GTA has resulted in a decrease in the number of transactions (on the Amazon Marketplace, let alone all Online Marketplaces). Plaintiff, therefore, cannot claim that

---

[5] Plaintiff makes a conclusory assertion that "higher prices" of iPhones and iPads "gave sellers of other brands of smartphones and tablets greater pricing freedom" and that there is "no evidence that retailers of other smartphones or tablets decreased their prices[.]" Am. Compl. ¶ 66. This assertion is both unsupported by pleaded facts and does not explain how the GTA would have increased the cost of online transactions across all marketplaces.

[6] Indeed, Plaintiff alleges that Amazon charges a transaction fee (Am. Compl. ¶ 32), but that is unrelated to any alleged effect of the GTA. In Plaintiff's alleged Online Marketplace market, an increase in price would thus be an increase in the transaction fee charged by Amazon, not the price of the underlying product sold by third-party merchants or Amazon.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

11

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

the GTA reduces competition *between* Amazon.com and other Online Marketplaces, and thus the *Amex* framework is inapplicable to the agreement challenged here. Moreover, nothing in *Amex* suggests that customers like Plaintiff who buy products from "two-sided retail platforms" cannot just as readily buy the same products from "one-sided" retail stores. At bottom, the two-sided nature of the Amazon Marketplace and associated "indirect network effects" (*id*. ¶ 78) has nothing to do with Plaintiff's allegation that the GTA increased prices for iPhones and iPads, products that consumers may purchase through many channels in addition to Online Marketplaces.

For these reasons, the Court should reject Plaintiffs' Online Marketplaces market because the alleged relevant market is facially implausible and untethered to the harm alleged in the Amended Complaint. *See Coronavirus Rep. v. Apple Inc*., No. 21-cv-05567-EMC, 2021 WL 5936910, at *11 (N.D. Cal. Nov. 30, 2021) (granting motion to dismiss where antitrust claims did not impact market identified in complaint); *Intel Corp. v. Fortress Inv. Grp. LLC*, No 21-16817, 2022 WL 16756365, at *3 (9th Cir. Nov. 8, 2022) (dismissing complaint where Intel alleged output restriction in "markets that Fortress does not control").

### 2. The Online Marketplaces Market Is Facially Overbroad

Plaintiff's proposed relevant Online Marketplaces market is also implausible because it purports to include all "retail goods" (Am. Compl. ¶ 74), which are neither reasonably interchangeable nor have "cross-elasticity of demand" with the iPhones and iPads at issue. *See, e.g.*, *id*. ¶¶ 1, 3, 84, 88. Here, the Amended Complaint alleges a broad market that includes smartphones and tablets, as well as all "retail goods" (*id*. ¶ 74), which includes a wide swath of products from clothing to small appliances and make-up. Plaintiff also references products sold by Dell (*id*. ¶ 88), like computers and webcams, which are included in his broad Online Marketplaces market. Yet, Plaintiff simultaneously pleads that computers are not substitutable for smartphones or tablets. *See id*. ¶ 80. Courts routinely hold that complaints alleging such fatally overbroad markets must be dismissed. *See, e.g.*, *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1106 (N.D. Cal. 2022); *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755-RMW, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012) (dismissing complaint where plaintiff "provide[d] no authority supporting such

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

12

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

an overbroad and amorphous market definition, which would theoretically encompass the market for every one of the millions of items sold through eBay"), *aff'd*, 563 F. App'x 571 (9th Cir. 2014).

The Ninth Circuit's rejection of the proposed market in *Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011), is instructive. There, the plaintiff pharmacies alleged that there was a relevant product market consisting of "the pharmaceutical industry" which included "pharmaceutical products." *Id*. The Ninth Circuit affirmed the dismissal of this "facially unsustainable" market because the pharmacies could not plead that "all pharmaceutical products are interchangeable for the same purpose." *Id*. The same is true here. Simply put, while an individual searching for a new smartphone may consider an iPhone, along with other devices made by competitors such as Samsung, Google, and LG, he or she is unlikely to buy a computer monitor, make-up, clothing, or other "retail goods" as a substitute for an iPhone or iPad. Plaintiff's reliance on the overbroad Online Marketplaces market requires dismissal of his rule of reason claim.

