1    Honorable Kymberly K. Evanson

2

3

4

5

6

7

8

9    **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
10    **AT SEATTLE**

11

12    STEVEN FLOYD, et al., individually and on
behalf of all other similarly situated,

13    Plaintiff,    Case No. 2:22-cv-01599 KKE

14    v.    **DECLARATION OF BRIAN G.
LIEGEL IN SUPPORT OF
DEFENDANTS' MOTION TO
15    AMAZON.COM INC. and APPLE INC.,    COMPEL**

16    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

LIEGEL DECLARATION ISO MOTION TO COMPEL
CASE NO. 2:22-CV-01599 KKE

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
+1-206-839-4300

I, Brian G. Liegel, declare as follows:

1.     I am an attorney licensed to practice in the State of Florida, and am appearing in this Court *pro hac vice*. I am counsel at the law firm Weil, Gotshal & Manges LLP, and counsel of record for Defendant Apple Inc. ("Apple") in this case. I submit this declaration in support of Defendants' accompanying Motion to Compel Production of Documents Improperly Withheld As Privileged.

2.     Attached as Exhibit A is a true and correct copy of Plaintiffs' counsel's amended "Communications Log" provided to Defendants on November 27, 2024 via email, which purports to list all communications to or from Mr. Floyd from when Defendants' discovery requests first propounded in September 2023 to November 5, 2024. Plaintiffs' counsel shared the original Communications Log with Defendants on November 15 in response to this Court's Order. *See* Dkt. 168 at 3. After the parties meet and confer, *see* Liegel Decl. ¶ 5 and Ex. D, Plaintiffs' counsel provided Defendants with an amended log, which is referenced herein and in the Motion to Compel.

3.     Attached as Exhibit B is a true and correct copy of the April 30, 2024, hearing transcript on Plaintiffs' Motion to Amend, filed February 29, 2024. *See* Dkt. 96; Dkt. 80.

4.     Attached as Exhibit C is a true and correct copy of the November 5, 2024, hearing transcript on Plaintiffs' counsel's Motion to Withdraw, filed September 13, 2024. *See* Dkt. 166; Dkt. 142.

5.     Attached as Exhibit D is a true and correct copy of a November 2024 email chain between Defendants and Plaintiffs' counsel regarding the parties' meet and confer on November 21 and Plaintiffs' counsel's amended "Communications Log," which makes changes to lines 39 and 63. *See* Ex. D at 1.

6.     Attached as Exhibit E is a true and correct copy of a January 24, 2024 email in which Plaintiffs' counsel begin solicitation of new class representatives following Mr. Floyd's January 16 communications. *See also* Dkt. 81, ¶ 3. Exhibit E was produced using the UTC time zone. 00:23:06 UTC on January 25, 2024 corresponds to 4:23pm PT on January 24, 2024.

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2nd

2    day of December, 2024 in Miami, Florida.

3

4

5                                                /s/ Brian G. Liegel
                                                WEIL, GOTSHAL & MANGES LLP
6                                                Brian G. Liegel (*Pro Hac Vice*)
                                                1395 Brickell Avenue, Suite 1200
7                                                Miami, FL 33131
                                                Telephone: +1 305 577 3180
8                                                brian.liegel@weil.com

9                                                *Attorney for Apple Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 1 | Email | 09/22/2023 2:24:42 PM PDT | "Ben Siegel" <bens@hbsslaw.com> | ▮▮▮ | "Ben Harrington" <benh@hbsslaw.com>, "Shelby Smith" <shelby@hbsslaw.com>, "Meredith Simons" <merediths@hbsslaw.com> | Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | YES | Defendants' First RFPs to Plaintiffs, dated 09/05/2023 | Communication from counsel for purposes of providing legal advice related to Defendants' document requests and responses thereto. |
| 2 | Email | 09/24/2023 6:55:53 AM PDT | Steven Floyd | Ben Siegel <bens@hbsslaw.com> | | Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | NO | | Communication relating to, and for purposes of receiving, legal advice related to Defendants' document requests and responses thereto. |
| 3 | Telephone Call | 9/28/2023 | Meredith Simons | Steven Floyd | | | | | |
| 4 | Email | 09/28/2023 8:51:14 PM PDT | Meredith Simons <merediths@hbsslaw.com> | ▮▮▮ | Ben Siegel <bens@hbsslaw.com>, Ben Harrington <benh@hbsslaw.com>, "Shelby Smith" <shelby@hbsslaw.com> | RE: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | NO | | Communication from counsel for purposes of providing legal advice related to Defendants' document requests and document collections. |
| 5 | Text Message | 10/03/2023 9:14 AM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to Defendants' document requests and responses thereto. |
| 6 | Text Message | 10/3/2023 9:14 AM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to Defendants' document requests and responses thereto. |
| 7 | Text Message | 10/3/2023 9:16 AM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to Defendants' document requests and responses thereto. |
| 8 | Text Message | 10/3/2023 9:16 AM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to Defendants' document requests and responses thereto. |
| 9 | Text Message | 10/3/2023 9:17 AM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to Defendants' document requests and responses thereto. |
| 10 | Text Message | 10/3/2023 9:17 AM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to Defendants' document requests and responses thereto. |
| 11 | Telephone Call | 10/3/2023 | Meredith Simons | Steven Floyd | | | | | |
| 12 | Text Message | 11/16/2023 12:21 PM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |

4

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 14 | Text Message | 11/16/2023 12:21 PM PDT | Steven Floyd | Meredith Simons | | | | | Communication responding to counsel message for purposes of providing legal advice related to discovery. |
| 15 | Text Message | 11/16/2023 12:24 PM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 16 | Telephone Call | 11/16/2023 12:24 PM PDT | Steven Floyd | Meredith Simons | | | | | |
| 17 | Telephone Call (No Answer) | 11/20/2023 2:07 PM PDT | Meredith Simons | Steven Floyd | | | | | |
| 18 | Telephone Call (Missed Call - No Voice Message) | 11/20/2023 2:52 PM PDT | Steven Floyd | Meredith Simons | | | | | |
| 19 | Telephone Call (Missed Call - No Voice Message) | 11/24/2023 2:53 PM PDT | Steven Floyd | Meredith Simons | | | | | |
| 20 | Text Message | 12/20/2023 1:58 PM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 21 | Text Message | 12/20/2023 2:00 PM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 22 | Text Message | 12/20/2023 2:03 PM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 23 | Text Message | 12/20/2023 2:31 PM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 24 | Text Message | 12/20/2023 2:44 PM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 25 | Text Message | 12/20/2023 3:13 PM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 26 | Telephone Call | 12/21/2023 9:26 AM PDT | Meredith Simons | Steven Floyd | | | | | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 27 | Text Message | 1/11/2024 9:51 AM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 28 | Text Message | 1/11/2024 9:52 AM PDT | Steven Floyd | Meredith Simons | | | | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 28 | Telephone Call | 1/11/2024 9:56 AM PDT | Meredith Simons | Steven Floyd | | | | | |
| 29 | Email | 01/16/2024 10:15 AM PST | Meredith Simons <merediths@hbsslaw.com> | Steven Floyd ▆ | Ben Harrington <benh@hbsslaw.com>, Ben Siegel <bens@hbsslaw.com> | Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | NO | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 30 | Email | 01/16/2024 11:27 AM PST | Steven Floyd ▆ | Meredith Simons <merediths@hbsslaw.com> | | Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | NO | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 31 | Email | 01/16/2024 11:56 AM PST | Meredith Simons <merediths@hbsslaw.com> | "Steven Floyd" | | RE: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | YES | Protective Order, dated 12/15/2023 | Communication from counsel for purposes of providing legal advice related to discovery. |
| 32 | Email | 01/16/2024 12:25 PM PST | Steven Floyd ▆ | Meredith Simons <merediths@hbsslaw.com> | | Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) | NO | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 33 | Telephone Call (No Answer) | 01/16/2024 12:28 PM PDT | Meredith Simons | Steven Floyd | | | | | |
| 34 | Text Message | 01/24/2024 10:01 AM PST | Ben Siegel | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 35 | Telephone Call (No Answer) | 02/01/2024 12:32 PM PST | Meredith Simons | Steven Floyd | | | | | |
| 36 | Text Message | 02/01/2024 12:34 AM PDT | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 37 | Email | 02/26/2024 5:12:06 PM PST | Ben Harrington <benh@hbsslaw.com> | Steven Floyd ▆ | Ben Siegel <bens@hbsslaw.com>, Meredith Simons <merediths@hbsslaw.com> | Amazon/Apple litigation - privileged and confidential | NO | | Communication from counsel for purposes of providing legal advice related to litigation strategy and amendments to pleadings. |
| 38 | Email | 03/01/2024 12:59:18 PM PST | Meredith Simons <merediths@hbsslaw.com> | Steven Floyd ▆ | Ben Harrington <benh@hbsslaw.com>, Ben Siegel <bens@hbsslaw.com> | Discovery responses in Apple/Amazon case | YES | Draft Responses and Objections to Defendants First Set of Interrogatories | Communication from counsel for purposes of providing legal advice related to discovery responses and amendments to pleadings. |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 40 | Telephone Call (No Answer) | 05/08/2024 1:45 PM PST | Meredith Simons | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to court order. |
| 41 | Text Message | 05/08/2024 1:48 PM PST | Meredith Simons | Steven Floyd | | | | | |
| 41 | Email | 05/09/2024 10:42:10 AM PDT | "Ben Harrington" <benh@hosslaw.com> | [redacted] | | Amazon/Apple Lawsuit - Deposition Notice | YES | 05/08/24 Letter from John Goldman Re: "Amazon's Notice of Deposition of Plaintiff Steven Floyd" | Communication from counsel for purposes of providing legal advice related to deposition notice and litigation strategy. |
| 42 | Email | 05/17/2024 4:50:58 PM PDT | "Ben Harrington" <benh@hosslaw.com> | [redacted] | | RE: Amazon/Apple Lawsuit - Deposition Notice | YES | 05/15/2024 Amended Notice of Videotaped Deposition of Steven Floyd | Communication from counsel for purposes of providing legal advice related to deposition notice and litigation strategy. |
| 43 | Email | 06/03/2024 6:26:28 PM PDT | "Ben Harrington" <benh@hosslaw.com> | [redacted] | | RE: Amazon/Apple Lawsuit - Deposition Notice | YES | 05/24/2024 Amended Case Scheduling Order | Communication from counsel for purposes of providing legal advice related to court order. |
| 44 | Email | 08/16/2024 8:07:59 PM PDT | "Ben Harrington" <benh@hosslaw.com> | [redacted] | | Apple & Amazon Lawsuit | YES | 8/16/2024 Order Granting Defendants' Motion to Compel | Communication from counsel for purposes of providing legal advice related to court order. |
| 45 | Letter | 08/19/2024 | Ben Harrington | Steven Floyd | | Amazon-Apple Lawsuit - Court Order Compelling Discovery | YES | 8/16/2024 Order Granting Defendants' Motion to Compel | Communication from counsel for purposes of providing legal advice related to court order. |
| 46 | Telephone Call (Missed Call - No Voice Message) | 08/20/2024 8:59 AM PDT | Steven Floyd | Ben Harrington | | | | | |
| 47 | Telephone Call (Missed Call - No Voice Message) | 08/20/2024 9:46 AM PDT | Steven Floyd | Ben Harrington | | | | | |
| 48 | Telephone Call (Missed Call - No Voice Message) | 08/21/2024 8:06 AM PDT | Steven Floyd | Ben Harrington | | | | | |
| 49 | | | | | | | | | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 50 | Telephone Call (Missed Call - No Voice Message) | 08/21/2024 9:34 AM PDT | Steven Floyd | Ben Harrington | | | | | |
| 51 | Telephone Call | 8/21/2024 10:43 AM PDT | Ben Harrington | Steven Floyd | | | | | |
| 52 | Telephone Call (No Answer) | 8/21/2024 1:22 PM PDT | Ben Harrington | Steven Floyd | | | | | |
| 53 | Telephone Call | 8/21/2024 1:22 PM PDT | Steven Floyd | Ben Harrington | | | | | |
| 54 | Hand Delivery (Successful Attempt By Process Server) | 8/21/2024 6:40 PM EDT | | | | | YES | (1) 8/16/2024 Order Granting Defendants' Motion to Compel; (2) 08/19/2024 Letter from Counsel | |
| 55 | Email | 08/21/2024 2:10:27 PM PDT | Ben Harrington <benh@hbsslaw.com> | [redacted] | Meredith Simons <merediths@hbsslaw.com>, Ben Siegel <bens@hbsslaw.com> | Amazon-Apple Lawsuit - Document Collection Next Steps | YES | (1) Amazon's First Set of Interrogatories to Plaintiff, dated 01/31/2024; (2) Apple's First Set of Interrogatories to Plaintiff, dated 02/08/24. | Communication from counsel for purposes of providing legal advice related to discovery. |
| 56 | Email | 08/22/2024 1:46:51 PM PDT | Ben Harrington <benh@hbsslaw.com> | [redacted] | Meredith Simons <merediths@hbsslaw.com>, Ben Siegel <bens@hbsslaw.com> | RE: Amazon-Apple Lawsuit - Document Collection Next Steps | NO | | Communication from counsel for purposes of providing legal advice related to Defendants' discovery requests and responses thereto. |
| 57 | Telephone Call | 08/22/2024 2:46 PM PDT | Ben Siegel | Steven Floyd | | | | | |
| 58 | Text | 08/22/2024 2:50 PM PDT | Ben Siegel | Steven Floyd | | | | | Communication from counsel for purposes of providing legal advice related to Defendants' discovery requests and responses thereto. |
| 59 | Telephone Call (Missed Call) | 08/23/2024 9:35 AM PDT | Ben Siegel | Steven Floyd | | | | | |
| 60 | Email | 08/27/2024 1:11:28 PM PDT | "Ben Siegel" <bens@hbsslaw.com> | [redacted] | "Ben Harrington" <benh@hbsslaw.com> | How to generate App Password for MSN Email | NO | | Communication from counsel for purposes of providing legal advice related to Defendants' discovery requests and responses thereto. |
| 61 | Email | 08/27/2024 1:13:31 PM PDT | "Ben Siegel" <bens@hbsslaw.com> | [redacted] | | How to generate App Password for GMAIL Email | NO | | Communication from counsel for purposes of providing legal advice related to Defendants' discovery requests and responses thereto. |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A — Communication Type | B — Date Sent | C — From | D — To | E — Cc | F — Subject | G — Has Attachments | H — Attachment Names | I — Privilege Basis for Documents Withheld |
|---|---|---|---|---|---|---|---|---|---|
| 62 | Telephone Call (Missed Call - No Voice Message) | 08/27/2024 7:40 AM PDT | Steven Floyd | Ben Siegel | | | | | Communication relating to, and for purposes of receiving, legal advice related to Defendants' discovery requests and responses thereto. |
| 63 | Telephone Call (Missed Call - Voice Message) | 08/27/2024 7:41 AM PDT | Steven Floyd | Ben Siegel | | | | | Communication from counsel for purposes of providing legal advice related to discovery. |
| 64 | Text Message | 08/27/2024 9:38 AM PDT | Ben Siegel | Steven Floyd | | | | | |
| 65 | Text Message | 08/27/2024 9:39 AM PDT | Steven Floyd | Ben Siegel | | | | | Communication relating to, and for purposes of receiving, legal advice related to discovery. |
| 66 | Telephone Call | 08/27/2024 10:01 AM PDT | Ben Siegel | Steven Floyd | | | | | |
| 67 | Telephone Call | 08/27/2024 1:00 PM PDT | Ben Siegel | Steven Floyd | | | | | Communication relating to legal advice concerning discovery obligations. |
| 68 | Text Message | 08/27/2024 3:19 PM PDT | Steven Floyd | Ben Siegel | | | | | |
| 69 | Telephone Call (Cancelled Call) | 08/28/2024 2:54 PM PDT | Ben Siegel | Steven Floyd | | | | | |
| 70 | Telephone Call (No Answer) | 08/28/2024 2:54 PM PDT | Ben Siegel | Steven Floyd | | | | | Communication relating to legal advice concerning discovery obligations. |
| 71 | Email | 08/28/2024 8:54:52 AM PDT | Steven Floyd [redacted] | Ben Siegel <bens@hbsslaw.com> | | | | | |
| 72 | Letter | 8/30/2024 | Ben Harrington | Steven Floyd | | Amazon-Apple Lawsuit - Court Order Compelling Discovery | YES | (1) Certified Copy of 8/16/2024 Order Granting Defendants' Motion to Compel; (2) Protocol Regarding Discovery of Electronically Stored Information | Communication from counsel for purposes of providing legal advice related to discovery obligations. |
| 73 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/05/2024 7:38 PM EDT | | | | | YES | (1) Certified Copy of 8/16/2024 Order Granting Defendants' Motion to Compel; (2) Protocol Regarding Discovery of Electronically Stored Information; (3) August 30, 2024 Letter from Ben Harrington to Steven Floyd | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 74 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/07/2024 3:18 PM EDT | | | | | YES | (1) Certified Copy of 8/16/2024 Order Granting Defendants' Motion to Compel; (2) Protocol Regarding Discovery of Electronically Stored Information; (3) August 30, 2024 Letter from Ben Harrington to Steven Floyd | |
| 75 | Email | 09/09/2024 5:32:40 PM PDT | "Ben Siegel" <bensi@hbsslaw.com> | "Steven Floyd", "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | (1) 09/06/2024 Letter from Ben Harrington to Steven Floyd; (2) 09/06/2024 Amended Notice of Videotaped Deposition of Steven Floyd | Communication from counsel for purposes of providing legal advice related to discovery obligations. |
| 76 | Letter | 9/10/2024 | Ben Harrington | Steven Floyd | | Amazon-Apple Lawsuit - Deposition Notice For Your Deposition (September 24) | YES | Apple Inc's Amended Notice of Videotaped Deposition of Steven Floyd | Communication from counsel for purposes of providing legal advice related to discovery obligations. |
| 77 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/11/2024 7:43 AM EDT | | | | | YES | (1) Certified Copy of 8/16/2024 Order Granting Defendants' Motion to Compel; (2) Protocol Regarding Discovery of Electronically Stored Information; (3) August 30, 2024 Letter from Ben Harrington to Steven Floyd | |
| 78 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/11/2024 7:47 AM EDT | | | | | YES | Apple Inc's Amended Notice of Videotaped Deposition of Steven Floyd | |
| 79 | Email | 09/12/2024 10:10:35 PM PDT | Ben Harrington <benh@hbsslaw.com> | Ben Siegel <bensi@hbsslaw.com>, Steven Floyd, "Steven Floyd" | | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | NO | | Communication from counsel for purposes of providing legal advice related to discovery obligations and anticipated case filings. |
| 80 | Email | 09/13/2024 5:19:44 PM PDT | Ben Harrington <benh@hbsslaw.com> | Ben Siegel <bensi@hbsslaw.com>, Steven Floyd, "Steven Floyd" | | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | Communication from counsel for purposes of providing legal advice related to discovery obligations and anticipated case filings. |
| 81 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/14/2024 1:56 PM EDT | | | | | YES | Apple Inc's Amended Notice of Videotaped Deposition of Steven Floyd | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Communication Type | Date Sent | From | To | Cc | Subject | Has Attachments | Attachment Names | Privilege Basis for Documents Withheld |
| 82 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/15/2024 7:59 PM EDT | | | | | YES | Apple Inc.'s Amended Notice of Videotaped Deposition of Steven Floyd | |
| 83 | Hand Delivery (Unsuccessful Attempt By Process Server) | 09/18/2024 7:30 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |
| 84 | Hand Delivery (Unsuccessful Attempt By Process Server) | 9/20/2024 10:52 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |
| 85 | Hand Delivery (Unsuccessful Attempt By Process Server) | 9/22/2024 7:45 AM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |
| 86 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/03/2024 7:45 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A Communicati on Type | B Date Sent | C From | D To | E Cc | F Subject | G Has Attach ments | H Attachment Names | I Privilege Basis for Documents Withheld |
|---|---|---|---|---|---|---|---|---|---|
| 87 | Letter | 10/4/2024 | Ben Harrington | Steven Floyd | | Amazon-Apple Lawsuit - Court Order Compelling Discovery | YES | (1) Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington in Support of Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (3) Motion to Seal Portions of Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (4) Apple Inc.'s Response to Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (5) Declaration of Brian G Liegel in Support of Apple Inc.'s Response to Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (6) Amazon's Response to Hagens Berman Motion to Withdraw; (7) Reply in Support of Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington in Support of Reply in Support of Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (9) Motion to Seal Portions of the Declaration of Ben M. Harrington in Support of Reply in Support of Hagens Berman Sobol Shapiro LLP's Motion to Withdraw as Counsel for Plaintiff Steven Floyd | Communication from counsel for purposes of providing legal advice related to discovery obligations and case filings. |
| 88 | Email | 10/04/2024 2:24:33 PM PDT | "Ben Siegel" <bensi@hbsslaw.co m> | "Steven Floyd" ▮▮▮▮▮ "Steven Floyd" ▮▮▮▮▮ | "Ben Harrington" <benh@hbsslaw.com> | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | (1) Reply ISO Motion to Withdraw as Counsel to Steven Floyd; (2) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (3) Motion to Seal Portions of Harrington Declaration; (4) Apple's Response to Motion to Withdraw; (5) Amazon's Response to Motion to Withdraw; (6) Liegel Declaration ISO Apple's Response to Motion to Withdraw | Communication from counsel for purposes of providing legal advice related to discovery obligations and case filings. |
| 89 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/05/2024 3:04 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |
| 90 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/06/2024 7:44 AM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A Communication Type | B Date Sent | C From | D To | E Cc | F Subject | G Has Attachments | H Attachment Names | I Privilege Basis for Documents Withheld |
|---|---|---|---|---|---|---|---|---|---|
| 91 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/08/2024 7:56 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 92 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/09/2024 4:02 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 93 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/10/2024 7:30 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 94 | Email | 10/14/2024 10:52:13 AM PDT | "Ben Siegel" <bensi@hbsslaw.com> | "Steven Floyd" "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | (1) Defendants' Motion for Discovery Sanctions; (2) Declaration of Brian G. Liegel ISO Motion for Discovery Sanctions | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A Communication Type | B Date Sent | C From | D To | E Cc | F Subject | G Has Attachments | H Attachment Names | I Privilege Basis for Documents Withheld |
|---|---|---|---|---|---|---|---|---|---|
| 95 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/15/2024 3:29 PM EDT | | | | | | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 96 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/16/2024 6:15 PM EDT | | | | | | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 97 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/17/2024 8:10 AM EDT | | | | | | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw | |
| 98 | Email | 10/18/2024 11:27:50 AM PDT | "Ben Siegel" <bensi@hbsslaw.com> | "Steven Floyd" "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | NO | | Communication from counsel for purposes of providing legal advice related to discovery obligations and sanctions motion. |
| 99 | Email | 10/21/2024 2:55:46 PM PDT | "Ben Siegel" <bensi@hbsslaw.com> | "Steven Floyd" "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | (1) Response to Motion for Discovery Sanctions; (2) Harrington Declaration ISO Response to Motion for Discovery Sanctions | Communication from counsel for purposes of providing legal advice related to discovery obligations and sanctions motion. |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Communicati on Type | Date Sent | From | To | Cc | Subject | Has Attach ments | Attachment Names | Privilege Basis for Documents Withheld |
| 100 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/22/2024 8:18 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (10) Response to Defendants' Motion for Discovery Sanctions; (11) Declaration of Ben M. Harrington ISO Response to Defendants' Motion for Discovery Sanctions | |
| 101 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/23/2024 4:40 PM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (10) Response to Defendants' Motion for Discovery Sanctions; (11) Declaration of Ben M. Harrington ISO Response to Defendants' Motion for Discovery Sanctions | |
| 102 | Hand Delivery (Unsuccessful Attempt By Process Server) | 10/25/2024 9:36 AM EDT | | | | | YES | (1) Motion to Withdraw as Counsel for Plaintiff Steven Floyd; (2) Declaration of Ben M. Harrington ISO Motion to Withdraw; (3) Motion to Seal Portions of Motion to Withdraw; (4) Apple's Response to Motion to Withdraw as Counsel to Steven Floyd; (5) Declaration of Brian G. Liegel ISO Apple's Response to Motion to Withdraw; (6) Amazon's Response to Motion to Withdraw; (7) Reply ISO Motion to Withdraw as Counsel to Plaintiff Steven Floyd; (8) Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (9) Motion to Seal Portions of Declaration of Ben M. Harrington ISO Reply ISO Motion to Withdraw; (10) Response to Defendants' Motion for Discovery Sanctions; (11) Declaration of Ben M. Harrington ISO Response to Defendants' Motion for Discovery Sanctions | |

