1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN FLOYD, et al.,

                    Plaintiff(s),

        v.

AMAZON.COM INC., et al.,

                    Defendant(s).

CASE NO. C22-1599-KKE

ORDER ON DEFENDANTS' MOTION TO
COMPEL

Defendants Amazon.com Inc. and Apple Inc. filed a motion to compel production of 11 communications between Plaintiff Steven Floyd and his attorneys, arguing that by affirmatively putting the content of those communications "at issue" in this case, Floyd implicitly waived any privilege that protected those communications. Dkt. No. 172 at 10–11.[1] The Court has considered the parties' briefing and heard oral argument on the motion. *See* Dkt. No. 187. Because Defendants have failed to show that the communications are "at issue" with respect to any claim or defense asserted in this litigation, the Court finds that the actions of Floyd and/or his counsel do not constitute an implied waiver.

Thus, the Court will deny Defendants' motion to compel but, as explained herein, may nonetheless order Plaintiffs to submit some of Floyd's communications for *in camera* review for

---

[1] This order refers to the parties' briefing using CM/ECF page numbers.

ORDER ON DEFENDANTS' MOTION TO COMPEL - 1

1    purposes of resolving Plaintiffs' counsel's motion to withdraw and Defendants' motion for

2    discovery sanctions, if those motions are reactivated.

3                                              **I.    BACKGROUND**

4           On February 29, 2024, Floyd filed a motion for leave to amend the complaint to add new

5    plaintiffs, based on counsel's representation that although Floyd had not expressed an intent to

6    withdraw as a named Plaintiff, he had, since January 16, become "difficult to reach" and could be

7    experiencing "some type of personal emergency." Dkt. No. 80 at 8. Plaintiffs' counsel began a

8    search for additional plaintiffs on January 24, and ultimately found two class members willing to

9    serve as class representatives. *Id.*

10          The Court granted Floyd's motion for leave, acknowledging the authority permitting

11   amendment where a class representative ceases communicating or seeks to withdraw. *See* Dkt.

12   No. 98. The Court's order assumed that, based on counsel's representations, Floyd would be

13   continuing in the litigation and that, for example, his adequacy as a named plaintiff would be

14   adjudicated at a future point. *See id.* at 4–5. Because counsel represented that Floyd had not

15   withdrawn and intended to stay part of the class, the Court found that the motion to amend did not

16   constitute a back-door attempt to begin the action anew. *Id.*

17          After the Court granted Plaintiffs' motion to amend, Defendants immediately renewed their

18   efforts to depose Floyd and seek other forms of discovery from him. *See* Dkt. No. 104. Those

19   efforts proved unsuccessful because Floyd was not communicating with his attorneys, and

20   Defendants moved to compel responses to outstanding discovery requests. *Id.* In response to the

21   motion to compel, Floyd's attorneys filed a cross-motion to withdraw him as a class representative,

22   but indicated that he was not dismissing his claims with prejudice and that he wished to remain

23   part of the proposed class. *See* Dkt. No. 114 at 17.

24

In light of the fact that Floyd retained his status as a class representative even after the complaint was amended, and based on a finding that Defendants would be prejudiced without the discovery they seek from Floyd, the Court granted Defendants' motion to compel discovery and indicated that Floyd's cross-motion to withdraw as a class representative would not be adjudicated until after he complied with the order compelling discovery. Dkt. No. 132. That order was entered on August 16, 2024, and required that Floyd respond to discovery requests by August 30, 2024, and to sit for deposition by September 30, 2024. *Id*. at 8.

On August 29, Plaintiffs filed a stipulated motion asking for an extension of the August 30 deadline to September 13, indicating that counsel had been able to reestablish communication with Floyd and were hopeful that he could comply with his discovery obligations with a modest extension. Dkt. No. 134. Counsel represented that the parties did not anticipate an extension of the deposition deadline. *Id*. ¶ 6. Defendants agreed to that extension and the Court granted the stipulated motion the same day. Dkt. Nos. 134, 135.

