1              UNITED STATES DISTRICT COURT

2        WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4                              )
    STEVEN FLOYD, JOLENE FURDEK, ) C22-01599-KKE
5   and JONATHAN RYAN, on behalf )
    of themselves and all other  ) SEATTLE, WASHINGTON
6   similarly situated,          )
                                 ) June 16, 2025
7                  Plaintiffs,   )
                                 ) 2:00 p.m.
8   v.                           )
                                 ) Motion Hearing
9   AMAZON.COM, INC., a Delaware )
    corporation, and APPLE INC., )
10  a California corporation,    )
                                 )
11                 Defendants.   )

12  _____

13          VERBATIM REPORT OF PROCEEDINGS
       BEFORE THE HONORABLE KYMBERLY K. EVANSON
14          UNITED STATES DISTRICT JUDGE

15  _____

16

    APPEARANCES:
17

18

19   For the Plaintiffs:    Steve W. Berman
                            Meredith Simons
20                          Hagens Berman Sobol Shapiro LLP
                            1301 2nd Avenue
21                          Suite 2000
                            Seattle, WA 98101
22
                            Ben Harrington
23                          Hagens Berman Sobol Shapiro LLP
                            715 Hearst Avenue
24                          Suite 300
                            Berkeley, CA 94710
25

```
 1    For the Defendant      Anna Pletcher
      Apple:                 O'Melveny & Myers
 2                           Two Embarcadero Center
                             28th Floor
 3                           San Francisco, CA 94111

 4                           Benjamin Bradshaw
                             O'Melveny & Myers
 5                           1625 Eye Street NW
                             Washington, DC 20006
 6
                             Mark Steven Parris
 7                           Orrick Herrington & Sutcliffe LLP
                             401 Union Street
 8                           Suite 3300
                             Seattle, WA 98101
 9
      For the Defendant      Benjamin Mundel
10    Amazon:                Sidley Austin
                             1501 K. Street NW
11                           Suite 600
                             Washington, DC 20005
12
                             John Goldmark
13                           Davis Wright Tremaine
                             920 Fifth Avenue
14                           Suite 3300
                             Seattle, WA 98104
15

16

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  Now calling Case No. C22-01599, assigned

2    to this court.  Floyd versus Amazon.com, Inc., et al.

3       May I have appearances, please, starting with plaintiffs'

4    counsel?

5          MR. BERMAN:  Good afternoon, Your Honor.  Steve

6    Berman for the plaintiffs.

7          MR. HARRINGTON:  Good afternoon, Your Honor, Ben

8    Harrington for the plaintiffs.

9          MS. SIMONS:  Good afternoon, Your Honor.  Meredith

10   Simons for the plaintiffs.

11         MR. PARRIS:  Good afternoon, Your Honor, Mark Parris

12   from Orrick, for Apple.  Ben Bradshaw and Anna Pletcher are

13   my co-counsel.  And Dave Grothouse, our client, is in the

14   courtroom as well.

15      Thank you.

16         MR. GOLDMARK:  Good afternoon, Your Honor, John

17   Goldmark from Davis Wright Tremaine.  And with me is Ben

18   Mundel with Sidley; and in-house counsel, Scott Fitzgerald.

19         THE COURT:  Good afternoon, counsel.  It's nice to

20   see your faces in three dimensions.  We've spent a lot of

21   time in this case on Zoom, as you're aware.

22      We are here on Apple's motion for reconsideration of the

23   court's prior order on the motion to amend.  Now, I don't

24   need to tell the parties that there are a lot of collateral

25   issues in this case.  I do have questions for the parties on

1    the motion.  And so I may interrupt you at times to get those

2    addressed.  But I will go ahead and start with Apple.  It is

3    your motion.  And then we'll hear from the plaintiffs, and go

4    from there.

5          MS. PLETCHER:  Thank you, Your Honor.  Good

6    afternoon.  Anna Pletcher for Apple.  We are here today

7    because we have new information that we did not have in

8    May 2024, when the court decided the plaintiffs' motion to

9    amend.

10    That new information is that Mr. Floyd withdrew from this

11    litigation, weeks, and quite possibly months, before

12    plaintiffs filed their motion to amend.  That new information

13    shows that the motion to amend was, in fact, a back-door

14    attempt to begin the action anew.  And as a result, we are

15    asking the court to reconsider its ruling on the motion to

16    amend, because taking this new information into

17    consideration, the motion fails on two separate grounds.  One

18    is jurisdictional, and the second, under Rule 15.

