1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN FLOYD, et al.,

　　　　　　　　Plaintiff(s),

　　v.

AMAZON.COM INC., et al.,

　　　　　　　　Defendant(s).

CASE NO. C22-1599-KKE

ORDER GRANTING MOTION FOR
RECONSIDERATION AND DISMISSING
CASE

　　　　Although filed in 2022, this putative class action has yet to materially advance, due in large

part to the unfortunate detour of motions precipitated by Plaintiffs' counsel's now well-

documented misrepresentations of the status of former class representative Steven Floyd.  These

unnecessary filings concerning Floyd's status sapped substantial Court time—a finite resource.

The Court held multiple hearings and wrote several orders attempting to fairly address the

seemingly evolving situation with Floyd's ability to and interest in participating in this litigation.

At all times, the Court gave Plaintiffs' counsel the benefit of the doubt, assuming their assurances

of Floyd's desire to remain in the case were candid and accurate.  Relying on those assurances, the

Court followed authority permitting the otherwise untimely addition of new named plaintiffs as

class representatives and granted Plaintiffs leave to file an amended complaint.

　　　　Defendant Apple Inc. now requests that the Court reconsider this order in light of new facts

discovered during the Court's *in camera* review of Floyd's communications with his attorneys.

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CASE - 1

Dkt. No. 221 at 4.[1]  The Court agrees with Apple that these new facts undermine the Court's assumptions in that ruling and therefore the ruling should be reconsidered.  For the reasons explained in this order, the Court will grant Apple's motion for reconsideration, and that reconsideration leads the Court to deny the motion for leave to amend the complaint and dismiss this action.

## I.    BACKGROUND[2]

Floyd filed this antitrust putative class action in November 2022, and in June 2023 the Court granted in part and denied in part motions to dismiss filed by Apple and Defendant Amazon.com Inc.  Dkt. Nos. 1, 61.  Defendants served Floyd with requests for production in September 2023, Floyd lodged objections in October 2023, and Floyd did not thereafter produce any documents.  See Dkt. No. 90 at 31–75.

On February 8, 2024, Apple served Floyd with interrogatories.  Dkt. No. 90 at 10–18.  On February 13, Floyd's counsel advised Defendants "[f]or purposes of transparency" that Floyd had "become difficult to reach" but "has not withdrawn as a class representative[.]"  Dkt. No. 105 at 6.  Floyd's counsel stated that they would be filing a motion to amend the complaint to add class representatives.  *Id*.  Counsel assured Defendants that "[i]f for any reason Mr. Floyd needs to withdraw, we will promptly advise Defendants and take appropriate steps."  *Id*.

Defendants responded to emphasize that they would be opposing the motion to amend, and to inquire as to Floyd's availability for a deposition.  Dkt. No. 105 at 5.  Floyd's counsel responded that they could not agree to set a deposition until they heard from Floyd.  *Id*.  In this response, Floyd's counsel reiterated:

---

[1] This order refers to documents filed on the Court's docket by their CM/ECF page numbers.

[2] Despite the familiarity of the factual background to the parties and the Court, this order reiterates the facts for the sake of completeness.

1

2

> As for Mr. Floyd, he has not informed us of any intention to withdraw as a class representative. But as we explained, we have been unable to connect with him recently and are working diligently to regain contact to determine how Mr. Floyd wishes to proceed. We last communicated with Mr. Floyd on January 16, 2024 (and, again, it was not a withdrawal). We provide this information for purposes of transparency, but defendants are not entitled to further probe our communications with clients. Our motion to amend will include all details the court needs to determine whether amendment is appropriate, including as to the timeline of our communications.

*Id.*

On February 29, 2024, Floyd filed a motion for leave to amend the complaint to add new named plaintiffs, based on counsel's representation that although Floyd had not expressed an intent to withdraw as a named Plaintiff, he had, since January 16, "become difficult to reach" and could be experiencing "some type of personal emergency." Dkt. No. 80 at 8. Counsel further posited potential "legitimate reasons for his recent non-responsiveness (*e.g.*, health issues or other incapacitating events)." *Id.* at 5.

