UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOLENE FURDEK and JONATHAN RYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMAZON.COM, INC. and APPLE INC.,<br><br>Defendants. | Case No. 2:22-cv-01599-KKE<br><br>**EXPERT DECLARATION OF KEVIN BANK** |

### INTRODUCTION AND SUMMARY OF CONCLUSIONS

1. I have been retained by Hagens Berman Sobol Shapiro LLP ("Hagens Berman") to evaluate and provide an expert opinion on certain ethical and professional responsibility issues addressed in this Court's September 29, 2025 Order, which dismissed this case upon reconsideration of a prior Order granting Plaintiffs leave to amend their Complaint. *See* ECF No. 250. In dismissing this action, the Court concluded that former Plaintiff Steven Floyd withdrew from this case in January 2024 and that Plaintiffs' counsel misrepresented Mr. Floyd's status when moving to amend the operative pleading to add additional class representatives.

2. I have been asked to address four principal questions under the framework of the Washington Rules of Professional Conduct and the A.B.A. Model Rules of Professional Conduct

1

(collectively, "RPCs"): (1) Would Hagens Berman have had authority under RPC 1.2 or other applicable RPCs to withdraw Floyd as named Plaintiff based on his January 16, 2024 communications; (2) Could a lawyer abiding by the RPCs reasonably have concluded that Floyd's January 16, 2024 communications amounted to an instruction to withdraw as a Plaintiff from the case, or to discharge Hagens Berman as counsel; (3) Did Hagens Berman comply with ethical rules when it was unable to make contact with Floyd; and (4) Did Hagens Berman comply with ethical rules in its handling of disclosures to the Court regarding Floyd's communications?

3. In summary, I conclude that under RPC 1.2(a), Hagens Berman would not have had authority, without either specific instructions from Floyd, or a significant period of time elapsing in which the firm tried to contact him to obtain specific instructions, to withdraw Floyd as named Plaintiff and class representative, based on the January 16, 2024 communications. Hagens Berman acted both reasonably and in conformance with the RPC in concluding that the communications did not amount to an instruction to withdraw Floyd as a Plaintiff from the case, or to discharge Hagens Berman as his counsel. Furthermore, because Floyd was still a client of the firm after the January 16, 2024 communications, the firm had an ethical obligation to follow up with him, and the firm met this obligation through repeated attempts to make contact with him. Finally, I have concluded that Hagens Berman appropriately balanced its duties of confidentiality to Floyd and its obligation to the Court in its handling of disclosures to the Court regarding Floyd's communications.

4. In evaluating these issues, I have reviewed the following litigation documents and communications from this case:

- All written communications listed on Plaintiffs' "Amended Floyd Communications Log," which I understand includes all communications previously submitted in camera to this Court, as well as certain communications post-dating September 13, 2024 and a February 26, 2024 email the Court did not request or review prior to its September 29, 2025 Order

- Motion to Amend (Dkt. No. 80)

- Harrington Declaration ISO Motion to Amend (Dkt. No. 81)
- Defendants' Opposition to Motion to Amend (Dkt. No. 86)
- Declaration of Mark. A. Perry ISO Defendants' Opposition to Motion to Amend (Dkt. No. 88)
- Reply ISO Motion to Amend (Dkt. No. 92)
- Order Granting Leave to Amend (Dkt. No. 98)
- Opposition to Motion to Compel and Cross-Motion to Withdraw Class Representative (Dkt. No. 114)
- Harrington Declaration ISO Opposition to Apple's Motion to Compel and Cross-Motion to Withdraw Class Representative (Dkt. No. 115)
- Reply ISO Cross-Motion to Withdraw Class Representative (Dkt. No. 127)
- Stipulated Motion and Order Regarding Plaintiff Steven Floyd's Deadline to Respond to Interrogatories (Dkt. No. 135)
- Motion to Withdraw as Counsel (Dkt. No. 140)
- Harrington Declaration ISO Motion to Withdraw as Counsel (Dkt. No. 141)
- Reply ISO Motion to Withdraw as Counsel (Dkt. No. 149)
- Harrington Declaration ISO Reply to Motion to Withdraw as Counsel (Dkt. No. 150)
- Defendants' Motion for Discovery Sanctions (Dkt. No. 152)
- Liegel Declaration ISO Discovery Sanctions (Dkt. No. 153)

