1   The Honorable Kymberly K. Evanson

2

3

4

5

6

7

8   **UNITED STATE DISTRICT COURT**
    **WESTERN DISTRICT OF WASHINGTON**
    **AT SEATTLE**

9

10  JOLENE FURDEK and JONATHAN RYAN,
    on behalf of themselves and all others similarly
11  situated.                                          Case No.  2:22-cv-01599-KKE

12            Plaintiff,

13       v.                                             EXPERT DECLARATION OF NELLIE Q.
                                                        BARNARD
14  AMAZON.COM, INC., and APPLE INC.,

15            Defendants.

16
    **I.     INTRODUCTION AND SUMMARY OF CONCLUSIONS**
17
            1.      I have been retained by Hagens Berman Sobol Shapiro LLP ("Hagens Berman") to
18
    provide an expert opinion in the above-entitled litigation (the "Litigation").  Specifically, I have
19
    been asked to provide an opinion regarding certain ethical obligations of counsel of record from
20
    Hagens Berman[1] to their former client, Plaintiff Steven Floyd, to the court, and to defendants.
21
            2.      I am being compensated for my work on this matter at my standard hourly rate of
22
    $590.
23

24

25  _____
        [1] References to Hagens Berman herein refer to the lawyers of record in this case from
26  Hagens Berman.

Page 1 -   EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

3. This opinion relates to the order entered by this court on September 29, 2025, dkt. 250, in which it granted Defendant Apple Inc.'s ("Apple's") Motion to Reconsider the order granting leave to amend, dkt. 221, and dismissed the case with prejudice as to Mr. Floyd and without prejudice to claims brought by any remaining putative class members. In this order, the court reached certain conclusions that relate to the ethical obligations of Hagens Berman.

4. I have been asked to provide an opinion regarding certain ethical issues that are referenced in or may arise from the court's September 29, 2025 order, and in particular whether Hagens Berman's conduct was consistent with its obligations under the Rules of Professional Conduct. Dkt. 250.[2]

5. It is my opinion that, pursuant to applicable ethical obligations under the Rules of Professional Conduct, (1) Hagens Berman could not reasonably conclude from the written communications received from Mr. Floyd between September 2023 and January 2024 that Mr. Floyd no longer wished to participate in the Litigation as the putative class representative, and as a result, the firm did not have authority under RPC 1.2(a) to change his status as class representative at that time, (2) Mr. Floyd did not terminate the attorney-client relationship with Hagens Berman in January 2024, (3) Hagens Berman acted with reasonable diligence to locate additional putative class representatives after Mr. Floyd stopped communicating with the firm in January 2024, acted consistent within its authority under RPC 1.2(a) to seek to amend the operative complaint, and complied with its communication duties under RPC 1.4 to clarify Mr. Floyd's January 16, 2024 communications, (4) Hagens Berman's attempt to withdraw Mr. Floyd in June 2024 was consistent with its RPC 1.2(a) duties to Mr. Floyd, the other class representatives, and the putative class members in light of Mr. Floyd's continued silence in the face of impending deadlines, (5) Hagens Berman's disclosures regarding the status of communications with Mr. Floyd in the Motion to Amend briefing  and later in the Stipulated Motion and [Proposed] Order

---

[2] All references to the RPCs or the Rules of Professional Conduct are to the Washington Rules of Professional Conduct.

Page 2 -    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1    Regarding Steven Floyd's Deadline to Respond to Interrogatories and Requests for Production

2    were impliedly authorized under RPC 1.6(a), but no further disclosures were permitted at that time,

3    (6) Hagens Berman is now permitted to disclose information regarding Mr. Floyd that is subject

4    to RPC 1.6(a) to the extent Hagens Berman believes such disclosures are reasonably necessary to

5    respond to allegations concerning its lawyers' conduct made in this proceeding, (7) RPC 3.3 did

6    not require Hagens Berman to make further disclosures to the court regarding the contents of Mr.

7    Floyd's communications, and (8) Hagens Berman did not violate RPC 8.4(c) in any of the

8    documents that it authored and that are referenced in paragraph 15.

9    **II.    EXPERT BACKGROUND**

10    6.    I am a shareholder in the Portland, Oregon office of the law firm, Schwabe,

11    Williamson & Wyatt, P.C. ("Schwabe").  I serve as Deputy General Counsel to Schwabe and I am

12    a member of the Litigation Practice Group.

13    7.    My practice focuses on legal ethics, risk management for lawyers and law firms,

14    grievance and licensing issues with state bar associations, and addressing other legal issues lawyers

15    may encounter in the practice law that intersect with the Rules of Professional Conduct. I advise

16    lawyers, law firms, government agencies, in-house legal departments, as well as students, judges,

17    and other professionals, on a variety of ethics issues, including conflicts of interest, confidentiality,

18    fee disputes, partnership disputes, sanctions, withdrawal, malpractice and professional liability

19    matters, scope of authority, and litigation issues. Prior to joining Schwabe in 2022 (as of counsel

20    – I was later promoted to shareholder), I worked in the Portland, Oregon, office of Holland &

21    Knight LLP from 2014 to 2022 (as an associate) where I maintained a similar practice.  From

22    August 2012 until I joined Holland & Knight LLP, I worked as a law clerk for the Honorable

23    Virginia Linder of the Oregon Supreme Court.

24    8.    I am authorized to practice law and am a member in good standing in the following

25    jurisdictions: State of Oregon, U.S. District Court, District of Oregon, U.S. Court of Appeals, Ninth

26    Circuit, State of Washington, U.S. District Court, Western District of Washington, and U.S. District

Page 3 -    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    Court, Eastern District of Washington.

2        9.    I hold the following degrees: Lewis and Clark Law School, J.D. (2012), *cum laude*,

3    and Middlebury College, B.A. (2006), *magna cum laude*.

4        10.    I am a frequent writer on professional responsibility and risk management issues.

5    Among other written works, I co-authored Chapter 7 (Competence, Diligence and

6    Communication), Chapter 8 (Advocacy), and Chapter 15 (Oregon Judicial Ethics) in *Legal Ethics*

7    *in Oregon*, published by the Oregon State Bar.

8        11.    I speak at least 10-15 times per year at seminars (this year it will be over 20 times),

9    to law firms, government lawyers, and to in-house legal departments on various ethical issues

10    affecting lawyers, law firms, and in-house legal departments in both Washington and Oregon (and

11    sometimes nationally). As a few examples, in Oregon, (1) on April 16, 2025, I was a co-presenter

12    in a CLE for the Multnomah Bar Association, entitled "Just How Broad Is My Confidentiality

13    Obligation Under ORPC 1.6?"; (2) on February 28, 2025, I was a co-presenter for the presentation,

14    "Modern Competence," for The Seminar Group; and (3) on October 3, 2025, I was a co-presenter

15    in a CLE for the Oregon State Bar Construction Law Section entitled "Hard Hats Required: Ethical

16    Considerations for Artificial Intelligence in the Practice of Law."  I also presented a CLE in

17    Washington at the King County Bar Association, Family Law Hot Topics on October 22, 2025

18    regarding the use of generative AI in the practice of law and associated ethical obligations and

19    professional risk management issues.

20        12.    I have been actively involved in other committees and groups with the Multnomah

21    Bar Association and the American Bar Association ("ABA") that have a focus, at least in part, on

22    lawyer conduct and the application of the Rules of Professional Conduct. For example:

23            a.   I am a current member of the Association of Professional Responsibility

24    Lawyers, the American Bar Association – Center for Professional Responsibility, and the American

25    Bar Association – Law Practice Division.

26            b.  I was a member of the Multnomah Bar Association's Professionalism

Page 4 -   EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1  Committee from 2016 to 2019, and I chaired the committee from 2018–2019. I was also a Board

2  Member of the Multnomah Bar Association from 2019–2022, and I was the treasurer from 2021–

3  2022.