### 3. Plaintiff's Relevant Market and Submarkets Are Also Fatally Narrow Because They Exclude Channels to Purchase the Identical Product

Dismissal is also appropriate because the Online Marketplaces market and the proposed submarkets for the sale of smartphones and tablets on Online Marketplaces (Am. Compl. ¶¶ 122-31) and sale of smartphones and tablets on online one-stop shops (*id*. ¶¶ 132-42) are also fatally narrow. The relevant market must include any sellers "who have actual or potential ability to deprive each other of significant levels of business." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). Plaintiff's contorted, litigation-driven limitation to sales via Online Marketplaces (or online one-stop shops) fails to capture many other avenues for a customer to purchase smartphones and tablets. *See Joplin Enters. v. Allen*, 795 F. Supp. 349, 352-53 (W.D. Wash. 1992) (Coughenour, J.) (dismissing antitrust claim where market proposed was "too narrow to support a cause of action.") (collecting cases).

The Ninth Circuit and many district courts within it have rejected market definitions that wrongly exclude other available channels to obtain the same or substitutable products. *See Hicks*, 897 F.3d at 1121-22 (rejecting "implausible" market definition that excluded other avenues for

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

13

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

advertising to reach golf fans); *Pistacchio v. Apple Inc.*, No. 4:20-cv-07034-YGR, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021) (dismissing claim where the complaint "offer[ed] no specific allegations supporting the sole focus of the market definition on cloud gaming alternatives as opposed to the broader video game market generally, including those individually sold both in the Apple App Store or by competitors on computer or console platforms").

Importantly, courts routinely reject narrowly drawn markets at the pleading stage. For example, in *Streamcast Networks, Inc. v. Skype Technologies, S.A.*, 547 F. Supp. 2d 1086, 1094-95 (C.D. Cal. 2007), the plaintiff attempted to plead a relevant market consisting only of "FastTrack P2P [peer-to-peer] file-sharing services," and excluding all other P2P networks. The district court rejected this alleged market because, while plaintiff pled that FastTrack "possess[ed] some unique attributes and components that may make it more attractive and efficient, it still does not (and undoubtedly cannot) plead that other P2P applications and networks do not permit users to accomplish the same basic task of searching for and downloading a variety of media files from the internet." *Id*. at 1095 (dismissing complaint with prejudice). Likewise, in *Stubhub, Inc. v. Golden State Warriors, LLC*, No. C 15-1436 MMC, 2015 WL 6755594, at *3 (N.D. Cal. Nov. 5, 2015), the district court held that plaintiff's proposal of separate "primary" and "secondary" ticket markets was "not cognizable as a matter of law" because "both primary and secondary tickets are used for the purpose of obtaining entry to a Warriors game."

Plaintiff's artificial limitation of the relevant market to Online Marketplaces and online one-stop shops should similarly be rejected because both exclude alternative channels which can be used for the same purpose: to obtain smartphones and tablets. There is no basis to conclude, for example, that a customer interested in purchasing an iPhone would not consider many different channels as reasonable substitutes. Yet, to accept Plaintiff's market theory, this Court would have to conclude that a purchaser looking to purchase an iPhone on Amazon.com would *not* consider apple.com or verizon.com as a plausible alternative channel to buy the exact same product. "'[J]udicial experience and common sense' require rejecting" Plaintiff's implausible markets. *Hicks*, 897 F.3d at 1121 (quoting *Iqbal*, 556 U.S. at 679); *Brown Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962) ("the definition of the relevant market" must "'correspond to the

commercial realities' of the industry").