Amended Floyd Communications Log - Confidential - Subject to Protective Order

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | Communicati on Type | Date Sent | From | To | Cc | Subject | Has Attach ments | Attachment Names | Privilege Basis for Documents Withheld |
| 103 | Email | 10/29/2024 6:07:08 PM PDT | "Ben Siegel" <bens@hbsslaw.co m> | "Steven Floyd" "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | RE: Amended Notice of Deposition (Floyd v. Amazon et al.) | YES | Defendants' Reply ISO Motion for Discovery Sanctions | Communication from counsel for purposes of providing legal advice related to discovery obligations and sanctions motion. |
| 104 | Email | 10/30/2024 10:13:05 AM PDT | Ben Siegel, forwarding invite from: "Diyana Staples" <Diyana_Staples@w awd.uscourts.gov> | "Steven Floyd" "Steven Floyd" | | FW: C22-01599-KKE Floyd v. Amazon.com Inc et al - Oral Argument | YES | Calendar Invite for 11/5/2024 Hearing | |
| 105 | Email | 10/30/2024 10:22:59 AM PDT | "Ben Siegel" <bens@hbsslaw.co m> | "Steven Floyd" "Steven Floyd" | "Ben Harrington" <benh@hbsslaw.com> | FW: 2:22-cv-01599-KKE Floyd v. Amazon.com Inc et al - Oral Argument | NO | | |

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

STEVEN FLOYD,

            Plaintiff,

v.

AMAZON.COM, INC., et al.,

            Defendants.

)  CASE NO. C22-01599-KKE
)
)  Seattle, Washington
)
)  April 30, 2024
)  10:00 a.m.
)
)  DISCOVERY CONFERENCE
)  and MOTION TO AMEND
)
)  via Zoom
)

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE KYMBERLY K. EVANSON
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:


  For Plaintiff Floyd:     STEVE W. BERMAN
                               Hagens Berman Sobol Shapiro LLP
                               1301 Second Avenue, Suite 2000
                               Seattle, WA 98101

                               BENJAMIN SIEGEL
                               BEN HARRINGTON
                               Hagens Berman Sobol Shapiro LLP
                               715 Hearst Avenue, Suite 300
                               Berkeley, CA 94710

  For Defendant          JOHN GOLDMARK
  Amazon.com Inc.:       Davis Wright Tremaine
                               920 Fifth Avenue, Suite 3300
                               Seattle, WA 98104

                               BENJAMIN M. MUNDEL
                               Sidley Austin
                               1501 K Street NW, Suite 600
                               Washington, DC 20005

```
For Defendant         ERIC SHAUN HOCHSTADT
Apple, Inc.:          Weil Gotshal & Manges
                      767 5th Avenue
                      New York, NY 10153

                      BRIAN LIEGEL
                      Weil Gotshal & Manges LLP
                      1395 Brickwell Avenue, Suite 1200
                      Miami, FL 33131

                      MARK STEVEN PARRIS
                      Orrick Herrington & Sutcliffe LLP
                      401 Union Street, Suite 3300
                      Seattle, WA 98101


Reported by:          NANCY L. BAUER, CCR, RPR
                      Federal Court Reporter
                      700 Stewart Street, Suite 17205
                      Seattle, WA 98101
                      nancy_bauer@wawd.uscourts.gov
```

```
 1                          PROCEEDINGS
 2     _____

 3          THE CLERK:  Please come to attention.

 4      The United States District Court for the Western District

 5   of Washington is now in session, the Honorable Judge Kymberly K.

 6   Evanson presiding.

 7      Now calling Case C22-01599, assigned to this court, Floyd

 8   versus Amazon.com, Incorporated.

 9      May I have appearances, please.

10          MR. BERMAN:  Good morning, Your Honor.  Steve Berman

11   on behalf of the plaintiffs.

12          MR. HARRINGTON:  Good morning, Your Honor.  Ben

13   Harrington on behalf of the plaintiffs.

14          MR. GOLDMARK:  Good morning, Your Honor.  On behalf of

15   Amazon, John Goldmark, with Davis Wright Tremaine, and also

16   joining, we have Ben Mundel and Jon Dugan from Sidley, and then

17   for the client representatives, in-house counsel, Scott

18   Fitzgerald and Carolyn Jones.

19          MR. PARRIS:  Good morning, Your Honor.  Mark Parris on

20   behalf of Apple, together with me is Eric Hochstadt, Mark Perry,

21   Geneva Hardesty, Brian Liegel from Weil Gotshal, and in-house

22   representatives Javier Ortega-Alvarez and Justin Coggins.  Thank

23   you.

24          THE COURT:  Good morning, everyone.  Thank you for

25   making yourselves available this morning on Zoom.  We have
```

1    several matters pending, and I want to start with the couple of

2    housekeeping issues.  I'm not sure who is going to be presenting

3    argument for the court this morning, but when you do, because we

4    do have so many people on the line, it's a little harder to keep

5    track of who is who than when we're actually standing in the

6    courtroom, so if you could please just identify the party for

7    whom you're speaking, that will help me and the court reporter.

8         So we have several motions and disputes pending before us

9    this morning, and I think it makes the most sense for us to

10   start with the motion to amend.

11        Plaintiffs have asked to amend based on losing contact with

12   their named plaintiff.  And so I will hear from the plaintiff on

13   that.  And then we can transition into talking about some of

14   these discovery disputes, as well as case scheduling as a whole

15   and how we can move this matter forward.

16        So it is your motion, plaintiffs, so I will go ahead and

17   begin hearing from the plaintiffs on the motion to amend.

18        MR. BERMAN:  Your Honor, may it please the court,

19   Steve Berman on behalf of the plaintiffs.

20        As you noted, this is a motion to amend.  The standards for

21   amendment are extraordinarily liberal, and the circumstances

22   here are not unique, that we lost track of a class

23   representative.  Courts, in these circumstances, have freely

24   allowed amendment, certainly at this early stage.

25        We've cited to you four instances where this has come up in

1    the Western District of Washington.  Interestingly, four

2    different judges all reached the same conclusion that allowing

3    substitution of class representatives was appropriate.

4         And in the *Kirby* case, Judge Settle, kind of, addressed

5    what the defendants are doing here, which is attack the adequacy

6    of the existing plaintiff and the new plaintiffs, and Judge

7    Settle found that that's a Rule 23 issue, not a Rule 15 issue.

8    And we submit that those cases are properly decided and are

9    instructive.  They're, obviously, not binding of you.  And

10   defendants have no way of distinguishing those cases.

11        So what they've done, Your Honor, is they've cited a case

12   called *Lidie* -- L-i-d-i-e, for the court reporter -- and that

13   case is a 50-year-old case.  We tried to find the briefs to see

14   what was really going on in that case, and as far as we could

15   tell, the posture of that case was such that class certification

16   had already been decided, and the plaintiffs tried to add a new

17   class representative.  The defendants pointed out that that

18   class representative was not in the class.  So at that stage, I

19   fully understand why the court was dealing with it.  We're not

20   at that stage.

21        And, in fact, there's a case called *Briggs v. Pace

22   American*.  It's a Ninth Circuit case where the court held it was

23   reversible error not to allow recertification of substitution.

24        So under Rule 15, given the liberal standards and given

25   that we've met all the criteria, we would ask that the court

April 30, 2024                                                          6

1    grant our motion.

2         And, really, I think it's pretty clear from the briefs, and

3    so unless you have any questions, I have nothing further to say

4    at this point.

5         THE COURT:  Thank you, counsel.

6         I'll go ahead and hear from defendants on this issue,

7    please.

8         MR. HOCHSTADT:  Good morning, Your Honor.  Eric

9    Hochstadt, of Weil, for Apple.  I'll be addressing, for both

10   defendants, why this motion to amend should be denied.

11        The motion filed by plaintiff's counsel and not the

12   plaintiff in this chase should be denied on this record, Your

13   Honor, because the sole named plaintiff, Steven Floyd, has

14   absconded from a case that he was never qualified to bring.

15        I'd like to make three simple points, Your Honor.

16        First is, this isn't an ordinary motion.  Most basic rule

17   of litigation requires an actual case or controversy between the

18   actual plaintiff and the actual defendants, not plaintiff's

19   counsel and the defendants.

20        And then if you go to the controlling test under the Ninth

21   Circuit, and *Lidie* is the controlling test -- there's no dispute

22   between that on the parties for a pre-class certification

23   amendment -- the motion filed by plaintiff's counsel fails

24   because it would result in an impermissible backdoor attempt to

25   start anew, once Mr. Floyd had to participate in the discovery

1    process and prove up his allegations.

2        And even if you can get around -- if plaintiff's counsel

3    can get around the controlling Ninth Circuit test, they still

4    have to satisfy the Federal Rules of Civil Procedure, which

5    Mr. Berman didn't address at all.  And under the Federal Rules

6    of Civil Procedure, Rule 16 controls here.

7        There's no good cause for a second amendment in this case.

8    And even if Your Honor were to apply the Rule 15 factors,

9    plaintiff's counsel's long delay of over a year, the clear

10   prejudice to defendants, no prejudice to Mr. Floyd, who can

11   continue with the case if he chooses to do so, and the motion

12   that I'll get to, Your Honor, respectfully, doesn't meet the

13   good-faith test that's required as part of the factors, on this

14   record, should be denied.

15       So if I may, Your Honor, just to, sort of, start, in

16   terms of -- there were a lot of references in the briefing,

17   including in Mr. Berman's presentation, that, you know, it's a

18   liberal standard in terms of amendment, you know, and this is

19   somehow unprecedented or the like.

20       This is not a motion to withdraw Mr. Floyd.  It's not a

21   motion to substitute Mr. Floyd.  This is a motion to amend the

22   operative pleading a second time, with Mr. Floyd, apparently,

23   continuing as the lead plaintiff, and they proposed two other

24   plaintiffs.

25       Neither the defendants nor this court has any indication,

1    on this report record, if plaintiff's counsel has informed

2    Mr. Floyd, in any way, about the filings that have been made in

3    this case.  On this record, we do not know if Mr. Floyd has been

4    sent, seen, reviewed any of the filings, including a proposed

5    pleading that he's supposed to be making allegations on and be

6    the lead plaintiff on.

7        So as far as we know on this record, Your Honor, before the

8    court, for three and a half months there's been no contact.

9        And I was curious if, before this argument, there would be

10   some supplementation of the record, or if Mr. Berman would

11   address what efforts, if any, have been made to get in touch

12   with their client, in terms trying to meet with Mr. Floyd, and

13   the like.  I'm sure they know where he is.  We know where he is,

14   from his public Facebook account.  We've heard nothing on this

15   record, Your Honor.  And that really puts this case -- I'll get

16   to -- really far afield from *Kirby* and all the other cases that

17   they're talking about.

18       So right now, as Your Honor knows, we have an individual

19   suit between Mr. Floyd and Apple and Amazon with proposed class

20   allegations.  And as Your Honor knows, putative class claims

21   before certification are very different than once a class is

22   certified.  For example, Your Honor knows Federal Rule of Civil

23   Procedure 23 would allow resolution of an individual claim

24   without court approval, because it's not a class-wide

25   settlement.

1          So plaintiff's counsel are not the actual plaintiff in this

2     case, it is Mr. Floyd.  And since they've lost touch with

3     Mr. Floyd, there have been filings purportedly made on his

4     behalf.  We have engaged in meet-and-confers involving

5     discovery, a number of them, during the past three and a half

6     months.  And at the most basic level, this has to be a case

7     between parties, not between class counsel -- between proposed

8     class counsel and Apple and Amazon.

9          And that gets to my last point, which is, they are just

10    Mr. Floyd's counsel.  The court has not approved them as class

11    counsel yet.  We are not at that stage.  So this is just an

12    individual suit, and this is why it matters, and I'll pivot to

13    the test.

14         Because defendants, we've been spending a lot of time and

15    resources, with businesspeople and the like, going through the

16    paces on discovery that they've served, and neither this court

17    nor defendants know what happened to the only plaintiff -- they

18    chose to bring this case with one plaintiff and continue with

19    one plaintiff.

20         We have no idea what happened to this plaintiff, and we

21    know, Your Honor, from our records -- which we put and have been

22    unrebutted on this record -- we know that this plaintiff cannot

23    support the core allegation in this case, which defies common

24    sense, which is that a consumer who wants to buy a new iPhone or

25    new iPad doesn't shop on Apple.com, doesn't go to an Apple

1     store, doesn't go to a big-box retailer, like Target, or doesn't

2     go to a cell phone carrier, like T-Mobile.

3          And on those circumstances, this fits right within the

4     *Lidie* circumstances and the controlling test of what looks to be

5     a backdoor attempt to start a case anew, and that's improper.

6          So if I can turn to *Lidie*, Your Honor, because that's where

7     the disagreement is, it is the controlling case.  Mr. Berman

8     mentioned the *Kirby* case.  That doesn't help them.  *Kirby*

9     follows *Lidie* and embraces *Lidie*.  There's no doubt that *Lidie*

10    is the controlling case here.