On September 13—the new deadline for Floyd's discovery responses—Plaintiffs' counsel filed a motion to withdraw, saying that their relationship with Floyd fundamentally broke down since their last communication with him on August 28. Dkt. No. 140 at 4–5. Apple[2] opposed the motion to withdraw, on the grounds that withdrawal should be conditioned upon an extension of Floyd's discovery deadlines, and Plaintiffs' counsel's production of all of their 2024 communications with Floyd to the Court for *in camera* review to determine the degree to which any of counsel's statements/filings during that time had been authorized by Floyd himself. Dkt. No. 143. Defendants also filed their own motion for discovery sanctions against Floyd, which Floyd's counsel did not oppose. Dkt. Nos. 152, 156.

---

[2] Amazon took no position on Floyd's counsel's motion to withdraw representation and did not join Apple's opposition. Dkt. No. 145.

ORDER ON DEFENDANTS' MOTION TO COMPEL - 3

The Court denied the motion to withdraw and the motion for sanctions without prejudice, pending Plaintiffs' counsel's production of all non-privileged communications with Floyd in 2024, as well as a privilege log for the withheld communications, to flesh out the record "in order to resolve questions of delay, prejudice, and harm to the administration of justice."  Dkt. No. 168. The Court indicated that those motions could be reactivated after any future motion related to the production of Floyd's communications is resolved.  *Id.* at 3.

Plaintiffs' counsel complied with this order, and Defendants filed a motion to compel 11 of the communications listed on the Plaintiffs' privilege log.  Dkt. No. 172.  For the following reasons, the Court finds that because Defendants have not shown that the attorney-client privilege has been waived with respect to those communications, their motion to compel their production will be denied.

## II.    ANALYSIS

The Ninth Circuit has described the attorney-client privilege in a multi-part explanation:

(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).  "The burden is on the party asserting the privilege to establish all the elements of the privilege."  *Id*. at 999–1000.

The attorney-client privilege is implicitly waived "when the privilege holder raises a claim or defense that puts privileged communications at issue."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015).  Privileged communications are "at issue" when:

(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

1    *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).  "Privileged communications do not

2    become discoverable simply because they are related to issues raised in the litigation, [but] where

3    a party raises a claim which in fairness requires disclosure of the protected communication, the

4    privilege may be implicitly waived."  *Apple*, 306 F.R.D. at 241 (cleaned up).

5            Defendants agree with Plaintiffs that Floyd's communications with his counsel are

6    protected by the attorney-client privilege (Dkt. No. 192 at 23, 33), but contend that this privilege

7    was waived by counsel's affirmative acts in filing the motion for leave to amend the complaint.

8    The Court disagrees.  While Floyd's privileged communications are relevant to issues raised in

9    litigation, the Court does not find that any of Floyd's affirmative acts went so far as to raise a claim

10    that "in fairness requires disclosure" of his protected communications to opposing counsel.

11    Floyd's communications (and lack thereof) were referenced generally in the motion for leave to

12    amend the complaint, to explain why the motion was filed, but those communications and that

13    motion were not directly connected to any claim in the amended complaint or any defense thereto.

14            Without a connection to a claim or defense asserted in this case, the Court does not find

15    that Floyd has taken an affirmative act that placed his communications "at issue" for purposes of

16    the *Hearn* test.  *See, e.g.*, *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (where

17    defendant appealed his criminal conviction based on a Sixth Amendment claim asserting that his

18    attorney disparaged him, which led him to discharge that attorney and retain inexperienced counsel

19    who provided inadequate representation: "[Defendant] cannot assert that certain factors caused

20    him to discharge his attorney and then invoke the attorney-client privilege to prevent the

21    government from examining the situation further."); *3D Sys., Inc. v. Wynne*, No.: 21-cv-1141-

22    AGS-DDL, 2024 WL 940318, at *6 (S.D. Cal. Feb. 21, 2024) (finding that because the statute of

23    limitations on plaintiff's trade secret misappropriation claims "began running when it knew or had

24

reason to know of the injury that is the basis of the action and the cause of that injury," the privileged information pertaining to plaintiff's internal investigation would "go to the heart of whether it knew or had reason to know" of defendants' alleged misappropriation and it was therefore "at issue" (cleaned up)); *Sorensen v. Black & Decker Corp.*, No. 06cv1572-BTM (CAB), 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007) ("The privilege is waived only when a party chooses to utilize the [privileged] information to advance a claim or defense."); *Aloe Vera of Am., Inc. v. United States*, No. CV 99-1794-PHX-JAT, 2003 WL 22429082, at *3 (D. Ariz. Sep. 23, 2003) (finding that privileged documents were "at issue" for purposes of proving defendant's statute of limitations defense).