19    Starting with the jurisdictional ground.  Floyd's

20    withdrawal created a jurisdictional gap.  Now, at the time

21    plaintiffs' counsel moved to amend its complaint to add the

22    new plaintiffs, there was no live case or controversy under

23    Article III, because Floyd had withdrawn.

24          THE COURT:  Counsel, I'm going to stop you right

25    there.  What do we do with the cases, recognizing they're not

1    binding, that say there's not a jurisdictional gap in the

2    class action context, because there's some room for plaintiff

3    to amend if they discover that their named plaintiff has some

4    sort of defect?

5            MS. PLETCHER:  Right.  Your Honor, so the default

6    rule, right, is that precertification substitution is allowed

7    only when the named plaintiffs' claims persist and counsel

8    files for substitution immediately.

9        So the cases where courts found some leeway, were cases

10   where the facts were distinctly different from here.  Where,

11   for example, in the *Vue* case, that plaintiff had health

12   problems, their father had cancer, the plaintiff herself had

13   health problems.  And the court found that it was reasonable,

14   because the counsel had been reasonably diligent, to go ahead

15   and give them some leeway there.

16       That is not the case here.  It's distinctly different,

17   where there is evidence that we now know about where the

18   plaintiff had withdrawn months before, and it was due to a

19   lack of candor on the plaintiffs' counsel's side, that we

20   didn't know about it, and that this court was deciding on a

21   motion to amend, on facts that were not true.

22           THE COURT:  Is that a diligence inquiry, then?  Is

23   that the issue?  Should counsel have figured this out

24   earlier?

25           MS. PLETCHER:  Yes.  Counsel absolutely should have

1   figured this out earlier.  But there are two distinct

2   questions, which I hear Your Honor asking.  One goes to the

3   jurisdictional piece and then the other goes to this

4   diligence question.  And they are intertwined.

5       But let me start with the diligence piece, which I think

6   bears more heavily on the Rule 15 analysis.  And the

7   diligence question is critical because, yes, counsel should

8   have known earlier.  And this isn't a case where there was

9   ambiguity about the plaintiff's silence, for example, about

10  whether he wanted to continue on in this case.  Here the

11  plaintiff, from what we understand, Mr. Floyd actually did

12  intend to affirmatively withdraw.  And here's one example of

13  why counsel should have known that.

14      So in September 2023, when Apple first issued its RFPs in

15  the discovery process, some of the questions we were asking

16  for from the plaintiff were very, very basic.  These weren't

17  discovery questions that required a lot of digging, things

18  like, "What was your purchase history?"  And even that, Floyd

19  couldn't produce.  That alone should have been a sign, even

20  if plaintiffs' counsel hadn't have had the discussion before

21  then, that there was a problem.

22      And then from then on, we see these other communications

23  that indicate that the relationship was breaking down.  And

24  the lack of discovery, that should have raised some

25  questions.

1           THE COURT:  So I understand that Apple propounded

2    discovery in September of 2023.  Help me remember, did the

3    parties go back and forth trying to get answers to that

4    discovery in that timeframe?  Was there some suggestion that

5    Mr. Floyd was not being cooperative in discovery, even back

6    in that timeframe?  And I'll tell you why I'm asking this, is

7    -- so when the court ordered the production of in-camera

8    e-mails, that sort of diligence clock, in our discussion,

9    went back to January.  Are you suggesting that it should have

10   gone back to the fall of 2023?

11          MS. PLETCHER:  I am, Your Honor.  And I think if we

12   had known then what we know now, we would have moved to

13   compel the communications going back further.  In terms of

14   the diligence clock itself, I think it's better understood,

15   as a totality-of-the-circumstances situation here, because

16   there are a lot of different factors that would lead to this

17   conclusion that plaintiffs should have been more diligent at

18   that time, as opposed to having a particular point in time

19   when the clock started.

20      So Your Honor had asked about due diligence -- we were

21   talking about Rule 15.  But then there's the jurisdictional

22   gap piece as well.

23      So once Mr. Floyd withdrew from this case, there was no

24   plaintiff to carry it on.  And it's typical in cases like

25   this that plaintiffs' counsel tries to marshal a number of

1  different named plaintiffs, because these things happen,

2  right?  Sometimes, who knows what happens with different

3  plaintiffs.  And that's why you get a number of them.  But

4  this case was unusual in that there was only one single

5  plaintiff.  And that does create a risk that issues could

6  come up, like issues that came up here.  And the rule is that

7  if there is no plaintiff, there is no case.  That was the

8  problem here.  That's why there was a gap.

9       So for that reason alone, there's a jurisdictional gap.

10  And the court can decide, and we believe should decide, that

11  the motion to amend fails on that point.

12       And then on the Rule 15 point, there are other factors too

13  that I want to remind the court of.  There's the diligence

14  issue.  There's also the bad-faith component.  And there's

15  the prejudice to the defendant.