As detailed in its order on Defendant's motion for sanctions, entered after *in camera* review of Floyd's communications with counsel in 2024, the Court concluded that counsel had misrepresented their January 16 communications with Floyd to Defendants and the Court. *See* Dkt No. 203. In those communications, Floyd informed his counsel that he no longer wanted to participate in this litigation because he did not wish to participate in discovery, and reiterated that intention even after his counsel attempted to persuade him that the discovery process could be less onerous than he was assuming. *Id.*

Consistent with Floyd's explicit lack of interest in continuing with the case, his counsel began searching for additional plaintiffs on January 24, and ultimately found two putative class members (Jolene Furdek and Jonathan Ryan) willing to serve as class representatives. Dkt. No. 80 at 8. In May 2024, the Court granted Floyd's motion for leave to amend, acknowledging the authority permitting amendment to add named plaintiffs where a class representative ceases

communicating or seeks to withdraw as a class representative. *See* Dkt. No. 98. The Court's order assumed the veracity of counsel's representations that Floyd would be continuing in the litigation and that, for example, his adequacy as a named plaintiff would be adjudicated at a future point. *See id.* at 4–5. As counsel represented that Floyd had not withdrawn and intended to stay part of the class, the Court found that the motion to amend did not constitute a back-door attempt to begin the action anew. *Id.*

In the months that followed, Defendants continued their efforts to depose Floyd and seek other forms of discovery from him. *See* Dkt. No. 90, Dkt. No. 104, Dkt. No. 105 at 9. Those efforts proved unsuccessful because Floyd was not communicating with his attorneys, and after the Court granted Floyd's motion to amend, Defendants moved to compel him to respond to outstanding discovery requests. Dkt. No. 104. In response to the motion to compel, Floyd's attorneys filed a cross-motion to withdraw him as a class representative, but reiterated that he was not dismissing his claims with prejudice and that he would remain part of the proposed class. *See* Dkt. No. 114 at 17.

The Court granted Defendants' motion to compel because Floyd retained his status as a class representative even after the complaint was amended to add Furdek and Ryan as named Plaintiffs, and because Defendants would be prejudiced without the discovery they sought from Floyd. Dkt. No. 132. The Court's order compelling Floyd to respond to discovery requests was written under the assumption that Floyd desired to remain an absent class member, because Floyd's counsel represented as much and Defendants assumed that position as well. *See* Dkt. No. 114 at 17, Dkt. No. 125 at 13, Dkt. No. 132 at 3. In its order granting the motion to compel, the Court stated that Floyd's cross-motion to withdraw as a class representative would not be adjudicated until after he complied with the order compelling discovery. Dkt. No. 132 at 6–8. That order was

1    entered on August 16, 2024, and required that Floyd respond to the outstanding discovery requests

2    by August 30, 2024, and to sit for deposition by September 30, 2024.  *Id.* at 8.

3        On August 21, 2024, Floyd re-engaged with his counsel for the first time since January 16,

4    but his renewed interest in this litigation was short-lived.  Although the emails produced *in camera*

5    reflected a seemingly productive phone call between Floyd and his counsel on August 21, by

6    August 28, the relationship had apparently deteriorated to the point that Floyd indicated that

7    continued communication of any kind would be unwelcome.

8        Notwithstanding this breakdown, which again, was unknown to the Court or Defendants,

9    on August 29, the Court granted the parties' stipulated motion to extend the August 30 discovery

10   response deadline to September 13, based on Floyd's counsel's representation that Floyd needed

11   more time to complete his responses.  Dkt. Nos. 134, 135.  After the extension was granted, Floyd's

12   counsel continued to attempt to obtain his cooperation with discovery, but Floyd never again

13   responded to counsel's messages.

14       On September 13—the new deadline for Floyd's discovery responses—Plaintiffs' counsel

15   filed a motion to withdraw, saying that their relationship with Floyd fundamentally broke down

16   since their last communication with him on August 28.  Dkt. No. 140 at 4–5.  Apple opposed the

17   motion to withdraw, on the grounds that withdrawal should be conditioned upon an extension of

18   Floyd's discovery deadlines, and an *in camera* review of Floyd's communications with his counsel

19   to determine the degree to which any of counsel's statements/filings during that time had been

20   authorized by Floyd himself.  Dkt. No. 143.  Defendants also filed their own motion for discovery

21   sanctions against Floyd, which Floyd's counsel did not oppose.  Dkt. Nos. 152, 156.