- Response to Motion for Discovery Sanctions (Dkt. No. 156)

- Harrington Declaration ISO Response to Discovery Sanctions (Dkt. No. 157)

- Defendants' Reply ISO Discovery Sanctions (Dkt. No. 162)

- Defendants' Motion to Compel Documents Improperly Withheld (Dkt. No. 172)

- Plaintiffs' Opposition to Defendants' Motion to Compel Privileged Communications (Dkt. No. 176)

- Defendants' Reply ISO Motion to Compel Documents Improperly Withheld (Dkt. No. 180)

- Order on Defendants' Motion to Compel (Dkt. No. 196)

- Order to Provide Documents for in Camera Review (Dkt. No. 199)

- Order Granting in Party and Denying in Part Motion for Discovery Sanctions (Dkt. No. 203)

- Motion for Attorneys' Fees and Costs (Dkt. No. 208)

- Response to Motion for Attorneys' Fees and Costs (Dkt. No. 223)

- Apple Motion for Reconsideration (Dkt. No. 221)

- Opposition to Motion for Reconsideration (Dkt. No. 226)

- Apple Reply ISO Motion for Reconsideration (Dkt. No. 229)

- Order Granting Motion for Reconsideration (Dkt. No. 250)

5. I have no personal interest in this litigation. I am being compensated for my work at my standard hourly rate of $450 per hour.

## II.  EXPERIENCE AND EXPERTISE

6. I have practiced law for over 35 years.  I graduated from Columbia College (New York City) and New York University Law School.  In my legal career, I have been a Motions Law Clerk, a general practitioner in a mid-size firm, a regulatory attorney with the Federal Trade Commission, and for the past 26 years, have focused my practice on professional responsibility and legal ethics, first at the Washington State Bar Association and more recently in private practice.  From 1999 through to 2018, I was an attorney with the Washington State Bar Association ("WSBA").  There, I served as a Disciplinary Counsel and Managing Disciplinary Counsel.  I also served as Assistant General Counsel, where I provided legal advice and counsel to the Disciplinary Board, Character and Fitness Board and Client Protection Fund.

7. While I worked at WSBA, I personally investigated thousands of ethics-related complaints, and tried cases involving ethics violations by lawyers.   I argued appeals at the Washington Supreme Court in such matters.  Many of the cases I handled involved situations where lawyers were charged and disciplined for engaging in conflicts of interest, including two cases that I argued before the Washington Supreme Court, *In re Disciplinary Proceeding Against Shepard* (2010) and *In re Disciplinary Proceeding Against Greenlee* (2006).

8. The majority of my practice in my nearly two decades at WSBA involved interpretation and application of the ethical rules governing lawyers in hundreds of different situations.  In addition to trying cases, I wrote several articles on professional ethics and related topics for the Washington State Bar News and Northwest Lawyer.

9. Since leaving the WSBA in 2018, I have maintained a solo law firm practice. A significant part of that practice involves assisting lawyers with compliance, including but not limited to advice regarding interpretation of ethical rules.  To provide such advice and counsel, I regularly review cases from Washington and other states that discuss legal ethics and lawyer discipline, as well as those involving Character and Fitness requirements for lawyers to be admitted to the Bar.  I also regularly consult treatises and handbooks on the topics of legal ethics.

I briefed and argued the landmark Washington Supreme Court case addressing Character and Fitness standards in Washington, *In re Zachary Leroy Stevens* (2022).

10. I have prepared many expert opinion letters for clients in my private practice. In addition, I have qualified as an expert in King, Clark, Pierce and Snohomish County Superior Courts. I have submitted declarations regarding the duty of care of lawyers under Washington law, whether disqualification of counsel is required due to conflicts of interest, whether a Judge should disqualify himself and whether fee agreement provisions comply with ethics rules and opinions.