4       13.    For over a decade, my practice has focused on defending lawyers, and sometimes

5  judges and law students, who have been accused of or wish to avoid ethical violations. My practice

6  also includes advising lawyers, law firms, government agencies and government lawyers, and in-

7  house legal departments about practices and procedures that can be used to minimize or avoid

8  ethical and malpractice risks. Although my practice now focuses on giving professional

9  responsibility/risk management advice to lawyers, I have spent substantial time over the past 11

10  years as a civil litigation attorney in state and federal court in Oregon and Washington.

11       14.    In my practice providing ethics advice and disciplinary defense, I routinely analyze

12  lawyer conduct, conflicts of interest, the scope of the duty of confidentiality, the scope of the duty

13  of candor, and when lawyer conduct may violate a court order or rules of the court. Further, I have

14  assisted numerous clients with respect to analyzing their ethical obligation to withdraw from

15  representation or decline representation under RPC 1.16. In the past several years, I have been

16  regularly retained to offer expert testimony on legal ethics and professional responsibility issues.

17  Based upon my study and experience, I believe I am competent to testify to the matters referenced

18  herein.

19       15.    My opinion in this matter is based on my review of the following:

20            a.  The Amended Floyd Communications Privilege Log (Confidential –

21               Subject to Protective Order) (the "Privilege Log");

22            b.  All of the written communications referenced in the Privilege Log;

23            c.  Motion to Amend First Amended Complaint and to Intervene (the "Motion

24               to Amend"), Dkt. 80;

25            d.  Declaration of Ben M. Harrington in Support of Motion to Amend First

26               Amended Complaint and to Intervene, Dkt. 81;

Page 5 -    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1      e.  Defendant's Opposition to Motion to Amend First Amended Complaint and
2          to Intervene, Dkt. 86;

3      f.  Reply in Support of Motion to Amend First Amended Complaint and to
4          Intervene, Dkt. 92;

5      g.  Order Granting Motion for Leave to Amend, Dkt. 98;

6      h.  Opposition to Motion to Compel and Cross-Motion to Withdraw Class
7          Representative, Dkt. 114;

8      i.  Declaration of Ben M. Harrington in Opposition to Motion to Compel and
9          Cross-Motion to Withdraw Class Representative, Dkt. 115;

10     j.  Reply in support of Cross-Motion to Withdraw Class Representative, Dkt.
11         127;

12     k.  Stipulated Motion and [Proposed] Order Regarding Plaintiff Steven Floyd's
13         Deadline to Respond to Interrogatories, Dkt. 134;

14     l.  Stipulated Motion and Order Regarding Plaintiff Steven Floyd's Deadline
15         to Respond to Interrogatories, Dkt. 135;

16     m. Motion to Withdraw as Counsel, Dkt. 140;

17     n.  Declaration of Ben M. Harrington in Support of Motion to Withdraw as
18         Counsel, Dkt. 141;

19     o.  Reply in support of Motion to Withdraw as Counsel, Dkt. 149;

20     p.  Harrington Declaration in support of Reply in support of Motion to
21         Withdraw as Counsel, Dkt. 150;

22     q.  Defendants' Motion for Discovery Sanctions, Dkt. 152;

23     r.  Liegel Declaration in support of Defendant's Motion for Discovery
24         Sanctions, Dkt. 153;

25     s.  Response to Motion for Discovery Sanctions, Dkt. 156;

26     t.  Harrington Declaration in support of Response to Motion for Discovery

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1      Sanctions, Dkt. 157;

2          u.  Defendants' Reply in support of Motion for Discovery Sanctions, Dkt. 162;

3          v.  Defendants' Motion to Compel Documents Improperly Withheld as

4              Privileged, Dkt. 172;

5          w.  Plaintiffs Opposition to Defendants' Motion to Compel Documents

6              Improperly Withheld as Privileged, Dkt. 176;

7          x.  Defendants' Reply in support of Motion to Compel Documents Improperly

8              Withheld as Privileged, Dkt. 180;

9          y.  Order on Defendants Motion to Compel, Dkt. 196;

10         z.  Order to Prove Documents for *In Camera* Review, Dkt. 199;

11         aa. Order Granting in Part and Denying in Part Defendants' Motion for

12             Discovery Sanctions, Dkt. 203;

13         bb. Motion for Attorney Fees and Costs, Dkt. 208;

14         cc. Apple Motion for Reconsideration, Dkt. 221;

15         dd. Response to Motion for Attorney Fees and Costs, Dkt. 223;

16         ee. Response to Apple Motion for Reconsideration, Dkt. 226;

17         ff.  Reply in support of Apple Motion for Reconsideration, Dkt. 229;

18         gg. Order to Provide Documents for *In Camera* Review, Dkt. 234;

19         hh. Order Granting Motion for Reconsideration and Dismissing Case, Dkt. 250;

20             and

21         ii.  The docket for the above-captioned case maintained at Pacer CM/ECF.

22     16.     For purposes of this Declaration, I have relied only on the information contained in

23 the above pleadings and documents. I have not relied on additional information from Hagens

24 Berman, but I recognize that they could provide additional information that may be relevant to the

25 analysis herein.

26     17.     Based on my review, I believe that I have sufficient background information to

Page 7 -    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    understand the status and procedural posture of the case, the complexity or lack of complexity

2    involved at this stage, to opine on the existence of potential violations of ethical rules and norms,

3    and to opine on the application of ethical rules to the facts set out in the pleadings and documents

4    noted above.

5    **III.    DISCUSSION AND ANALYSIS**

6    A.    **Opinion:** *A lawyer could not reasonably conclude from Mr. Floyd's written*
      *communications between September 2023 and January 2024 that he no longer*
7    *wished to participate in the litigation; therefore, and pursuant to RPC 1.2, Mr.*
      *Floyd's communications did not provide a basis to withdraw Mr. Floyd as*
8    *putative class representative or dismiss him from the litigation as of January*
      *2024.*
9

10    18.    In my opinion, the written communications between Hagens Berman and Mr. Floyd

11    between September 2023 and January 2024 precluded Hagens Berman from immediately

12    removing Mr. Floyd as class representative or dismissing him from the Litigation at that time

13    because such decisions are generally reserved to the client pursuant to RPC 1.2(a).

14    19.    RPC 1.2(a) provides in pertinent part as follows:

15
      [A] lawyer shall abide by a client's decisions concerning the objectives of
16    representation and, as required by RPC 1.4, shall consult with the client as to the
      means by which they are to be pursued. A lawyer may take such action on behalf
17    of the client as is impliedly authorized to carry out the representation. A lawyer
      shall abide by a client's decision whether to settle a matter.
18

19    Comment [1] to RPC 1.2 provides in pertinent part as follows: "Paragraph (a) confers upon the

20    client the ultimate authority to determine the purposes to be served by legal representation, within

21    the limits imposed by law and the lawyer's professional obligations."  Comment [3] to RPC 1.2

22    provides in pertinent part as follows: "At the outset of a representation, the client may authorize

23    the lawyer to take specific action on the client's behalf without further consultation. Absent a

24    material change in circumstances and subject to Rule 1.4, a lawyer may rely on such an advance

25    authorization."