None of Plaintiff's allegations to the contrary affect this common-sense outcome. Plaintiff's assertions regarding the alleged asymmetric nature of competition (Am. Compl. ¶¶ 84-98, 122-26) are in significant tension with his allegation of horizontal competition between Apple and Amazon (*id*. ¶ 40). Plaintiff's allegations regarding an asymmetry of "defections" between Online Marketplaces and single-merchant outlets (*id*. ¶ 91) ignore that consumers are not bound to purchase from any channel and thus cannot "defect" from one channel or another.  With every purchase, a consumer has the choice of whether to purchase an Apple product through one channel or another. In fact, Plaintiff's allegations concede the substitutability between Online Marketplaces and other channels, stating that: "An iPad purchased on Apple's website is an iPad not purchased from an Amazon retailer. And vice versa." *Id*. ¶ 40. The Amended Complaint also alleges that Apple can drive sales of its products to its own website and retail stores and away from Amazon.com and other third-party sellers. *Id.* ¶ 29. Yet, Plaintiff's alleged market definitions exclude purchases from these alternative channels, despite admitting that they can "deprive each other of significant levels of business." *Thurman Indus.*, 875 F.2d at 1374; *see also Pistacchio*, 2021 WL 949422, at *2 (rejecting market definition limited to iOS where plaintiff "identifie[d] in the complaint several allegedly competing subscription services"). It is thus implausible that a purchaser like Plaintiff would not find apple.com or an Apple Store a reasonable substitute to purchase *Apple* products, in addition to a wide variety of other sellers that offer competing products.[7]

Plaintiff's other attempts to support his contorted relevant markets fail because they focus on "unique attributes and components that may make" Online Marketplaces more "attractive" to customers, but he cannot, as a matter of law, plausibly plead that other channels to purchase smartphones and tablets are not reasonably interchangeable. *Streamcast*, 547 F. Supp. 2d at 1095. Nor can Plaintiff rely on his allegation that "a significant number of consumers will purchase

---

[7] Moreover, it is irrelevant that other avenues like brick-and-mortar retail stores are not "interchangeable" with Online Marketplaces the perspective of third-party sellers. *See id*. ¶¶ 87, 102. Plaintiff's alleged harm is the alleged increase in the price of his iPad, not his inability to sell as a third-party.

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

15

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

products on marketplaces—including smartphones and tablets—even when they can be obtained at lower prices from single-merchant outlets" (Am. Compl. ¶ 91). *See Stubhub*, 2015 WL 6755594, at *3 ("price differential does not suffice to support the existence of two separate markets"). For example, Plaintiff contends that the relevant market must be narrowly drawn because Amazon.com offers "one-stop shopping," (Am. Compl. ¶¶ 2, 91) and touts the benefits of these Online Marketplaces because they provide online reviews, an "endless aisle," and reduced "out-of-stock" events (*id.* ¶¶ 93-94). But the fact that some retailers of iPhones and iPads do not also sell myriad unidentified other products or have online reviews does not mean that these other retailers are unreasonable substitute sources of the products at issue in this case. Likewise, while some customers may prefer online stores over brick-and-mortar stores (*id.* ¶¶ 99, 125), this does not render brick-and-mortar stores unreasonable substitutes to buy smartphones and tablets.

Plaintiff's second alternative submarket for sales of smartphones and tablets on online one-stop shops fails for these same reasons. While expanding the market definition to include "traditional retailers with online stores" like Best Buy and Staples (*id.* ¶ 133), this proposed market still nonsensically excludes the brick-and-mortar counterpart to the online stores, as well as alternative channels (both brick-and-mortar and online) like Verizon, Samsung, and other regional resellers. Plaintiff's justifications for these exclusions, like reduced product choice or bundling with cellular service (*id.* ¶¶ 135-38), again focus on unique or attractive attributes of online one-stop shops, but do not render these other retailers unreasonable substitutes for someone interested in buying a smartphone or tablet. *See Streamcast*, 547 F. Supp. 2d at 1095; *Hicks*, 897 F.3d at 1122 (rejecting assertion that "increased effectiveness" could place advertising format "in a distinct market").

At bottom, while Online Marketplaces like Amazon.com and online one-stop shops are some possible ways to purchase a smartphone or tablet, there are many alternative channels through which a consumer can obtain a smartphone or tablet. Plaintiff's failure to include these alternative channels in his relevant market defies common sense and is fatal to his contention that the relevant product market here is only sales made through an online marketplace or online one-stop shops. *See, e.g., Hicks*, 897 F.3d at 1121-22; *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 1137, 1149

(N.D. Cal. 2020) (dismissing complaint where plaintiff had "not yet shown that it is plausible that the relevant market should be defined as that which uses only [defendant's] data" where alternative public channels exist to obtain similar data) (emphasis omitted).