11         And in *Lidie*, it affirmed the denial of intervention,

12    notwithstanding what Mr. Berman described was a liberal grant of

13    a motion to intervene.  And it did so -- and this is at 478 F.2d

14    552 at pincite 555, Ninth Circuit 1973, and the Ninth Circuit

15    affirmed the denial of intervention.  Quote, Where the original

16    plaintiffs were never qualified to represent the class, a motion

17    to intervene represents a backdoor attempt to begin the action

18    anew, and need not be granted.

19         This is very important, Your Honor, because our position is

20    that, before they brought this case on behalf of Mr. Floyd back

21    on November 9th, 2022, they should have known what Mr. Floyd's

22    purchase history was.  We put this in the record and it's

23    unrebutted that he purchased iPhones from -- not from Amazon --

24    all of them from cell phone carriers and other places.  They

25    should have known it then, and certainly as the case progressed,

April 30, 2024        11

1    Your Honor -- because I appreciate Your Honor didn't have the

2    case at the outset -- but the defendants filed a motion to

3    dismiss, and the motion to dismiss tested their market

4    allegations, and their market allegations here are based on this

5    artificial proposed class of only people who buy new iPhones or

6    iPads from the Buy Box on Amazon.com.  That's who Mr. Floyd

7    purports to represent.

8         And defendants filed a motion to dismiss challenging those

9    market allegations.  They chose to amend, in response to that,

10   to address those market deficiencies and the like.  So they

11   knew.  They'd been on notice the whole way through.  This wasn't

12   like *Kirby*, where a defense about a purported inadequacy came up

13   very late in the day.  And so that completely distinguishes the

14   *Kirby* case, contrary to what Mr. Berman mentioned.

15        They have known from the outset of the case that

16   Mr. Floyd's purchasing behavior would be critical, and certainly

17   when we filed our motion to dismiss back in February of last

18   year, and they chose to amend.

19        And then, Your Honor, if that wasn't enough, once the court

20   resolved the motion to dismiss, at that point, they knew that

21   part of their claim was not going forward.  Part of their claim

22   was the agreement itself is illegal and they don't have to prove

23   anything more than that.  The court rejected that.  That claim

24   is dismissed.

25        In early June, the claim that the court allowed to go

1    forward was that Mr. Floyd would have to show an effect on the

2    market that he alleges.  That's the claim they have to go

3    forward with.  And notwithstanding knowing that, at that point,

4    June 8th of last year, that that would be the core focus of the

5    case, and that key core allegation -- right? -- that people

6    don't shop for new iPhones and new iPads at all these other

7    places, they chose to continue this case with Mr. Floyd, they

8    chose not to put in anything to the scheduling order to have a

9    deadline for new plaintiffs or the like.  So they've been on

10   notice of the relevant mark in this case being a critical, a

11   gating issue.  They've known that all along.

12        And it's unrebutted on this record, Your Honor, before the

13   court, that no iPhone that Mr. Floyd has purchased, no new

14   iPhone has been through Amazon.  They've been through all the

15   other channels that they claim are not in the market.

16        And in terms of the one iPad that they claim was bought on

17   Amazon, Mr. Floyd's allegations that say that cell phone

18   carriers allow you to buy not just iPhones but tablets, like

19   iPads.  So he admits in his complaint that the very place where

20   the record shows he's made most of his purchases is also where

21   you can get iPads.

22        So this is the one plaintiff they chose to bring the case

23   and continue the case with, and he was never qualified to

24   represent the putative class, Your Honor.

25        And I would -- I would encourage Your Honor to take a look

1    at *Castillo* -- I'm sorry -- at *Velazquez v. GMAC*.  It's 2009

2    Westlaw 2959838.  It's Central District of California September

3    2009.  It is cited and reinforced in *Castillo*, which is a

4    Western District of Washington case.

5         In that case, Your Honor, the court applied *Lidie*, and it

6    denied amendment because it was -- it was a Truth in Lending Act

7    case, Your Honor, and the named plaintiffs were challenging a

8    mortgage disclosure, and it turned out in deposition that the

9    named plaintiffs did not read or understand English, and they

10   didn't ask for a translated version, and so it turns out, from

11   the deposition discovery, that they were never qualified to

12   represent a proposed class of purchasers, claiming that a

13   mortgage disclosure deceived them that they didn't read and

14   couldn't understand, and that came out as a result of a

15   deposition.

16        And I'll get to this in a minute, Your Honor, but we have

17   asked plaintiff's counsel for a deposition of Mr. Floyd, and we

18   have not been given that, and they said, When we regain contact

19   with him, you can have that deposition.

20        I submit to Your Honor, on this record, the *Lidie* case and

21   the *Velazquez* case, which follows and embraces *Lidie*, and all

22   the cases that Mr. Berman mentioned from the Western District of

23   Washington embrace the *Lidie* principle, that Mr. Floyd, based on

24   this record and his purchase history, he was never qualified to

25   represent this putative class.  So on *Lidie* alone, the motion

1    should be denied.  But --

2           THE COURT:  Counsel, I'm sorry to interrupt you, but

3    do I have to determine his adequacy now in order to follow

4    *Lidie*?  Because *Lidie* had a class, a certified class, right?

5           MR. HOCHSTADT:  So it -- actually, Your Honor, I have

6    a disagreement with Mr. Berman about the *Lidie* decision.

7         And, there, what the court -- what happened there was --

8    the case was dismissed, from what you can -- from the Ninth

9    Circuit decision.  It was dismissed.  And what the Ninth Circuit

10   said was, actually, there is a claim that could be brought here,

11   maybe for damages.

12        But on injunctive relief, this is what *Lidie* was asking.  I

13   think it was a food stamp case, Your Honor.  And what *Lidie* said

14   was, for the injunctive relief portion of this, the named

15   plaintiffs there appear to be unusual; in particular -- and this

16   is at 478 F.2d 552, and this is at pincite 555.

17        The Ninth Circuit there said, "The situations of the

18   original plaintiffs, Cooley, Lidie, and Jordan, appear to be

19   unusual.  Cooley was not eligible for food stamps at all because

20   he ate a majority of his meals in restaurants."

21        So even though the food that he purchased sometimes was

22   from restaurants -- from places that would qualify for food

23   stamps, the majority of where he purchased food was at

24   restaurants, which did not qualify for food stamps.

25        And so in that circumstance, the Ninth Circuit said even if

1    there could be a class here, these folks could not be, and so

2    we'll reinstate this case for purposes of a damages class, but

3    for injunctive relief, these folks are unusual, and a motion to

4    amend at this point, to start with somebody new, appears to be a

5    backdoor attempt to start anew, and that's exactly what's gone

6    on here.

7        And, Your Honor, if I can give you one other decision,

8    because it came up, in particularly, on reply, where they said

9    this is very unusual and we're asking Your Honor to look at

10   adequacy prematurely.

11       In the *Broiler Chicken Antitrust Litigation*, where

12   Mr. Berman is co-lead counsel for the end-user plaintiffs -- the

13   case cite is 2020 Westlaw 13228717, and at pincite 1, that was a

14   case where they sought to represent consumers, and under the

15   antitrust laws, for consumers to have standing, you need a

16   representative from each state.

17       In that case, they made the same argument, and the Northern

18   District of Illinois rejected it there, and what the Northern

19   District of Illinois said, and I'll quote, "The end users" --

20   that's who Mr. Berman represented -- "argue their motion to

21   amend is not the appropriate time to litigate adequacy, but the

22   court disagrees to the extent that issues of adequacy underlie

23   an assessment of whether the end users acted diligently; since

24   the end users have not provided a robust explanation for why the

25   three named plaintiffs no longer want or no longer are able to

1  serve or describe their own actions in response, the court

2  cannot say whether the end users have acted diligently."

3  So in that case -- now, that was in the context of the Rule

4  15 diligence-delay factor, which I'll get to, Your Honor -- but

5  it goes to the point that this has come up, and the fact that it

6  may not come up so often in antitrust cases, I will submit, Your

7  Honor, I have been working on antitrust class actions for over

8  20 years, this is the first case in my career where an antitrust

9  class action was brought with one named plaintiff.

10  And Mr. Berman and Hagens Berman bring a lot of class

11  action cases, and they bring a lot against our clients, and I

12  will submit to you that the majority -- in the majority of those

13  cases, they have more than one named plaintiff, because things

14  like this happen.

15  And I'll get to that in the Rule 15 factors, but just in

16  terms of the *Lidie* test, there's no dispute on this record that

17  Mr. Floyd and his purchase history, he is not somebody who is

18  qualified to represent this class.  He never bought an iPhone

19  through Amazon, and the one iPad -- he admits that you can get

20  iPads at cell phone stores, which is where over a dozen of his

21  iPhone purchases are.

22  So this is somebody that, with basic due diligence from the

23  outset of the case, and certainly in response to our motion to

24  dismiss and the court's ruling, they should have tried to add

25  somebody at that point.  They did not.  So that's -- and they're

April 30, 2024          17

1   trying to start anew now.  So that's the *Lidie* test.

2       And I can briefly just pivot to the Rule 16 and 15 factors,

3   Your Honor?

4       So Rule 16 should govern here.  The good-cause standard is

5   what should apply.  They have amended already.  There's no

6   dispute about that.  And the schedule that the court, including

7   Your Honor, entered does not contemplate a second amendment or a

8   deadline for any parties.

9       And, again, they're very experienced class counsel.  They

10  know that these issues can come up.  They chose not to do that.

11  That was their choice.  Defendants are not to blame for that.

12      So in terms of Rule 16, they should fail on that basis.

13  There's no good cause.

14      But even if Your Honor went to the Rule 15 factors, there's

15  five of them.  They've already amended, so one of them is met.

16      If Your Honor goes to delay, I think I've pretty much, kind

17  of, covered, I would say, most of the points there; that, if

18  anything, if they were going to try and bring in some other

19  people, they should have done that far earlier in the case.

20      The issues about Mr. Floyd and his purchase history, they

21  should have known at the outset, when it was brought 16 months

22  ago.  And, certainly, when we filed our motion to dismiss, they

23  don't cite a single case where delay is excused more than three

24  or four months.  And by any proper starting point here -- not

25  from when they lost touch with Mr. Floyd, that's an artificial

1    starting point, in January of this year -- from any appropriate

2    starting point, when we put them on notice that the market

3    definition was going to be a critical issue from back in

4    February of last year, which completely distinguishes *Kirby*.

5    Again, there, the defendants, you know, came up with a belated

6    defense in a disparate employment claim, to say, well, different

7    offices might treat people differently, so they had to add

8    plaintiffs, in response, from different offices.  So that takes

9    care of *Kirby*.

10         But in this case, they've known that the market definition

11    didn't make any sense, certainly to defendants, and that that's

12    an issue that we're going to push.  So they'd been on notice

13    this whole way through.

14         And from a delay standpoint, there's no case that they can

15    cite where more than three or four months is excusable.  We

16    cited a number of cases where, six months or more -- *Velazquez*,

17    the case I mentioned, *Velazquez v. GMAC*, that's one where even

18    when they went to the Federal Rules of Civil Procedure factors,

19    six months was the delay there, and that was long enough.  We're

20    well beyond that.  February of last year, we're over a year from

21    that point.

22         THE COURT:  Counsel, you referenced February of last

23    year, and is that because that's the time at which your motion

24    was filed?

25         MR. HOCHSTADT:  Yes.  And then they chose to amend and

1    tried to add some allegations.  They didn't try to add a named

2    plaintiff.  So they'd been on notice of this issue.  And,

3    respectfully, I submit, they're experienced counsel in these

4    antitrust cases.  They knew that, if they're going to go with

5    one plaintiff, their purchase history is going to be very

6    relevant from the very outset of the case.

7         And as Your Honor knows -- I mean, this is, sort of,

8    black-letter class cert law.  The *Falcon* case, which we cited,

9    which is 457 U.S. 147 at 156 1982, quote, A class representative

10   must be part of a class and possess the same interest and suffer

11   the same injury as the class members.  That was at page 5 of our

12   opposition.

13        Similarly, we cited this *Conrad v. Jimmy John's Franchise*

14   case, 2021 Westlaw 3268339 at pincite 10-11, it's the Southern

15   District of Illinois, July 30, 2021, and what the court said

16   there was, "Common proof of actual injury to each class member

17   requires that all class members operate in the same relevant

18   market; otherwise, they could not be affected in a common manner

19   by the challenged conduct."  Our brief at page 5.

20        That's exactly why the purchase history of Mr. Floyd is so

21   relevant on this record, because it shows that he -- he clearly

22   was not locked in to Amazon.com to buy a new iPad, and he never

23   bought a new iPhone from there, and so he certainly doesn't

24   possess the same injury, which goes back to *Lidie*.  He was never

25   qualified to represent the class.

1        As to prejudice, I'd just say there, Your Honor, I mean,

2    defendants have been busily working for months, interviewing

3    businesspeople, you know, negotiating search terms, custodians,

4    gathering data and the like.  We've been put through the paces

5    on this case, and it turns out we're being forced to litigate

6    against plaintiff's counsel and not the actual plaintiff who

7    sued them, and that's not proper, that's not fair under the

8    Federal Rules of Civil Procedure.

9        There's no prejudice to Mr. Floyd.  If the motion is

10    denied, he can continue to prosecute this case, assuming he

11    wants to do so.

12        And as to the proposed intervenors, there's no prejudice to

13    them.  They can bring a case if they want to bring a case.

14        Just -- just because it's one of the factors.  They call it

15    bad faith.  I'm not going to say that as a factor.  Just in

16    terms of the not meeting, I'll say, the good-faith test, these

17    are sophisticated class counsel, as I mentioned.  They know the

18    risk when you bring a case with one named plaintiff, and they

19    plowed ahead at every point in the case, when they knew what the

20    issues were going to be central to this case; that their core

21    allegation defied common sense.

22        And I will just say, just so that it's in the record, I

23    mean, when they filed the motion, Your Honor -- and this is at

24    page 4 of their opening brief, Docket No. 80 -- they speculated

25    that maybe their client had some type of personal emergency.

1    Right?

2         Your Honor, we put in -- and this is a Perry declaration --

3    Exhibit S.  We submitted that on February -- we found a post

4    from February 23, before they filed their motion, that very much

5    suggests that there was no personal emergency.  And all I'll

6    say, Your Honor, is, we've checked his public Facebook page

7    since then, and there's no suggestion of that that's fair on

8    this record.  So I submit they don't meet that factor as well.

9         And if Your Honor wants me to address futility, I can do

10   that.  I think that, you know, Your Honor, at best, that is a

11   neutral factor.  So four of the five factors are in our favor

12   for denial under Rule 15, if you can get beyond Rule 16.

13        But, Your Honor, it underscores the point.  If it's not

14   futile, then they have found some really unique plaintiffs who,

15   apparently, when they want to buy a new iPhone or a new iPad,

16   don't go to Apple.com, don't go to Apple, a brick-and-mortar

17   store, don't go to Best Buy, Target, Walmart or the like, or

18   don't use a cell phone carrier, in which case it underscores --

19   back to *Lidie* -- that they're trying to do an impermissible

20   backdoor attempt to begin anew with people who, apparently, are

21   very different than Mr. Floyd, and that's not the way the

22   process is supposed to work.

23        So, respectfully, to wrap up, Your Honor, we think this

24   motion to amend should be denied.  Again, Your Honor, at a

25   minimum, it should be deferred to Mr. Floyd's deposition so that

1    we can -- like in the *Velazquez* -- show the court that he was

2    never qualified to represent this proposed class.

3          And, look, if they want to -- if their proposed intervenors

4    want to bring a new lawsuit, they can do that, and defendants

5    have due process rights and remedies under the Rules of Civil

6    Procedure, and we can't be deprived of that.

7          And I'll stop there, Your Honor.

8          THE COURT:  Counsel, what about intervention?  Why

9    couldn't these proposed additional plaintiffs intervene at this

10   point?

11         MR. HOCHSTADT:  So, Your Honor, a couple of answers to

12   that.

13         I mean, it goes back to *Lidie*, that there shouldn't be

14   this, sort of, backdoor attempt to, sort of, start anew with new

15   people, maybe, who, presumably, they think have a better

16   purchase history and might be better plaintiffs.

17         And I suspect -- I would say, Your Honor, what would be a

18   true -- I'll just say, wouldn't be an efficient use of

19   litigation.  And it certainly wouldn't be fair to litigate a

20   case for 16 months, where they chose to proceed with one named

21   plaintiff who had a purchase history that defies common sense

22   and doesn't meet the allegations that he needs to prove, to then

23   find other people, and then if, lo and behold, Mr. Floyd drops

24   out of the case, and then we hear we can't get discovery of him.

25   That's not -- that's not a proper and fair way for litigation to

1    proceed.

2         And beyond that, Your Honor, I mean, we haven't had

3    discovery of these intervenors.  We don't know if their claims

4    will be just as futile, because their purchase history is

5    certainly circumspect, like Mr. Floyd's is.  So they're not in

6    this case yet, so we haven't done any of that.  But for those

7    two reasons, at least, just as a matter of, sort of, basic

8    fairness and the like, you know -- and then we don't have their

9    information.

10        And I will say, Your Honor, it was addressed in the

11   briefing at -- you know, I don't think this motion is the place

12   for it because it's not fully briefed, and certainly it would be

13   our motion.  I mean, we have rights under the Federal Rules of

14   Civil Procedure.  If they bring a new case, we're entitled to

15   file a motion to dismiss, if we believe that's appropriate.

16        And, obviously, we're not relitigating or we're not trying

17   to do things like that, but there are serious statute of

18   limitations issues, I'll just say, Your Honor, that deserve fair

19   and proper consideration by the court on a full record.  And

20   it's not proper to use intervention to circumvent our Rule 12

21   rights in response to a new lawsuit.

22             THE COURT:  So what would preclude you from filing

23   additional dispositive motions, then, at that point, in the

24   event that there were new parties that intervened?

25             MR. HOCHSTADT:  Well, Your Honor, I mean,

1  respectfully, that's going to get towards a case management

2  issue in terms of, well, is Mr. Floyd continuing, is he sitting

3  for deposition, are we being put through the paces of discovery

4  while we're now filing a motion to dismiss as to two other

5  people?  It just gets very confusing, as opposed to just having

6  a clean --

7      Mr. Floyd brought this case as one plaintiff.  The

8  plaintiff's counsel chose to do that, and continued to choose to

9  do that over the course of 16 months.  Right?

10     And if they want to file a new lawsuit with a couple of new

11 plaintiffs, they're free to do so, and we can deal with that in

12 the proper and ordinary course.  But then from a case management

13 perspective, we won't have a case that's on -- not even on two

14 tracks, but it will be two almost inconsistent tracks.