Here, Floyd's privileged communications formed the factual backdrop for the motion for leave to amend (as well as the subsequent motion to withdraw as a class representative and counsel's motion to withdraw representation), but the content of the communications did not establish any element of a claim or defense raised in the litigation. Defendants suggest that if Floyd had instructed his counsel to dismiss his claims, this instruction would have (or should have) led to the dismissal of the action entirely, but this position is not supported by authority in and out of this circuit. *See, e.g.*, *Vue v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-JLT-SAB, 2024 WL 4436814, at *3–7 (E.D. Cal. Oct. 4, 2024) (citing cases as support for granting a motion for leave to amend a complaint to substitute class representatives, over defendants' objection that plaintiff did not authorize her attorneys to file the motion for leave to amend); *see also Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Strictly speaking, if no motion to certify has been filed … the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case. If the case is later restarted with a new plaintiff, it is a new commencement, a new suit. But the courts, both federal and Illinois, are not so strict. Unless jurisdiction never

attached, or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed, substitution for the named plaintiffs is allowed." (cleaned up)).

That the privileged communications may reveal ethical lapses by Floyd's counsel is an insufficient basis on which to compel their production (*see, e.g.*, Dkt. No. 192 at 22–29); this Court is not tasked with, as a general matter, policing attorney-client relationships nor monitoring counsel's compliance with the Rules of Professional Responsibility. Because the motion presently before the Court seeks production of Floyd's communications to Defendants, and the Court finds that the protection afforded those communications has not been waived here, the Court will deny the motion.

But even if the Court will not grant Defendants' motion to compel production of Floyd's communications, the Court nonetheless finds it would be necessary to review Floyd's communications *in camera* for purposes of resolving two motions that have been terminated while the Court considered whether Floyd's communications should be produced to Defendants: Plaintiffs' counsel's motion to withdraw representation and Defendants' motion for discovery sanctions against Floyd. *See* Dkt. Nos. 140, 152. Given that Floyd himself has ceased participating in this litigation, the Court must turn to other sources for the information necessary to resolve these motions. The record currently before the Court is inadequate to determine whether Plaintiffs' counsel's withdrawal of representation is appropriate with or without the conditions requested by Apple. *See* Dkt. No. 143. "The decision to grant or deny counsel's motion to withdraw is ultimately committed to the discretion of the trial court[,]" and the Court requires more information about Floyd's relationship with his counsel in order to exercise that discretion. *Fujifilm Sonosite, Inc. v. Imaging Specialists Grp., LLC*, No. C13-983 RSM, 2014 WL 1400992, at *1 (W.D. Wash. Apr. 10, 2014).

Likewise, the Court cannot resolve the motion for discovery sanctions against Floyd without understanding what he may have communicated to his counsel regarding his intentions with respect to discovery and/or pursuing his claims in this litigation.  Federal Rule of Civil Procedure 37(b)(2)(A) empowers the Court to enter "just orders" to address a party's failure to obey a discovery order, and the Court cannot determine what is just in this scenario without more information that may be available upon review of Floyd's communications.

### III.    CONCLUSION

For these reasons, the Court DENIES Defendants' motion to compel.  Dkt. No. 172.

The parties are directed to consider, in light of this ruling, whether to reactivate Plaintiffs' counsel's motion to withdraw as Floyd's counsel (Dkt. No. 140) and/or Defendants' motion for discovery sanctions (Dkt. No. 152).  Any party may file a notice of intent to reactivate no later than March 14, 2025.  If either motion is reactivated, the Court will provide further instruction on the *in camera* production required for the Court to adjudicate the motion(s).

Dated this 7th day of March, 2025.

Kymberly K. Evanson
United States District Judge