16       So on the bad-faith component, I won't dwell on that

17  because the court has already issued a sanctions motion.  We

18  know well enough about counsel's misrepresentations and lack

19  of candor.

20       The question of if the defendants are prejudiced.  We are,

21  Your Honor.  And we are prejudiced here because we've been

22  forced to defend against an improper case, a case that should

23  have been dismissed, that we shouldn't have had to go through

24  all of the court's time, and the parties' time and money,

25  because the case never should have gotten this far, and that

1    alone is a prejudice.

2        So I'm happy to elaborate on any of these points if the

3    court has further questions.  But the bottom line is that

4    with these new facts, if you go back through the motion to

5    amend, each piece of the court's analysis changes, and

6    changes fundamentally based on these new facts.  And we

7    believe that that leads to one conclusion, which is that the

8    motion should have been dismissed and should be dismissed

9    now.

10            THE COURT:  So you note correctly that Hagens Berman

11   did not offer an explanation for the misrepresentations of

12   Floyd's communications and speculate about reasons for why

13   they did that.  I believe your brief said that their

14   intention was to conceal their motive to allow a, quote,

15   unvetted, unqualified class representative to file suit and

16   extend the limitations period indefinitely.

17       Is it Apple's position if they had simply admitted in

18   January 2024 that Mr. Floyd wanted out of the case and sought

19   to dismiss his claims and substitute new plaintiffs, would

20   Apple have had grounds to oppose that motion?

21           MS. PLETCHER:  If the plaintiffs had been candid with

22   the court, starting in September 2023, which is when I

23   believe this question of the diligence clock actually starts,

24   then they would have been much too late, come January, to try

25   and restart the motion for which the statute of limitations

1    had already run.

2        So the answer is, no, Your Honor.  They would not have

3    been able to -- they would not have been able to amend the

4    motion at that time either, because of this fact that months

5    before, the plaintiff had already withdrawn.

6            THE COURT:  But there is some authority, you would

7    agree, that -- and these cases are different, because we

8    don't have this sort of misrepresentation piece -- where a

9    plaintiff says:  Look, I can't do this anymore.  I don't want

10   to participate.  And the court is made aware of that, the

11   opposing counsel is made aware of that, and a substitution is

12   made.

13       So had that series of events unfolded, would Apple's

14   position -- how would you distinguish those cases?

15           MS. PLETCHER:  Yes, Your Honor.  And those cases are

16   distinctly different.  So *Fife,* I think is the case that is

17   on the court's mind.  And *Fife* is different for a number of

18   different reasons, for four, in particular.  First is there

19   was no affirmative withdrawal in that case.  The plaintiff

20   was silent in *Fife* as to whether she was going to continue or

21   not.  Secondly, the plaintiff in *Fife* actually did produce

22   discovery.  They participated in the case.  They showed signs

23   of wanting to continue.  That is distinctly different than

24   what we have here.

25       Third, there was a -- I think the court called it a

1   "basically simultaneous" substitution of plaintiffs, which we

2   did not see happening in our case here.

3       And then finally is the diligence point, that Fife's

4   withdrawal was sudden and unexpected, which is not the case

5   here.  And so that's one example of how we can distinguish.

6   But I wonder if Your Honor is questioning about the equities

7   here.  And tell me if I'm too forward in jumping to that.

8           THE COURT:  No, please.  I certainly am concerned

9   about the equities in this case.  I have substantial concerns

10  about the equities in this case, but am trying to sort out,

11  sort of, if there had been a different series of disclosures,

12  would that have changed Apple's position.  And if so, then

13  I'm assuming it's because of these other cases.  And if not,

14  then my question was, why?

15          MS. PLETCHER:  Right.  Right.  So the disclosures

16  that would have had to have happened would have had to be as

17  they are in the other cases, where there is an immediate

18  disclosure when a problem arises.  Again, in *Fife*, sudden,

19  unexpected.  They go straight to the court, they let them

20  know.

21      In this case, if it's in September 2023, when it looks

22  like things are not working out with Floyd, come to the

23  court, come to the defendants, let them know right away.  If

24  that had happened, Your Honor, I think we would be in a very

25  different place than we are now.  But that's not what

 1   happened.

 2       In each of these other cases, there was some circumstance

 3   -- well, each of these other cases, there was a diligence

 4   showing that wasn't showing here.  There were plaintiffs that

 5   were ready, who weren't -- who we're not seeing here.  And

 6   then, of course, there was this issue of candor to the court.

 7       So to directly answer Your Honor's question, if in

 8   September 2023 had counsel come with a candid, transparent

 9   explanation of what was happening, maybe things would be

10   different.