22       Defendants also moved to compel production of Floyd's counsel's 2024 communications

23   with Floyd on the grounds that Floyd had waived the attorney-client privilege associated with those

24   communications by putting them at issue in the litigation.  Dkt. No. 172.  The Court denied that

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CASE - 5

motion, but nonetheless ordered Plaintiffs' counsel to produce certain communications for *in camera* review for purposes of resolving the motion to withdraw representation and the motion for discovery sanctions.  Dkt. Nos. 196, 199.

After reviewing that correspondence *in camera*, the Court found that it would not be just to impose discovery sanctions against Floyd, and imposed them on Floyd's counsel instead.  *See* Dkt. No. 203.  That order also required Floyd to show cause why his claims should not be dismissed with prejudice, "as that result is consistent with Floyd's correspondence with his counsel."  *Id*. at 8.  When Floyd did not respond to that order, the Court dismissed Floyd's claims on May 6, 2025.  *See* Dkt. No. 216.

On May 16, 2025, Apple filed the pending motion for reconsideration of the Court's prior order granting Plaintiffs' motion for leave to amend the complaint (Dkt. No. 98 (hereinafter "the Order")).  Dkt. No. 221.  Apple requests reconsideration of the Order based on the new facts discovered after the Court's *in camera* review of Floyd's communications with counsel: namely, that Plaintiffs' counsel "affirmatively misrepresented that Floyd intended to continue prosecuting his claims" and "withheld that information from the Court[.]"  Dkt. No. 221 at 4.  According to Apple, the Court should reconsider and vacate the Order, deny the motion for leave to amend, and thereby dismiss this action with prejudice.  *Id*.

The Court set a briefing schedule on the motion and heard oral argument (Dkt. Nos. 222, 233), after which the Court ordered Plaintiffs to submit additional communications between counsel and Floyd from September 2023 through January 2024 for *in camera* review.  Dkt. No. 234.  The Court has reviewed those submissions, and the motion for reconsideration is ripe for resolution.  For the following reasons, the Court will grant the motion.

## II.     ANALYSIS

### A.     Legal Standards on Reconsideration

Reconsideration is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3D ED. 2000)).  The Local Rules of this district indicate that motions for reconsideration are, in general, "disfavored."  Local Rules W.D. Wash. LCR 7(h)(1).  Such motions must "be filed within fourteen days after the order to which it relates is filed" and will ordinarily be denied without "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." LCR 7(h)(1)–(2).  "Nevertheless, the trial court has the inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment."  *Meas v. City & Cnty. of San Francisco*, 681 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010).

### B.     Apple's Motion Was Timely Filed.

Plaintiffs first oppose Apple's motion for reconsideration as untimely.  The order that Apple asks the Court to reconsider was filed on May 6, 2024, which is more than a year before the motion to reconsider was filed.  Plaintiffs contend that the motion was brought in response to new facts referenced in an April 10, 2025 order (Dkt. No. 203), such that Apple's motion to reconsider should have been filed within 14 days of that order.  Dkt. No. 226 at 3.  Plaintiffs complain that Apple's motion was not filed until May 16, 2025—after Plaintiffs moved for class certification— hinting that Apple's motion could have been motivated by the strength of Plaintiffs' motion.  *Id*.

The Court rejects Plaintiffs' timeliness argument.  Apple's motion is outside the temporal bounds of LCR 7(h) because it is based on new facts not available within 14 days of the Court's prior order, rather than manifest error in that prior ruling.  *See, e.g.*, *Hockerson-Halberstadt, Inc.*

*v. Costco Wholesale Corp.*, No. C03-1188L, 2005 WL 8172685, at *1 (W.D. Wash. Aug. 29, 2005) (granting leave to file a motion for reconsideration of an order filed approximately a month earlier, because the timing of the new evidence meant that the motion could not have been timely filed). Apple filed its motion 14 days after Floyd failed to respond to the Court's order to show cause, and it is that final "new fact" that confirmed Floyd's lack of interest in participating in this case. As Floyd's lack of interest forms the crux of Apple's motion, and Apple's motion was filed within 14 days of the deadline for Floyd to demonstrate interest, the Court finds that the motion was timely filed.

**C.     Apple Identifies New Facts Undermining the Court's Prior Reasoning.**

The Court now turns to consider the merits of Apple's motion, specifically whether Apple has identified new facts that would warrant reconsideration of the Order. According to Apple, with an accurate understanding of Floyd's intent to withdraw from the litigation, as well as his counsel's prolonged lack of candor regarding Floyd's intentions, the Court should reconsider and vacate the Order permitting Floyd to amend his complaint to add new named plaintiffs. Dkt. No. 221 at 6–9. Plaintiffs, on the other hand, argue that even if Floyd's withdrawal was more expansive than counsel admitted at the time,[3] new plaintiffs could nonetheless have been properly substituted at that time under the authority cited in the Order, and thus the "new facts" identified by Apple do not alter the outcome of the Order. Dkt. No. 226 at 4–8.