11. I have also regularly written and lectured on legal ethics issues for over 20 years. My articles on legal ethics have been published in Northwest Lawyer, Washington State Bar News and online at www.aila.org. I have given numerous continuing legal education presentations on legal ethics. My most recent articles, published on aila.org, have provided guidance on ineffective assistance of counsel claims, ethical issues in dealing with joint clients and with non-client third parties, and obligations with respect to surrendering the client file to successor counsel.

12. I am a member of DART (Supreme Court of Washington Disciplinary Advisory Roundtable), chaired by Justice Mary Yu. I am also Vice-Chair of the American Immigration Lawyers Association (AILA) National Ethics Committee, as well as chair of the Professional Responsibility, Consumer Protection and Practice Management Committee of the Washington chapter of AILA. In this capacity, I organize an annual CLE that covers a wide variety of topics, including duties of lawyers upon withdrawal, trust account management and conflicts of interest.

13. My most recent resume, attached hereto as Exhibit A, provides a summary of my background and experience in the field of legal ethics and legal malpractice.

### III.    ANALYSIS AND OPINIONS

**A. Would Hagens Berman have had authority under RPC 1.2 or other applicable RPCs to withdraw Floyd as named Plaintiff based on his January 16, 2024 communications?**

14. It is the client and not the lawyer who gets to determine the objectives of the representation. See RPC 1.2(a) ("a lawyer *shall* abide by the client's decisions concerning the objectives of the representation and, as required by Rule 1.4, *shall* consult with the client as to the means by which they are to be pursued") (emphasis added). Comment [1] to RPC 1.2 reiterates the point by stating that the rule "confers upon the client the ultimate authority to determine the purposes to be served by the legal representation." The comment also instructs that in communicating with a client about "objectives," the lawyer refer to RPC 1.4(a)(1), which states that a lawyer shall promptly inform the client of any decisions or circumstances with respect to which the client's "informed consent" is required.

15. The Washington Supreme Court has provided guidance as to the types of decisions that come within the rubric of "objectives of the representation." Such decisions are the ones that involve substantial rights of the client. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980). The court held that the lawyer's withdrawal of the client's jury demand in a civil case, without prior consultation with the client and/or obtaining the client's specific consent to the withdrawal, infringed on a substantial right of the client. In reaching its decision, the Court referred to the lawyer/client decision making provisions of the Washington Code of Professional Responsibility then in effect. Although not identical to RPC 1.2(a), those provisions likewise addressed the allocation of decision making between lawyers and clients from an ethical standpoint.

16. In the situation involving Floyd, the decision as to whether he wanted to continue as a class representative clearly constituted a decision involving his substantial rights in the case, *i.e.*, whether he would continue to represent the class as a plaintiff and be potentially eligible for an incentive award in the event the plaintiff class prevailed in the litigation or a settlement was reached. See *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Under RPC 1.2(a) and *Taggares*, this was a decision for Floyd to make, and to effectuate that decision, he would have had to provide Hagens Berman clear authority to withdraw him as class representative and to terminate Hagens Berman as his counsel for that purpose.

17.     Floyd's January 16, 2024 communications with Hagen Berman do not contain a specific instruction to Hagens Berman to withdraw him as a class representative and terminate the representation.  RPC 1.2(a)'s language is mandatory: a lawyer *shall* abide by a client's decisions concerning the objectives of representation.  A reasonable takeaway from Floyd's communications with Hagens Berman is that he was expressing reservations and doubts about discovery demands of concern to him, but whether his objective was to withdraw as the class representative and terminate Hagens Berman as his counsel for that purpose was not clear, given the absence of a specific instruction.

18.     Hagens Berman's next steps followed the precise guidance of RPC 1.2(a), Comment [1], which states that the lawyer must promptly communicate with the client regarding the client's objectives and obtain informed consent from the client before taking further action. See RPC 1.4(a)(1) ("A lawyer shall promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0A(e), is required by these Rules").  Given the significance of any decision by Floyd to relinquish his rights by withdrawing as class representative, the firm had a duty to further communicate with him to clarify whether Floyd was specifically consenting to withdrawal and termination, or was venting in a moment of frustration with the discovery demands.  The materials I reviewed show that the firm did try to communicate with Floyd to determine his intentions on January 24, 2024, February 1, 2024 and February 26, 2024 (as well as several times after the Motion to Amend was granted).   In the February 26, 2024 e-mail communication, Hagens Berman counsel specifically sought to clarify Floyd's wishes and requested the necessary affirmative directives the RPCs and case law require.  Floyd did not respond to those communications, but as discussed below, because he was still the firm's client, Hagens Berman was ethically required to continue to diligently protect his interests in the matter.