26

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

20.     It is widely accepted that RPC 1.2 confers on the client "ultimate authority over the objectives, but somewhat less authority over the means employed. * * * The distinction between 'objectives' and 'means' is often expressed as the difference between decisions that directly affect the ultimate resolution of the case or the substantive rights of the client and decisions that are procedural or tactical in nature." Ann. Mod. Rules Prof. Cond. § 1.2 (10th ed., 2023). "A lawyer who fails to carry out the objectives of a representation chosen by the client violates Rule 1.2." *Id. See also In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 307, 209 P.3d 435 (2009), *as corrected* (Sept. 23, 2009) (lawyer violated RPC 1.2(a) by failing to follow client directive to diminish the role of her son in her financial affairs when lawyer instead had son appointed as guardian over client).

a.     However, RPC 1.2(a) may operate somewhat differently in the class action context, depending on the circumstances.  For instance, class representatives, at least in a certified class, generally do not have the right to replace class counsel at will.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1078 (2d Cir. 1995). And class representatives do not have authority to veto a settlement, although a non-class plaintiff has that authority.  Federal Judicial Center, *Manual for Complex Litigation* § 21.642 (4th ed. 20024) ("a class representative cannot alone veto a settlement, especially one that has been presented to and approved by the court[.]").

21.     In my opinion, without a clear indication from Mr. Floyd that he no longer wished to participate in the Litigation as the putative class representative, Hagens Berman did not have authority to remove Mr. Floyd as putative class representative or dismiss him from the Litigation based upon his January 2024 communications alone.

a.     I have reviewed each of the written communications from September 2023 and January 2024 that are documented in the Privilege Log.  The communications between September 22, 2023 and January 11, 2024 convey that Mr. Floyd was appropriately engaged in the Litigation during this period.  Mr. Floyd was responsive to Hagens Berman and appeared involved

Page 9 -    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1   in the discovery process.  There are no communications during this period suggesting that Mr.

2   Floyd wished to withdraw from the Litigation or not participate in discovery.

3          b.  On January 16, 2024 Mr. Floyd sent two communications.  The tone and

4   content of Mr. Floyd's communications differed from the previous communications.  However,

5   Mr. Floyd did not convey a clear directive that his objective to pursue litigation against defendants

6   had changed.  Nor did Mr. Floyd indicate that he wanted to be excluded from the class or opt out

7   of the class.  Seeking to withdraw Mr. Floyd as class representative at this time likely would have

8   violated RPC 1.2(a). Whether to participate in the Litigation and in what capacity is a decision that

9   is generally reserved to the client pursuant to RPC 1.2(a).

10         c.  Given (1) the change in Mr. Floyd's January 16, 2024 communications,

11   which was at odds with his communications with Hagens Berman between September 22, 2023

12   and January 10, 2024, and (2) the lack of clear directive in said communications, Hagens Berman

13   was required to communicate with Mr. Floyd to clarify his objectives with regard to discovery and

14   the Litigation pursuant to RPC 1.4 and RPC 1.2.  Hagens Berman undertook those efforts via

15   written communications on the following dates, prior to filing the Motion to Amend: January 24,

16   February 1, and February 26, 2024.

17         d.  In the February 26, 2024 communication, Hagens Berman sent an email to

18   Mr. Floyd for purposes of advising on litigation strategy and amendments to the pleadings, as well

19   as to otherwise clarify his objectives regarding discovery and the Litigation pursuant to RPC 1.4

20   and RPC 1.2.  For reasons that are not clear to me, it appears that this email was *not* among the

21   documents reviewed by the court *in camera*.[3] Mr. Floyd did not respond to these communications.

22         e.  Hagens Berman continued its efforts to communicate with Mr. Floyd after

23   seeking amendment on February 29, 2024, including between March 2024 and June 2024.

24

---

25      [3] The February 26, 2024 email is entry number 38 on the Privilege Log.  This entry was
not requested by the court in either order requiring the production of documents for *in camera*

26   review. *See* Dkts. 199 and 234.

Page 10     EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

22.     Without additional clarification from Mr. Floyd about his objectives, Hagens Berman could not change Mr. Floyd's status as a party and putative class representative when filing the Motion to Amend without violating RPC 1.2(a).

**B.     Opinion:** *Mr. Floyd did not terminate the attorney-client relationship in January 2024, thus Hagens Berman was not required to withdraw from representation of Mr. Floyd under RPC 1.16(a).*

23.     In my opinion, the attorney-client relationship between Mr. Floyd and Hagens Berman continued after Mr. Floyd's January 16, 2024 written communications.

24.     Whether an attorney-client relationship exists is a fact-specific inquiry that is informed by the context of the relationship and the attending circumstances. *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992), *amended on denial of reconsideration* (June 22, 1992). "The essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters." *Id.* "The existence of the relationship 'turns largely on the client's subjective belief that it exists.'" *Id.* (quoting *Matter of McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)). "The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions." *Id.*

a. In Washington, termination of the attorney-client relationship can be inferred from the circumstances. *Hipple v. McFadden*, 161 Wn. App. 550, 558, 255 P.3d 730 (2011). However, "there is no bright-line rule for determining when representation ends[.]" *Id.* Subsequent events after what may appear to be the termination of representation "can result in continued representation." RONALD E. MALLEN, LEGAL MALPRACTICE § 23:47 (2025 ed.). *See, e.g.*, *Nielsen v. Beck*, 157 Cal. App. 4th 1041, 69 Cal. Rptr. 3d 435 (2d Dist. 2007), *as modified on denial of reh'g*, (Jan. 7, 2008) *and review denied*, (Mar. 12, 2008) (reasonable minds could differ regarding whether telephone conversations after substitution of counsel was signed and filed continued the attorney-client relationship).

Page 11     EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1            b.  Lack of communication by itself is not necessarily enough to terminate an

2    attorney-client relationship.  *See Laclette v. Galindo*, 184 Cal. App. 4th 919, 109 Cal. Rptr. 3d 660

3    (2d Dist. 2010), *as modified*, (June 3, 2010) (lack of communication between a lawyer and a client

4    during a two year period did not terminate the attorney-client relationship as a matter of law);

5    *Thayer v. Fuller & Henry, Ltd*., 503 F. Supp. 2d 887 (N.D. Ohio 2007) (lack of communication for

6    approximately six months not dispositive of whether lawyer-client relationship terminated).

7    Generally, the question of when an attorney-client relationship ends based on lack of

8    communication is a fact-specific inquiry.  *Hipple*, 161 Wn. App. at 560.

9            c.  Acrimonious emails and adversarial conduct do not necessarily signal the

10    client's subjective intent that the representation has terminated.  *Louzoun v. Kroll Moss and Kroll,*

11    *LLP*, 113 A.D.3d 600, 979 N.Y.S.2d 94 (2d Dep't 2014) (acrimonious email did not unequivocally

12    terminate attorney-client relationship); *Turner and Boisseau v. Nationwide Mut. Ins. Co*., 989 F.

13    Supp. 1359 (D. Kan. 1997) (in an ongoing representation, mere adversarial conduct did not end

14    the attorney-client relationship).  It may, however, provide the lawyer with a permissible basis to

15    withdraw from the representation.  *See, e.g.*, RPC 1.16(b)(1), (7).