* * *

For all these reasons, Plaintiff does not (and cannot) plead a plausible product market that fits the alleged anticompetitive conduct in this case. Plaintiff's failure to allege any plausible market requires dismissal.

**B.     Plaintiff Does Not Plausibly Allege Market Power**

Plaintiff's failure to plead any plausible relevant product market also dooms his ability to plead market power in the proper market. *See Flaa*, 55 F.4th at 694-95 ("[L]ack of market power is fatal to [ ] claims under the rule of reason."); *Pennsylvania Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134-35 (W.D. Wash. 2008). While the Amended Complaint distracts on this point by citing Amazon's large online presence generally (*e.g.* Am. Compl. ¶ 111), and Apple's alleged share of "50% of the respective smartphone and tablet markets (inclusive of all distribution channels)" (*id.* ¶ 66),[8] these citations say nothing about Amazon's market power for the sales of smartphones and tablets relevant to Plaintiff's claim. The relevant market power is not, as Plaintiff contends, in the "market" for Online Marketplaces of all "retail goods," "consumer electronics," or avenues for third parties to sell, but rather in the market for the sale of specified Apple products and reasonable substitutes.

Plaintiff's allegations concerning market power in a smartphone and tablet submarket are insufficient and self-defeating. He attempts to "infer[]" Amazon's market power in the "smartphones and tablet sales," based on discussion of Amazon's market share in online consumer electronic sales generally. *Id*. ¶ 128. Yet, this inference is unsupported by allegations as to what proportion of online sales are tablet and smartphone sales. Further, the allegation is irrelevant because it excludes other sellers of tablets and smartphones that fall outside Plaintiff's contorted

---

[8] Notably, this figure admittedly includes sales in "all" distribution channels, not simply Plaintiff's artificial online marketplace and online one-stop shops markets. As such, it provides little support for market power in the alleged market.

Online Marketplaces and online one-stop shops markets. Plaintiff's other allegations are likewise fatal to his assertion that Amazon has market power in the sale of smartphones and tablets. For example, the Amended Complaint pleads that Apple's "[d]irect sales" are "an important part of Apple's business[.]" *Id.* ¶ 1. And Apple is not the only other alternative to purchase smartphones and tablets. Indeed, the Amended Complaint acknowledges other options like AT&T exist, but excludes them from the market power discussion because Plaintiff's alleged markets fail to match his alleged harm.

Plaintiff's hypothetical monopolist (or "SSNIP") tests—which Plaintiff relies on to show that Amazon has market power—clearly demonstrate the mismatch between Plaintiff's market power allegations and his alleged harm. Plaintiff claims market power based on Amazon's ability to increase the commission it charges third-party merchants. *See id.* ¶ 106. Plaintiff, however, does not claim injury based on increased commissions. Similarly, Plaintiff's other market power allegations relate to sales on Amazon Marketplace in general, not Amazon's market power with respect to the resale of smartphones or tablets in the proposed relevant market. *See id.* ¶ 108 (referring to price changes on the marketplace in general); ¶ 141 (referring to Amazon's alleged market power "within the broader category of all consumer electronics sales online"). Nor does his misaligned SSNIP test account for the common-sense reality that a prospective purchaser unhappy with the price of an iPhone or iPad on Amazon has a multitude of other avenues to buy one. Customers are not locked into purchasing on Amazon.com.

Plaintiff's failure to address market power for the products relevant to his claim requires dismissal. *See Flaa*, 55 F.4th at 693.

## C.    Plaintiff Does Not Adequately Allege Injury to Competition

Plaintiff also bears the burden to plead facts that plausibly establish that the GTA injured competition and had no legitimate justification. Allegations that are "merely consistent" with liability "stop[ ] short of the line between possibility and plausibility[.]" *Iqbal*, 556 U.S. at 678. Courts routinely recognize the benefits of distributor agreements in promoting interbrand competition by improving a manufacturer's brand integrity. Plaintiff cannot make up for this failure

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC
18
Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

by relying on alleged increased prices and the reduction of third-party sellers alone. And, critically, his allegations do not support a decrease in genuine Apple products sold, or output, on Amazon, let alone overall. Plaintiff's myopic, unrealistic focus on resales through Amazon.com—a platform on which Apple adopted procompetitive measures to combat unsafe counterfeits and knockoffs—cannot cover up his failure to show that the GTA had *market-wide* effects.