15         THE COURT:  Okay.  I understand, counsel.  Thank you.

16     Mr. Berman, do you want to respond?

17         MR. MUNDEL:  Your Honor, this is Ben Mundel from

18 Amazon.  May I have just two minutes?

19         THE COURT:  Yes.

20         MR. MUNDEL:  At the appropriate time, Your Honor.

21         THE COURT:  Yes, that's fine.  Go ahead.

22         MR. MUNDEL:  I just wanted to make two, kind of,

23 unique points from my colleague Mr. Hochstadt.  The first goes

24 to your last question, Your Honor, about, you know, what is this

25 motion, really.

1       And it seems to us that, in essence, this is a motion to

2    withdraw by Mr. Floyd.  They haven't been able to get in contact

3    with him.  They haven't produced any documents, answered any

4    interrogatories, or allowed him to sit for a deposition.  So

5    this a very unique case because, in essence, if this motion's

6    granted, I suspect we'll see a motion to withdraw shortly

7    thereafter.

8       So it seems to us what really should happen is, when the

9    plaintiff -- when the party to a case is no longer willing to

10   prosecute that case, the correct procedure would be for

11   plaintiff's counsel to voluntarily dismiss that case.  If they

12   want to bring a new case with different plaintiffs, that can be

13   done, subject to all of the defenses that are available to a

14   case by new plaintiffs.  But what should not be permitted is to

15   use this as an end run to extinguish potentially valid defenses

16   that the defendants have.

17      To your second -- your earlier question about does the

18   court have to decide adequacy, I think the answer to that is, as

19   Mr. Hochstadt said, the law permits the court to decide adequacy

20   now, but you don't have to do it to decide this motion in favor

21   of the defendants.

22      And that's because, based upon -- you have to decide the

23   plaintiffs have met their burden to show, under *Lidie*, that the

24   original plaintiff was a legitimate plaintiff who could have

25   brought this case.  But based upon the evidence that we've

1    obtained and submitted to the court, without any discovery from

2    them, it certainly is a prima facie case that Floyd is not an

3    appropriate plaintiff, he's not an adequate plaintiff.

4        As you know, his entire case depends upon him showing that

5    there's a separate and distinct market for iPhones and iPads at

6    online marketplaces like Amazon.  And it defies common sense to

7    have that market, but the actual evidence from Mr. Floyd's

8    purchasing history disproves it dispositively.

9        He purchased a dozen iPhones from cell phone carriers and

10   other providers not on Amazon.  So he will be facing a unique

11   defense.  He will have an irreconcilable conflict with the rest

12   of the class.

13       So based upon that evidence, at the very least, the burden

14   shifts to them to try to prove that he was sufficient to begin

15   with, and the fact that he's not producing documents,

16   answering interrogatories, or sitting for a deposition certainly

17   suggests to us that he's not an appropriate or an adequate class

18   representative.

19       Thank you.

20           THE COURT:  And so how does the court and through what

21   mechanism does the court evaluate adequacy at this point in the

22   proceeding?

23       I mean, it sounds like, from both defendants, that, under

24   the *Lidie* case, it's your position that the court does have some

25   ability to consider adequacy, but on what record?  I mean, I

1  think the parties agree it's not really fully briefed at this

2  point.

3         MR. HOCHSTADT:  Your Honor, that's a fair point, and I

4  would give two responses to that:  One is, we've given you the

5  best we can do.  Presumably, plaintiff's counsel have done their

6  investigation of their client.  They could have come forward

7  with something to rebut it.  Zero on this record; nothing.

8       And then on top of that, if Your Honor was even inclined

9  to, sort of, go that route, like the *Velazquez* case, that person

10  should sit for deposition so that this can be decided on a more

11  fulsome record.  If he's not going to do that, then, as

12  Mr. Mundel said, maybe the appropriate, you know, course under

13  the rules, maybe the ethical rules, is it has to be dismissed at

14  that point.

15         THE COURT:  All right.  Thank you.

16       Mr. Berman?

17         MR. BERMAN:  Thank you, Your Honor.

18       First, I want to refocus, really, on something that has not

19  been discussed at all by counsel.

20       This is a motion to file an amended complaint.  In the

21  amended complaint, we would add plaintiffs -- right? -- whose

22  allegations would be taken as true, at this stage in the case,

23  that they bought products within the relevant market.

24       And the substitution of class representatives has been

25  widely approved in this district, and they don't even attempt to

1    deal with these cases.

2         In the *Fife* case, F-i-f-e, the court granted leave to amend

3    where the existing -- and add new class representatives, where

4    the existing representative had, quote, informed their counsel

5    that she had grown tired of the case and fell out of contact.

6    Fell out of contact.  The exact same thing we have here.

7         In the *Castillo* case, leave was granted to substitute new

8    class representatives, where the existing representatives,

9    quote, had been unreachable.  That's exactly what we have here.

10        In the *Chao* case, C-h-a-o, the existing class

11   representatives were allowed to substitute out when they no

12   longer wished to participate.

13        And in the *Kirby* case, again, four new class

14   representatives were allowed to amend in, and the judge there

15   addressed the same argument that is being made here.  First of

16   all, that argument is not being made with respect to new

17   plaintiffs.  All they talk about is Mr. Floyd not being

18   adequate, and they want to test that now, but not a word was

19   said about the new plaintiffs, and so they're adequate and they

20   should come in.

21        But, again, the court in the *Kirby* case said, Look, that's

22   an issue for the adequacy, and the adequacy of a class

23   representative is tested on the Rule 23 motion, not on a motion

24   to amend, and that's the same stage that we're at here.

25        They talk about the *Velazquez* case, V-e-l-a-z-q-u-e-z.  The

amendments there were denied, or the substitution was denied after they wanted to add three new defendants and three new theories that were never mentioned in the original complaint.

The class representatives here are asserting the exact same claims, the exact same facts that Judge Coughenour has already upheld in the motion to dismiss.

Now, a lot of talk today of counsel about somehow we should have known that Mr. Floyd was not qualified and we let this case go on, and he's not qualified.

Well, first of all, he is qualified.  The challenge they make was rejected by Judge Coughenour in his motion to dismiss. We, in the motion to dismiss, acknowledged that people can make purchases outside the markets -- of the market that we've defined.  Judge Coughenour recognized that, but he said that that was no basis not to recognize the market, and he denied the motion to dismiss on those grounds.

So according to Judge Coughenour, Mr. Floyd was adequate, even if he purchased outside the market.  That finding by Judge Coughenour, that the market we defined is adequate, is the law of the case.  So we had no reason to suspect -- and we still don't -- that there's anything going wrong with Mr. Floyd.  So there's been no improper conduct in that regard.

And there's no reason that we should have added a new plaintiff, as they suggested, months ago, when we were in touch with Mr. Floyd until January of this year.

1           Now turning to the other Rule 15 factors.

2           When we found out in January -- or we had trouble reaching

3     Mr. Floyd in January, we immediately began to cure that issue.

4     So by February of this year, once we found out we couldn't find

5     Mr. Floyd, or we couldn't get in touch with him, we reached out

6     to defendants and said, Okay, we're going to add some new

7     plaintiffs because we can't get in touch with our client.

8           So we acted diligently, and there's no prejudice to the

9     defendants, which is one of the factors.

10          Discovery has not progressed in this case.  Although

11    they've talked about they've met with their clients and there's

12    some prejudice, they claim, there's been not be a single

13    document produced in the case, which I hope to get to at one

14    point.  There's been no depositions.

15          To guard against any prejudice to them, we said, Okay,

16    we've got your discovery request that you served on our client,

17    Mr. Floyd.  The new class reps are ready to produce documents

18    and ready to respond to those document requests.

19          There was an argument, Oh, wow, there's a statute of

20    limitations, you know, that we want to bring.  That's just a red

21    herring.  Each of the class representatives bought a price-fixed

22    product within the four-year period prior to the filing of --

23    the proposed filing of the amended complaint.  They're squarely

24    within the statute of limitations.

25          Also, there is no statute of limitations issue.  And,

1    indeed, Justice Sotomayor, in the *China Agrotech* case, said

2    that, Well, if there's a statute of limitations potential issue,

3    the class might be prejudiced, so it should, actually, err on

4    the side of allowing the amendment.  So no prejudice.  There's

5    been no delay.  We've acted within months of finding out that

6    our client was out of touch with us.

7         And so we submit to Your Honor that we have met the Rule 15

8    factors, and we ask that the motion be granted.

9              MR. HOCHSTADT:  Your Honor, may I respond, briefly?

10             THE COURT:  I have a couple of questions --

11             MR. BERMAN:  It's my motion.  I don't know why he gets

12   to reply.

13             THE COURT:  Mr. Berman, what is your response to the

14   argument that Mr. Floyd should sit for deposition before this

15   issue is determined?

16             MR. BERMAN:  My argument is the following, Your Honor:

17   If we can get ahold of Mr. Floyd, we would have no problem

18   having him sit for deposition.

19        But that shouldn't hold up the amendment, because we have

20   two new class representatives that are ready to go, and they

21   don't have a good argument why they should not be substituted

22   in, and they're ready to produce discovery.

23             THE COURT:  And with respect to the argument that you

24   should have somehow been on notice, with respect to the market

25   definition, in February of last year, what's your response to

1    that?

2          MR. BERMAN:  My response is that Judge Coughenour

3    ruled that the fact that people could buy outside of the market

4    we defined is not dispositive.  And so we don't believe we were

5    on notice that Mr. Floyd was inappropriate.  And, in fact, what

6    they're saying is that he's not adequate because he purchased

7    outside the market on some occasions.  Right?

8          But adequacy, under Rule 23, is a conflict test.  Is there

9    a conflict between Mr. Floyd and others because he may have

10   bought outside the market?  And they haven't shown that.  He

11   still has the same interest as do the new plaintiffs.

12         In establishing the market that Judge Coughenour upheld, he

13   still has the same interest, as do the new plaintiffs, in

14   establishing that all of them paid too much money when they

15   bought on the market that Judge Coughenour has upheld.

16         So we don't believe we were put on notice, and we believe

17   Mr. Floyd, were he participating fully, would be fully qualified

18   to represent this class.

19         THE COURT:  All right.  Thank you, Mr. Berman.

20         I do want to turn to the discovery issues.  I will take the

21   motion to amend under advisement.  And we have several discovery

22   issues, some of which are, sort of, wrapped up in the motion to

23   amend.  But, I guess, I want to start by dealing with, sort of,

24   the broader discovery landscape.

25         The parties stipulated to stay the current deadlines until

1  the motions and disputes are resolved, and that's fine, but I

2  heard from defendants, in the course of the argument just now,

3  that there's been a lot of discovery activity on their end.  And

4  plaintiff's response to that is that no documents have been

5  produced.  I believe your briefs said discovery is in its

6  infancy.

7       So, Mr. Berman, I want to start with you.

8       What is happening with discovery, and where are things?

9  Because we met this group some time either earlier in the year,

10 this year, or it might have been last year, to work on the

11 parameters for discovery and sort out issues relating to the

12 exchange of electronic information, and it seemed like things

13 were moving, but it sounds like now they aren't.  So what's

14 happening?

15       MR. BERMAN:  Your Honor, I'm the motion-to-amend guy,

16 and my partner, Mr. Harrington, is the discovery guy.

17       THE COURT:  That's fine.  That's fine.

18       Mr. Harrington, go ahead.

19       MR. HARRINGTON:  Thank you, Your Honor.

20       Right now, discovery is, frankly, in its infancy, despite

21 our best efforts to move it forward.

22       The parties have exchanged -- as Your Honor may recall, the

23 court entered a protective order after some preliminary disputes

24 on that back in December.  The parties have exchanged document

25 requests, negotiated parameters, but not a single document has

1   been produced by defendants up to this point, and we've still

2   been stalled out on our ability to negotiate data, which is a

3   very important part of discovery in this case.

4        We want to move it forward, but we haven't been able to do

5   so.  And as you saw, there are some threshold disputes that we

6   need to resolve.

7        On plaintiff's side, at least with respect to the new reps,

8   we're ready to go.  We've been working really hard to collect

9   their documents and have substantially complete document

10  productions ready to serve if they're added as representatives,

11  and we're ready to go by the substantial completion deadline,

12  but, obviously, we're not going to produce documents unless

13  they're added to the case.

14       So from our side, we're ready to go, but we're struggling

15  to get progress from defendants.

16       So that's a summery of where we're at.

17            THE COURT:  Thank you, Mr. Harrington.

18       I'm not sure who is speaking on discovery from defendants.

19            MR. HOCHSTADT:  Your Honor, this is Eric Hochstadt,

20  from Weil, for Apple, and I'll let Mr. Mundel speak for Amazon,

21  but maybe I can cover some points together.

22       So I hear plaintiff's counsel say discovery is at its

23  infancy.  Maybe that's because discovery is a little asymmetric

24  in this case.

25       As Your Honor can appreciate, you know, we've been

1   collecting lots of electronic discovery, reviewing that

2   information, getting ready to produce that information.  That's

3   a huge undertaking on the defendants' side for any company, let

4   alone, you know, some of the largest, you know, tech companies

5   in the world.  So that's all been happening.  So I can't -- the

6   infancy comment is not something I can accept or need to address

7   on the record there.

8         Tellingly, we did produce their own client's records, since

9   we asked that from them, but they told us, We have better access

10  to it than you, so we did give them their own records.

11        But then they -- then they claim that, you know, they might

12  not trust or verify them, which is exactly why we wanted them

13  from Mr. Floyd's files.

14        We have served written discovery responses and the like.

15        So we certainly have been engaged in this, Your Honor.  I

16  mean, I look back on this, we've had 17 meet-and-confers with

17  plaintiff's counsel.  So this is not at the early stages.  This

18  is not at the infancy piece of it.  We've been doing a lot of

19  hard work on our side.

20        And I'll just say, the fact that, you know, maybe they

21  found the intervenors and are able to go in one month goes back

22  to underscoring the diligence and the delay factors on their

23  motion to amend as to why this never happened a long time ago,

24  but, apparently, it only took them a month to find these folks.

25             THE COURT:  Mr. Mundel?

1    MR. MUNDEL:  Your Honor, from Amazon's perspective, we

2    have been moving discovery forward while this process has been

3    playing out in front of the courts.  We've not delayed or just

4    not done anything.

5        In addition to the more than a dozen meet-and-confers that

6    we participated in, Amazon has collected nearly -- over one

7    million pages of documents.  We've had attorneys review nearly

8    300,000 documents as part of this process.  So while we have not

9    yet produced documents because of the change in circumstances

10   and this motion, we have done really substantial work on our end

11   and are ready to proceed with discovery, if the case does, in

12   fact, go forward.

13       In addition, we've answered substantive interrogatories,

14   we've provided written responses to discovery, and we've spent

15   many hundreds of hours working on identifying and collecting

16   data that the plaintiff has requested.

17       So on our end, we've absolutely moved things forward and

18   are prepared to move things forward, if the case proceeds, but

19   we do think we need not just plaintiff's counsel on the other

20   side, but an actual plaintiff to participate in discovery, from

21   the plaintiff's perspective, and also to be reviewing and

22   approving any of the agreements we reach about the scope of

23   discovery in this case.

24       THE COURT:  All right.  Well, let's talk about the

25   specific disputes that the parties have identified.

1      I understand that plaintiffs have asked for Canadian data

2   and foreign documents, and defendants object to producing.

3   Starting with the Canadian documents, I, actually, want to start

4   with defendants, recognizing it's plaintiff's request.

5      But why is that request any different from what Judge

6   Martinez just ordered produced in the *Frame-Wilson* case last

7   year?  Is there any authority that distinguishes this particular

8   inquiry from that case?

9           MR. MUNDEL:  Your Honor, Ben Mundel from Amazon.

10     It is exactly the judge's framework in *Frame-Wilson* that

11   makes our argument that this data from Canada does not need to

12   be produced here.

13     What the framework of *Frame-Wilson* is, first, underlying

14   data from a different geography is not relevant in the

15   traditional sense.  It's not the same customers, the same place,

16   the same products, the same sellers, so it's not relevant in the

17   traditional sense.

18     The only way the plaintiffs get to seek this type of data,

19   and what the *Frame-Wilson* court inures, is based upon the idea

20   that economist experts want to compare a benchmark to the real

21   world.  They want to say where the GTA -- the agreement --

22   happened, what was the prices, and then in a world with no

23   agreement, what were the prices.

24     So in *Frame-Wilson*, because there was no benchmark based

25   upon time period or other way to obtain a bona fide benchmark,

1  the *Frame-Wilson* court said, Okay, we can't do it from an

2  earlier time, but we can do it from a different geography, and

3  the court allowed the data to be produced from the U.K.

4      Here, by contrast, the plaintiff has specifically asked us

5  for data from before the agreement, the Global Tenants

6  Agreement, went into effect.

7      We initially objected and said, No, why do you need data

8  before the agreement went into effect?  Their explanation was,

9  We want to come up with a benchmark, we need to compare prices

10  before and after.  So, ultimately, we said, Okay, if that's the

11  benchmark that you want, we agreed.  And unlike in *Frame-Wilson*,

12  we agreed and can produce data from three years before the

13  agreement went into effect, and from five years after the

14  agreement went into effect.  So that permits the plaintiffs to

15  do the benchmark analysis that the *Frame-Wilson* court endorsed

16  and permitted.

17      When we agreed to do that here, the plaintiff didn't stop

18  and say, Okay, we have our benchmark.  They say, We want a

19  second benchmark in Canada.  And we have not found any court

20  that has ever endorsed or permitted plaintiffs to go beyond the

21  scope of traditional relevance under Rule 26 to have two

22  different benchmarks.

23      So at a minimum, we think there should be one, but,

24  clearly, the time period seems to be the most realistic

25  benchmark on its face, it may not be, but, at least, the most

1  realistic, and then from a burden perspective, it's certainly

2  easier for us to produce data from an earlier time period than

3  to produce data from a different country, where we have to go to

4  different data sources, different people, manual work, and it

5  would take many months to do.

6      So the framework that the court set up in *Frame-Wilson*

7  shows precisely why, yes, we can produce the benchmark data from

8  an earlier time but do not also have to produce data from a

9  different geography.

10      THE COURT:  Mr. Harrington, what's your response to

11  that?

12      MR. HARRINGTON:  I think Mr. Mundel might have read a

13  different *Frame-Wilson* case than I did, because it's pretty

14  clear, from *Frame-Wilson*, that what we're seeking is exactly

15  what was sought there, and the court, in ordering production,

16  there was two additional countries, the U.K. and Germany.

17      The court never conditioned the holding on the fact that it

18  was the only data available.  In fact, Amazon made the same, or

19  substantially the same argument there as it does here, that it's

20  producing all of this U.S. data and so why should it be required

21  to produce data for other countries as well, and the court said

22  it's relevant to provide a yardstick.

23      And it's true -- and we've used the data for the same

24  purpose here.  I mean, it's true that we're also getting before

25  and after data, but this isn't an either/or type of proposition,

1    where if you get one type of data, it means you can't get

2    another type.