11       THE COURT:  So are you asking the court to consider

12   the order granting leave to amend, from today's vantage

13   point, sort of knowing what the court knows about what Floyd

14   said in January 2024, and all the events that have transpired

15   since then?  Or to reconsider the order as if counsel had

16   been candid and described Floyd's position on the motion at

17   that time?

18       MS. PLETCHER:  Your Honor, we're asking the court to

19   do both, actually.

20       Because on the facts, just on the pure substance, putting

21   aside counsel's candor issues, the facts alone merit a

22   different decision.  And that's clear as you work your way

23   through the previous motion to amend, the court was very

24   clear that it relied clearly on the -- counsel's

25   representations of Floyd's continued participation.  And that

1   alone, on the substance, changes the calculus.

2       But the other piece is important as well, the piece about

3   counsel's candor, because it's our view that the reason why

4   plaintiffs' counsel didn't just file a new case, is because

5   there was statute of limitations problems.  And he was using

6   -- they were using this motion to amend, as a way to

7   back-door, starting this motion anew.

8       And you do have to wonder, why didn't they just start it

9   if there wasn't this problem?  And we believe that is the

10  case.  And they waited almost until the end of the statutory

11  period to bring the complaint, in the first place.  It was

12  just less than two months shy of the end of the statute of

13  limitations period.  And they knew that.

14      So I would be concerned -- we would be concerned that if

15  the court didn't consider the impact of counsel's behavior

16  when granting the motion, that it could potentially set a bad

17  precedent.

18          THE COURT:  So let's talk about the statute of

19  limitations.  And I know this issue has been sort of hinted

20  at variously throughout the years, now, that this case has

21  been going on, but never actually fully teed up.

22      So is it Apple's position, then -- you said two months shy

23  of the limitations period.  But I thought I understood your

24  prior briefing to suggest it was after the limitations period

25  and that it was subject to this discovery from Floyd that may

 1    reveal whether or not there was some sort of tolling issue.

 2        So what is Apple's position on when Floyd's claims accrued

 3    and when the statute of limitations period expires?

 4            MS. PLETCHER:  Your Honor is correct, that previously

 5    we had taken the position that the discovery of the Global

 6    Tenant Agreement, by Floyd, would have kicked off the statute

 7    of limitations.  But I use January 1st, 2019 as an outer

 8    bound, because that's when the GTA went into effect.  So

 9    January 1st, 2019 would bring us to January 1st, 2023, is the

10    time when the statute of limitations would run.  But that

11    would be the outer bounds.

12        Floyd's discovery of it might have been sometime sooner.

13    And as you know, we have yet to get any discovery from Floyd,

14    so we do not know the answer to that question.

15            THE COURT:  Okay.  Do you have similar statute of

16    limitations periods or concerns -- I'm assuming not, then --

17    with the new plaintiffs?

18            MS. PLETCHER:  The new plaintiffs, Your Honor, could

19    bring individual claims.  But we believe that *China Agritech*

20    prevents tolling of class claims.  So they could not bring a

21    class claim.

22            THE COURT:  That would be only in the event that the

23    court were to grant your motion and this class would never be

24    certified and then their claims would be individual.

25            MS. PLETCHER:  Correct.

 1          THE COURT:  All right.  Thank you, counsel.  I may

 2    have some additional questions for you, after I hear from the

 3    plaintiffs.  But I think that's it for the moment.

 4          MS. PLETCHER:  Thank you.

 5          MR. BERMAN:  Good afternoon, Your Honor, Steve Berman

 6    for the plaintiffs.

 7        Your Honor, I want to start with the jurisdictional issue

 8    and then I'll go to the Rule 15 factors and answer your

 9    questions.  First, as to the jurisdictional issue, I think

10    you've already decided that, and there's nothing -- we are

11    here on a motion to reconsider, and I submit there's nothing

12    new that warrants reconsideration.

13        On March 7th, you wrote that -- in denying defendant's

14    motion to compel, that, "Defendants suggest that if Floyd had

15    instructed his counsel to dismiss his claims, this would lead

16    to dismissal.  But this position is not supported by

17    authority in and out of this circuit."  You went on to say,

18    "Courts are not so strict, unless jurisdiction never

19    attached, or the attempt to substitute comes long after

20    dismissal."

21        Well, we're in the exact same situation.  The order

22    presumed that Floyd had instructed his counsel to dismiss his

23    claims.  You have now held that that's how you read his

24    January 16th communication.  So under your March 7th holding,

25    we're back under the umbrella of that holding, and we're --

1  the court has found jurisdiction, relying on the *Degamo* case

2  and the *China Agritech*, which both say that when you have a

3  situation when the main plaintiff is out, there's a lot of

4  leeway and there should be a lot of discretion to allow the

5  class case to continue.  And I think that's where we are.