---

[3] Plaintiffs did not oppose Defendants' motion for attorney's fees based on the Court's sanctions order, stating that they "respect the Court's judgment and concerns and, with hindsight, recognize the situation could have been handled better." Dkt. No. 223 at 2. That respect notwithstanding, Plaintiffs continue to dispute the Court's characterization of the communications, arguing that Floyd did *not* withdraw entirely from the litigation in his January 16, 2024 communications. *See, e.g.*, Dkt. No. 236 at 22–23. The Court declines to *sua sponte* reconsider its characterization of Floyd's communications, and this order therefore assumes that, as the Court previously found, Floyd expressed in January 2024 a desire to withdraw from the litigation entirely. *See* Dkt. No. 203 at 6, 8.

The Court agrees with Apple.  An accurate understanding of Floyd's position *and counsel's misconduct* in characterizing that position undermines parts of the Order that were key to its outcome.  Plaintiffs insist that if they had accurately represented Floyd's communications, the outcome of the Order would be the same, and that might be true if the information had been shared at the time.  But it was *not* shared at that time, and in fact never voluntarily shared at *any* time.  Plaintiffs cite no authority obligating the Court to overlook that misconduct.  To do so would give effect to only some of the "new facts" Apple asks the Court to consider; counsel's lack of candor separates this case from every case cited by either party, and explains why the Court's assumptions as stated in the Order (and other orders) no longer stand.  Thus, as explained herein, the Court finds that the new facts identified in Apple's motion support vacating the Order upon reconsideration.

   1.  *Legal Standards on a Motion for Leave to Amend the Complaint*[4]

A party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(1)–(2).  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court "considers the following five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation modified), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).  "The opposing party bears the burden to show why leave to amend should not be granted."  *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1047 (N.D. Cal. 2021).

---

[4] This section is a truncated version of a similar section in the Order.  *See* Dkt. No. 98 at 2–3.  The motion for leave to amend also requested leave for the proposed additional named plaintiffs to, in the alternative, intervene.  *See* Dkt. No. 80 at 14–16.  Because either form of relief would require a modification to the case schedule, the Court affirms the Order's reasoning that Federal Rule of Civil Procedure 16 applies to either form of relief requested in this motion.  *See* Order at 5–6.

If a court's scheduling order sets forth a deadline for amending the pleadings and/or adding parties, no post-deadline amendment is permitted unless the court first finds good cause to amend the case schedule. *See* Fed. R. Civ. P. 16(b)(4); *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). Likewise, a court begins with Rule 16 when considering a motion to intervene under Rule 24 if such relief may similarly disrupt a case schedule. *See, e.g.*, *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 13311693, at *3 (E.D. Wash. Nov. 3, 2020). Good cause to modify a case schedule exists where the moving party is diligent in requesting a modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992).

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion [for leave to amend], the focus of the inquiry is upon the moving party's reasons for seeking modification," and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. "Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment [is] proper." *Hood v. Hartford Life & Accident Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008). A determination of whether good cause exists to modify a case schedule is committed to the broad discretion of the district court. *See C.F. ex rel. Farman v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

   *2.  Floyd's January 16, 2024 Communication Mooted the "Case or Controversy."*

At the outset of the Order, before addressing whether Floyd's motion complied with Federal Rules of Civil Procedure 15 and/or 16, the Court addressed Defendants' primary argument against Floyd's motion: that it was brought as a back-door attempt to start this action anew, after counsel realized that Floyd was an inadequate class representative. *See* Order at 4–5. The Court explained why it rejected that argument:

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CASE - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