19.     It is my opinion that had Hagens Berman moved to immediately withdraw Floyd as class counsel after the January 16, 2024 communications, without making substantial attempts to obtain further input from Floyd as to his intentions, it would have put the firm at risk of a RPC

8

1.2(a) violation, because the firm did not have specific authority to withdraw him and terminate representation. The firm could have been found to have disregarded his right to decide the objectives of his representation. If the firm had consulted me on January 16, 2024 and showed me the communications with Floyd, I would have advised the firm that RPC 1.2(a) required further follow up with Floyd to ascertain his specific intentions, and if his intention was to discharge Hagens Berman and withdraw as class representative, to put his specific instructions in writing.

### B. Could a lawyer abiding by the RPCs reasonably have concluded that Floyd's January 16, 2024 communications amounted to an instruction to withdraw as a Named Plaintiff from the case, or to discharge of Hagens Berman as counsel?

20. RPC 1.16(a)(3) states that a lawyer shall not continue to represent a client "if the lawyer is discharged." The word "discharged" is not defined in RPC 1.16 or elsewhere in the RPC. However, it has been defined elsewhere in the employment context as "dismissal of an employee from his/her employment by the employer." U.S. Equal Employment Opportunity Commission CM 612.1(1)(b) https://www.eeoc.gov/laws/guidance/cm-612-dischargediscipline. Merriam Webster has a similar definition: "To dismiss from employment." https://www.merriam-webster.com/dictionary/discharge.

21. Lawyers have been disciplined in Washington for continuing to represent a client after being discharged in circumstances where the client clearly and unambiguously instructs the lawyer to terminate representation. For instance, in *In re Disciplinary Proceeding Against Eugster*, 209 P.3d 435, 166 Wn.2d 293 (2009), the Supreme Court affirmed the Hearing Officer's findings that Eugster had "refused to accept" that his client had discharged him and retained new counsel, and that he falsely represented to the Court that he still represented the client after being terminated. *Id.* at 447. The Court found this to be a violation of RPC 8.4(d) (conduct prejudicial to the administration of justice), rather than a violation of what is now RPC 1.16(a)(3).

22. In reciting the factual history in *Eugster*, the Court reviewed the circumstances of the discharge:

9

> On September 9, 2004, Braff [the new counsel] wrote to Eugster notifying him that Braff now represented Mrs. Stead [the client] and explicitly revoking Eugster's power of attorney. Eugster responded on September 13, 2004 by letter stating "I do not believe that Marion R. Stead is competent … Please be advised that I do not recognize that you have been retained to represent her or that the revocation of power of attorney is effective" . . . Braff then sent a letter dated September 17, 2004 informing Eugster that his "services as Marion Stead's attorney are terminated and Mrs. Stead wants her files forwarded to this office."
>
> Notwithstanding the explicit language in the letters notifying Eugster that his client had discharged him, on September 27, 2004, Eugster petitioned the court to appoint a guardian for Mrs. Stead, signing his name on the line marked "Petitioner/Attorney" and represented that he was the current attorney for Mrs. Stead. *Id.* at 440.