16         25.    In this case, the communications between Hagens Berman and Mr. Floyd indicate

17    that Mr. Floyd did not terminate the attorney-client relationship in January 2024.[4]  I have not

18    reviewed a written communication from Mr. Floyd between September 2023 and January 2024

19    that a lawyer reasonably would have understood as terminating the representation of Hagens

20    Berman.

21         26.    Mr. Floyd's January 16, 2024 communications indicate that he was concerned

22    about the invasiveness of discovery.  Standing in isolation, they do not indicate an immediate

23    directive to terminate the representation by Hagens Berman (or as indicated above, to withdraw as

24

---

25         [4] Hagens Berman sought leave to withdraw Mr. Floyd as class representative in June 2024.
Hagens Berman's conduct in this regard was permissible under the Rules of Professional Conduct,

26    as discussed in Section D below.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1    class representative, opt out of the class or dismiss his claims as a member of the putative class).

2    And when considered in the context of his communications from September 2023 to January 10,

3    2024, in which Mr. Floyd was cooperative and responsive to Hagens Berman's communications,

4    Mr. Floyd's communications certainly cannot be interpreted as ending the representation (or as

5    indicated above, directing his lawyers to dismiss his claims or withdraw him as a class

6    representative).

7        27.    A lawyer reviewing Mr. Floyd's January 16, 2024 communications would have

8    reasonably concluded that additional communications with Mr. Floyd were necessary to clarify his

9    intentions. Hagens Berman attempted to do so (prior to moving to amend) on January 24, February

10   1, and February 26, 2024, but received no response. In these communications, Hagens Berman

11   attempted to confer with Mr. Floyd in detail regarding his status as class representative and his

12   future intentions regarding the Litigation. Again, it appears that the February 26, 2024 email was

13   *not* among the documents reviewed by the court *in camera*.

14       28.    Mr. Floyd did not respond to these communications or subsequent communications

15   from the firm between March and June 2024. Mr. Floyd did not confirm that Hagens Berman

16   should dismiss him from the Litigation, withdraw him as class representative, or otherwise

17   terminate the attorney-client relationship. Nor did Mr. Floyd ask Hagens Berman to cease

18   contacting him.

19       29.    Under these circumstances, a lawyer is not required to withdraw from

20   representation pursuant to RPC 1.16(a), which provides as follows:

21       Except as stated in paragraph (c), a lawyer shall not represent a client or, where
         representation has commenced, shall, notwithstanding RCW 2.44.040, withdraw
22       from the representation of a client if: (1) the representation will result in violation
         of the Rules of Professional Conduct or other law; (2) the lawyer's physical or
23       mental condition materially impairs the lawyer's ability to represent the client; or
         (3) the lawyer is discharged.
24

25           a.    The circumstances under which a lawyer is required to withdraw from

26   representing a client are narrow, and set out in RPC 1.16(a) above. Unless the criteria of RPC

Page 13    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1    1.16(a) are met, a lawyer is generally required to continue representing a client absent a basis for

2    permissive withdrawal under RPC 1.16(b).  *See* Comment [4] to RPC 1.3.

3           b.  In my opinion, nothing in the pleadings or communications I reviewed as

4    part of forming my opinion in this matter required Hagens Berman to withdraw from representing

5    Mr. Floyd in January 2024.  Specifically, I am not aware that continuing the representation would

6    necessarily result in violation of the Rules of Professional Conduct or other law, RPC 1.16(a)(1),or

7    that there were any impairment concerns. RPC 1.16(a)(2).  Thus, withdrawal by Hagens Berman

8    would only be required if Mr. Floyd terminated the representation.  RPC 1.16(a)(3).

9           c.  Mr. Floyd did not expressly terminate the representation of Hagens Berman

10    in any written communication in January 2024.  The January 16, 2024 written communications

11    should not be read in isolation given the fact-specific analysis required to determine whether an

12    attorney-client relationship exists. *Bohn*, 119 Wn.2d at 363.  But even reviewing the January 16,

13    2024 communications in isolation, those communications did not even raise concern regarding

14    Hagens Berman's representation, let alone terminate the attorney client-relationship.  And they did

15    not direct Hagens Berman to change Mr. Floyd's status vis-à-vis the Litigation. Accordingly, and

16    in my opinion, Hagens Berman was not required to withdraw from representation of Mr. Floyd in

17    January 2024.

18    **C.**    **Opinion:** ***Hagens Berman properly discharged its obligation under RPC 1.2,***
      ***RPC 1.3, RPC 1.4, and RPC 3.2 when amending the operative complaint in***
19    ***February 2024.***

20        30.    The Motion to Amend, filed in February 2024 when Mr. Floyd had not responded

21    to communications since January 16, 2024, was consistent with the Hagen's Bermans obligations

22    under RPC 1.2(a), RPC 1.3, RPC 1.4, and RPC 3.2.

23        31.    On February 29, 2024, Hagens Berman moved to amend the complaint to add two

24    additional class representatives because Hagens Berman had not communicated with Mr. Floyd

25    since January 16, 2024.  The stated purpose of the motion was to ensure that the proposed class's

26    interest remained protected in light of Mr. Floyd's failure to communicate with Hagens Berman

Page 14
-    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    and the possibility he could withdraw.  Dkt. 80 at 1 (stating that "* * * class counsel have an

2    overriding duty to the proposed class and this is the appropriate juncture to add additional class

3    representatives who can represent the class and progress this action should Mr. Floyd withdraw.").

4    In my opinion, this motion was proper under RPC 1.2(a), RPC 1.3 and RPC 1.4.  Each rule is

5    addressed in turn.

6        32.    The Motion to Amend is consistent with the firm's authority under RPC 1.2(a) to

7    act on behalf of the intervening plaintiffs, who hired Hagens Berman to litigate claims in the

8    Litigation on their behalf in early 2024.

9        33.    Hagens Berman's actions are also consistent with the firm's concurrent obligations

10    under RPC 1.3 to act "with reasonable diligence" in representing a client and under RPC 3.2, to

11    "make reasonable efforts to expedite litigation consistent with the interests of the client." *See also*

12    Comment [4] to RPC 1.3 ("Unless the relationship is terminated as provided in Rule 1.16, a lawyer

13    should carry through to conclusion all matters undertaken for a client.").  When Mr. Floyd failed

14    to respond to phone calls, emails, and text messages while at the same time also not taking any

15    steps to affirmatively terminate his relationship with Hagens Berman, the firm's duties to the

16    putative class members and the intervening plaintiffs required it to take reasonable steps to protect

17    the viability of the class's claims, and act with reasonable diligence in doing so.  Hagens Berman

18    also had to balance Mr. Floyd's interest in the Litigation, including his interest as class

19    representative to potential compensation.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958

20    (9th Cir. 2009) (discussing incentive award compensation for class representatives after settlement

21    or a favorable verdict as "fairly typical").

22        34.    Hagens Berman's Motion to Amend was therefore consistent with Hagens

23    Berman's obligations under RPC 1.3 and RPC 3.2 with respect to the intervening plaintiffs and the

24    putative class, all of whom Hagens Berman owed ethical obligations under RPC 1.3 and RPC 3.2.

25        35.    Neither RPC 1.3 nor RPC 3.2 define "reasonable promptness" or "reasonable

26    efforts to expedite litigation."  Failure to take an action within the time required for such action

Page 15    EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1   violates RPC 1.3 and RPC 3.2. *In re Disciplinary Proceeding Against Lopez*, 153 Wn.2d 570, 584,

2   106 P.3d 221 (2005) (missing deadline to file opening brief by 14 months violated RPC 1.3 and

3   RPC 3.2).  Failure to take an action within a reasonable time may also violate RPC 1.3 and RPC

4   3.2. *In re Disciplinary Proceeding Against Van Camp*, 171 Wn.2d 781, 802, 257 P.3d 599 (2011)

5   (failure to provide a settlement offer to client for eight months violated RPC 1.3); *In re*

6   *Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 814, 72 P.3d 1067 (2003) (failure to

7   take discovery, investigate, contact expert witnesses or have meaningful communication with

8   clients over 14 month period violated RPC 1.3).