*First*, Plaintiff's Amended Complaint rests on a challenge to Apple's business decision to enter into a distribution agreement (the GTA) with a reseller (Amazon) and set certain requirements for the sale of its products on Amazon.com. But such distribution agreements are consistent with procompetitive conduct, and Plaintiff's allegations about the effects of the GTA are insufficient to cross the "line between possibility and plausibility" of an anticompetitive effect. *Iqbal*, 556 U.S. at 678. The GTA set requirements on the sale of Apple products on its reseller's platform, Amazon.com, to address the counterfeit problem that the Amended Complaint acknowledges Apple had identified (Am. Compl. ¶ 72) and improved the customer experience for purchasers of Apple products. *See* pp. 4-5, *supra*. Such action by a manufacturer "while [a] restraint[] in one sense, nevertheless serve[s] to promote interbrand competition." *A.H. Cox*, 653 F.2d at 1306; *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("No antitrust violation occurs unless the exclusive agreement is intended to or actually does harm competition in the relevant market. That one distributor will be hurt when another succeeds in taking its line will be axiomatic in some markets . . . ."); *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54-55 (1977) ("Economists have identified a number of ways in which manufacturers can use such restrictions to compete more effectively against other manufacturers."). At bottom, "[b]usinesses may choose the manner in which they do business absent an injury to competition." *Brantley*, 675 F.3d at 1202.[9] Plaintiff's reliance on the GTA's existence does not meet his burden to prove any such injury.

*Second*, Plaintiff attempts to make up for his failure to plead anticompetitive effects by

---

[9] For similar reasons, the Amended Complaint's allegations regarding an alleged "strategy of scarcity" and allegation that "Apple's own profit margins are higher when it directly sells to consumers" (*e.g. id.* ¶¶ 26, 28-29) are simply recognition of Apple's legitimate business operations.

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

claiming that the GTA increased prices for iPhones and iPads on Amazon.com, and reduced the number of third-party sellers on Amazon's platform.[10] Yet, Ninth Circuit law is clear that these allegations, standing alone, are not sufficient to plead an injury to competition because "[b]oth effects are fully consistent with a free, competitive market." *Brantley*, 675 F.3d at 1202 ("[A]llegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition."); *see also Conklin v. Univ. of Wash. Med.*, 798 F. App'x 180, 181 (9th Cir. 2020) (quoting *Brantley*, 675 F.3d at 1202). In fact, the Ninth Circuit has routinely explained that an alleged reduction in third-party resellers does not adequately establish injury to competition because it is simply the "axiomatic" result of a lawful vertical agreement between a manufacturer and reseller. *Rutman*, 829 F.2d at 735; *see also A.H. Cox*, 653 F.2d at 1306-07 (explaining such provisions promote interbrand competition). And monetary "injury" to the third-party resellers unable to sell on Amazon.com is not an "injury to the market or competition" actionable under the antitrust laws.[11] *See Heisen v. Pac. Coast Bldg. Prods., Inc.*, 26 F.3d 130, 130 (9th Cir. 1994).

Further, Plaintiff's alleged price statistics (*e.g.* Am. Compl. ¶¶ 54, 62-64) are a red herring. Plaintiff's allegations of increased prices are equally consistent with an increase in price that would naturally occur with an increase in genuine product sales, the improvement of customer purchasing experiences, and the elimination of cheaper, counterfeit products sold as real Apple products. Accordingly, they fail to plausibly plead that the GTA is anticompetitive. *See Iqbal*, 556 U.S. at 678. Likewise, the termination of third-party resellers is not an anticompetitive effect because manufacturers are permitted to select the dealers that sell their products and "even cut off" others. *A.H. Cox*, 653 F.2d at 1306.