3         Experts regularly use both yardstick and benchmark models,

4    so both a before and after, and a geographic yardstick to

5    measure the effect of a restraint.  And it's obvious why.  The

6    models can reinforce each other, they can bolster each other,

7    and they can substantiate each other.

8         But also, beyond that, you can do -- I mean, to get really

9    technical, you can do what's called a difference-in-difference

10   regression, which is a particular type of regression that would

11   require -- in this case, would require both Canadian and U.S.

12   data.

13        But, again, it's not -- discovery isn't like either/or,

14   where, if we have, you know, one set of data, it means we can't

15   get another.  The question is, is it relevant and what's the

16   burden?  And it's clearly relevant.  And we submit that the

17   defendants haven't substantiated any real burden in producing

18   this data from -- like, from Apple, in particular, we haven't

19   heard any burden at all.  From Apple, we're seeking just

20   aggregated data, so it's not even transaction data, it's

21   roll-ups, and we haven't heard any burden to producing that.

22        And with Amazon, the burden that we've heard in discussions

23   is, Well, you know, pulling data is going to require some QC

24   work, because individual sellers could miscategorize sales.  So

25   they could, you know -- instead of putting an iPhone in the

1    iPhone category on Amazon, a seller might put a watch, or

2    something else.  And they say, Well, we're going to need a QC to

3    scrub all of that out of there.

4        But we haven't heard, you know, how substantial this

5    problem really is and what the cost of scrubbing the data would

6    be.  And even then, we've provided a workaround that Amazon's

7    rejected.  We've offered to just have them produce the category.

8    So produce the iPhone category, the iPad category, and if there

9    are some stray entries in there, we can scrub it out.  So in

10   other words, just produce the data as it exists in the normal

11   course, and that would resolve the burden, to the extent there

12   is one there, and that proposal was rejected.

13       So we're trying to be reasonable here.

14       And I should add that, you know, Canada is just one of

15   several countries that we understand would provide this type of

16   yardstick.  There are a number of countries where the agreement

17   at issue was either never implemented or implemented late, as in

18   Canada.

19       And we're not asking for all of that, even though, in

20   candor, our experts would want it, because we're trying to find

21   the right balance.  So we're pursuing Canada because we think

22   it's a reasonable benchmark, and it will allow us to do our

23   work.

24       And defendants, again, just haven't shown a burden

25   sufficient to withhold it.

1          So as in *Frame-Wilson*, we think it should be produced.

2              MR. HOCHSTADT:  Your Honor, Eric Hochstadt, of Weil,

3      for Apple, just to address a couple of points here; otherwise,

4      we join in Mr. Mundel's argument.

5          You haven't heard addressed, I mean, one of the two

6      products at issue.  The iPhones, Amazon Canada -- we put this in

7      our submission -- Amazon Canada hasn't been authorized to sell

8      new iPhones.  So we're going to end up having, sort of, a

9      satellite mini trial proceeding on all the ways in which Canada

10     is different, when one of the two products at issue in the case,

11     Amazon Canada wasn't authorized to sell, not to mention the

12     different third-party resellers.

13         The whole theory of the case, despite Mr. Berman saying

14     during his argument that it's a price-fixing case, it's not.

15     They allege this is an alleged boycott case, and the alleged

16     boycott is that on January 1, 2019, in the United States, the

17     number of third-party resellers on Amazon in the United States

18     got reduced.  It's a different set of third-party resellers in

19     Canada.

20         So now we're going to be embarking on some satellite

21     proceeding to have to see whether or not this is a good

22     benchmark or not, when, out of the gate, there's fatal flaws

23     with this purported benchmark, including one of the two products

24     at issue.

25             THE COURT:  Counsel, I have, sort of, a process

1    question for everyone here.  And I appreciate and I commend your

2    efforts to work together in trying to resolve these disputes and

3    participate in the court's expedited discovery process.

4         But given the complexity of these issues, I'm wondering and

5    I have some concern that the discovery format that -- our

6    discovery dispute format of the three-page joint statement may

7    be inhibiting a full discussion of some of the interrelated

8    issues that I hear being raised by the parties.

9         And I do -- you know, the purpose of that process is to

10   give the parties expedited and cost-effective access to the

11   court, and a lot of times we can talk through discovery issues

12   and make determinations quickly and move on, but what I don't

13   want to do is end up truncating these issues, full consideration

14   of these issues, by virtue of that process.  It's certainly not

15   its intent.  In the normal course, the discovery issues can be

16   much more straightforward.

17        So my question is, is there authority or discussion with

18   respect to these discovery issues that the parties believe could

19   be better presented in a full motion, where there's an

20   opposition and a reply?  And I'll hear from all the parties on

21   that, because I don't want to give short shrift to any of the

22   interrelated issues that you're raising with respect to this

23   data and the claims in the case.

24             MR. HARRINGTON:  You know, from our perspective, Your

25   Honor, you know, we'll abide by any process the court prefers.

1    So if court doesn't feel like these issues are adequately teed

2    up and that there are just a ton of questions about the

3    complexity of these things, then we'll, of course, abide by a

4    briefing schedule.

5         I think on some of these issues, they may not be quite that

6    complicated.  I think the Canadian data issue is, actually, one

7    where I think the dispute is relatively straightforward and

8    could be decided on what's been submitted.  But, again, I think,

9    really, we're, sort of, at the court's disposal.  So if more

10   briefing would be helpful, we'll certainly provide it.

11        MR. MUNDEL:  Your Honor, Ben Mundel from Amazon.

12        We did put a lot into three pages, and you may have seen

13   there was not many white spaces left on the page.  So I do think

14   it would be useful, at least, you know, if the court has further

15   questions, to hear -- in further briefing, I think there's

16   additional authority, there's, perhaps, additional information

17   from the defendants, as Mr. Harrington mentioned, that could be

18   useful.  So we'd be very happy and pleased to present that to

19   the court.

20        THE COURT:  Well, that's my concern.  I did appreciate

21   the magnitude of your use of the three pages.  It was

22   impressive.  But these issues are important and they are

23   complicated, and I don't want, by virtue of that process, to

24   have a party be prejudiced in presenting their argument.

25        Mr. Hochstadt, did you have additional thoughts on that

1   question?

2       MR. HOCHSTADT:  I'd echo what Mr. Mundel said for

3   Apple, which is, these are complex issues, by far, you know, ex

4   U.S. discovery.  I mean, even just citing a foreign reg, we

5   appreciate the burden that is on the court, just to cite that

6   without, you know, appropriate explanation, so we'd echo the

7   sentiment; that these are weighty issues in antitrust class

8   action cases and would benefit from a little more fulsome

9   submission.

10      THE COURT:  So I think my inclination is just, in

11  hearing your arguments, which I do appreciate, is that I agree.

12  I think the court would benefit from additional information,

13  authority, and, in particular, comment on how this discovery

14  interacts with the claims in this case.  I hear both sides

15  saying, Well, this case isn't really about price fixing, it's,

16  actually, about a boycott; well, no, it's about price fixing.

17      Putting your discovery request in the context, with respect

18  to what you believe the theory of the case is, I think, would

19  help the court make an informed decision on these discovery

20  issues.

21      While we're talking about discovery, though, let's talk

22  about the household discovery, and I believe that is propounded

23  by Apple to the plaintiffs.

24      Now, that issue -- is that issue mooted?  If new plaintiffs

25  are permitted to join, if the motion to amend is granted, will

1    that same discovery be propounded to the new plaintiffs?  Is

2    this unique to Mr. Floyd?  I wasn't sure, from your statements,

3    where this stands.

4             MR. HOCHSTADT:  Eric Hochstadt, Your Honor, for Apple,

5    from Weil.

6        So I don't know as to the new plaintiffs because we don't

7    know enough about them.  What we can tell you, the reason why

8    Mr. Floyd was the focus of this, is, as I mentioned before,

9    there's no new iPhone that he bought through Amazon, so forget

10   iPhones.  But one iPad -- new iPad that he bought through

11   Amazon, from what we can tell, based on the purchase, but then,

12   as Your Honor may be familiar with, from what was then

13   registered with Apple, that it appears that it was a family

14   member, maybe a gift for a grandchild or nephew or the like,

15   from what we know.  And so that is what makes Mr. Floyd unique

16   in terms of that household-related discovery.

17       But it is also related, I will say, to this issue of

18   purchasing behavior, especially with -- at least the case so far

19   has been one named plaintiff.  Right?  So a case that was just

20   brought on one named plaintiff, and when that one named

21   plaintiff had this one unique purchase, it underscored the need

22   for this information, in particular because they have an

23   allegation -- the core part of their case is that you are

24   locked -- that consumers are locked in to Amazon because of the

25   benefits of Amazon Prime and the like.

1            And things that we don't know that we're entitled to test

2    is -- and this is something that comes up all the time.

3    Different members of the household may purchase different items

4    using different people's accounts, and it could totally

5    undermine the very allegation of somebody being locked in to

6    Amazon because there's some one-stop-shopping aspect, and we

7    need to understand, for, at least, the limited household, and

8    we're not -- we have no indication that it's, you know -- we're

9    talking dozens of people or anything like that, and we did try

10   to limit it to documents sufficient to show.  Right?  We tried

11   to limit the burden of discovery -- is to, again, test the very

12   core allegation in their pleading that you're somehow locked in

13   to buying a new iPhone or iPad through Amazon versus all the

14   other places to do that, and the theory of the case are the

15   allegations that, well, because there's one-stop shopping and

16   benefits of Prime membership, you're allegedly locked in to

17   purchasing through that.

18           And we just -- we're just -- that's the allegation we're

19   entitled to test as defendants.  We're entitled to know if a

20   person is locked in to purchasing through Amazon, or they have

21   family members who make all sorts of other purchases for them

22   elsewhere, so they're not locked in to Amazon.

23           That's the, sort of, basic discovery on, again, a

24   nonburdensome basis, documents sufficient to show what we were

25   trying to get in terms of the document request, that was

1    Document Request 5.  And then in terms of the written discovery,

2    there were a few interrogatories that relate to that household.

3    And, again, that's tied up with the motion to amend, Your Honor,

4    because we got -- we got no responses, no indication that

5    Mr. Floyd has even seen those interrogatory requests, and if

6    that's a basis for maybe why, you know, he might have lost

7    contact recently.

8              THE COURT:  Okay.  Thank you.

9        Mr. Harrington?

10             MR. HARRINGTON:  Yeah.  So on the household-member

11   discovery, I just want to make one point, which I think might

12   help frame this dispute, because -- you know, I want to make

13   clear, we're -- for the purposes described in the complaint, for

14   Mr. Floyd, and if leave to amend is granted for the new

15   representatives as well, we're agreeing to produce all the

16   discovery requests.

17       So if Mr. Floyd, for example, purchased that iPad, or a

18   family member, that -- that -- we're not withholding discovery.

19   Records about that will be produced.  We'll respond to the

20   interrogatories.

21       Similarly, if a family member were to have purchased a

22   product for Mr. Floyd, we're agreeing to produce that discovery

23   as well.  That's in our written response to RFP 5, which is in

24   the record.

25       So what's at issue here is something else different

1   entirely.  It's discovery of absent class members, so just

2   household members who made their own purchases for themselves.

3   So if Mr. Floyd's roommate or spouse purchased an iPhone for

4   herself, that's discovery that defendants want to pursue.

5       That's not discovery that courts regularly grant.  We

6   haven't found a single case that granted that type of discovery,

7   and defendants haven't cited one, either.

8       You know, normally, absent-class-member discovery is

9   barred.  It's highly disfavored.  I would submit this is

10  particularly objectionable, absent-class-member discovery,

11  because these aren't just regular absent class members; they're

12  household members.  I mean, who is going to want to step forward

13  as a class representative in a case like this, or in any sort of

14  consumer class action, if it means you're going to have to

15  subject your household members and your family members to

16  discovery?  I'm not sure anyone would.

17      And just one more point on this, Your Honor, is that, you

18  know, if defendants want discovery about where people can

19  purchase iPhones and iPads outside of the marketplaces we've

20  defined as the relevant market, they have all the data they

21  need.  These are Apple products.  Apple is a defendant.  Apple

22  sells its products through its own store.  It knows where its

23  products are sold.  Right?  It has the most comprehensive data

24  on this that you can imagine.

25      So the idea that they need to pursue this from one or two

1    household members is something -- I just don't think it stands

2    up, Your Honor.  I mean, under the proportionality test, you

3    need to look at whether or not the information is available from

4    another source.  And, here, far better information on, sort of,

5    consumer purchasing patterns is available, and we don't think it

6    justifies producing lists, I think, objectionable

7    absent-class-members discovery from household members.

8         So this is what I think -- we're happy to submit additional

9    briefing, if you'd like, and we will.  But I think this is

10   one -- we think the answer on this issue is pretty

11   straightforward, and it could be decided on the record, but,

12   again, we're open; whatever the court prefers.

13        MR. HOCHSTADT:  Your Honor, can I respond, since it's

14   our motion on this one?

15        THE COURT:  Go ahead.

16        MR. HOCHSTADT:  So this is not blunderbuss

17   absent-class-member discovery.  Right?  And I haven't heard,

18   even though it's their client, how many members are part of the

19   household.  I'm assuming they know that.  And none of the cases

20   that have been cited by either parties say that this is off

21   limits per se.  It's all about relevance and proportionality.

22        And, here, we have an unusual, unique case -- right? --

23   with this one named plaintiff.  And they chose to bring --

24   Mr. Floyd, represented by counsel, chose to bring this case, and

25   they chose to put at issue the only way the market holds up in

1    their theory is that people are locked in to shopping on Amazon

2    because it's a, quote, endless aisle.  You can buy everything

3    there; paper towels to iPhones, right?  Those are their

4    allegations.  That's what they're alleging.

5          And if members of his household are purchasing those other

6    items in the, quote, endless aisle, and he is not locked in to

7    Amazon, the theory of the case is over.

8          Their whole theory of the case is that Mr. Floyd -- the

9    only person who's put allegations forward in this case, a

10   pleading that's in this court -- is that you are locked in to

11   shopping for new iPhones and new iPads on Amazon because you can

12   buy dog food, all sorts of things through Amazon.  If other

13   people in his household are making all these other purchases,

14   he's not locked in.  We already know from his purchasing

15   behavior he's not locked in, just from his own iPhone and iPad

16   purchases.

17         So from just a proportionality, and based on -- they put

18   this at issue, they've opened the door to this -- and, again,

19   we're not asking for blunderbuss discovery on this, docs

20   sufficient to show -- documents sufficient to show and some

21   basic, you know, interrogatory, it's as minimally invasive as it

22   could possibly be, given that this is their allegations that

23   they've put at issue in this case.

24         Thank you, Your Honor.

25              THE COURT:  Counsel, what's your response to the

1    argument that Apple already knows everything about who has what,

2    you know, who's purchased what?

3            MR. HOCHSTADT:  Well, I'd submit that plaintiff's

4    counsel can't speak for Apple and what Apple knows, but -- but

5    this particular allegation, that you're locked in to shopping on

6    Amazon for a new iPhone or iPad because you can make all your

7    other purchases on Amazon, or -- obviously, Apple has no

8    visibility into that, right?  And that's their allegation, that

9    Mr. Floyd had to have bought that one iPad through Amazon

10   because he's locked in to purchasing through Amazon because it's

11   an endless aisle.  We're entitled to test that and show that

12   that's not true, and they don't want to come forward with that

13   discovery.

14           THE COURT:  Should this issue be decided in advance of

15   the motion to amend, or would this issue look differently if the

16   motion to amend was granted?

17           MR. HOCHSTADT:  Well, I don't think, Your Honor --

18   if -- I mean, if the motion to amend were going to be denied, I

19   don't think there's any issue, in terms of the resolving this

20   dispute at the moment, and we certainly -- or if the court were

21   to hold that in abeyance, pending the deposition of Mr. Floyd,

22   we could certainly revisit it, because we'll be smarter at that

23   point.

24       We only know the limited information about the Apple

25   purchases that he made or anything that's registered to

1   Mr. Floyd.  That's all we know.  We haven't been told anything

2   else from plaintiff's counsel.  And we were told, You know it,

3   we're not giving it to you.

4        So we're operating on the little information that we know.

5   If we have a deposition, we certainly can be a lot smarter and

6   maybe more targeted on some of this household discovery, and

7   maybe obviate some of the need of that.

8             THE COURT:  Thank you, counsel.

9        Thank you, everyone.  This has been informative and, I

10  hope, productive.  The court will take this under advisement.  I

11  do intend to issue an order in the near term on what additional

12  briefing on the discovery issues may be necessary, but I want to

13  spend some time with your written submissions and the

14  authorities you cited first, before I do that.  I would like to

15  keep as efficient for everyone, as possible, while still being

16  fully informed.

17       So the court will issue an order in the next few days

18  identifying what briefing, if any, is needed and in what order

19  that briefing should be done.  And, ideally, if there are

20  particular issues that need additional discussion, we'll attempt

21  to identify that, so, again, we can be targeted and efficient in

22  resolving these disputes.

23       Without that, unless there's anything else, I believe that

24  we've discussed everything that is on the court's docket for the

25  morning.

1          MR. HOCHSTADT:  Thank you, Your Honor.

2          MR. BERMAN:  Thank you.

3          THE COURT:  Thank you, all.  We'll be in recess.

4

5              (Proceedings concluded at 11:15 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4           I, Nancy L. Bauer, CCR, RPR, Court Reporter for

5    the United States District Court in the Western District of

6    Washington at Seattle, do hereby certify that I was present in

7    court during the foregoing matter and reported said proceedings

8    stenographically.

9           I further certify that thereafter, I have caused

10   said stenographic notes to be transcribed under my direction and

11   that the foregoing pages are a true and accurate transcription

12   to the best of my ability.

13

14

15           Dated this 13th day of May 2024.

16

17                         /S/  Nancy L. Bauer

18                         Nancy L. Bauer, CCR, RPR
                           Official Court Reporter
19

20

21

22

23

24

25

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

STEVEN FLOYD, JOLENE FURDEK, and    )
JONATHAN RYAN, on behalf of         )
themselves and all others           )  CASE NO. C22-01599-KKE
similarly situated,                 )
                                    )  Seattle, Washington
                  Plaintiffs,       )
v.                                  )  November 5, 2024
                                    )  10:02 a.m.
AMAZON.COM, INC., a Delaware        )
Corporation, and APPLE INC., a      )  Motion Hearing
California corporation,             )  via Zoom
                                    )
                  Defendants.       )
                                    )

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE KYMBERLY K. EVANSON
UNITED STATES DISTRICT JUDGE

_____

**APPEARANCES:**


  For the Plaintiffs:        BEN HARRINGTON
                             Hagens Berman Sobol Shapiro LLP
                             715 Hearst Avenue, Suite 300
                             Berkeley, CA 94710

  For Defendant             ERIC SHAUN HOCHSTADT
  Amazon.com, Inc.:         Weil Gotshal & Manges
                            767 5th Avenue
                            New York, NY 10153

  For Defendant Apple,      BENJAMIN M. MUNDEL
  Inc.:                     Sidley Austin
                            1501 K Street Northwest, Suite 600
                            Washington, DC 20005

  Reported by:              MARCI E.C. CHATELAIN, CCR, RMR, CRR
                            Federal Court Reporter
                            700 Stewart Street, Suite 17205
                            Seattle, WA 98101
                            marci_chatelain@wawd.uscourts.gov

1                        PROCEEDINGS

2        _____

3              THE CLERK:  Good morning, Judge.

4              THE COURT:  Good morning.

5              THE CLERK:  Please come to attention.  The United

6    States District Court for the Western District of Washington is

7    now in session, the Honorable Judge Kymberly K. Evanson

8    presiding.