6      The second thing I would say in regard to jurisdiction is,

7  I do believe that the *Fife* case is remarkably close.  It's

8  not binding on you, but it's certainly close.  In *Fife*, the

9  class representative stated that she had, "Grown tired of and

10 no longer wished to participate in the case."  And the

11 defendant said:  Well, that ends the controversy.  And Fife

12 never stated that she affirmatively wanted to remain a class

13 member.  And the court went on in *Fife* to say that she no

14 longer wanted to participate because she didn't want to be

15 saddled.  The court went on to say that silence on being in

16 the class was not enough.  She has to affirmatively opt out.

17     And basically it's the same thing we have here.  The

18 communication you refer to from Mr. Floyd was, he didn't want

19 to participate in discovery.  He did not opt out,

20 affirmatively.  So under the reasoning in *Fife*, I think that

21 reasoning is exactly what we have here.

22     And in terms of diligence, you're going from the January

23 16th communication.  There is nothing in this record to

24 suggest, prior to January 16th, we had an indication from

25 Mr. Floyd, that he wanted to get out of the case.

1    Counsel were exchanging discovery objections and responses

2    in writing.  September to January.  No one produced any

3    discovery.  The defendants didn't produce any discovery until

4    March of 2024.  And one of the defendants, until June 2024.

5    So there was nothing going on that they can point to, that's

6    a red flag that we weren't diligent.

7    So when we got that January 16th communication, what did

8    we do?  We went out and we got new class representatives.  We

9    vetted those class representatives.  We moved in a relatively

10    short period of time to amend.  And you already found that we

11    were diligent.  And there is nothing in the record to suggest

12    that your analysis should change, in that regard.  So we meet

13    the diligence test.  Nothing has changed.

14    And that takes me to, assuming that we have jurisdiction,

15    to Rule 15.  The most important factor in Rule 15, all the

16    cases say, is prejudice to Apple.  And Apple claims it's

17    prejudiced because, quote, it's having to defend against an

18    untimely, putative class action.  Again, you've already

19    rejected that argument.  And nothing that's happened changes

20    that.  And that's at ECF 98, at 8, where you made that

21    holding.

22    Second, we've been hearing about this statute of

23    limitations, that we must have been acting to try to get some

24    advantage out of the statute of limitations.  First of all,

25    this is pretty unusual.  If there was a good statute of

1   limitations argument, why hasn't that brought on a motion to

2   dismiss?  That's standard.  That's what happens in these

3   cases.  We haven't seen that motion, right?  If Apple really

4   thinks there's a good statute of limitations motion, fact

5   discovery is closed.  They can move for summary judgment.

6        But the fact is that the new plaintiffs bought and have

7   sued within the four-year period, on their purchases.  And so

8   there's just no statute of limitations defense and there's no

9   real prejudice to Apple, because they're having to defend a

10  case that they haven't even raised the statute of limitations

11  as a defense in.

12        THE COURT:  I think, counsel, the issue that I

13  understand to have been raised by Apple was that there was a

14  potential statute of limitations issue, but it required

15  discovery from Mr. Floyd, which never materialized.

16        MR. BERMAN:  But they have taken discovery on the

17  other two plaintiffs.  And it's still never materialized.

18  There is no statute of limitations motion to dismiss.  There

19  is yet to be a statute of limitations summary judgment

20  motion.  And the statute of limitations for the new

21  plaintiffs is four years.  And we moved for a class period of

22  four years from the date of their purchase.  We didn't seek

23  to borrow on the class motion, any of the time that would be

24  attributable to Mr. Floyd.

25        So as a practical matter, we haven't sought to take

1    advantage.  We've borrowed from the new plaintiffs' statute

2    of limitations.  And that's all we've done.

3        So if Apple has a valid summary judgment motion, they can

4    bring it.  But it has nothing to do with whether the new

5    plaintiffs should have been allowed to amend their complaint.

6        Let me turn to two other issues, Your Honor.  One is, at

7    the time that we moved for amendment, we also suggested that

8    intervention would be appropriate.  And courts have routinely

9    allowed intervention when the named plaintiff's case has been

10   dismissed.  Again, that's the Ninth Circuit *Degamo* case,

11   citing other cases as well.  Defendant' only argument about

12   intervention, in a footnote, is that it was not timely.  But,

13   again, the motion to intervene was brought in a timely

14   fashion, in response to when we learned -- when we received

15   that communication from Mr. Floyd.  So the motion to

16   intervene is timely.