> According to Defendants, the motion to amend is not simply a motion to add or substitute a class representative, but should be considered a "back-door attempt to begin the action anew." Dkt. No. 86 at 10 (quoting *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973)).
>
> But whether Floyd is an adequate representative of the putative class is not before the Court at this point in the litigation, and Defendants will have an opportunity to fully litigate this issue in the context of a motion for class certification. Defendants have not shown that Floyd's potential inadequacy as a class representative is an inherent defect in his party status akin to a lack of standing or mootness, such that there is no live case or controversy before the Court. In the absence of an inherent defect in Floyd's claims, the Court will allow amendment of the complaint to add additional named plaintiffs. *See, e.g.*, *Kirby v. McMenamins Inc.*, C22-5168-BHS-MLP, 2023 WL 4623908 (W.D. Wash. July 19, 2023); *Fife v. Sci. Games Corp.*, No. 2:18-cv-00565-RBL, 2020 WL 4933959, at *1–2 (W.D. Wash. Aug. 24, 2020) (finding that a putative class action is not mooted when a sole named plaintiff seeks to withdraw for personal reasons but can be replaced immediately); *Castillo v. United Rentals (N. Am.), Inc.*, No. C17-1573JLR, 2018 WL 3429936, at *3 (W.D. Wash. July 16, 2018) (permitting a pre-certification substitution of the named plaintiff where the current sole named plaintiff's claims persist (had not been settled or dismissed), and counsel could produce a substitute immediately).

*Id*. The cases that the Court relied on to support adding additional class representatives are now distinguishable from Floyd's true situation: at the time that the Court entered the Order, it had been told that Floyd unexpectedly stopped responding to counsel for unknown reasons and did not withdraw. *See, e.g.*, Dkt. No. 80 at 5, 8. At the oral argument on the motion for leave to amend, Floyd's counsel told the Court that there was no basis to distinguish this case from *Kirby*, *Fife*, or *Castillo*. *See* Dkt. No. 101 at 28. And while the Court was led to believe that was true at the time, the new facts that have come to light since then provide sufficient grounds on which to distinguish each of them. The Court is now aware that since September 2023 Floyd had not been actively

participating in discovery[5] and then, when his counsel explained what kind of information they would need from him in order to respond to discovery requests, he expressed a desire to withdraw from the litigation entirely and confirmed that intention shortly thereafter.  If counsel was unclear as to the extent of the withdrawal that Floyd intended, as they have repeatedly claimed to be, they should have asked him to clarify.  Yet counsel did not contact him for that purpose until after the motion for leave to amend was filed and the additional plaintiffs had been identified, and even at that time, counsel did not inform Floyd that they had found new class representatives or that they were seeking leave to amend the complaint to add them.  In any event, they misled Defendants and the Court for many months afterward, denying that Floyd had said anything at all about withdrawal

---

[5] After oral argument on the motion for reconsideration, the Court reviewed *in camera* additional communications between Floyd and his counsel from September 2023 through January 2024.  *See* Dkt. No. 234.  These communications confirm that Floyd was difficult to reach during this period and did not provide any written information or documents responsive to Defendants' discovery requests.  These communications suggest that Floyd was not an adequate named plaintiff at any time due to his lack of participation in the case.

> A class representative has the responsibility "to comply with discovery requests, to possess a basic knowledge of the facts, and to participate to some minimal degree in the lawsuit to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney."  *In re Northrop Grumman Corp. ERISA Litigation*, No. 2:06-CV-06213-MMM, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011).
> …
> Although class action litigation cannot proceed without class counsel, the class representatives must be able to participate in order to protect the interests of the class. *See, e.g., Sanchez v. Wal-Mart Stores*, No. 06-02573-JAM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) ("As part of this inquiry, the Court must ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case.").

*Beeman v. TDI Managed Care Servs., Inc.*, Nos. EDCV 02-1327 VAP (KKx) & EDCV 04-0407 VAP (KKx), 2016 WL 11637594, at *13 (C.D. Cal. Nov. 10, 2016).  Reviewing counsel's communications with Floyd suggests to the Court that this litigation was controlled entirely by counsel without meaningful input from Floyd.

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CASE - 12

1    and reiterating that his silence must not be interpreted as a withdrawal, as if silence was all they

2    had been given. *See, e.g.*, Dkt. No. 80 at 8.[6]

3           These facts provide ample grounds on which to distinguish *Kirby*, *Fife*, and *Castillo*, which

4    the Court relied upon in granting Floyd's motion for leave to amend.  In *Kirby*, a named plaintiff

5    who had been actively participating in discovery for more than a year sought to amend the

6    complaint to add additional plaintiffs, but he intended to remain a named plaintiff.  2023 WL

7    4623988, at *3.  The motion was filed approximately two months after the defendant had first

8    raised (via discovery requests) a challenge to the named plaintiff's adequacy as a class

9    representative, and the Court found that this amendment timeline reflected diligence.  *Id*. at *3–4.