23. The plain meaning of "discharge" and its interpretation in the RPC context in *Eugster* lead me to the conclusion that the communications between Mr. Floyd and Hagens Berman on January 16, 2024 did not amount to an instruction to the firm to remove him as class representative and discharge Hagens Berman as his counsel. Floyd, as a client of Hagens Berman, was in an agency relationship with the firm. Although not the same as an employment relationship, with respect to the meaning of discharge, the situations are similar. In the employment law context, "discharge" is defined as an explicit terminating of the relationship. In *Eugster*, the Court found Eugster had violated the RPC because he was explicitly told by Mrs. Stead's new attorney that he was terminated, but he nevertheless continued to represent that he was still Mrs. Stead's counsel. Although Floyd's communications reflect real frustration with the discovery demands made by defendants, he never affirmatively terminated or discharged Hagens Berman as his counsel as that term is used in RPC 1.16(a)(3) and he never instructed Hagens Berman to withdraw him as class representative. Hagens Berman reasonably interpreted Floyd's communication as an expression of frustration brought about by the specific discovery requests seeking personal financial information, which Hagens Berman tried to address in subsequent attempts to communicate with him over the next several weeks. Still to be explored with Floyd was whether he would want to pursue the option of a challenge to the discovery

10

requests and/or seek a protective order for certain responses, strategies which are common in class action and other litigation.

24. As discussed in the next section, when a lawyer has not been terminated and is not able to reach the client, the lawyer is ethically required to continue to represent the client's interests. Had Hagens Berman taken upon itself to parse Floyd's ambiguous words as a "discharge" and Floyd were later to dispute that he discharged the firm, there is a significant likelihood that Hagens Bergen would have risked violating multiple RPCs relating to allocation of decision making between clients and lawyers, the duty to be diligent, and the duty to communicate with clients.

**B. Did Hagens Berman comply with ethical rules when it was unable to make contact with Floyd?**

25. A client who is unreachable for a period of time is still the lawyer's client. The lawyer in these challenging circumstances "must balance various ethical factors, including the duties of diligence, communication and confidentiality to the client; the duty of candor to the tribunal; and the duty not to make a false statement of material fact to third parties." See Colorado Bar Association (CAB) Formal Ethics Op. 128 at 2 (2015).

26. RPC 1.3 requires that a lawyer "act with reasonable diligence and promptness in representing the client." Unless the lawyer-client relationship is terminated as provided in Rule 1.16, "a lawyer should carry through to conclusion all matters undertaken for a client." RPC 1.3, Comment [1]. Even if the client is unresponsive, the lawyer must still make reasonable efforts to locate and communicate with the client. Washington Ethics Advisory Op. 2225 (2012).

27. In a period when the lawyer cannot locate the client, or when a motion to withdraw is pending with the Court but has not yet been granted, the lawyer must continue representation to protect the interests of the client. CAB Formal Ethics Op. 128 at 9, Washington Ethics Advisory Op. 2225 at 4.

28. It is my opinion that Hagens Berman complied with RPC 1.3 and RPC 1.4 in the period when it was unable to make contact with Floyd. Hagens Berman tried repeatedly to reach

Floyd by both text and email. In the interim, to assure that both the interests of the class and Floyd were protected, it moved to amend the Complaint to add to new class representatives without withdrawing Floyd, thus preserving his rights. Had Hagens Berman not acted to protect Floyd's interests, it would have been at risk of a violation of RPC 1.3. In the absence of a clear instruction to withdraw, a lawyer cannot ethically abandon a client.

**D. Did Hagens Berman comply with ethical rules in its handling of disclosures to the Court regarding Floyd's communications?**

29. Washington RPC 1.6(a) states that "a lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation" or the disclosure is permitted under certain limited exceptions in RPC 1.6(b). Comment [2] to the Rule emphasizes its broad reach and explains its purpose:

> A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation. See Rule 1.0A(e) for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct.

30. The duty of confidentiality remains in effect both during the representation and after the lawyer-client relationship ends. Although RPC 1.6 does not prohibit a lawyer from providing a notice of withdrawal to the Court, or otherwise providing information to the Court to avoid "knowingly disobeying an obligation under the rules of tribunal," (RPC 3.4(c)), a disclosure that could potentially be adverse to the client's interest "should be no greater than the lawyer reasonably believes necessary to accomplish the purpose." See RPC 1.16, Comment [14]. This is the case even if the Court orders the lawyer to produce information protected by RPC.