9      36.  Here, the timing of the Motion to Amend was consistent with the firm's RPC 1.3

10  and RPC 3.2 obligations. The last communication from Mr. Floyd was received on January 16,

11  2024.  On January 24, 2024, Hagens Berman began outreach efforts for new class representatives.

12  Dkt. 81 ¶ 3.  On February 13, 2024, Hagens Berman notified defendants of its intent to amend the

13  operative complaint to add class representatives and requested defendants' position on the motion.

14  Dkt. 81-1 at 4.  On February 22, 2024, defendants informed Hagens Berman that they would

15  oppose amendment.  Dkt. 81-1 at 3.  On February 29, 2024, the firm filed the motion to amend,

16  just over six weeks after outreach efforts for class representatives began.  This timeframe comports

17  with Hagens Berman's obligations under RPC 1.3 and RPC 3.2, and it does not amount to undue

18  delay for purposes of the Rules of Professional Conduct.

19     37.  Hagens Berman also appropriately observed its obligations under RPC 1.4.  When

20  Mr. Floyd stopped communicating with Hagens Berman on January 16, 2024, Hagens Berman had

21  a duty under RPC 1.4(a)(2) to consult with Mr. Floyd about the meaning of his last

22  communications.  Hagens Berman also had a duty under RPC 1.4(b) to communicate with Mr.

23  Floyd such that Mr. Floyd could make informed decisions regarding the representation and his

24  legal objectives.  Hagens Berman attempted to do so on January 24, 2024, February 1, 2024, and

25  February 26, 2024, prior to filing the Motion to Amend on February 29, 2024.  For example, as

26  explained previously, in the February 26, 2024 communication (which the court has not reviewed

EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1  *in camera*), Hagens Berman sent an email to Mr. Floyd regarding amendments to the pleadings as

2  well as to otherwise clarify whether he intended to continue as class representative (consistent with

3  their RPC 1.4 and 1.2 obligations).  Part of Hagens Berman's communication obligations also

4  include providing Mr. Floyd with a meaningful opportunity to consider the communications of his

5  lawyers and respond.  Mr. Floyd did not respond to these communications.  Hagens Berman's

6  communications were consistent with its obligation under RPC 1.4(a)(2) and RPC 1.4(b), as well

7  as RPC 1.3.

8  **D.    Opinion: *Hagens Berman's attempt to withdraw Mr. Floyd as class
9      representative in June 2024 was consistent with its RPC 1.2(a) obligations to
       Mr. Floyd, the other class representatives, and the members of the putative
10     class.***

11  38.    Hagens Berman was not initially permitted to change Mr. Floyd's participation in

12  the Litigation either as a member of the class or as the class representative as a result of Mr. Floyd's

13  January 16, 2024 communications alone. RPC 1.2(a).  However, the passage of time without

14  further communication, the firm's concomitant obligations to the putative class and other class

15  representatives, and impending deadlines permitted Hagens Berman to seek to withdraw Mr. Floyd

16  as class representative in June 2024.

17  39.    Again, for ease of reference, RPC 1.2(a) provides in pertinent part as follows:

18  [A] lawyer shall abide by a client's decisions concerning the objectives of
19  representation and, as required by RPC 1.4, shall consult with the client as to the
    means by which they are to be pursued. A lawyer may take such action on behalf
20  of the client as is impliedly authorized to carry out the representation. A lawyer
    shall abide by a client's decision whether to settle a matter.
21

22  Comment [1] to RPC 1.2 provides in pertinent part as follows: "Paragraph (a) confers upon the

23  client the ultimate authority to determine the purposes to be served by legal representation, within

24  the limits imposed by law and the lawyer's professional obligations."  However, and as the

25  Preamble to the Rules of Professional Conduct notes, "The Rules of Professional Conduct are rules

26  of reason. They should be interpreted with reference to the purposes of legal representation and of

Page 17    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1   the law itself." Preamble Comment [14].  And as indicated above in paragraph 20, RPC 1.2(a) may

2   operate somewhat differently in the class action litigation context, depending on the circumstances.

3          40.      After Mr. Floyd's January 16, 2024 communications, the firm attempted to seek

4   additional information and/or direction from Mr. Floyd in January, February, March, and May

5   2024.  Mr. Floyd did not respond.  During this time, the parties were operating without a case

6   schedule, which the court had lifted in the first part of 2024.  Thus, there were no deadlines that

7   required Mr. Floyd's compliance.

8                    a.   On May 17, 2024, Hagens Berman contacted Mr. Floyd regarding the status

9   of discovery in the Litigation because Apple had noticed Mr. Floyd's deposition for later that

10  month. The firm made clear that if Mr. Floyd did not respond to that email, Hagens Berman would

11  understand that he no longer wished to serve as class representative.

12                   b.   On May 24, 2024, the court entered a case schedule which required

13  production of initial documents by June 21, 2024.  Dkt. 111.  On June 3, Hagens Berman contacted

14  Mr. Floyd regarding the court's scheduling order, attached said order, and again asked Mr. Floyd

15  to respond.  The firm also again made clear that if Mr. Floyd remained silent, it would understand

16  that he no longer wished to serve as class representative.  Mr. Floyd did not respond.

17         41.      In my opinion, after the significant passage of time without direction from a client

18  amidst repeated attempts to obtain direction from the client, a lawyer could reasonably conclude

19  that the client no longer wished to pursue the matter for which the lawyer was retained.

20  Specifically, in the context of (1) class action litigation in which the client is named as a class

21  representative, (2) approaching discovery deadlines requiring information and/or documents from

22  the client, and (3) the client's continued silence in response to repeated attempts by the lawyer to

23  get direction from the client over several months, at least two of which made clear that the legal

24  consequences to Mr. Floyd should he fail to promptly respond, a lawyer may reasonably infer from

25  the client's continued silence that the client no longer wishes to serve as a class representative.

26  Under such circumstances, a lawyer would likely not violate RPC 1.2(a) by seeking to withdraw

    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    the client as class representative so long as the client's claims as a member of the class are

2    preserved.  The significant passage of time, coupled with the client's silence in the face of repeated

3    attempts to clarify the client's objective evince a change in the client's objectives for the litigation.