*Third*, Plaintiff does not support his boilerplate, conclusory claim of output reduction (Am.

---

[10] *E.g.* Am. Compl. ¶¶ 9, 12, 61-63, 66, 68-71, 155-56, 163-64, 167.

[11] For this reason, Plaintiff's arguments regarding antitrust injury are also insufficient. Plaintiff cannot rely on injury to third-party resellers to fill this gap, because "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Qualcomm*, 969 F.3d at 992 (citation omitted). For these reasons, and those explained by Amazon (which Apple incorporates herein), Plaintiff has not pled antitrust injury. *See* Amazon.com's Motion to Dismiss the Amended Complaint, Section III.

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

Compl. ¶ 68) with any factual allegations. *See Reilly*, 578 F. Supp. 3d at 1110 (rejecting "threadbare recital[ ]" of lowered output). This is a critical failing, as "[t]he core question in antitrust is output. Unless a contract reduces output in some market, to the detriment of consumers, there is no antitrust problem. A high price is not itself a violation of the Sherman Act." *Chi. Pro. Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 597 (7th Cir. 1996). Here, Plaintiff does not actually allege that the total number of genuine Apple products sold in any distribution channel decreased. Instead, Plaintiff points to a reduction of third-party merchants, and posits an unexplained "counterfactual" contending that the reduction of third-party merchants created an output reduction. *E.g.* Am. Compl. ¶¶ 62, 68. Yet, the Amended Complaint's factual allegations say nothing about whether several Authorized Resellers or Amazon made up for any alleged decrease in sales resulting from fewer third-party resellers even though the Amended Complaint recognizes that the GTA provided Amazon "steady access to Apple products" (*id.* ¶¶ 53, 165) that *increased* Amazon's offerings of genuine Apple products, which was previously "virtually non-existent" (*id.* ¶¶ 6-7). Further, Plaintiff fails to differentiate between counterfeit and genuine Apple product sales anywhere in the Amended Complaint, leading to the equally possible scenario that the reduction of third-party merchants reduced the number of fake products on the market but increased supply of genuine products offered on Amazon. For this reason, Plaintiff's reliance on an alleged lack of discounting (*id.* ¶ 68) likewise does not make up for his failure to plead facts supporting a reduction on output of genuine Apple products.

On an even more basic level, Plaintiff fails to grapple with the fact that the output of Apple products is not limited to those resold on Amazon.com. Indeed, while Plaintiff's alternative online one-stop shops market includes online sales on Best Buy and Staples (*id.* ¶ 133), he fails to plead that output was restricted in those channels, much less in the alleged market overall. For these reasons, Plaintiff's conclusory assertion of output restriction, or reliance on the exclusion of third-party merchants selling an unknown number of products (let alone *genuine* products), is not sufficient to establish an output restriction. *See Intel*, 2022 WL 16756365, at *2-3 (affirming dismissal of complaint where allegations were consistent with alternative explanation); *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (similar).

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

21

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For these reasons, Defendant Apple Inc. asks the Court to dismiss the Amended Complaint with prejudice. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

I certify that this memorandum contains 8,164 words, in compliance with the Local Civil Rules.

DATED this 27th day of March, 2023.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Mark S. Parris*
Mark S. Parris (WSBA No. 18370)
mparris@orrick.com

401 Union Street, Suite 3300
Seattle, WA  98101
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

WEIL GOTSHAL & MANGES, LLP

By: *s/Carrie C. Mahan*
Carrie C. Mahan (*Pro Hac Vice*)
carrie.mahan@weil.com

By: *s/Sandra Nicole Booth*
Sandra Nicole Booth (*Pro Hac Vice*)
nicole.booth@weil.com

2001 M. Street NW, Suite 600
Washington, DC 20036
Telephone: +1 202 682 7000

By: *s/Brian G. Liegel*
Brian G. Liegel (*Pro Hac Vice*)
brian.liegel@weil.com

1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: +1 305 577 3180

*Attorneys for Defendant Apple Inc*

MOTION TO DISMISS
Case No. 2:22-cv-01599 JCC

22

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

EXHIBIT A

FILED UNDER SEAL