9        Now calling case C22-01599, assigned to this Court, Floyd

10   versus Amazon.com, Inc., et al.

11       May I have appearances, please.

12             MR. HARRINGTON:  Good morning, Your Honor.

13       Ben Harrington of Hagens Berman for plaintiffs.

14       And I'm joined by my colleague, Meredith Simons, also from

15   Hagens Berman for plaintiffs.

16       We had a couple other attendees on our list who won't be

17   here, it will just be myself and Ms. Simons today.

18             MR. MUNDEL:  Eric, I'll let you lead off.

19             MR. HOCHSTADT:  Good morning, Your Honor.

20       Eric Hochstadt from Weil Gotshal & Manges on behalf of

21   defendant Apple, Inc.

22       And I'm joined by a number of my colleagues, and client

23   representatives as well, that we submitted to the Court in

24   advance.

25             MR. MUNDEL:  Good morning, Your Honor.

1          Benjamin Mundel from Sidley Austin on behalf of Amazon.

2          I'm joined with my -- by my colleagues from Sidley, David

3     Wright Tremaine, as well as client representatives.

4               THE COURT:  All right.  Good morning, everyone.  Nice

5     to see you all, as always.

6          So we are here on a couple of motions this morning.  And I

7     think it probably makes sense to take them up in the order in

8     which they were filed.  And so I think that means, and you tell

9     me if I'm wrong, but we've got to deal with the motion to

10    withdraw, the motion for sanctions.  And then, also, I want to

11    talk to everyone about the stipulated motion to extend the case

12    schedule, and talk about what we're doing, and how we're going

13    to move forward in this case.

14         So let's go ahead and start with the motion to withdraw.

15    There's a lot of issues here that I want to talk about.  In

16    particular, you know, Floyd was granted conditional permission

17    to withdraw, but now we've sort of reached this impasse.  I'm

18    looking for some guidance from the parties as far as the best

19    way forward.

20         There's been some suggestion with respect to whether in

21    camera review is important to resolve the next steps.  When

22    defendants have a chance to weigh in on that question, one thing

23    I'll be looking to hear from you is if the Court were to do in

24    camera review, what do we do with that information?  What kind

25    of remedies are you looking for, and is that something that

1    you're thinking the Court would do something sua sponte?  And

2    what do we do about the attorney-client privilege?  There's a

3    lot of stuff to talk about this morning.

4         So let me go ahead and hear from plaintiff on the issue of

5    withdrawal, some of those issues I just highlighted.  And, you

6    know, to the extent your requests or arguments bleed over into

7    the other motions, that's fine, because we've got a lot of

8    overlap here.

9         So, go ahead, let's hear from the plaintiffs.

10              MR. HARRINGTON:  Sure.  I mean, on the motion to

11   withdraw, Your Honor, I mean, we look at this as a pretty

12   unremarkable and straightforward motion.  You know, in class

13   cases, it happens from time to time that plaintiffs either drop

14   off or cease to adhere to their client's guidance.  And Courts

15   recognize that when you have a situation like that, it's really

16   untenable to continue the representation.  It's not clear what

17   purpose that would serve.

18        And I don't think there's any real dispute here, or can be

19   a real dispute here, that we've had the type of breakdown with

20   Mr. Floyd that warrants our withdrawal.  As we documented in our

21   papers time and time again, he's been extraordinarily difficult

22   to reach.  There -- he did not respond to us, despite many

23   attempts, between January and August of this year.  And even

24   more recently, we were in a situation where the Court has

25   compelled him to provide discovery, which we are encouraging him

1    to provide, but he's elected not to.  So he's not abiding by our

2    guidance as his counsel.

3        And when you have a situation like that, what Courts do is

4    they allow the attorneys to withdraw.  I mean, and I don't know

5    deep down whether Apple really opposes that, because Apple has

6    been asking us -- and I say "Apple," because they're the primary

7    party that's opposing this, or the only party that's opposing

8    it, that -- you know, that Apple has asked to contact Mr. Floyd

9    directly to obtain the discovery they're seeking.  While we're

10   his counsel, we can't agree to that.  And under the local rules,

11   we remain his counsel until we're discharged.

12       So what we're envisioning, I think, is pretty

13   straightforward as a procedural matter, where we're withdrawn as

14   his counsel; Apple, to the extent it wants, and wants to spend

15   the resources pursuing the discovery that it has issued to

16   Mr. Floyd, can continue that effort.  We're not standing in the

17   way of that.  And we've agreed Apple in its opposition, or I

18   guess we'll call it an opposition, that asked for more time to

19   obtain discovery from Mr. Floyd.  And we don't -- we don't

20   oppose that.  It's not -- I mean, we don't see it as a condition

21   of our withdrawal.  Had Apple asked for it, we would have given

22   it to 'em.  We're not standing in the way of Apple pursuing this

23   discovery, we're just asking to be discharged as his counsel,

24   given the breakdown of our relationship.

25           THE COURT:  So, Counsel, I agree with you -- let me

1    just stop you there for a minute -- that as general proposition,

2    it is unremarkable.  But, here, we're in a class action.  And,

3    you know, if you withdraw, why wouldn't Floyd be an

4    unrepresented pro se lead plaintiff?

5            MR. HARRINGTON:  Because we're not -- we're -- so when

6    -- the case law on pro se-named plaintiffs, and the cases that

7    Apple cites, and all the cases we're aware of, stand for the

8    proposition that you can't offer up at class certification a pro

9    se plaintiff; or a pro se plaintiff cannot move on their own to

10   be a class representative because they're not adequate under

11   Rule 23 if they're a pro se.

12       But, here, we're not going to offer Mr. Floyd up as a class

13   representative.  And if we did, he would be inadequate; he

14   wouldn't be a class representative; right?  He's shown no

15   interest in engaging in the case.

16       And so it's not -- we don't have the issue that arises in

17   the case law where you have a pro se party that is seeking to

18   push forward a class action as the representative of the class.

19   Here, we have two class reps who are not pro se, they're

20   represented by us, they're ready to go.  And when we move for

21   class certification, they will be our class representatives.

22       Mr. Floyd will -- you know, to the extent Apple wants to

23   continue seeking discovery from him, they can, but he's not

24   going to be a class representative, so it doesn't give rise to

25   that procedural issue that arises when you really have a pro se

1    party that's pursuing the case and wants to be the class rep;

2    that's not what we have here.

3          THE COURT:  So it's a timing issue, then, is what

4    you're saying, because we're not at certification, he's a

5    putative lead plaintiff, but he's not an actual lead plaintiff

6    at this point?

7          MR. HARRINGTON:  Well, yeah.  Well, the case law --

8    all the case law says is that a pro se party can't be -- is not

9    an adequate class representative; right?  And that's an issue

10   that arises at class certification when we put forth the

11   representatives who are going to represent the class.  So -- and

12   if we did that, right, I mean, like I said, the Court would have

13   every reason to deny his adequacy.  And we would continue to

14   proceed with the named plaintiffs who we think are adequate.

15         So, in a sense, it's a timing thing, but it's really just

16   the issue -- the issue -- the procedural issue only arises at

17   class certification.  Having him, you know, on the docket as

18   some kind of nominal party doesn't create any kind of procedural

19   quagmire that we can envision; I mean, this happens.  This

20   happens --

21         THE COURT:  So how do you square that with the Court's

22   order that he could withdraw as the named plaintiff after

23   providing the discovery that was propounded to him?  I mean,

24   this sort of feels like an end run around that order.

25         MR. HARRINGTON:  No.  I don't think so at all.  We

1    agree with -- we're not fighting the order.  He doesn't need to

2    be a class representative to comply with his discovery

3    obligations.

4         And if the Court wants to keep him on the docket as a

5    party, an unwithdrawn party in the case in order to enforce that

6    order, that's something that the Court can do.  All I'm saying

7    is at the end of the day, he's not going to be -- when we move

8    for class certification, he's not going to be a class

9    representative for the class.  But that doesn't preclude Apple

10   from seeking the discovery or defendants -- both defendants from

11   seeking the discovery they want, or it doesn't preclude the

12   Court from enforcing that order.  I mean, he doesn't need to be

13   a class representative to provide that discovery.

14            THE COURT:  Okay.  So let's talk about the in camera

15   review issue.

16        So you had offered to provide the 2024 correspondence with

17   Floyd for the purpose of showing the breakdown in

18   communications, but oppose it for the purpose of determining

19   whether your actions in the case have been authorized by the

20   client.

21        So, I understand that it's Hagens Berman's position that

22   you didn't hear from Floyd between January 16th and August.  But

23   doesn't it matter what Floyd said in that last communication in

24   January?  And the reason I'm asking is it seems like it -- is it

25   your position that you were entitled to take Floyd's silence in

1    that eight-month period to amend the complaint, add additional

2    plaintiffs, et cetera, without explicitly hearing from or

3    talking to Mr. Floyd?

4              MR. HARRINGTON:  I want to be clear about this.  We've

5    been extremely candid and forthright in the fact we did not hear

6    from Mr. Floyd between January 16th and August 21st.  And when

7    we moved to amend, we didn't hide the ball in any way.  We said

8    at page 4 of our papers that we had not heard from Mr. Floyd.

9    And we told the defendants that before we moved.

10         And the Court in its -- and the Court's order granting

11   amendment acknowledged that we hadn't heard from Mr. Floyd.  So,

12   look, our view is, one, this has already been litigated; but,

13   two, the fact that we hadn't heard from Mr. Floyd didn't deprive

14   us of authorization to seek leave to amend the complaint.  We

15   were adding new representatives who we do represent.  We're

16   counsel to the new parties who are seeking to intervene into the

17   case.

18         So it just cannot be that when you have a situation where

19   you have one representative who's not communicating, who's out

20   of pocket, and you have new representatives who want to

21   participate in the case, but you can't seek leave to add them,

22   that they just have to stand by.  Our authority to file that

23   derives, one, from our representation of the new plaintiffs, but

24   also just our role as class counsel.  You know, in all the cases

25   the Court cited in its motion, in its order granting leave to

1    amend, you have situations like this where you have one

2    representative that drops off, and there are new representatives

3    that the plaintiffs or the class counsel wish to add.  And

4    Courts routinely authorize that.

5         So it wasn't as though, you know, we lacked authority in

6    any way to move to amend, we feel like that litigation -- that

7    issue was already litigated.  So it's really unclear to us what

8    purpose in camera review of that whole history would serve,

9    other than to create a sideshow, and we're worried about that,

10   candidly.  I'm sitting here with a binder of -- you know, a

11   four-inch binder of issues -- of briefing about Mr. Floyd, where

12   we have like an important antitrust case here where we want to

13   move on to the merits.  And so having a minitrial over, you

14   know, when -- you know, who communicated to Mr. Floyd when, it

15   would only make sense that there's some underlying rationale for

16   it, and we just don't see that.

17        To the extent the Court wants in camera review for purposes

18   of our withdrawal, it would be to determine whether there's been

19   the type of breakdown in communications that warrant withdrawal,

20   and we've offered that.

21        If the Court wants to see what Mr. Floyd has said to us

22   recently, the Court can look at that.  And I think that's going

23   to leave you with no doubt that there's been a breakdown in

24   communications, but there doesn't seem to be a real dispute

25   about that.

1        What Apple wants is to relitigate the motion to amend, and

2   it wants in camera review, it seems, just to prove what we've

3   been saying all along, which is Floyd did not communicate with

4   us.  We -- he was --

5            THE COURT:  Does it matter, for purposes of your

6   argument, what Floyd's last communication in January was?

7            MR. HARRINGTON:  No.  I mean, even if -- so they're

8   implying, to some extent, that, you know, if he had withdrawn

9   affirmatively in some sense, that would change things, but --

10  but the standard for moving to amend to add representatives or

11  moving to amend -- or to substitute out or withdraw a

12  representative is precisely the same.  There's no like -- and we

13  -- even in our motion to amend, we said, look, you can treat

14  this as a motion to substitute or a motion to amend, it doesn't

15  matter, right, because at the end of the day, you know, we're

16  just adding new representatives to the case.  And Courts apply

17  the same standard.

18       And there wasn't any like -- you know, there wasn't a

19  tactical, I guess -- there's this implication there was some

20  sort of tactical advantage in all of this, but it's almo- --

21  it's exactly the opposite.

22       I mean, having moved to substitute, it -- probably all this

23  -- all these issues would have gone away, but we wanted to give

24  Mr. Floyd an opportunity to participate in the case; right?  I

25  mean, at that time, it was pretty unclear what he wanted to do.

1    And he wasn't responding to us.  And so our thought was, well,

2    look, let's -- let's give him a chance to participate; right?

3    And during the pendency of the motion to amend, the schedule was

4    lifted, so he still had an opportunity to participate; right?

5        And -- but in April -- or I guess May when the Court

6    granted us leave to amend and he still hadn't responded to us,

7    we reached out to him again to see if he wanted to participate

8    and he didn't respond.  And then a schedule entered and it

9    became clear that he can't -- we can't keep going on like this.

10   You have to -- at some point, you need to sort of, you know,

11   pull up the stakes because, at that point, he was not going to

12   be able to comply with the schedule that we were proposing and

13   the Court set, and so he -- we needed to withdraw.

14       And there's nothing like -- the timeline, there's nothing

15   like nefarious in that, all it shows is that we wanted to give

16   him every opportunity to participate.  And we weren't going to

17   infer without really concrete information from him that he

18   wanted to withdraw, that that's what he wanted to do.

19       But even if he had withdrawn, it wouldn't make a

20   difference; right?  It would just be that there would be a

21   substitution at the amendment stage, rather than what we propose

22   now, which is to pull him out of the case now.  It's -- it's six

23   and one, you're in the same place.

24           THE COURT:  All right.  I think I understand your

25   position.

1          Let me go ahead and hear from Apple.

2          MR. HOCHSTADT:  Morning, Your Honor, Eric Hochstadt.

3          I think Your Honor has focused on the right issue, is what

4   was said on January 16th from Floyd to plaintiffs' counsel, that

5   last conversation, that we know about?  We know nothing more

6   than that.  And something in that conversation led plaintiffs'

7   counsel to find two new plaintiffs for the case.  None of that

8   was disclosed to us for about a month until February 13th, Your

9   Honor.

10          If it turned out to be the case that Floyd did not want to

11   participate at that point in that last conversation, this was an

12   individual case.  And what makes this remarkable, rather than

13   unremarkable, is this was a case brought by Floyd, an individual

14   lawsuit with putative class allegations, but one named

15   plaintiff, who litigated this for 16 months.  Virtually every

16   other case has multiple named plaintiffs to start because things

17   like this can happen.  That is not what happened in this case,

18   which is why, even as Your Honor noted, in granting our motion

19   to compel at page 7 of the most recent order said, Floyd has a

20   unique status as the original, sole named plaintiff.

21          And if he had told them on January 16th, he doesn't want to

22   comply with discovery, they were obligated to tell us that and

23   either move to dismiss Floyd's case or tell us that and we can

24   move to dismiss it for want of prosecution.  That would have a

25   significant impact on the case, the schedule.

1          As Your Honor can appreciate, we've been proceeding in

2     parallel.  Deposition discovery is under way for a case that,

3     depending on what the record shows, which we don't know, okay,

4     and I do want to go through the timeline with Your Honor, but if

5     Floyd did not -- told them he didn't want to continue on

6     January 16th, this case should have ended; it was an individual

7     lawsuit, that's all it was.

8          And we are now, as the defendants, going through opposing

9     class cert, we've been going through producing tons of documents

10    and data, and opposing -- litigating a putative class action

11    that the plaintiffs' counsel would be obligated to bring a

12    separate lawsuit by these two new plaintiffs.  And Apple would

13    have Rule 12 rights to say that that new lawsuit is beyond the

14    four-year statute of limitations and is time barred; or even if

15    it wasn't time barred, which we would say it is, that there's

16    Supreme Court case law that says you can't have successive class

17    actions.  So this is an individual class action, at best, and

18    not a putative class action.  And so it would fundamentally

19    alter the case that we're here for right now.

20         And so the timeline here, Your Honor, in terms of Floyd's

21    disappearance, re-appearance, then disappearance, and then

22    Floyd's counsel seeking to withdraw, we have learned some new

23    information, which sheds some light that I think we should focus

24    on.  And all -- because it all seems to suggest, Your Honor,

25    that back on January 16th, he said something to them that

1    prompted them to want to get two new plaintiffs.  And if that's

2    the case, it has a big impact.

3         And so when you think about the timeline, Your Honor, at a

4    high -- into three -- three groups this year, from January 16th

5    through August of this year, before the Second Amended Complaint

6    was filed, plaintiffs' counsel said Floyd does not want to

7    withdraw.  And he's part of the -- the motion to amend was filed

8    on his behalf.  The Second Amended Complaint was filed on his

9    behalf.

10        The moment the Second Amended Complaint was filed, Your

11   Honor asked the question about, were you interpreting silence as

12   authority, which I think you heard the answer was yes.

13        But after the Second Amended Complaint was filed, and after

14   we sought discovery, long overdue discovery from Mr. Floyd, the

15   silence was interpreted as he wants to withdraw from the case.

16        And then we have the motion-to-compel order, Your Honor.

17   And what ends up occurring there, we now know there's a

18   fundamental breakdown in the attorney-client relationship.  But

19   we don't have visibility between those two time frames.  And the

20   in camera review is important, because that January 16th

21   conversation -- and we documented the timeline, Your Honor, at

22   Docket 144, the declaration accompanying our response, the

23   January 16th communication from plaintiffs' counsel -- I'm

24   sorry, the February 13th communication to us, which then let us

25   know that basically a month ago, they heard from Floyd.  They

 1    said, quote, it was not a withdrawal.  So there's something --

 2    now, what does that mean?  We don't know.  We weren't provided

 3    with that.  That's exactly something Your Honor could see in

 4    that communication, if it's a written communication.  It's

 5    something we certainly could ask Mr. Floyd at a deposition, but

 6    this is all interrelated.  And it looks like we're not going to

 7    get that deposition, or may not get that deposition.