17       And the last point I wish to make, Your Honor, is Apple

18   has asked that the Furdek and Ryan claims be dismissed with

19   prejudice.  And, again, I think it points out you have a lot

20   of reaching going on here.  Because there's been no

21   adjudication of the Furdek and Ryan claims.  All you would be

22   reconsidering is whether they should have been allowed to

23   amend at the time when we sought amendment.  If you were to

24   dismiss the case or reverse your leave to amend, we submit

25   that these plaintiffs would have the right to file a case

1   tomorrow, because there's been no adjudication.  And the

2   statute of limitations would run, four years back from the

3   day we file this case.  So certainly we did not believe there

4   was any basis for dismissal with prejudice as to those two

5   claims.

6        Your Honor, that's it, unless you have questions.

7        THE COURT:  Well, I do have questions, Mr. Berman.

8   So help me understand your response, if you have one, to the

9   diligence issue.  Now, I know you said there's nothing in the

10  record going back prior to January 2024 that would inform the

11  court's evaluation of diligence.  That's because Apple didn't

12  have any reason to seek communications prior to January 2024,

13  when they moved to compel.  Your counterpart for Apple argued

14  that the court should look at communications, or that at

15  least it's relevant what was happening back in

16  September 2023, with respect to Mr. Floyd's ability or

17  inability or unwillingness to participate in discovery.

18       So why shouldn't the court look back at that position?

19  And I think with respect to the jurisdictional issue, the

20  argument is that this case is unlike the other cases where

21  leeway was given, because of the misrepresentations of the

22  plaintiff's intent.  So help me understand why the court

23  should just march ahead on the basis of findings that were

24  made without a full picture of what was happening.

25       MR. BERMAN:  I've reviewed those communications.  If

1  you would like to review them in camera, again, we'd be glad

2  to submit them.  Because I think that they show that we did

3  exercise diligence, that the first time we were on notice of

4  an issue was January 16th, right?

5      And remember, in our motion to amend, we did not conceal

6  the fact we were having trouble getting ahold of Mr. Floyd.

7  But I'd be glad to submit that material in camera to you.

8          THE COURT:  But your motion to amend says he may have

9  had a medical emergency.  It wasn't that he didn't wanted to

10  participate.  Doesn't this set this case apart from *Castillo*,

11  from *Vue*, from *Fife*?  Isn't that different?

12          MR. BERMAN:  It is different.  But ultimately, what

13  the courts and all these cases are trying to do, is when you

14  have a class representative, no longer wishes to participate,

15  the courts try to make sure that the interests of the class

16  are protected.  That's what *Fife* did.  That's what the Ninth

17  Circuit case did in *Degamo*.  And that's what the courts do.

18      I submit, Your Honor, assuming that you find nothing from

19  September to January that would have indicated to us that

20  Mr. Floyd wanted out -- don't forget in August, he reappeared

21  and seemed to be interested in the case.  But I don't think

22  you'll find anything.

23      So the question is, did we exercise diligence in the

24  period from January and when we filed our motion to amend,

25  and I submit to the court, we did.  There's no simultaneous

1    requirement in the cases that you have to dismiss, and the

2    next day file with a new class representative.

3             THE COURT:  So I know in your motion to amend, you

4    relied on *Fife*.  Similar situation, at least to some extent.

5    If plaintiffs knew at the time that they filed that motion

6    that there was authority that permitted substitution of

7    parties, why didn't the plaintiffs just say that Mr. Floyd

8    didn't want to participate anymore?

9             MR. BERMAN:  For two reasons.  One, I know you made

10   the finding that he was clear.  But we were looking for what

11   we thought was a clear indication from him to dismiss the

12   case.  Because this is not unusual.  I think counsel for

13   Apple said it's not unusual that class representatives drop

14   out.  And so it's not unusual for us to have a class

15   representative, even though we explain the discovery process

16   when we're retained, when the discovery actually comes in and

17   they see the extent of it, they get cold feet, they go, "Holy

18   cow.  I didn't realize this is what I signed up for."  So we

19   wanted to make sure that process was completed with

20   Mr. Floyd.  We fully understood, "I want out, period."

21        Second, we had a case that was already ongoing, right?  We

22   had already agreed on various discovery responses, what was

23   going to be produced by the plaintiffs.  Because we didn't

24   want to delay the case and because we wanted to show

25   diligence, you might remember that in the motion to amend, we

1   also told the court that the new plaintiffs have already

2   received the document request from the defendants, they began

3   gathering documents, and this case is going to march on,

4   unaffected.

5       So we thought it was most efficient to just simply amend

6   the complaint.  And we did also suggest, if amendment was not

7   proper, then intervention was proper.  So we approached it

8   two ways.  But we did not, at the time, think it made sense

9   to just file a new case.