10          In *Fife*, a named plaintiff expressed unwillingness to participate in the discovery process

11   applicable to a named plaintiff, and thereafter lost contact with counsel.  2020 WL 4933959, at *1.

12   Two days after the named plaintiff expressed her unwillingness, her attorneys contacted defendants

13   to inform them of this development and to seek their agreement to substitute named plaintiffs.  *Id*.,

14   at *2.  The court found that even if the named plaintiff's lack of interest in serving as a named

15   plaintiff created a jurisdictional gap, it was very short-lived because a new named plaintiff was

16   ready to step in "basically simultaneous[ly.]"  *Id*., at *2.

---

[6] As the Ninth Circuit has rightly observed, the Court necessarily relies on counsel to accurately represent the record in the first instance, not only when the Court has reason to investigate further:

> The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court. The burden of ascertaining the true state of the record would be intolerable if misrepresentation was common. The court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists.

*In re Disciplinary Action Boucher,* 837 F.2d 869, 871 (9th Cir. 1988), *modified*, 850 F.2d 597 (9th Cir. 1988).  The wheels of justice would grind to a halt if the Court were tasked with independently investigating every representation made by the lawyers appearing before it.  And in this case, the information uncovered as to counsel's misrepresentations has required the Court to reconsider several prior orders: the burden occasioned by these revisions is both inconsistent with the Federal Rules of Civil Procedure, which presume an orderly and linear progression to litigation, and is, as noted by the Ninth Circuit, unsustainable for the Court.  The consequence of that burden occasions delay not only for the resolution of this case, but for other cases on the Court's docket, and the Court takes this opportunity to voice its intolerance for conduct that fails to meet the well-established standards of the legal profession.

And in *Castillo*, a named plaintiff decided on the eve of his deposition that he no longer wished to serve as a named plaintiff, but filed a declaration explaining that he would like to remain a member of the class, and an additional potential named plaintiff had already expressed interest in representing the class. 2018 WL 3429936, at *2. The Court found that because the named plaintiff wished to remain a member of the class, and because he could produce a substitute "immediately," the case or controversy remained active and substitution did not equate to starting the action anew. *Id.*, at *3–4.

In contrast to these cases, Floyd never meaningfully participated in discovery and eventually informed his counsel that he wanted to abandon the litigation entirely. If his counsel had honored Floyd's wishes, promptly alerted Defendants and the Court, and produced substitute named plaintiffs, this case could potentially be analogous to *Fife*, although (as Apple's counsel noted at oral argument (Dkt. No. 236 at 10)) Floyd's pre-withdrawal participation in discovery was perhaps less robust than in *Fife*.

But instead, counsel concealed Floyd's intentions and mischaracterized it as simply his failure to communicate for unknown reasons, possibly a "personal emergency," while at the same time insisting that Floyd had not withdrawn. *See* Dkt. No. 80 at 8, 10. In reliance on those representations, the Court believed that this case could be analogized to *Castillo*, although differences remained: in *Castillo*, the outgoing named plaintiff provided a declaration to clarify his intention to remain a member of the class, whereas here counsel told the Court that Floyd simply stopped communicating. The Court relied on those representations to assume that (at most) Floyd may have lost interest in participating as a named plaintiff, but again, did not know the true extent of his communications. *See* Order at 6–7.

Floyd's counsel's contortion of the motion for leave to amend also gave this case the appearance of potential factual alignment with *Kirby*. As in *Kirby*, Floyd's motion to amend

sought to add and not substitute plaintiffs. Dkt. No. 80 at 10 ("Here, the proposed amendments merely add additional class representatives without removing Mr. Floyd, who has not affirmatively withdrawn.").[7]  But *Kirby* is now the least factually analogous case of the three, given that the named plaintiff in that case was willing to continue serving as a named plaintiff and Floyd wanted to abandon the litigation entirely.