31. Even when a lawyer moves to withdraw, the lawyer is bound to keep confidential facts and circumstances that relate to the reasons for the withdrawal, because those are

confidential. The lawyer's statement to the effect that "professional considerations require termination of the representation ordinarily should be accepted as sufficient." RPC 1.16, Comment [3]. As a result, considering the broad reach of the duty of confidentiality, lawyers must be extremely cautious in balancing the obligation of candor to the Court with the duty of confidentiality in the withdrawal context. Washington Ethics Advisory Op. 2225 at 3.

32. It is my opinion that Hagens Berman acted ethically in balancing these factors. As discussed above, when Hagens Berman moved to amend the Complaint, Hagens Berman reasonably believed that Floyd had not specifically instructed it to withdraw him as class representative and terminate representation. Absent a court order to produce communications protected by RPC 1.6, Hagens Berman was prohibited from revealing communications between the firm and Floyd, even if they in some way related to or hinted at his concerns with the representation. However, Hagens Berman also had an obligation to follow the rules of the tribunal. Although balancing of these factors is not easy and the exact parameters of the conflicting obligations is not susceptible to a precise formula, Hagens Berman's actions throughout this matter were ethical and reasonable and the firm's representations, including in the submissions identified above in Paragraph 4, abided by the duty of candor. The firm was fully transparent with the Court and opposing counsel that it was having difficulties communicating with Floyd. It truthfully told the Court that Floyd had not given instructions to the firm to withdraw him as a class representative. However, it also had an ethical obligation to keep the details and substance of its January 16, 2024 communications and other communications with Floyd confidential, which it did until ordered by the Court to produce them. As such, the firm discharged its obligations in compliance with the RPC.

I hereby declare that the above statements are true to the best of my knowledge and belief and are subject to penalty for perjury.

Dated: October 27, 2025

*/s/ Kevin Bank*
Kevin Bank Law
WSBA No. 28935
(206)771-6418

Kevin@kevinbanklaw.com

---

# EXHIBIT A

**KEVIN BANK**

P.O. Box 61183, Seattle, WA  98141-6183
Phone: (206) 771-6418
Email:  kevin@kevinbanklaw.com

EXPERIENCE

**KEVIN BANK LAW,** SEATTLE, WA (DECEMBER 2018– PRESENT)

Provide ethics consultations and expert opinions to solo practitioners, law firms and government agencies.  Provide opinion letters and testimony as needed on wide range of issues relating to ethical and professional responsibilities of lawyers, including conflicts, ineffective assistance of counsel claims, handling of client funds, fee agreements, and obligations to the Court. Educate lawyers on professional responsibility, ethics and malpractice avoidance through presentations at Continuing Legal Education Seminars in Washington and nationally.

Represent lawyers and judges in proceedings involving allegations of ethical misconduct, and bar applicants in character and fitness hearings. Assist clients in all stages of proceedings including responding to grievances/complaints, investigations, administrative hearings and appeals.  Argue at all levels, including Washington Supreme Court on behalf of clients.

In consultation with leading immigration and criminal defense lawyers, provide representation in affirmative and defensive asylum matters and visas for victims of crimes.

**WASHINGTON STATE BAR ASSOCIATION (WSBA)**, SEATTLE, WA (JUNE 1999 – MAY 2018)

**ASSISTANT GENERAL COUNSEL** (MARCH 2015 - MAY 2018)

Served as counsel/liaison to WSBA regulatory Boards, Committees and Task Forces, including Disciplinary Board, Character and Fitness Board and Client Protection Board.  Provided legal advice to chairs and members. Drafted and reviewed decisions and orders in wide range of hearing and appellate matters.

Trained 60 to 80 volunteer Board members each year on substantive and procedural rules and regulations relating to their work.

Drafted amendments to Supreme Court rules governing Client Protection Board and Character and Fitness Board to enhance protections under the ADA for Bar applicants and to increase the award limit for gifts to injured clients.

**MANAGING DISCIPLINARY COUNSEL** (MARCH 2008 - FEBRUARY 2015)

Prepared full range of litigation pleadings and represented Office of Disciplinary Counsel in disciplinary hearings. Communicated with complainants, negotiated with respondent lawyers and opposing counsel, argued cases before hearing officers, Disciplinary Board and Supreme Court.