4       **E.**      **Opinion:** ***Hagens Berman's disclosures regarding Mr. Floyd in the Motion to***

5                ***Amend and declaration, and the Stipulated Motion and [Proposed] Order***
               ***Regarding Steven Floyd's Deadline to Respond to Interrogatories and Requests***

6                ***for Production were impliedly authorized under RPC 1.6(a), but further***
               ***disclosures were not permitted under RPC 1.6.***

7       42.     Hagens Berman's disclosures to the court and defendants in the Motion to Amend,

8    dkt. 80,  regarding the status of communications with Mr. Floyd were impliedly authorized under

9    RPC 1.6(a) to carry out the representation.  However, further disclosure regarding the contents of

10    Mr. Floyd's communication was *not* permitted under RPC 1.6.  Hagens Berman's disclosures to

11    the court and defendants in the Motion Stipulated Motion and [Proposed] Order Regarding Steven

12    Floyd's Deadline to Respond to Interrogatories and Requests for Production, dkt. 134, were also

13    impliedly authorized under RPC 1.6(a) to carry out the representation.  However, further disclosure

14    regarding the contents of Mr. Floyd's communications in August 2024 was *not* permitted under

15    RPC 1.6.

16       43.     RPC 1.6(a) governs the disclosure of information by a lawyer that is learned in the

17    course of representing a client.  RPC 1.6(a) provides, "A lawyer shall not reveal information

18    relating to the representation of a client unless the client gives informed consent, the disclosure is

19    impliedly authorized in order to carry out the representation or the disclosure is permitted by

20    paragraph (b)."  The prohibition on disclosure is broad:  "The confidentiality rule, for example,

21    applies not only to matters communicated in confidence by the client *but also to all information*

22    *relating to the representation, whatever its source*. A lawyer may not disclose such information

23    except as authorized or required by the Rules of Professional Conduct."  Comment [3] to RPC 1.6

24    (emphasis added).  *See also* Comment [21] to RPC 1.6 ("The phrase 'information relating to the

25    representation' should be interpreted broadly. The 'information' protected by this Rule includes,

26

Page 19
-
    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    but is not necessarily limited to, confidences and secrets. 'Confidence' refers to information

2    protected by the attorney client privilege under applicable law, and 'secret' refers to other

3    information gained in the professional relationship that the client has requested be held inviolate

4    or the disclosure of which would be embarrassing or would be likely to be detrimental to the

5    client."). "A fundamental principle in the client-lawyer relationship is that, in the absence of the

6    client's informed consent, the lawyer must not reveal information relating to the representation."

7    Comment [2] to RPC 1.6. In my experience, lawyers consistently underestimate the breadth of

8    RPC 1.6(a) in terms of the scope of information to which the rule applies.

9        44.    RPC 1.6(a) also expressly recognizes that a lawyer may be impliedly authorized to

10    disclose "information relating to the representation" "in order to carry out the representation." *See*

11    *also* Comment [5] to RPC 1.6 ("Except to the extent that the client's instructions or special

12    circumstances limit that authority, a lawyer is impliedly authorized to make disclosures about a

13    client when appropriate in carrying out the representation. In some situations, for example, a

14    lawyer may be impliedly authorized to admit a fact that cannot properly be disputed or to make a

15    disclosure that facilitates a satisfactory conclusion to a matter."); *The Law of Lawyering in*

16    *Washington* (WSBA) §6.II.B.1.a ("disclosure is implicit when it seems reasonably necessary to

17    accomplish the client's purposes."); *Restatement (Third) of the Law Governing Lawyers* § 61

18    (2000) ("A lawyer may use or disclose confidential client information when the lawyer reasonably

19    believes that doing so will advance the interests of the client in the representation.")

20        45.    In support of the Motion to Amend, Hagens Berman disclosed the following to the

21    court and defendants.

22        a.  "Up until recently, Mr. Floyd has been an attentive and responsive class

23    representative. Mr. Floyd communicated with class counsel promptly and effectively during the

24    preparation of pleadings in this matter and as the case progressed. But the last communication

25    class counsel received from Mr. Floyd was on January 16, 2024. Since that time, class counsel's

26

Page 20    EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1  messages to Mr. Floyd—including by phone, text, and email—have gone unanswered." Dkt. 81

2  ¶ 2.

3             b. "Although Mr. Floyd has not affirmatively withdrawn as a class

4  representative, his lapse in communication prompted class counsel to initiate a search for potential

5  additional class representatives who could be added or (if necessary) substituted should Mr. Floyd

6  fail to reengage. Those outreach efforts began on January 24, 2024." Dkt. 81 ¶ 3.

7             c. "Subsequent to this exchange, class counsel has made several additional

8  attempts to contact Mr. Floyd, but has not received a response. Mr. Floyd was notified that class

9  counsel would be filing a motion to amend the pleadings to add additional class representatives,

10  and invited to notify class counsel should he have any opposition to this course of action. Mr.

11  Floyd did not respond."  Dkt. 81 ¶ 10.

12             d. "* * * we also advise Defendants that while Mr. Floyd has not withdrawn

13  as a class representative, he has become difficult to reach. We are working diligently to determine

14  whether Mr. Floyd wishes to continue to serve as a class representative, and that he is fully capable

15  of doing so. If for any reason Mr. Floyd needs to withdraw, we will promptly advise Defendants

16  and take appropriate steps." Dkt. 81-1 at 5.

17             e. "As for Mr. Floyd, he has not informed us of any intention to withdraw as

18  a class representative. But as we explained, we have been unable to connect with him recently and

19  are working diligently to regain contact to determine how Mr. Floyd wishes to proceed. We last

20  communicated with Mr. Floyd on January 16, 2024 (and, again, it was not a withdrawal)."  Dkt.

21  81-1 at 2.

22      46.    In my opinion, both the content of the communications with Mr. Floyd and the fact

23  that he stopped responding to communications from Hagens Berman between January 16, 2024

24  and August 2024 were "information relating to the representation," and thus Hagens Berman was

25  prohibited from disclosing this information under RPC 1.6(a) except as the Rules of Professional

26  Conduct would permit or require.

Page 21    EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

47.     Hagens Berman was impliedly authorized to disclose the fact of Mr. Floyd's non-responsiveness with the court and defendants in seeking to amend the operative complaint.

a.   In light of Hagens Berman's duties to the putative members of the class, it became necessary to seek to add class representatives to the Litigation.  A lawyer could reasonably conclude that some explanation as to why those class members were necessary was required in order to meet the good cause standard in Rule 16 for amending the operative pleading.  A lawyer could further reasonably conclude in February 2024 that Mr. Floyd's ongoing lack of communication was or would soon be self-evident since the parties were in the discovery phase.  For instance, Mr. Floyd would be expected to provide documents and sit for a deposition, neither of which would be forthcoming if Mr. Floyd remained unresponsive to Hagens Berman.  For these reasons, it is my opinion that Hagens Berman was impliedly authorized to disclose Mr. Floyd's lack of communication with the firm.

48.     However, without informed consent or an applicable exception under RPC 1.6(b), Hagens Berman was not permitted to reveal the content of any communications with Mr. Floyd to the court or defendants.  *See* RPC 1.6(a).  Mr. Floyd's silence after January 16, 2024 put Hagens Berman in a difficult position vis-à-vis the court and defendants, all of whom would reasonably want more information regarding the circumstances of Mr. Floyd's lack of communication.  However, this predicament is not one of the exceptions permitting disclosure under RPC 1.6(b).  Nor does *a lawyer's* predicament impliedly authorize the disclosure of *the client's* confidential and privileged communications.

a.   A lawyer could not reasonably conclude that disclosing information about the content of the communications was impliedly authorized because doing so would not advance Mr. Floyd's interests.  For instance, disclosure of those communications would reveal attorney-client communications.  A Washington lawyer is generally not permitted to reveal privileged communications absent client consent.  *See, e.g.*, RPC 1.6 Comment [26] ("The decision to waive confidentiality should only be made by a fully informed client after consultation with the client's

Page 22 - 
EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1  lawyer or by a court of competent jurisdiction."); RPC 1.6 Comment [25] ("exceptions to the

2  general rule prohibiting unauthorized disclosure of information relating to the representation

3  'should not be carelessly invoked.' *In re Boelter*, 139 Wn.2d 81, 91, 985 P.2d 328 (1999)."). The

4  content of the communications could also be used against Mr. Floyd in motion practice or at trial.