 8        But that raises lots of questions as to what he said that

 9    prompted them to immediately look for two new plaintiffs when he

10    was the only plaintiff for 16 months in the case.

11        And then, Your Honor, when you go to the motion to amend,

12    at that hearing on April 30th, which I was on with Your Honor,

13    plaintiffs' counsel said, you know, look, we need some new

14    plaintiffs because we can't get in touch with our client.

15    That's what was said.

16        Little over a week later, the moment the Second Amended

17    Complaint is filed, same plaintiffs' counsel gives a quote to

18    Law360 and says, pleased that the case can continue, quote, when

19    the existing class representative no longer wishes to serve.

20    Well, they hadn't spoken to Floyd, that's at least what we've

21    been told.

22        So what changed?  That now Floyd no longer wishes to serve,

23    basically wants to be withdrawn, when they haven't spoken to

24    him, and they told us all along that he didn't want to withdraw?

25        And even if that were the case, Your Honor, that now all of

1    a sudden, based on not speaking with him, he didn't -- he didn't

2    wish to serve, they didn't seek to withdraw him right then and

3    there, they waited until after we filed our motion to compel the

4    long overdue discovery from Floyd to seek to withdraw him in

5    response to that.

6         All that timeline, you know, goes to the point that I think

7    Your Honor has picked up on, which is, and we all know this,

8    especially if it's an individual case, which this was, is you

9    can't have a placeholder plaintiff; right?  This -- I don't

10   think it's disputed seriously that a lawsuit has to be directed

11   by a client, and especially in a class action case, the

12   plaintiff has a duty to supervise proposed class counsel, which

13   is all we have here, we don't have court-appointed class counsel

14   here, Your Honor.  And so it's critical that Floyd be the one

15   supervising and be authorizing what's going on in this case.

16        But then, Your Honor, we have something that we haven't

17   spoken about yet, which gives us more of a reason as to why we

18   think in camera review is warranted.  And, look, respectfully, I

19   tell the Court, I mean, there are some statements that were made

20   most recently in connection with the stipulation that was filed

21   that were not accurate.  And the timeline there is important,

22   Your Honor.  After the Court ordered Mr. Floyd to produce his

23   discovery, we were told by plaintiffs' counsel that Floyd had

24   reengaged on August 21st.  And then on August 26th, we got a

25   reach-out from plaintiffs' counsel that they're still trying to

1    work with Floyd, but they can use some more time; okay?  And

2    they reached out to us for a stipulation to extend the time two

3    weeks.  We filed that on August 29th, Your Honor, and Your Honor

4    approved that on August 29th.

5         What we now know from the declaration that was filed by

6    plaintiffs' counsel, Your Honor -- and just for the record, this

7    is -- their declaration is ECF 141, paragraphs 5 and 6.  What

8    turns out to be the case is that August 27th and 28th,

9    plaintiffs' counsel and Mr. Floyd were in contact.  And by

10   August 28th, there was a breakdown in the attorney-client

11   relationship.  Defendants were not told about that, the Court

12   was not told about that; instead, we were -- none of that was

13   disclosed, as it was obligated to be, and we signed on to a

14   stipulation, and that was put forward for the Court to

15   authorize, when at that point in time there was an

16   irreconcilable breakdown in the attorney-client relationship.

17   And there was no response to the reply brief that was submitted

18   to Your Honor that addressed that clear misstatement to the

19   Court and to defendants about what went on most recently.

20        So, Your Honor, the gravity of the issues here, depending

21   on what the record shows, we don't have some of that

22   information, which is why we have sought the in camera review.

23   But if it turns out that Mr. Floyd told them on January 16th

24   that he doesn't want to be involved, he doesn't want to comply

25   with discovery, he wants to withdraw, then there are further

1    actions that we obviously need to take here to address and

2    revisit, if needed.  Reconsideration is certainly warranted

3    where there's new material facts, and that would be new material

4    facts that we need to proceed down.  But you've heard a lot of

5    different carefully worded, general descriptions, including here

6    today from plaintiffs' counsel that they haven't been in touch

7    with him; right?  Well, that just tells you that, I mean,

8    Mr. Floyd could not have authorized the motion to amend that he

9    signed onto, or the Second Amended Complaint, just there alone.

10        So to Your Honor's questions about the in camera review, so

11   we certainly believe that there's no burden argument that

12   they've raised.  On relevance, they just want to shield the

13   information to the most recent time frame.  But as Your Honor

14   pointed out, the critical time frame goes back to January 16th.

15        And as to that, you know, the Court can certainly conduct

16   an in camera review and assess whether that January 16th or

17   surrounding communication is actually attorney-client privileged

18   or not.  We're not in a position to challenge that yet.  But

19   certainly if we had Floyd's -- Mr. Floyd's deposition, we could

20   ask him, you know, even "yes" or "no," right, did you tell your

21   counsel that you didn't want to proceed with the case.  They

22   couldn't instruct him not to answer on that, that is not

23   attorney-client privileged information.  And then, at a minimum,

24   certainly, it's been put at issue with the motion to amend and

25   the statements that have been made.

1        But as a -- and we've tried to proceed incrementally and

2    responsibly here, Your Honor, by including proceeding in

3    parallel in defending this class action.  But what we're seeking

4    for at the moment is the communications to be provided to Your

5    Honor for this in camera review where -- we haven't heard how

6    many communications it is, Your Honor, but, certainly, it could

7    be assessed whether or not that information is privileged or

8    not.

9        We're not asking the Court to do anything sua sponte; if it

10   wasn't privileged, it obviously should be produced.  But we are

11   also asking for a detailed privilege log, at least.  And that

12   detailed privilege log could at least tell us the substance of

13   e-mails or text messages in terms of the ray line.  If there

14   were attachments, was Mr. Floyd provided a copy of the motion

15   that was -- to amend that was going to be filed on his behalf

16   with a complaint with him still on it, things like that.  At a

17   minimum, we could have that information so we could have an

18   intelligent meet-and-confer about this issue.

19       But, really, the circumstances here with a single named

20   plaintiff who brought this case are very unusual.  And the

21   record -- we certainly need a full record or more fulsome record

22   to see whether or not this case should be proceeding the way it

23   currently is.  And, you know, there really hasn't been a burden

24   or a relevance argument.

25       And the reason why we opposed the unconditional withdrawal

 1    is for us to have to, for example, subpoena plaintiffs' counsel,

 2    for them to claim privilege and us to come back to Your Honor,

 3    it's just going to delay things further.  So that is why we did

 4    this in the context of our opposition.  And I will just direct

 5    Your Honor, we cited the *Fujifilm* case, Western District of

 6    Washington, at page 9 of our brief.  And that's one where the

 7    district court that has broad discretion to ensure that the

 8    administration of justice is carried out, that there's no delay

 9    and prejudice to defendants, the Court sought and got in camera

10    information.  And then, after that, was able to resolve the

11    motion.  But that provides authority for it, and I don't think

12    we've heard any compelling argument as to why the Court is not

13    authorized to get that information.

14         So maybe I'll stop there, Your Honor, and see if you have

15    any questions for me.

16              THE COURT:  So I do, Mr. Hochstadt, have a few

17    questions.

18         So do you agree with the general principle that a lawyer

19    has authority to take any lawful measure within the scope of

20    representation that is reasonably calculated to advance a

21    client's objectives as defined by the client, unless there's a

22    contrary agreement or instruction, or something reserved to the

23    client, like settlement.

24              MR. HOCHSTADT:  Your Honor, I think the key there was

25    the scope of authority, and that's what comes up in Washington

1   -- sorry, I'm just grabbing it, Your Honor -- that's what comes

2   up in Washington Rule of Professional Conduct 1.2 and 1.2(f) is

3   there has to be this, what the lawyer knows or reasonably knows,

4   that the person is acting, you know, with authority.  And that

5   goes to the scope of authority, Your Honor.

6        And so if Mr. Floyd said, I don't want to be involved in

7   this anymore, I don't want to produce my information, I don't

8   want to comply with discovery, that would have told them that

9   they cannot be moving to amend on his behalf and filing a new

10  complaint on his behalf with -- and try and bring in two other

11  plaintiffs, because as Your Honor knows, we can't have a sort of

12  placeholder plaintiff who can carry forward a case that really

13  should be a separate action with separate defenses for that

14  action, if that's transpired, which we don't know because that

15  information has been shielded from us.  But the circumstances of

16  events over the last eight or nine months really suggests that

17  we need to know what happened on January 16th.

18        THE COURT:  So if Hagens Berman took actions that were

19  contrary to its agreement with Floyd or his instructions, then I

20  come back to the remedy question:  Are the unauthorized filings

21  void, voidable, is it a sanctions issue, is this

22  disqualification of counsel; what remedies are you

23  contemplating?

24        MR. HOCHSTADT:  So without being exhaustive, Your

25  Honor, but I would just say, at a minimum, motion for

1  reconsideration.  We have new material evidence.  And the motion

2  to amend was not authorized.  So the Floyd case -- we'd be

3  seeking Floyd's case to be dismissed for wont of prosecution, it

4  was an individual action.  And they're obligated to bring a

5  separate new case.

6      And we have our Rule 12 rights on that new case on the

7  grounds that I mentioned, statute of limitations, successive

8  class actions.  And that will dramatically shape the altar if

9  there is any further proceedings, if -- in this matter or not.

10      THE COURT:  So you previously opposed the motion to

11  amend on the grounds that amendment was sought to circumvent

12  this potentially fatal statute of limitations issue.

13      According to your briefing, Floyd's claims and the claims

14  of any other plaintiffs are time barred because the action was

15  filed more than four years after the GTA.

16      So I believe you had articulated previously that a

17  deposition of Floyd was necessary for you to flesh out the facts

18  related to that issue, but, now, if you're unable to depose

19  Floyd because he refuses to sit and we never get ahold of him,

20  how do you resolve that statute of limitations issue?

21      MR. HOCHSTADT:  The issue as to the two new plaintiffs

22  that they were to have brought sort of a new action, then, is a

23  separate one; right?  Because they would have brought that in

24  2024 here, it's more than four years after a global tenants

25  agreement.  And then we would say that that's time barred.

1    The overt act that they're complaining about was 2019, so it's

2    just after -- and it's an alleged boycott case.  So there's no

3    continuing violation.  It's not an alleged price-fixing case or

4    anything like that.

5         So that would be the first argument, Your Honor.

6         And even if Your Honor disagreed with that, there's the

7    *China Agritech* Supreme Court case that we cited that doesn't

8    allow successive class actions to be brought.  So even if the

9    new case was not time barred, it's not allowed to be a class

10   action because Floyd was already a class action, so it would be

11   an individual action at that point.  Again, a dramatically

12   different case.

13        So those would be the two arguments, Your Honor.

14             THE COURT:  And so what happens if Floyd is permitted

15   to withdraw, can the -- do the new plaintiffs get to sort of

16   bootstrap on to his claims for timeliness purposes?

17             MR. HOCHSTADT:  So we would say, no, Your Honor, that

18   they would not under these circumstances because he was the only

19   named plaintiff; right?  It was -- again, this goes back to why

20   this is so in usual in that sense is this wasn't brought with

21   multiple named plaintiffs and there are others who are

22   continuing it; this was Floyd's case for 16 months.  He was the

23   only plaintiff.  If he didn't want to prosecute it, the case

24   should be over at that point.  I mean, that's the fundamental

25   ethical rules that we all know about.  It's a case brought by

1    the plaintiff, not by the plaintiffs' lawyers.

2         And in here, in particular, there's not something, and I

3    suspect counsel, you know, may raise the *Fife* (phonetic) case,

4    it's sort of the only one that they focus on, but the

5    circumstances there were so different.  One, the case did not

6    address Washington Rule of Professional Conduct 1.2(f).  We

7    checked even the briefing, it wasn't raised at all, which is a

8    big distinction, but also the circumstances.  There, the

9    plaintiff, one, complied with discovery.  The plaintiff

10   communicated to plaintiffs' counsel, saying, I don't want to be

11   involved anymore, so you had that evidence in the record.  And

12   plaintiffs' counsel within two days of that information, filed

13   the motion to amend that case.  Very different than the

14   circumstances that we have here where January 16th is when,

15   apparently, this conversation happened that prompted plaintiffs'

16   counsel to find new plaintiffs.  We don't hear about this until

17   February 13th, and all we're told is, it's not a withdrawal,

18   that's it.

19        THE COURT:  Okay.  And -- but so with respect to

20   Floyd's case, is there an argument that Floyd's case is time

21   barred?

22        MR. HOCHSTADT:  So Floyd's case, we -- as to Floyd

23   specifically, not the new plaintiffs, that's one where we need

24   his deposition because we need to know when he knew about the

25   GTA.

1          As to the others, it's much cleaner, because just based on

2     the years, it's more than four years after the GTA.

3               THE COURT:  Okay.  Okay.  I just wanted to make sure I

4     was understanding correctly that that was the -- that defense

5     was linked to the deposition.

6               MR. HOCHSTADT:  Yes.

7               THE COURT:  Okay.  This might be a good time to go

8     ahead and let Mr. Harrington respond to some of these arguments.

9          Go ahead, Mr. Harrington.

10              MR. HARRINGTON:  Well, I'll start with the last issue,

11    the statute of limitations, because this -- this really is a red

12    herring.  Our new plaintiffs made their purchases for which

13    they're claiming injuries within four years of our filing the

14    amended complaint.  And we have a four-year limitations period

15    on their claims.  So on their face, these claims are timely.

16    Standing alone.  They're not --

17         So there's this argument from -- that you just heard that,

18    you know, for -- there's some way that the new plaintiffs are

19    relying on Floyd for the timeliness of their claims, and tolling

20    doctrines that could apply to Mr. Floyd, none of that's true.

21    They have a four-year limitations period.  They filed their

22    claims within four years of their injuries.  The claims are

23    timely, full stop; right?

24         So there's just -- there just isn't a statute of

25    limitations issue here at all as to the new plaintiffs.

1          And even the limitations argument that defendants are

2     making as to Floyd, you know, it's that, well, they -- you knew

3     about -- you must have known about the GTA from some public

4     reports about it, and therefore your claims aren't timely.  But

5     you can make -- they didn't make that argument; right?  And so

6     --

7          But to the extent they want to make that argument as to the

8     new plaintiffs, they can.  Nothing about the procedural posture

9     of the case prevents them from doing that.

10         And our position --

11         THE COURT:  Mr. Harrington, I'm sorry, I just want to

12    stop you for one second there.  You said they didn't make that

13    argument.  When would they have made that argument?  It sounds

14    like they're still trying to make that argument.

15         Do you mean at the -- prior to -- motions.

16                        (Cross-talking.)

17         MR. HARRINGTON:  Yeah.  They didn't make it at the

18    motion-to-dismiss stage.  And they certainly could have, they

19    just chose not to.

20         But to the extent they want to make the argument as to the

21    new plaintiffs, they can make that argument as well.

22         But at the end of the day, we're not -- we're not --

23    there's this -- this insinuation that somehow we're using Floyd

24    to manufacture timeliness for the new plaintiffs, and that's

25    just not true on the face of our pleading.  They filed within

1    four years of their injuries.  Their claims are on their face

2    timely under the applicable statute of limitations, that's it.

3         So like there's this insinuation that we're trying to sort

4    of, you know, backdoor something when it's just not the case.

5         So --

6         THE COURT:  Mr. Harrington, how do you explain the

7    change in position between the January/February representation

8    that Floyd was not withdrawing, and then the June motion to

9    withdraw?  If you had not heard from Floyd in that time.

10        MR. HARRINGTON:  Yeah.  I think sort of the rendition

11   of events you got was a little misleading in the sense that

12   it -- you know, the idea that you heard was that, well, you

13   know, the moment the motion to amend was granted, we turned

14   around and said, oh, you know, Floyd withdrew, so he's gone.  I

15   mean, that's just not the case; right?

16        So the timeline is this, when we move to amend in February,

17   which was within a month or about a month after we last heard

18   from Mr. Floyd, there was still a chance for him to participate

19   in the case.  That's what was driving our thinking.  At the

20   time, we weren't sure what he wanted to do.  And we said this in

21   our papers, we said we can't communicate with him to determine

22   how he wants to proceed and whether he wants to be a rep or not.

23   That's stated on page 4 of our motion to amend; right?  So --

24   but at that time, he could still participate if he chose.

25        And then during the pendency of the motion to dismiss, the

1    parties agree to lift the schedule, right, given the motion to

2    amend and because there's some other discovery issues with

3    defendants.  And so we weren't under -- Mr. Floyd wasn't under a

4    deadline that he was going to breach in the case; right?  So

5    there's still time for him to -- if he was going to engage, to

6    engage, and he did.

7         And when we -- after the motion to amend was granted, the

8    Court instructed the parties to confer on a schedule, we put in

9    a schedule.  And through that process and our continued

10   outreach, it's clear Mr. Floyd was not going to reengage in time

11   to meet the case schedule.

12        And we had been pretty clear with defendants that if --

13   and, I mean, I think we said this in our motion as well that,

14   you know, if it comes to the point where Mr. Floyd can't abide

15   by the case schedule, then we're going to need to withdraw him.

16   And that's what we did; right?  There's not like a -- there's no

17   dramatic change in position; our position all along has been,

18   look, if he can reengage in time to meet his discovery

19   obligations under the case, he should be given an opportunity to

20   do that.  If he can't, he needs to be withdrawn.  And when it

21   got to the point where he couldn't, that's when we withdrew him.

22             MR. HOCHSTADT:  Your Honor, can I address the statute

23   of limitations briefly?

24             THE COURT:  You may.

25             MR. HOCHSTADT:  Okay.  So if plaintiff counsel really

1    believes that the injury of the new plaintiffs accrued when they

2    bought it, then based on everything you've heard about Mr.

3    Floyd, they should dismiss Mr. Floyd's case and just file the

4    new lawsuit, and they don't have a statute of limitations issue.

5    But that's not what they did because they were trying to

6    piggyback off the tolling of Mr. Floyd, that's one thing.

7         As to the second piece, though, Your Honor, just the issue

8    is the injury and when the overt act occurs.  And our position,

9    and we haven't briefed this fully, Your Honor, and we certainly

10   would at the proper time, the issue is the overt act.  The

11   allegations -- this lawsuit is an alleged boycott of Amazon

12   third-party sellers that began January 1, 2019, according to

13   plaintiffs.  That's the overt act.  It doesn't matter when these

14   new plaintiffs purchased their new iPad or iPhone.  And that's

15   an issue of antitrust law that we can hash out with full

16   briefing before Your Honor.  But that's what's going on there is

17   the debate over what is the overt act and when the injury

18   started to accrue.  And we respectfully disagree with each other

19   on that, but that's something that merits sort of full briefing

20   on antitrust law for the Court's consideration, but that's the

21   issue that's going on there.