10      But that's essentially where we are now, because Floyd is

11  out.  We now have a new case with a class period that

12  coincides with the plaintiffs' statute of limitations, so

13  we're not seeking to take any advantage of some extended

14  statute of limitations, by virtue of Floyd being in or out.

15          THE COURT:  I asked you in a minute order on Friday

16  to come prepared to discuss whether you believe these

17  communications that the court reviewed in camera, remain

18  privileged.  What's your position on that?

19          MR. BERMAN:  Our position is that they do remain

20  privileged, because even though Mr. Floyd doesn't want our

21  representation anymore -- right? -- he hasn't waived the

22  privilege.  And the privilege continues, even when you're

23  fired by a client.  So we believe they are privileged.

24          THE COURT:  And Floyd is the privilege holder, as the

25  client.  Is there any evidence that Floyd intends to assert

1    the privilege over these communications?

2           MR. BERMAN:  Well, we haven't been in touch with

3    Mr. Floyd, as you know.  So I don't know what his intent is.

4    We haven't seen him disclose the communications anywhere that

5    we're aware of.

6           THE COURT:  So you have no knowledge of whether Floyd

7    shared these communications with third parties?

8           MR. BERMAN:  I believe one of the e-mails says he's

9    going to.  We don't know if he actually did it.

10          THE COURT:  Both parties have argued about what he

11   said in his January 2024 communication, that he no longer

12   wished to participate in the case.  Plaintiffs have taken the

13   position that he did not affirmatively disavow wanting to

14   stay in the class.  Defendants argue that he did, based on

15   the court's summary of e-mails they have not seen.  Are his

16   communications now at issue?  And if we have both sides

17   parsing his words, and only plaintiffs' counsel and the court

18   has seen them, is that a fair use of the privilege?

19          MR. BERMAN:  If I could waive the privilege -- but

20   it's not mine -- I would have no objection to the defendants

21   seeing what you've seen.  But I don't think that's my right

22   to do that.

23          THE COURT:  All right.  But just to be clear for the

24   record, you're not aware of whether Mr. Floyd followed

25   through on his statements regarding transmitting the

1    communications to third parties?

2         MR. BERMAN:  I am not.

3         THE COURT:  All right.  Do you have any position on

4    whether those comments suggest that he did not intend his

5    communications to be confidential?

6         MR. BERMAN:  I don't have a position on that, Your

7    Honor.

8         THE COURT:  All right.

9         MR. BERMAN:  It's been hard to understand Mr. Floyd

10   throughout this process, after January.  So I don't want to

11   infer something either way.  Because in January, he said he

12   doesn't want to participate in discovery.  In August, he's,

13   "Call me, Meredith, I'll get the stuff."  It's just kind of

14   all over the place.

15        THE COURT:  All right.  Thank you, Mr. Berman.  I may

16   have some follow-up questions for you.  But I'll go ahead and

17   hear from Apple.

18        MS. PLETCHER:  Thank you, Your Honor.  I have a

19   number of points that Mr. Berman made that I'd like to

20   address, if the court permits, starting with the

21   jurisdictional issue.

22      Plaintiffs said that the jurisdictional issue has already

23   been decided, based on the court's March 7th order.  But that

24   is not correct.  The March 7th order was dealing with the --

25   whether Floyd's communications were privileged and whether

1    they should be compelled to be produced.  It was in an

2    entirely different context.  And there were different facts

3    at issue at that time.  Of course, the court did not know

4    then what it knows now, which is that Floyd actually

5    withdrew, and counsel's lack of candor with the court, both

6    of which I think make for a very different analysis now than

7    what the court engaged in at that point.

8        Next, on the question of *Fife*.  And there are a number of

9    issues here that I'm going to address together, because I

10   think they're all interrelated.

11       So it's true that *Fife* permitted amendment in that

12   situation, partially because of what I'll call a sense of

13   unfairness, that there were class claims that could not be

14   addressed if the court took a -- what I'll say -- "harsher

15   position."

16       But there is a different view that the Supreme Court

17   expressed in *China Agritech*, that I think is really important

18   to put out there right now.  So Justice Sotomayor, in her

19   concurrence in *China Agritech*, argued that the court's

20   refusal to extend American Pipe tolling would result in an

21   unfairness because claims might end up being prohibited just

22   because a plaintiff perhaps was inadequate.  She used exactly

23   that example.  And she suggested that courts permit liberal

24   amendment, when appropriate, to deal with that issue.