If the Court had known then what the Court knows now, the Court would have found *Kirby*, *Fife*, and *Castillo* readily distinguishable from this case. *See, e.g.*, *Rieken v. Timberland Bank*, 639 F. Supp. 3d 1128, 1134 (W.D. Wash. 2022) ("The only circumstances under which a named plaintiff is entitled to substitute prior to class certification is when that plaintiff is both capable of and 'intends to become part of the class, such that her claims persist and the case or controversy remains active, and when plaintiff's counsel is able to produce a proposed substitute immediately.'" (quoting *Castillo*, 2018 WL 3429936, at *3)).  From this vantage point, the motion for leave to amend now appears to be an improper "back-door attempt to begin the action anew" with new plaintiffs. *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973).[8]

Courts in this circuit routinely deny motions to amend where, as here, a jurisdictional defect arises after a case is filed.  *See, e.g.*, *Pitt v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011) ("If events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot, because we do not have the constitutional authority to decide moot cases."

---

[7] Although the motion emphasized Floyd had not "affirmatively withdrawn" (Dkt. No. 80 at 10), Amazon's counsel detected something amiss. *See* Dkt. No. 101 at 25 (counsel's statement at oral argument, suspecting that the motion for leave to amend was a motion to withdraw in disguise, and that if the Court granted the motion, "we'll see a motion to withdraw shortly thereafter").

[8] *Lidie* counsels against granting a motion to amend or intervene where the "original plaintiffs were never qualified to represent the class" (478 F.2d at 555), and at this point the Court will never know if Floyd would have been an adequate plaintiff or whether there may have been other strategic advantages to bringing on new class representatives.  The Court is not omniscient, and thus cannot state with certainty that the motion for leave to amend was filed in order to avoid any particular problem Plaintiffs' counsel saw in the case.  Counsel's lack of transparency about the circumstances giving rise to the motion nonetheless suggest that the motion was an attempt at sleight of hand rather than a procedurally proper motion.

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CASE - 15

(citation modified)); *Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444DDPPLAX, 2009 WL 2959838, at *4 (C.D. Cal. Sep. 10, 2009) (denying pre-certification motion to substitute class plaintiffs where original named plaintiffs were inadequate); *Miller v. Mercedes-Benz USA LLC*, No. CV 06-05382ABC(JTLX), 2009 WL 1393488, at *1 (C.D. Cal. May 15, 2009) (denying substitution of named plaintiffs, because "this is not a case where the 'class has acquired a legal status separate from that of the named plaintiff'" (citation modified) (collecting cases)). In one particularly analogous case, a district court in the Southern District of California found that "[b]ecause Plaintiff has informed her counsel that she no longer wishes to prosecute her action, there is no longer a 'case or controversy' to be decided within the meaning of Article III of the Constitution." *Hitt v. Ariz. Beverage Co., LLC*, No. 08cv809WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (citation modified).

Here, the Court finds that Floyd's January 16, 2024 communication created a jurisdictional gap that became fatal when it was not diligently bridged, as explained in the next section.

### 3. Plaintiffs Were Not Diligent in Filing Their Motion.

In the Order, the Court found that amendment was proper first under Federal Rule of Civil Procedure 16, and then under Rule 15. Order at 5–9. But the new facts surrounding Floyd's communications and counsel's lack of candor undermine the threshold findings with respect to Rule 16.

As explained above, the Rule 16 inquiry focuses on the diligence of the moving party, specifically the moving party's motivation for the modification, to determine whether there is good cause to modify a case schedule to permit amendment. *See Johnson*, 975 F.2d at 609. "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id*.

Here, as the Court explained in the previous section, Floyd's counsel's lack of candor

regarding the circumstances motivating the amendment suggests that they were not diligent in seeking amendment.  *Cf. Githinji v. Olympia Police Dept.*, No. C22-5138 MJP, 2024 WL 111101, at *3 (W.D. Wash. Jan. 10, 2024) (finding that plaintiffs' candor in explaining their motivation for amendment, among other things, gives "the impression that Plaintiffs have acted with diligence in seeking leave to amend").

Moreover, as to timing: the Court previously found that the time span between when counsel could have realized amendment was needed and the time that the motion was filed reflected diligence.  Dkt. No. 98 at 6–7.  The Court reached that conclusion by assuming that the January 16, 2024 communication from Floyd was simply the last time he was in contact with his counsel, but not that counsel would realize immediately, on that date, that they had "lost contact" with their client.  *See* Order at 7–8.  Becoming "difficult to reach," as Floyd's counsel described him, is not a status attained in an instant, but only after the passage of time.