Managed team comprised of lawyers, investigators, paralegals and administrative assistants in investigation and prosecution of wide range of ethical violations under the Rules of Professional Conduct.

Frequent speaker at National Association of Bar Counsel, Continuing Legal Education seminars, and ethics and externship classes at law schools.

**DISCIPLINARY COUNSEL** (JUNE 1999 - MARCH 2008)

Managed complex and high profile disciplinary investigations, formal proceedings and appeals.

Drafted and argued appeals to Disciplinary Board and Washington Supreme Court in controversial and highly contested cases involving ethical misconduct by lawyers.

Coordinated investigations with State Attorney General, Office of Insurance Commissioner and Department of Financial Institutions.

**FEDERAL TRADE COMMISSION**, WASHINGTON, D.C. AND SEATTLE (JULY 1990-OCTOBER 1998)

**LITIGATION AND REGULATORY ATTORNEY**

Litigated consumer protection cases in administrative and federal courts.

Managed complex investigations of marketer's efficacy and safety claims for consumer products.

Drafted national guidelines, published in Code of Federal Regulations, on permissible environmental claims advertising.

**SACHS, GREENEBAUM AND TAYLER,** WASHINGTON, D.C. (1988-1990)

**LITIGATION ASSOCIATE**

Represented clients in all aspects of general litigation practice including personal injury, commercial real estate, family and government contracts.

**D.C. COURT OF APPEALS**, WASHINGTON, D.C. (1987-1988)

**MOTIONS LAW CLERK**

Researched and recommended dispositions of appellate motions for nine judges of Court of Appeals in wide range of cases, including challenges to administrative decisions, commercial and criminal matters. Drafted court opinions and orders.

EDUCATION

**NEW YORK UNIVERSITY SCHOOL OF LAW** – J.D., MAY 1987
Clinics: U.S. Attorney's Office; Natural Resources Defense Council

**COLUMBIA UNIVERSITY**, B.A. HISTORY, CUM LAUDE, MAY 1983

SELECTED PUBLICATIONS

"What To Do With the Nosy Non-Client: Ethical Issues in Dealing with Third Parties," https://www.aila.org/practice/ethics/ethics-resources

Lozada Motions: How to File One and How to Respond if One is Filed Against You" https://www.aila.org/practice/ethics/ethics-resources

"Possible Risks with Online Advertising," Washington State Bar News (June 2020) (with Michele Carney).

"Changes to the Character and Fitness Rules: Amendments for a New Era," Northwest Lawyer (December 2016/January 2017) (with Emily Cooper).

"Are there Limits to what You Can Reveal When Defending Yourself in a Complaint about Your Representation?" Washington State Bar News (March 2012) (with Francesca D'Angelo).

"An Unholy Alliance: Nonlawyers Who Mass Market Trusts and the Lawyers Who Assist Them" Washington State Bar News (March 2004) (with Cheryl Kringle).

"How Green is My Product and Package: The Federal Trade Commission's Environmental Marketing Guidelines" 49 Food and Drug Law Journal 499 (1994).

PROFESSIONAL AND VOLUNTEER ACTIVITIES

Speaker at multiple Continuing Legal Education seminars including Washington State Bar Association, King County Bar Association and American Immigration Lawyers Association (AILA). Topics include Conflicts, Ethics of Practicing Remotely, Overview of Bar Disciplinary Process, Ineffective Assistance of Counsel in Immigration Cases and Law Firm Risk Management.

Chair, Professional Responsibility, Consumer Protection and Practice Management Section, American Immigration Lawyers Association, Washington Chapter (2020 to present).

Member, Washington Supreme Court Disciplinary Advisory Roundtable, chaired by the Honorable Mary Yu (2020 to present)

Member, National Ethics Committee of American Immigration Lawyers Association

Pro Bono attorney in asylum and U Visa cases, Northwest Immigration Rights Project (2018-present)

Board Member (2017-2018), Conference Speaker (2016-2018,) National Council of Lawyer Disciplinary Boards

Conference Speaker, National Association of Bar Counsel (2004, 2012, 2025)

Member of WSBA, American Association of Professional Responsibility Lawyers and American Immigration Lawyers Association.