5  This further demonstrates that disclosure was not in Mr. Floyd's interest. Accordingly, Hagens

6  Berman was not impliedly authorized to disclose the content of its communications with Mr.

7  Floyd. In my opinion, doing so would have violated RPC 1.6(a).

8      49.      In support of the Motion to Amend, Hagens Berman also stated the following to the

9  court and defendants:

10          a.  "Mr. Floyd has been a responsive class representative up until this lapse in

11  communication, and class counsel wish to give him every opportunity to continue as a class

12  representative should he reengage in time to meet his discovery obligations. There may be

13  legitimate reasons for his recent non-responsiveness (*e.g.*, health issues or other incapacitating

14  events). Nevertheless, class counsel have an overriding duty to the proposed class and this is the

15  appropriate juncture to add additional class representatives who can represent the class and

16  progress this action should Mr. Floyd withdraw." Dkt. 80 at 5

17          b.  "Mr. Floyd has never affirmatively withdrawn as a class representative and,

18  given his prior engagement on the case, class counsel is reluctant to interpret his silence as evincing

19  an intent to withdraw. Given the passage of time since Mr. Floyd last communicated, it is possible

20  that he has experienced some type of personal emergency." Dkt. 80 at 8.

21          c.  The information regarding Mr. Floyd's lapse in communication is subject to

22  RPC 1.6(a), as set out above. However, the other statements in paragraph 51 are not within the

23  ambit of RPC 1.6(a) because they are not "information relating to the representation." Instead,

24  those statements describe potential causes of Mr. Floyd's silence. Said statements are consistent

25  with Hagens Berman's contemporaneous communications with Mr. Floyd, which I have reviewed,

26  including but not limiting to the email on February 26, 2024, March 1, 2024, and May 17, 2024.

Page 23      EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

50.  In support of the Stipulated Motion and [Proposed] Order Regarding Steven Floyd's Deadline to Respond to Interrogatories and Requests for Production ("Stipulated Motion to Extend Deadlines"), Hagens Berman also stated the following to the court and defendants regarding Mr. Floyd:

a.  "Following entry of the Court's Order, Mr. Floyd made contact with Plaintiffs' counsel, and Plaintiffs' counsel is attempting to coordinate with Mr. Floyd to comply with the Court's order." Dkt. 134 at 2.  That is the lone representation regarding Mr. Floyd in the stipulated motion.

51.  I have reviewed the emails referenced in the Privilege Log.  Mr. Floyd successfully reconnected with Hagens Berman on August 21, 2024 via phone. *See* Privilege Log at 5.  Between August 21 and August 27, the firm and Mr. Floyd communicated via phone, email, and text. *Id*. at 5–6. The written communications on those dates make clear that Mr. Floyd was engaged with the case and intended to provide discovery responses.  On August 28, Mr. Floyd sent an email and a text to Hagens Berman that were both adversarial and a non sequitur in the context of recent communications.  Later that same day, Hagens Berman called Mr. Floyd, but Mr. Floyd did not answer.  Thereafter, Hagens Berman continued to communicate with Mr. Floyd about the status of the Litigation and provide legal advice to him.  Mr. Floyd did not respond to those communications.

a.  In my opinion, both the content of the communications with Mr. Floyd and the fact that Mr. Floyd reconnected with Hagens Berman in August 2024 were "information relating to the representation," and thus Hagens Berman was prohibited from disclosing this information under RPC 1.6(a), except as the Rules of Professional Conduct would permit or require.

b.  Hagens Berman was impliedly authorized to disclose the fact of Mr. Floyd's recent reconnection with the firm to the court and defendants in seeking a brief extension to comply with Mr. Floyd's discovery deadlines.  In light of Mr. Floyd' recent reconnection with the firm and

Page 24    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1   the impending discovery deadlines for Mr. Floyd, it became necessary to seek additional time for

2   Hagens Berman to comply with those deadlines.  A lawyer would reasonably conclude that an

3   explanation as to why the extensions were necessary was required in order to meet the good cause

4   standard in Rule 7 for extending deadlines.  For these reasons, it is my opinion that Hagens Berman

5   was impliedly authorized to disclose the fact of Mr. Floyd's reconnection with the firm.

6       52.     However, without informed consent or an applicable exception under RPC 1.6(b),

7   Hagens Berman was not permitted to reveal the content of communications with Mr. Floyd in

8   August 2024 to the court or defendants in light of the breadth of RPC 1.6(a).  *See* RPC 1.6(a).  That

9   is because a lawyer reasonably could have concluded that the content of the communications

10  would be detrimental to Mr. Floyd.  *See* Comment [21] to RPC 1.6 ("The phrase 'information

11  relating to the representation' should be interpreted broadly. The 'information' protected by this

12  Rule includes, but is not necessarily limited to, confidences and secrets. * * * 'secret' refers to

13  other information gained in the professional relationship * * * the disclosure of which would be

14  embarrassing or would be likely to be detrimental to the client.").

15      53.     Mr. Floyd August 28, 2024 written communications put Hagens Berman in another

16  difficult position vis-à-vis the court and defendants.  However, such a predicament is not one of

17  the exceptions permitting disclosure under RPC 1.6(b).  Nor does a lawyer's predicament

18  impliedly authorize the disclosure of the client's confidential and privileged communications.

19  **F.**     **Opinion:** *Hagens Berman is permitted to disclose information subject to RPC*
20  *1.6(a) in this proceeding, but only to the extent Hagens Berman believes such*
    *disclosure is reasonably necessary to respond to allegations concerning its*
21  *lawyers' conduct made in this proceeding.*

22      54.     Hagens Berman is permitted to disclose information that is subject to RPC 1.6(a)

23  in this proceeding if the circumstances meet an exception set out in RPC 1.6(b).  However, this

24  disclosure is limited to the extent that "the lawyer reasonably believes necessary to accomplish the

25  purpose."  RPC 1.6 Comment [16].

26      55.     Here, allegations have been made "concerning the lawyer's representation of the

Page 25    EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1  client[.]"  RPC 1.6(b)(5).  Thus, Hagens Berman is permitted to disclose information subject to

2  RPC 1.6(a), but only "to the extent the lawyer reasonably believes necessary * * * to respond to

3  allegations in [this] proceeding concerning the lawyer's representation of the client[.]"  *Id.*

4        56.      In determining whether a disclosure is permitted pursuant to RPC 1.6(b)(5), a

5  lawyer should analyze whether it is possible to respond to the allegations without revealing

6  information subject to RPC 1.6(a).  When it is possible to provide a sufficient response to the

7  allegations without revealing information subject to RPC 1.6(a), a lawyer may reasonably

8  conclude that disclosure is not permitted pursuant to RPC 1.6(b)(5).

9        **G.      Opinion: *Hagens Berman was not required to make further disclosures to the
10              court regarding the contents of Mr. Floyd's communications under RPC 3.3.***

11       57.      Hagens Berman was not required to make further disclosures to the court regarding

12  the content of Mr. Floyd's communications under RPC 3.3.

13       58.      RPC 3.3(a)(1) provides, "[a] lawyer shall not knowingly: make a false statement of

14  fact or law to a tribunal or fail to correct a false statement of material fact or law previously made

15  to the tribunal by the lawyer."  RPC 1.0(A)(f) defines "knowingly" as "actual knowledge of the

16  fact in question."  Comment [8] to RPC 3.3 makes clear, albeit in a different context, that a

17  reasonable belief is not equivalent to "knowledge" for purposes of the Rules of Professional

18  Conduct: "The prohibition against offering false evidence only applies if the lawyer *knows* that the

19  evidence is false. A lawyer's reasonable belief that evidence is false *does not* preclude its

20  presentation to the trier of fact." (Emphasis added.)  As a practical matter, this means that RPC 3.3

21  applies when a lawyer "knows" the statement was false at the time it was made or knew thereafter

22  of its falsity.  If a lawyer did not have "actual knowledge" of falsity, RPC 3.3 does apply.