22        But I go back to, if they really thought they weren't

23   piggybacking off of Floyd's statute of limitations, then they

24   would have just resolved this issue a lot cleaner by dismissing

25   his case that he didn't want to participate in and file their

 1    new action.

 2              MR. HARRINGTON:  Your Honor, can I just address that

 3    briefly?

 4              THE COURT:  Sure.

 5              MR. HARRINGTON:  The reason not to file a brand-new

 6    case is because a brand new case would start over from square

 7    one.  And there's no reason for us to do that.

 8         So, you know, in moving to amend, we do -- we did what, you

 9    know, Class Counsel do on all of these cases, we tried to push

10    the case forward; right?  But it's not because there's some

11    underlying statute of limitations issue, it -- there's just no

12    conceivable argument that plaintiffs who file their claims

13    within four years of their injury, their claim's untimely.  It

14    would mean that when they first heard about this agreement,

15    presumably if they heard about it prior to their injuries, they

16    were required to bring a lawsuit at that time before they

17    purchased an iPhone or anything on Amazon and were injured?

18    That cannot be the case.  I mean, they had no redressable injury

19    to sue upon.  Their claims would be dismissed at the gates on

20    standing.  You have to be injured in order to bring a claim, and

21    so your claims don't accrue until you're injured.  And that

22    happened for these plaintiffs and all the plaintiffs when they

23    purchased an iPhone on the platform.  And for these new

24    plaintiffs and Mr. Floyd, they brought their claims within four

25    years of that happening.

1      There's just -- there really is no issue here.  It's -- I'm

2   concerned that we're off on a tangent on limitations based on

3   sort of an insinuation that it's something that we're trying to

4   avoid, and we're not.  We just want the case to proceed, and we

5   don't think it should start at square one on a new docket.

6           MR. HOCHSTADT:  Your Honor, if it would help to do

7   some short briefing on this, we'd be happy to do it.  I mean, we

8   just have a fundamental disagreement on what the overt act is.

9   And this is also why lawsuits have to be brought timely by

10  proper plaintiffs, and I think that's part of the issue that's

11  going on here.

12          THE COURT:  All right.  Well, I will take that

13  suggestion under advisement, as I consider these other issues.

14      But I do, before we wrap up, want to touch on the sanctions

15  issue.

16      So I interpret the request for sanctions as largely

17  unopposed by plaintiffs, and I want to make sure that that's

18  correct; is that right, Mr. Harrington?

19          MR. HARRINGTON:  That's correct.  I'll just say, you

20  know, that the sanctions that defendants are requesting are --

21  essentially, require Floyd to provide the discovery the Court

22  has already ordered him to provide, and we don't oppose that.

23      You know, we're a little concerned by the suggestion that

24  sanctions can be iterative, and they're going to keep moving for

25  sanctions and continuing this, but we can cross that bridge when

1  we get to it and -- but for the sanctions they requested, we're

2  not opposing that.

3          THE COURT:  All right.  Let's talk a little bit now,

4  just briefly, about the extension to the case schedule.  And I

5  realize now, as I think about this, that the Court's disposition

6  of the pending motions may impact your answers to these

7  questions, but give it a shot, anyway, is that -- so you've

8  stipulated to an extension of the case schedule, the fact

9  discovery cutoff, class certification briefing, moving that, I

10  think, to the end of February -- or fact discovery to the end of

11  February, is that realistic?  And how do we -- how do we keep

12  this case on track?

13          MR. HARRINGTON:  That's a fair question.  I -- it's

14  maybe optimistic, but we're hoping to keep pushing it forward.

15  I mean, the reason the schedule was moved is that we needed more

16  time for -- to schedule depositions with Amazon, in particular,

17  and so the fact discovery period needed to be pushed out in

18  order to accommodate those depositions.  I feel like the parties

19  are working cooperatively right now to get those depositions

20  scheduled.

21      I will say, the Canadian data hasn't been produced yet,

22  which is a concern for us.  That's the data that the Court

23  compelled Amazon and Apple to produce.  And that's important to

24  the analysis we want to do for class certification, so we're

25  concerned about that.  And there are also some other discovery

 1    issues.  And I won't get into the weeds with them, but discovery

 2    -- some concerns we have about the adequacy of defendants'

 3    document collections that we haven't resolved yet, and we hope

 4    to.  But those are issues that could impact the schedule,

 5    depending on how things play out.

 6            THE COURT:  Okay.  Mr. Hochstadt.

 7            MR. HOCHSTADT:  Your Honor, all I'd add to that is, as

 8    I said before, we're proceeding in parallel, right, while this

 9    is going on.  And we had a deposition last week, and, you know,

10    we're producing documents, data, we're working through issues.

11    I think if there was anything noteworthy, you would hear about

12    it and nothing -- nothing rising to that level yet.  And this

13    was mostly driven by the holidays and, you know, deponents'

14    calendars.

15            THE COURT:  Well, I commend you for working together.

16    And I agree with you, I would probably know if there was

17    something insurmountable, so I thank you for that.

18         Defendants, you know, I'm not asking about your strategy,

19    but are you contemplating, as we think about case management,

20    any dispositive motions?

21            MR. MUNDEL:  We are, Your Honor.  We're thinking both

22    about opposing class certification and about a motion for

23    summary judgment.

24            THE COURT:  All right.

25            MR. HOCHSTADT:  For Apple, same as well.

1        And I should just add, Your Honor, just on the Canadian

2    data, we've mostly finished our production on that front, so I

3    didn't want the record to be left like that.

4            THE COURT:  Okay.  Okay.  Great.

5        All right.  Before we wrap, does -- counsel for Amazon, did

6    you want to weigh in on any of these issues more than you just

7    did?

8            MR. MUNDEL:  Your Honor, I'll be brief, and maybe ten

9    seconds or less, because I think they've been well said, but

10   I'll just say, it is critical, we think, to know what happened

11   in that early January conversation, because if Mr. Floyd did

12   indicate either through his words or actions that he did not

13   believe the case should continue, then the case should have

14   ended then, because he was a single plaintiff, bringing a case

15   against two defendants.  And it's not just a question, did he

16   authorize the complaint, did he indicate that the complaint

17   should be dismissed or the case should end, because that would

18   change the structure of this, so that's why we think it's

19   important.

20       And then, finally, as to the sanctions that we're seeking,

21   we are proceeding very incrementally here.  We don't -- we are

22   not asking the Court for any type of extreme sanction, we just

23   think that if the Court puts a more formal order showing cause

24   for him to comply, we hope that he will comply with the

25   discovery request.

1    Thank you, Your Honor.

2         THE COURT:  All right.  Thank you, Counsel.

3    Thank you, everyone.  Always nice to see you.

4    I will take these issues under advisement and issue an

5    order promptly.

6         MR. HOCHSTADT:  Thank you, Your Honor.

7         MR. HARRINGTON:  Thank you, Your Honor.

8         THE COURT:  All right.  We'll be in recess.

9    Thank you.

10                 (Court recessed 10:49 a.m.)

11              C E R T I F I C A T E

12    I certify that the foregoing is a correct transcript from

13    the record of proceedings in the above-entitled matter.

14              /s/ Marci E.C. Chatelain

15              Marci E.C. Chatelain, CCR, RPR, RMR, CRR
              Federal Court Reporter

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

**Bhatia, Shivangi**

| | |
|---|---|
| **From:** | Ben Harrington <benh@hbsslaw.com> |
| **Sent:** | Wednesday, November 27, 2024 2:49 PM |
| **To:** | Liegel, Brian |
| **Cc:** | mparris@orrick.com; Hochstadt, Eric; MacBride, Morgan; bmundel@sidley.com; jdugan@redgravellp.com; Goldmark, John; Fradette, Jacquelyn E; Perry, Mark; Bhatia, Shivangi; Steve Berman; Ben Siegel; Ted Wojcik; Meredith Simons; Bhatia, Shivangi |
| **Subject:** | RE: Floyd et al. v. Amazon |
| **Attachments:** | Floyd Communications Log (Amended) 11.27.2024.pdf |

Brian—Below are our responses to the issues you've raised:

- As stated on our call last Thursday, we have not put attorney-client communications at issue and we will oppose any motion by defendants contending that privilege has been waived.

- At your request, we have confirmed that the February 26 and May 8 communications in our privilege log are privileged in their entirety.  They were properly included in our log.

- Also at your request, we have reviewed log entries referencing "discovery" to confirm whether any of these communications also related to amendments to the pleadings.  The 3/1 communication identified at line 39 was also for purposes of providing legal advice related to amendments.   Attached is an amended log that makes this notation and fixes the typo we previously discussed in line 63.

- Please treat Mr. Floyd's email addresses as confidential under the protective order and redact them from any filings.  We are not asserting that other portions of the log are confidential, with the understanding that defendants are likewise asserting that only limited information in their privilege logs warrant confidential treatment.

Best,

Ben

---

**From:** Liegel, Brian <Brian.Liegel@weil.com>
**Sent:** Monday, November 25, 2024 12:22 PM
**To:** Ben Harrington <benh@hbsslaw.com>
**Cc:** mparris@orrick.com; Hochstadt, Eric <eric.hochstadt@weil.com>; MacBride, Morgan <Morgan.MacBride@weil.com>; bmundel@sidley.com; jdugan@redgravellp.com; Goldmark, John <JohnGoldmark@dwt.com>; Fradette, Jacquelyn E <jfradette@sidley.com>; Perry, Mark <Mark.Perry@weil.com>; Bhatia, Shivangi <Shivangi.Bhatia@weil.com>; Steve Berman <Steve@hbsslaw.com>; Ben Siegel <bens@hbsslaw.com>; Ted Wojcik <TedW@hbsslaw.com>; Meredith Simons <merediths@hbsslaw.com>; Bhatia, Shivangi <Shivangi.Bhatia@weil.com>
**Subject:** RE: Floyd et al. v. Amazon

Counsel –

We are writing to follow up on our meet and confer last Thursday, and to make sure we share the same understanding about the items that were discussed. Please see below.

1

- **At Issue:** Our understanding is that we are at an impasse with respect to whether the particular communications identified in our prior email on 11/19/24 have been placed at issue in this litigation by Hagens Berman.

- **February 26 and May 8 entries** (line 38 and 41): Our understanding is that you will be checking to determine if these entries on the Communications Log are in fact privileged (or can be produced in redacted form), and will let Defendants know.

- **Entries that say "discovery"**: We discussed that one entry, February 26, mentions "amendment" but no others refer to "amendment." Unless you advise separately, our understanding is that the entries on the log about "discovery," are not about amendment.

- **Confidentiality of the Log:** Our understanding is that only Mr. Floyd's email addresses are confidential, and that is the only thing that will need to be redacted in Defendants' briefing. Please confirm.

Best,

Brian



**Brian G. Liegel**
Counsel

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
brian.liegel@weil.com
+1 305 577 3180 Direct
+1 305 374 7159 Fax

---

**From:** Liegel, Brian
**Sent:** Tuesday, November 19, 2024 8:41 PM
**To:** 'Ben Harrington' <benh@hbsslaw.com>
**Cc:** mparris@orrick.com; Hochstadt, Eric <eric.hochstadt@weil.com>; MacBride, Morgan <Morgan.MacBride@weil.com>; bmundel@sidley.com; jdugan@redgravellp.com; Goldmark, John <JohnGoldmark@dwt.com>; Fradette, Jacquelyn E <jfradette@sidley.com>; Perry, Mark <Mark.Perry@weil.com>; Bhatia, Shivangi <Shivangi.Bhatia@weil.com>; Steve Berman <Steve@hbsslaw.com>; Ben Siegel <bens@hbsslaw.com>; Ted Wojcik <TedW@hbsslaw.com>; Meredith Simons <merediths@hbsslaw.com>
**Subject:** RE: Floyd et al. v. Amazon

Ben,

Let's plan on 1pm PT Thursday. I will circulate an invite.

Best,

Brian



**Brian G. Liegel**
Counsel

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
brian.liegel@weil.com
+1 305 577 3180 Direct
+1 305 374 7159 Fax

---

**From:** Ben Harrington <benh@hbsslaw.com>
**Sent:** Tuesday, November 19, 2024 7:43 PM
**To:** Liegel, Brian <Brian.Liegel@weil.com>
**Cc:** mparris@orrick.com; Hochstadt, Eric <eric.hochstadt@weil.com>; MacBride, Morgan <Morgan.MacBride@weil.com>; bmundel@sidley.com; jdugan@redgravellp.com; Goldmark, John <JohnGoldmark@dwt.com>; Fradette, Jacquelyn E <jfradette@sidley.com>; Perry, Mark <Mark.Perry@weil.com>; Bhatia, Shivangi <Shivangi.Bhatia@weil.com>; Steve Berman <Steve@hbsslaw.com>; Ben Siegel <bens@hbsslaw.com>; Ted Wojcik <TedW@hbsslaw.com>; Meredith Simons <merediths@hbsslaw.com>
**Subject:** Re: Floyd et al. v. Amazon

Brian:  We're available Thursday between 1 and 3 PT, if that works.


On Nov 19, 2024, at 10:41 AM, Liegel, Brian <Brian.Liegel@weil.com> wrote:


Counsel –

Please let us know when you are available to meet and confer on either tomorrow or Thursday regarding Plaintiffs' counsel's assertion of privilege in the Communications Log.  To guide the discussion, we'd like to discuss the following issues.

1. Please confirm whether Mr. Floyd has asserted privilege over any of the communications you have asserted privilege over and, if not, the basis for which you are asserting privilege on his behalf.
2. Several of your filings and arguments before the Court have put at issue Mr. Floyd's desire or capability to continue with the case, as well as any basis for implied authority for your motion to amend or filing a second amended complaint.  To the extent the following communications are privileged, we believe that any privilege has been waived because the contents have been put at issue:
    1. Your January 11, 16, 24 and February 1 communications with Mr. Floyd (lines 27 – 33, 35, 37)
    2. Your February 26 e-mail to Mr. Floyd which concerns "amendments to pleadings" (line 38)
    3. Your May 8 text message to Mr. Floyd (line 41)
    4. Any other entry that you contend provides authority to make a filing on Mr. Floyd's behalf of either the motion to amend or the Second Amended Complaint.

We also believe that you have withheld documents or portions of documents which are not privileged and do not provide legal advice.  Please be prepared to discuss the following factual questions:

1. Did Mr. Floyd ever mention adding additional class representatives in any of his e-mail, text, or phone communications.  If so, when?
2. On what date did Mr. Floyd first inform Hagens Berman of his intent or desire to withdraw from the litigation?
3. Did Hagens Berman communicate with Mr. Floyd at any time from June 4, 2024 up to August 15, 2024?
4. Did Hagens Berman communicate with Mr. Floyd at any time from March 2, 2024 to May 7, 2024?
1. What was the subject matter of discussion for the phone calls listed at lines 51, 53, 57, 66, 67?
2. Lines 42-44 include ███████████ as a recipient.  Please identify the individual associated with that email account.
3. Line 63 identifies a voicemail left by Steven Floyd as a communication from counsel.  Please explain.

Defendants reserve all rights.

Best,

Brian

**Brian G. Liegel**
Counsel

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
brian.liegel@weil.com
+1 305 577 3180 Direct
+1 305 374 7159 Fax

**From:** Ben Harrington <benh@hbsslaw.com>
**Sent:** Friday, November 15, 2024 9:34 PM
**To:** mparris@orrick.com; Hochstadt, Eric <eric.hochstadt@weil.com>; Liegel, Brian <Brian.Liegel@weil.com>; MacBride, Morgan <Morgan.MacBride@weil.com>; bmundel@sidley.com; jdugan@redgravellp.com; Goldmark, John <JohnGoldmark@dwt.com>
**Cc:** Steve Berman <Steve@hbsslaw.com>; Ben Siegel <bens@hbsslaw.com>; Ted Wojcik <TedW@hbsslaw.com>; Meredith Simons <merediths@hbsslaw.com>
**Subject:** Floyd et al. v. Amazon

Counsel:  A production of documents in response to the Court's November 5 Order can be accessed at the following link (password to follow):

███████████████████████████████████████████████████

These documents are designated Confidential under the Protective Order.

Also, please find attached a privilege log of communications with Mr. Floyd that have been located through a reasonable search.  You will note that the log identifies in Column H certain public filings and other documents

already exchanged by the parties. Because all parties already have access to these materials they are not being reproduced.

Best,

Ben

--
**Ben Harrington** | **Partner**



Hagens Berman Sobol Shapiro LLP
Berkeley, CA
(510) 725-3034
benh@hbsslaw.com

News | Cases | Twitter | Facebook

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT E

**From:** Hagens Berman <contactus@hbsslaw.com>
**To:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Subject:** Class-Action Lawsuit — Apple/Amazon iPhone & iPad Overpricing
**Date:** Thu, 25 Jan 2024 00:23:06 +0000
**Importance:** Normal



hb-logo-blue-2020-876px-3

## — CLASS-ACTION LAWSUIT —

## Did you buy a new iPhone or iPad from Amazon.com between 2019 and the present?

You may have overpaid due to an alleged illegal agreement between Apple and Amazon designed to artificially inflate the cost of Apple products. Learn more »

### WHAT'S THE ISSUE?

According to the class-action lawsuit, Amazon and Apple agreed to **illegally restrict the number of sellers of Apple iPhones and iPads on Amazon**, allegedly violating federal antitrust laws. The complaint states that this agreement between Apple and Amazon allegedly resulted in **less competition**

**and higher prices for Apple iPhones and iPads purchased via Amazon.com** in the U.S. market.

## HOW DO I KNOW IF I'M AFFECTED?

We believe Apple and Amazon's agreement has affected consumers who fit the following three criteria:

- **Product Purchased:** Any new model Apple iPhone or iPad
- **Timeframe:** Jan. 2019 - Present
- **Seller:** Purchased on Amazon.com

**LEARN MORE »**

Hagens Berman has pursued multiple antitrust class actions against both Apple and Amazon. In 2016, the firm finalized a settlement with Apple valued at $616 million regarding alleged manipulation of the e-books market. In 2022, Apple agreed to settle antitrust claims brought by a class of iOS developers represented by Hagens Berman for a total of $100 million. Payments to individual developers in this settlement ranged from hundreds to tens of thousands of dollars.

Hi Jolene,

You are receiving this email because you signed up to receive information from Hagens Berman regarding class-action lawsuits and investigations that may affect you. Our firm is pursuing the lawsuit listed below. If you are impacted by this issue, contact us to find out more.

Sincerely,
Steve W. Berman, Managing Partner
Hagens Berman

To stay connected with Hagens Berman, follow us on social media.

   

Hagens Berman, 1301 Second Avenue, Suite 2000, Seattle, WA 98101, US

CONFIDENTIAL

PLTFS037118

Unsubscribe Manage preferences

CONFIDENTIAL

PLTFS037119