25       Justice Ginsburg, in Footnote 5, addressed that issue.

1    And she said -- and I'm going to quote it, because I think it

2    is meaningful here.  She said, "Rule 23 and putative class

3    members' own interests in adequate representation, and the

4    efficient adjudication thereof, weigh heavily against tolling

5    for successive class actions."  There's nothing inequitable

6    in following these guides.

7        And the reasoning behind her view is that it's very

8    important for class plaintiffs to come forward early.  The

9    whole underlying theory behind the court's decision in *China*

10   *Agritech* was to encourage class plaintiffs to come forth

11   early, for the efficient administration of class claims and

12   of justice.

13       In this case, Mr. Floyd waited almost to the very end of

14   the statute of limitations period, to come forward.  There

15   were no other plaintiffs who came forward, until -- we know,

16   until now, based on what plaintiffs have said, they didn't

17   even start looking for additional class plaintiffs until

18   Mr. Floyd went dark in January.

19       So that fact pattern alone -- I would never presume to

20   guess what Justice Ginsburg would do -- but I think that

21   would disturb her, right?  The policy reason behind having a

22   statute of limitations that means something, is to encourage

23   class claims to come forth early.

24       So there is no inequity in, in this case, denying the

25   motion to amend, even if that means that the plaintiffs'

1    class claims will no longer be able to stand.  Because the

2    plaintiffs individually would still be able to take advantage

3    of the tolling.  It's just the class piece that, for the

4    reasons explained in *China Agritech* and by Justice Ginsburg,

5    would no longer go on.

6         THE COURT:  I understood Mr. Berman to be arguing

7    that regardless, the new plaintiffs have a timely class

8    claim.  What's Apple's position with respect to that?  And I

9    understand we're getting a touch far afield.  And I will give

10   you an opportunity to brief this, if the parties want to

11   brief it.  But since we're all here, I'd welcome your

12   thoughts with respect to this -- with this issue.

13        MS. PLETCHER:  Right.  So the statute of limitations

14   has run on class claims.  That is our position.  The

15   individual plaintiffs could still bring individual claims,

16   should they choose.

17        THE COURT:  And that's based on the assumption that

18   this current action would be dismissed and that the new

19   plaintiffs would have to initiate a new action and those

20   class claims would be barred.  Am I understanding you

21   correctly?

22        MS. PLETCHER:  That's correct, Your Honor.  Exactly.

23        THE COURT:  Then what about -- do you have any

24   response to plaintiffs' argument with respect to

25   intervention?

1    MS. PLETCHER:  Yes.  It's the same problem with

2  respect to intervention.  We have the same issues around

3  diligence, around bad faith.  The analysis, in effect, is the

4  same.

5      And I think those are all the additional points I wanted

6  to make, Your Honor, unless the court has more questions.

7        THE COURT:  All right.  I think that's all.

8      Mr. Berman, do you have any follow-up that you wanted to

9  make?

10       MR. BERMAN:  Just two quick points, Your Honor.

11  Counsel for Apple said that the March 7th analysis was not

12  applicable, because the facts are different.  But she didn't

13  identify any facts that are different.  The March 7th order

14  assumed that Floyd wanted to dismiss.  And said that didn't

15  matter, there was still jurisdiction.  And that's where we

16  are today.

17      As for the statute of limitations, and *China Agritech*, it

18  doesn't apply, because we're not relying on tolling.  The new

19  plaintiffs, in their -- if they're allowed to amend, are

20  going back four years from the date they filed, without any

21  tolling.  That's exactly what our class motion, which is

22  fully briefed from our part, has said as we filed it.  So

23  their argument is just really off point.

24        THE COURT:  Well, I think the argument is -- and

25  maybe I'm misunderstanding it -- is that if the motion to

1   amend is reconsidered and denied, and the case dismissed,

2   then the new plaintiffs would have to file anew.  That's what

3   I understood counsel to be saying.

4        MR. BERMAN:  Yes.  If you don't allow the amendment

5   and we filed it anew, they would be going back four years

6   from the date they filed.  And they would not be relying on

7   any American Pipe tolling.

8        So the concerns that were articulated by Justice Ginsburg,

9   just would just not apply in that circumstance.

10       THE COURT:  All right.  Thank you.

11       All right.  Thank you, counsel.  I appreciate your

12   arguments and your briefing on this matter.  I will take the

13   motion under advisement and issue an order as soon as

14   reasonably practicable.

15       And until then, we'll be in recess.

16                   (Adjourned.)

17             C E R T I F I C A T E

18

19       I certify that the foregoing is a correct transcript from

20   the record of proceedings in the above-entitled matter.

21

22

23   */s/ Debbie Zurn*

24   DEBBIE ZURN
     COURT REPORTER

25