But with an accurate understanding of Floyd's communication on January 16, 2024, the span of time between that communication and the filing of the motion to amend appears less diligent, now that the Court is aware that Floyd's counsel should have appreciated on January 16 that a new plaintiff was needed.  That the timespan is measured in weeks rather than days distinguishes this case from the diligence of counsel in *Castillo* and *Fife*.  Floyd's counsel offers an alternative interpretation of Floyd's communications in an attempt to explain why they did not act on the communications as quickly as they could have, but it is the law of the case that that interpretation is not consistent with the text of the communications.  Moreover, as the Court explained earlier, if Plaintiffs had been forthright in disclosing the circumstances giving rise to the need for amendment from the beginning, there is authority that may have persuaded the Court to grant their motion.  *See, e.g.*, *Fife*, 2020 WL 4933959, at *2 (finding that even if the class representative had intended to dismiss her claims entirely, a new representative was available to

be substituted in "basically simultaneous[ly]"); *Aguilar v. Boulder Brands*, No. 3:12-cv-01862-BTM-BGS, 2014 WL 4352169, at *8 (S.D. Cal. Sep. 2, 2014) ("The case or controversy requirement was not fatally triggered the moment Ms. Aguilar resolved to withdraw as the class representative. Rather, Plaintiffs have a short amount of time to substitute the plaintiff and save their case."). This authority runs counter to counsel's current narrative emphasizing that if they had been candid, the Court's ruling would be the same—because if they would have achieved the same result with candor, then why not be candid? And, moreover, why should that lack of candor not trouble the Court, if diligence is paramount? The record here shows only that the Court's reliance was misplaced. At this point then, the Court sees no reason to assume innocent motivations for Floyd's counsel's course of action, and cannot characterize the motion as brought with diligence.

Because the motion was not brought with diligence,[9] the Court cannot find good cause to modify the case schedule to permit either amendment or intervention, and the Court need not go further to consider whether to permit amendment or intervention under Rule 15 or Rule 24. Under these circumstances, reconsidering Plaintiffs' motion in light of the facts as now known to the Court, justice requires that the Order be vacated and Plaintiffs' motion be denied rather than granted. *Cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Because Floyd's claims have been dismissed since the entry of the Order, and as a result of this order the complaint may not be amended to add Furdek and Ryan as named plaintiffs, then there is no longer a live case or controversy and the case should be dismissed. *See, e.g.*, *Hitt*, 2009 WL 4261192, at *5.

---

[9] Although typically it is the moving party's diligence, rather than the moving party's counsel's diligence, that is the focus of a court's Rule 16 inquiry, by the time the motion was filed, Floyd had already de facto withdrawn. Under these circumstances, it is appropriate to consider counsel's diligence. *See, e.g.*, *Miller v. Ghiradelli Chocolate Co.*, No. C 12-04936 LB, 2013 WL 6776191, at *6 n.7 (N.D. Cal. Dec. 20, 2013).

The Court is mindful of the equities in this scenario, aware that a putative class of plaintiffs—not responsible for Floyd's change of heart nor counsel's lack of candor—should not be negatively impacted by the Court's reconsideration.  At oral argument, Plaintiffs' counsel represented that even if the motion for reconsideration is granted and this action is dismissed, would-be Plaintiffs/Intervenors Furdek and Ryan would not be time-barred from filing a new class action.  *See* Dkt. No. 236 at 17–20, 29–30.[10]  With those representations in mind, the Court finds that dismissal of this action is appropriate.

### III.    CONCLUSION

As noted earlier in this order, the Court relies on counsel to be candid, by rule and by necessity.   And as laid out in this order, the misrepresentations regarding Floyd have required the Court to revisit multiple prior orders entered in this case, noting numerous assumptions which no longer stand, and altering conclusions previously reached.

Accordingly, the Court GRANTS Apple's motion for reconsideration (Dkt. No. 221) and as a result, dismisses this action.  Floyd's individual claims have already been dismissed with prejudice, and this order denies any attempt to add additional named plaintiffs.  Without a plaintiff remaining to prosecute this action, it must be dismissed, with prejudice as to Floyd (as already effected), and without prejudice to claims brought by any remaining putative class members.

Dated this 29th day of September, 2025.

Kymberly K. Evanson
United States District Judge

---

[10] Apple agreed that Furdek and Ryan's individual claims would not be time-barred, but argued that any class claims would be.  Dkt. No. 236 at 28.  These arguments were not briefed in the motion for reconsideration, but the Court nonetheless considers counsel's argument in understanding the equities at play.  The Court takes no position as to arguments that may be raised as to the timeliness of any future claims.