23       59.      In the present matter, there is ample evidence that Hagens Berman did know that

24  Mr. Floyd wanted to withdraw from the Litigation or representation of Hagens Berman.  Thus,

25

26

EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1    Hagens Berman was not obligated to disclose the content of communications with Mr. Floyd to

2    the court until ordered to do so.

3              a.   Hagens Berman could not "know" based on the January 16, 2024

4    communications alone that Mr. Floyd did not want to participate in discovery in particular or the

5    Litigation in general for at least the following reasons.

6              b.   <u>First</u>, the January 16, 2024 communications were made without the

7    opportunity for Hagens Berman to counsel Mr. Floyd about the potential consequences of his

8    statements to both Mr. Floyd himself and the putative class members.  Hagens Berman is entitled,

9    and even obligated under RPC 1.4, to take reasonable steps to clarify its client's intentions and

10   advise the client of the consequences of his decision, which may not be apparent in complex class

11   action litigation.

12             c.   <u>Second</u>, the communications did not contain a clear directive about next

13   steps or words that could be understood to terminate the attorney client relationship.  Thus, the

14   scope and import of the January 16, 2024 communications was not clear.  The communications in

15   question took place in the context of communications regarding Mr. Floyd's discovery obligations.

16   In my experience as a litigator, it is relatively common for parties to seek to limit their discovery

17   obligations because discovery in litigation is often invasive.  Without additional clarification from

18   Mr. Floyd, the scope of his communications was not clear. Nor was it clear exactly what Mr. Floyd

19   meant by his communications.

20             d.   <u>Third</u>, Hagens Berman's communications with Mr. Floyd on and after

21   January 16, 2024 indicated that it did not have actual knowledge that Mr. Floyd no longer wished

22   to participate in the Litigation.  Hagens Berman's initial responses to Mr. Floyd indicated a belief

23   that Mr. Floyd was concerned about the scope of discovery.  Later communications to Mr. Floyd

24   acknowledged that his communications may have been intended to indicate that he no longer

25   wished to participate in the Litigation, and sought clarification on this point.  When Mr. Floyd next

26   communicated with the firm in August 2024, he apparently indicated a willingness to participate

        EXPERT DECLARATION OF NELLIE Q. BARNARD

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

1  in discovery and the Litigation. In this context, Hagens Berman did not have actual knowledge

2  that Mr. Floyd no longer wished to participate in the Litigation between September 2023 and

3  August 2024 when Mr. Floyd reconnected with the firm.

4          e.  <u>Fourth</u>, neither RPC 1.2(a) nor RPC 1.4(a)(2) permit a lawyer to take action

5  based on an assumption about the scope and applicability of Mr. Floyd's communications (and

6  based only upon those communications), if said action impacted Mr. Floyd's substantive legal

7  right to participate in the Litigation.

8      60.    In the context of the definition of "knowingly" under RPC 1.0A(f), Hagens Berman

9  was not required to disclose the content of communications with Mr. Floyd under RPC 3.3 because

10  the firm did not "know" that Mr. Floyd wished to discontinue his involvement in the litigation after

11  reviewing Mr. Floyd's January 16, 2024 communications. And in fact, in light of Hagens Berman's

12  obligations under RPC 1.6, the firm could *not* disclose anything beyond what is contained in the

13  paragraphs above absent the informed consent of Mr. Floyd or an applicable exception under RPC

14  1.6(b) (as discussed above).

15      61.    Hagens Berman was also not required to make further disclosures to the Court in

16  the Stipulated Motion to Extend Deadlines because the limited statement regarding Mr. Floyd was

17  accurate. Dkt. 134. Hagens Berman stated as follows:

18          a.  "Following entry of the Court's Order, Mr. Floyd made contact with

19  Plaintiffs' counsel, and Plaintiffs' counsel is attempting to coordinate with Mr. Floyd to comply

20  with the Court's order." Dkt. 134 at 2.

21          b.  The written communications between Hagens Berman and Mr. Floyd and

22  Privilege Log from August 21 to August 28, 2024 make clear that the firm was attempting to

23  coordinate with Mr. Floyd regarding discovery. The firm continued to attempt to coordinate

24  discovery with Mr. Floyd after August 28, 2024, in for instance, an August 30, 2024 letter to Mr.

25  Floyd. In my opinion, Hagens Berman's statement was accurate. Accordingly, RPC 3.3(a)(1),

26  which prohibits a knowing "false statement of fact or law to a tribunal," is not implicated. Nor are

Page 28      EXPERT DECLARATION OF NELLIE Q. BARNARD      SCHWABE, WILLIAMSON & WYATT, P.C.
-                                                        Attorneys at Law
                                                    1211 SW 5th Avenue, Suite 1900
                                                         Portland, OR 97204
                                                     Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1    RPC 3.3(a)(2)–(4) implicated because further disclosure was not necessary to avoid assisting with

2    a crime or fraud, legal authority was not conveyed, and the evidence was not false.  The fact that

3    Mr. Floyd sent adversarial communications on August 28, 2024 did not change the fact that Hagens

4    Berman was attempting to coordinate discovery with Mr. Floyd.

5        **H.      Opinion: *Hagens Berman did not violate RPC 8.4(c) in documents it authored***
6        ***that are referenced in paragraph 15 of this declaration.***

7        62.     Hagens Berman did not "engage in conduct involving dishonesty, fraud, deceit or

8    misrepresentation" in violation of RPC 8.4(c) in documents authored by Hagens Berman that are

9    referenced paragraph 15 of this declaration.

10       63.     Under RPC 8.4(c), "[i]t is professional misconduct for a lawyer to engage in

11   conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The Washington Supreme

12   Court has explained that determining whether a lawyer violated RPC 8.4(c) simply involves the

13   question  "'whether the attorney lied.'" *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d

14   196, 213, 125 P.3d 954, 961 (2006) (quoting *In re Disciplinary Proceeding Against Dann,* 136

15   Wn.2d 67, 77, 960 P.2d 416 (1998)).

16       64.     I have reviewed the disclosures and statements made by Hagens Berman in the

17   documents referenced in paragraph 15 above.  I have compared those communications to the

18   written communications between Mr. Floyd and Hagens Berman that are referenced on the

19   Privilege Log submitted to the court.  In my opinion, Hagens Berman did not misrepresent its

20   communications with Mr. Floyd in the documents referenced in paragraph 15 authored by Hagens

21   Berman.  Nor was Hagens Berman obligated to disclose more information to the court or

22   defendants in order to avoid violation of RPC 8.4(c).

23   //

24   //

25   //

26   //

Page 29    EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

139608\272685\NQB\49034790.3

1  //

2  **I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE**

3  **BEST OF MY KNOWLEDGE AND BELIEF, AND I UNDERSTAND THAT THEY ARE**

4  **MADE FOR USE AS EVIDENCE IN COURT AND ARE SUBJECT TO PENALTY FOR**

5  **PERJURY.**

6      Dated this 27th day of October, 2025.

7

8  By: _Nellie Q. Barnard_
    ───────────────────────────
    B3AFE5914DB648F...

9      Nellie Q. Barnard, WSBA No. 50587
       Email: nbarnard@schwabe.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 30    EXPERT DECLARATION OF NELLIE Q. BARNARD
-

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981