# EXHIBIT 1

| | |
|---|---|
| **From:** | Steven Floyd |
| **To:** | Meredith Simons |
| **Subject:** | Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) |
| **Date:** | Tuesday, January 16, 2024 11:27:34 AM |



I have since reconsidered, and for the small little bit amount of money that I may or may not get from a lawsuit it's not worth exposing all my credit card information and login credentials.
Steven Floyd

> On Jan 16, 2024, at 1:15 PM, Meredith Simons <merediths@hbsslaw.com> wrote:

Hi Mr. Floyd,

Thank you again for taking the time to talk with me last week. As we discussed, we're going to start collecting some of the information we'll need from you for discovery in this case.

We'll start with the credit cards and bank statements, which you said you'd prefer for us to pull. Can you please send me a list of your credit cards, debit cards, and bank accounts, along with the login information we'll need to access those accounts? Like I said last week, you're free to create a temporary password for us to use, but if you do that, please don't change your password back to the original password until I've confirmed that we've pulled all of your statements.

Let me know if you have any questions.

Thanks,
Meredith

--
**Meredith Simons** | **Associate**

Hagens Berman Logo

Hagens Berman Sobol Shapiro LLP
Seattle, WA
(206) 268-9305
merediths@hbsslaw.com

News | Cases | Twitter | Facebook

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not

PLAINTIFFS_000013

disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

PLAINTIFFS_000014

# EXHIBIT 2

| | |
|---|---|
| **From:** | Steven Floyd |
| **To:** | Meredith Simons |
| **Subject:** | Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication) |
| **Date:** | Tuesday, January 16, 2024 12:25:56 PM |



I pass!
Steven Floyd

On Jan 16, 2024, at 2:56 PM, Meredith Simons <merediths@hbsslaw.com> wrote:

Hi Mr. Floyd,

I completely understand that reaction, and there are several things we can do to protect your credit card information (and that wouldn't require us to access your login credentials). I'll call you in a few minutes to explain what I mean, but I also wanted to send you the attached document, which is the protective order in this case. This order was entered by the court and controls how the parties can use confidential information (which would include your personal information). I can walk you through it on the phone.

Let me know if there's a good time for me to call this afternoon, otherwise I'll try you in about 30 minutes.

Thanks,
Meredith

--
**Meredith Simons** | Hagens Berman Sobol Shapiro LLP | (206) 268-9305

**From:** Steven Floyd <redsoxnrams@msn.com>
**Sent:** Tuesday, January 16, 2024 11:27 AM
**To:** Meredith Simons <merediths@hbsslaw.com>
**Subject:** Re: Floyd v. Apple/Amazon (Attorney-Client Privileged Communication)

I have since reconsidered, and for the small little bit amount of money that I may or may not get from a lawsuit it's not worth exposing all my credit card information and login credentials.
Steven Floyd

On Jan 16, 2024, at 1:15 PM, Meredith Simons

PLAINTIFFS_000011

<mterediths@hbsslaw.com> wrote:

Hi Mr. Floyd,

Thank you again for taking the time to talk with me last week. As we discussed, we're going to start collecting some of the information we'll need from you for discovery in this case.

We'll start with the credit cards and bank statements, which you said you'd prefer for us to pull. Can you please send me a list of your credit cards, debit cards, and bank accounts, along with the login information we'll need to access those accounts? Like I said last week, you're free to create a temporary password for us to use, but if you do that, please don't change your password back to the original password until I've confirmed that we've pulled all of your statements.

Let me know if you have any questions.

Thanks,
Meredith

--
**Meredith Simons** | **Associate**

Hagens Berman Sobol Shapiro LLP
Seattle, WA
(206) 268-9305
merediths@hbsslaw.com

News | Cases | Twitter | Facebook

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

<2023-12-15 [78] Protective Order.pdf>

PLAINTIFFS_000012

# EXHIBIT 3



PLAINTIFFS_000018

11

# EXHIBIT 4



Steven >

Thu, Jan 11 at 9:51 AM

Hi Mr. Floyd, it's Meredith Simons with Hagens Berman. I hope you enjoyed the holidays and 2024 is off to a good start.

I have a couple of questions for you about discovery in the Amazon/Apple case. Is there a time today or tomorrow when it would be convenient for us to talk? It should just take 5-10 minutes. Please let me know what would work for you. Thanks.

I'm available now if you'd like to call

Thu, Feb 1 at 12:34 PM

Hi Mr. Floyd, this is Meredith Simons from Hagens Berman. Just following up on the Apple/Amazon case. I want to reiterate that there are ways of getting the information we need from you that don't require you to share your financial login information with us, and we may be able to avoid producing financial documents completely.

PLAINTIFFS_000019



SF

Steven >



following up on the Apple/Amazon case. I want to reiterate that there are ways of getting the information we need from you that don't require you to share your financial login information with us, and we may be able to avoid producing financial documents completely. I'd like to talk about our options, so please give me a call when you get a chance. Thanks.

Wed, May 8 at 1:48 PM

Hi Mr. Floyd, good news—we have found named plaintiffs who are willing to replace you in the Apple/Amazon case, and the court approved adding them to the case earlier this week. It seems like you're not interested in being a class rep anymore, which I totally understand, and we'd like to formally remove you from the case, which would mean you're not a named plaintiff and you won't be hearing from us anymore. Please just respond "yes" if we have your permission to remove you as a named plaintiff.

Delivered

PLAINTIFFS_000020

# EXHIBIT 5

| | |
|---|---|
| **From:** | Ben Harrington |
| **To:** | Redsoxnrams@msn.com |
| **Cc:** | Ben Siegel; Meredith Simons |
| **Subject:** | Amazon/Apple litigation - privileged and confidential |
| **Date:** | Monday, February 26, 2024 5:11:58 PM |

Steven:  We have been unable to reach you for several weeks now.  First off, I want to reiterate that we hope everything is ok.  If there are challenges in your personal or professional life that have prevented you from engaging on this matter, please let us know.  We want to give you every opportunity to continue serving as a class representative, particularly given your enthusiasm for the case up until this lapse in communication.  Please call me at 510.725.3034.

We also want to alert you that, as a precaution, we intend to file a motion with the Court this week requesting leave to add two additional class representatives.  We are not asking that you be removed as a class representative at this time, because you have not withdrawn, and may still wish to participate in the case as a named plaintiff.  We understand that the defendants intend to oppose the motion to amend.

If you have any questions about this, please let us know.  If we do not hear from you, we will assume that you consent, and have no objection, to us filing the motion to add additional class representatives.

And as always, we are standing by to speak at your convenience.  We do hope to regain contact soon to discuss next steps.  If you want to withdraw as a class representative, please let us know that affirmatively.

Best,

Ben

--
**Ben Harrington | Partner**

Hagens Berman Logo

Hagens Berman Sobol Shapiro LLP
Berkeley, CA
(510) 725-3034
benh@hbsslaw.com

News  |  Cases  |  Twitter  |  Facebook

PLAINTIFFS_000021

# EXHIBIT 6

Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN FLOYD,

        Plaintiff,

        v.

AMAZON.COM, INC., a Delaware corporation, and APPLE INC., a California corporation,

        Defendants.

No. 2:22-cv-01599-KKE

**DECLARATION OF MARK J. FUCILE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT AND FOR RELIEF THEREFROM PURSUANT TO RULES 59(E) & 60(B)**

I, Mark J. Fucile, declare as follows based on personal knowledge:

## I. <u>Background</u>

1.     I have been retained by Sidley Austin LLP and O'Melveny & Myers LLP as an expert on legal ethics and related issues under the applicable standard of care in the above-referenced litigation (the "Case"). Specifically, I have been asked to respond to the declarations of Kevin Bank, Nellie Q. Barnard, and Brooks Holland (collectively,

EXPERT DECLARATION OF MARK J. FUCILE-1
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

"Hagens' Experts"), which have been submitted in support of Plaintiffs' motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) to alter or amend the Court's September 29, 2025, Order dismissing this action (the "Dismissal Order").

2.    I am making this Declaration in the form of a report under Federal Rule of Civil Procedure 26(a)(2)(B).  I have attached the following:

      a.  <u>Exhibit 1</u>:  My current professional biography.

      b.  <u>Exhibit 2</u>:  A current list of articles and book chapters I have written on legal ethics and related subjects.[1]

      c.  <u>Exhibit 3</u>:  A current list of public presentations I have given on legal ethics and related topics.

      d.  <u>Exhibit 4</u>:  A current list of matters in which I have offered expert testimony on legal ethics and related subjects.

3.    I am licensed to practice law in Washington, Oregon, Idaho, Alaska, and the District of Columbia.  I am also admitted to practice before the federal district courts for the Western and Eastern Districts of Washington, Oregon, Idaho, Alaska, and the District of Columbia, the Ninth, Federal and District of Columbia Circuits and the United States Supreme Court.

4.    I am a graduate of the University of California, Los Angeles School of Law and Lewis & Clark College.  After graduating from law school at UCLA, I was on active duty with the United States Marine Corps from 1982 through 1985, where I served as a prosecutor and defense counsel in military courts-martial and as a special assistant United States attorney in addition to a variety of other military duties.  From 1985 to 2005, I was employed with Stoel Rives LLP, where I eventually became a partner in its

---

[1] Reprints of most of the articles listed are available on my firm's web site at www.frllp.com.

EXPERT DECLARATION OF MARK J. FUCILE-2
Case No. 2:22-cv-01599-KKE

litigation department and my practice came to focus primarily on legal ethics and product liability defense.  I was also one of Stoel Rives' ethics partners and, in that role, advised its lawyers throughout the Northwest on legal ethics, the attorney-client privilege, and law firm risk management.  In 2005, I co-founded my present firm, Fucile & Reising LLP, where I continue to handle primarily legal ethics and product liability defense.  I also taught legal ethics for over a decade as an adjunct for the University of Oregon School of Law.

5.    A substantial part of my practice since the mid-1990s involves legal ethics. I regularly advise lawyers, law firms, and corporate and governmental legal departments throughout the Northwest on professional responsibility and risk management.  I have also defended lawyers before regulatory agencies and handled law firm related litigation.  I have been retained and have testified (in person or by video, or by declaration or affidavit) as an expert on legal ethics in Washington, Oregon, Idaho and Alaska.  I am a current member and chair of the Washington State Bar Association Committee on Professional Ethics and am a past chair of its predecessor, the Rules of Professional Conduct Committee.  I have also served on the Oregon State Bar Legal Ethics Committee and am a current member of the Idaho State Bar Professionalism and Ethics Section.  I was also a member of appointed special committees in Washington and Oregon that revised the Rules of Professional Conduct used in each state.  I write the Ethics & the Law column for the WSBA *Bar News* (formerly the *NWLawyer*) and the Ethics Focus column for the Multnomah Bar's (Portland) *Multnomah Lawyer* and am a regular contributor on legal ethics and law firm risk management for the WSBA *NWSidebar*, the Oregon State Bar *Bulletin,* and the Idaho State Bar *Advocate*.  Over 250 of my articles and book chapters on legal ethics, law firm risk management and the attorney-client privilege have been published.  I am also the editor-in-chief and a

EXPERT DECLARATION OF MARK J. FUCILE-3
Case No. 2:22-cv-01599-KKE

contributing author for the WSBA *Legal Ethics Deskbook* and was a principal editor and a contributing author for the WSBA *Law of Lawyering in Washington* and the Oregon State Bar *Ethical Oregon Lawyer*.  I have presented CLE programs on legal ethics and related topics for, among others, the Washington State Bar Association, the King County Bar Association, the University of Washington School of Law, Gonzaga University School of Law, the Washington Defense Trial Lawyers, the Washington State Trial Lawyers Association, the Oregon State Bar, the Multnomah Bar, the Oregon Law Institute, the Oregon Association of Defense Counsel, the Oregon Trial Lawyers Association, the University of Oregon School of Law, the Idaho State Bar, the American Bar Association, and the American Law Institute.  For many years, I was co-chair of the WSBA's annual Law of Lawyering Conference, which was a seminar focusing on legal ethics, legal malpractice litigation, and associated topics.  I am a member of two principal national organizations in the area of legal ethics, the ABA Center for Professional Responsibility and the Association of Professional Responsibility Lawyers.

6. My work regularly includes advising lawyers and law firms on duties to courts and related issues—including lawyers appearing in Washington state and federal court proceedings.  I have also written on the duty of candor and related issues for the Washington State Bar Association.

7. I am being compensated at the hourly rate of $600.

## II. Material Reviewed and Assumptions

8. Counsel provided and I reviewed the material listed in the accompanying Exhibit 5.  I also reviewed the public docket for this Case in PACER.

9. This Declaration is being offered in the context of Jolene Furdek and Jonathan Ryan's Motion to Alter or Amend Judgment and for Relief Therefrom Pursuant to Rules 59(e) & 60(b) (the "Motion").  To the extent that the Court's determination of the

EXPERT DECLARATION OF MARK J. FUCILE-4
Case No. 2:22-cv-01599-KKE

Motion may touch on the conduct of Ms. Furdek and Mr. Ryan's counsel, Hagens Berman Sobel Shapiro LLP ("Hagens"), I understand that Hagens' conduct took place within this Case. As such and in keeping with LCR 83.3(a)(2), I have assumed that Washington law and Washington practice norms apply to Hagens' conduct. From my review of the record, I also understand that this Case is a proposed class action involving a single claim under section 1 of the Sherman Act—and it is not one for legal malpractice, lawyer breach of fiduciary duty, or lawyer discipline. (Dkt., entire.)[2] Further, from reviewing the record, I am aware that the Court has previously considered and imposed sanctions on Hagens in this Case for Hagens' failure "to candidly and/or accurately describe" Steven Floyd's intentions to cease participating in the action to avoid discovery obligations. (Order Granting In Part and Denying In Part Defendants' Motion for Discovery Sanctions (Dkt. 203) at 1:21-2:3.) (the "Sanctions Order.") The Court awarded over $200,000 in attorney's fees and costs for Hagens' misconduct. (Order Granting Unopposed Motion for Attorney's Fees and Costs (Dkt. 224) at 1:21-22 ("Defendants filed a motion for fees and expenses, which Floyd's counsel does not oppose.").) Hagens did not challenge the imposition of sanctions against it. (Dkt., entire.)

10. I understand that the Court made factual findings concerning the conduct of Plaintiff Steven Floyd ("Mr. Floyd") in its Order Granting Motion for Reconsideration and Dismissing Case (Dkt. 250) ("Dismissal Order") and in its Sanctions Order (Dkt. 203). I understand from the Court's Orders that Mr. Floyd's conduct was evaluated as a litigant only, and there was no contention in the record suggesting that Mr. Floyd is a

---

[2] *See, e.g., Angelo v. Kindinger*, 2022 WL 1008314 at *5-*11 (Wash. App. Apr. 4, 2022) (unpublished) (discussing claims for legal malpractice and fee disgorgement for conflict arising from lawyer exposing client to risk of sanctions by lawyer failing to disclose material information to arbitrator); *In re Osborne*, 187 Wash. 2d 188, 201 (2016) (lawyer disbarred for, in relevant part, false statements to court).

EXPERT DECLARATION OF MARK J. FUCILE-5
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

lawyer or would have any particular knowledge of discovery, class actions, or the rules of professional responsibility. (*Id*.; *see, e.g.,* Plaintiffs' Second Amended Complaint (Dkt. 99), ¶¶ 21-22 (describing Mr. Floyd).) Because of this, to the extent that the Court was evaluating Mr. Floyd's conduct or actions in the Court's Dismissal Order, it was doing so under the substantive and procedural law governing purported class actions rather than the standards governing lawyers appearing in this Court. In this Declaration, therefore, I have treated the Court's findings of fact relating *to Mr. Floyd's conduct* as settled law of the case under Federal Rule of Civil Procedure 52. Further, the present Motion and associated supporting material offered by Hagens do not contain any newly available evidence from Mr. Floyd that could not have been brought to the Court's attention before it issued the Sanctions (Dkt. 203) and Dismissal (Dkt. 250) Orders.

11. Based on my review of the above material, as well as the communications between Hagens and Mr. Floyd, I have noted the following facts relevant to my opinion:

a. **Mr. Floyd**. As of January 16, 2024, Mr. Floyd was the only named plaintiff in this Case. (Dkt. 37 (2.27.2023 Amended Complaint); Dkt. 99 (5.7.2024 Second Amended Complaint adding two additional plaintiffs).) This Case was never certified as a class action, nor was Hagens appointed as class counsel on an interim or any other basis. (Dkt., entire.)[3]

---

[3] *See* ABA Formal Op. 07-445 (2007) at 3 ("Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established."); Restatement (Third) of the Law Governing Lawyers § 99, cmt. I (2000) ("[P]rior to certification, only those class members with whom the lawyer maintains a personal attorney-client relationship are clients."); *see also* Washington RPC 1.7, cmt. 25 ("When a lawyer represents or seeks to represent a class of plaintiffs . . . in a class action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer[.]"); *c.f.* Fed. R. Civ. P. 23(e) ("Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class … may be settled, voluntarily dismissed, or compromised only with the court's approval.").

EXPERT DECLARATION OF MARK J. FUCILE-6
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

b.   **Mr. Floyd Did Not Communicate with Hagens from January 17, 2024 until August 2024**.  The Court has found as a matter of fact that on January 16, 2024, Mr. Floyd "affirmatively disavowed his prior commitment to the case because he did not want to participate in discovery." (Sanctions Order (Dkt. 203) at 6:18-19.)  On that date, Mr. Floyd told Hagens that he had "reconsidered" and deemed it "not worth exposing all [his] credit card information and log-in credentials" "for the small little bit amount of money that [he] may or may not get from a lawsuit." (PLAINTIFFS_000011.)  Later that day, after Hagens asked him to reconsider, Mr. Floyd wrote, "I pass!"  (*Id.*) Between January 17 and August 2024, Mr. Floyd did not communicate with Hagens.  (Sanctions Order (Dkt. 203) at 6-7.)  On August 16 and 19, 2024, Hagens wrote to Mr. Floyd informing him that the Court had entered an order to compel discovery (Dkt. 132) from him.  (PLAINTIFFS_000029-39.)  The Court noted that in response, Mr. Floyd "return[ed] to the case, albeit very briefly[.]" (Sanctions Order (Dkt. 203) at 7:4-5.) Following that brief interlude, the Court found that Mr. "Floyd's August 28, 2024 email to his counsel was pointedly hostile, and clearly indicated that he would not willingly participate in the case after all." (*Id*. at 7:6-8.)  The email in question informed Hagens that "[a]ny and all correspondence ha[d] been turned over to the city police and the FBI!" (PLAINTIFFS_000051.)  Floyd then followed up with a text message: "The police and or the FBI should be contacting you soon!" (PLAINTIFFS_000046.)  "Yet Floyd's counsel told the Court the next day that Floyd simply needed more time to comply with discovery and secured an extension of the discovery deadline on that basis." (Sanctions Order (Dkt. 203) at 7:8-10.)

c.   **Hagens' Motion to Amend**.  On February 29, 2024, Hagens filed a Motion to Amend to add two additional plaintiffs.  (Dkt. 80.)  In the first paragraph of the Motion to Amend, Hagens wrote:

EXPERT DECLARATION OF MARK J. FUCILE-7
Case No. 2:22-cv-01599-KKE

An unfortunate but not uncommon development in this case necessitates this request for leave to file a Second Amended Complaint.  The class representative in this matter, Steven Floyd, has recently ceased responding to inquiries from counsel for the proposed class ("class counsel"). … **There may be legitimate reasons for his recent non-responsiveness (e.g., health issues or other incapacitating events**).

(*Id*. at 5:2-9; emphasis added (PACER pagination).)

Hagens reiterated in the body of the Motion to Amend:

As Defendants have been advised, class counsel last communicated with Mr. Floyd on January 16, 2024.  Since that time, class counsel has made numerous attempts to contact Mr. Floyd, but has not received a response . . . Mr. Floyd has never affirmatively withdrawn as a class representative and, given his prior engagement on the case, class counsel is reluctant to interpret his silence as evincing an intent to withdraw.  Given the passage of time since Mr. Floyd last communicated, **it is possible that he has experienced some type of personal emergency.**

(*Id*. at 8:3-9; emphasis added.[4])

d.    **Mr. Floyd Did Not Suggest He Was Sick**.  I have seen no evidence in which Mr. Floyd suggested to Hagens on or after January 16, 2024, that he was sick, experiencing a health issue, otherwise incapacitated, or experiencing a "personal emergency."  (Motion (Dkt. 256), entire.)

e.    **Hagens at Oral Argument**.  The Court heard oral argument on the Motion to Amend on April 30, 2024.  (Dkt. 96.)  During the hearing, Hagens stated:

As you noted, this is a motion to amend.  The standards for amendment are extraordinarily liberal and the circumstances here are not unique, that **we lost track** of a class representative.  Courts, in these circumstances, have freely allowed amendment, certainly at this early stage.

---

[4] The citation in the passage quoted is to Hagens' declaration (Hagens Declaration) supporting the Motion to Amend.  (Dkt. 81.)  The Hagens Declaration included correspondence with defense counsel in which Hagens declined to provide further details on asserted grounds of privilege: "We provide this information for purposes of transparency, but defendants are not entitled to further probe our communications with clients.  Our motion to amend will include all details the court needs to determine whether amendment is appropriate[.]" (Dkt. 81-1 (2.23.2024 Email from Hagens to defense counsel).)  As noted above, there is no evidence that Mr. Floyd ever said he was ill, otherwise incapacitated, or experiencing a "personal emergency" as Hagens suggested in its Motion to Amend.  (Dkt. 80 at 5-7:9, 8:3-9 (PACER pagination).)

EXPERT DECLARATION OF MARK J. FUCILE-8
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

(April 30, 2024 Hearing Tr. at 4:20-24; emphasis added.)

f.    **The Court's Order**.  The Court issued its order granting the Motion to Amend on May 6, 2024.  (Dkt. 98.)  In allowing the amendment, the Court noted that it had accepted Hagens' representations concerning Mr. Floyd:

> The good cause standard has been easily met here.  Class counsel diligently moved to substitute the new representation after Floyd unexpectedly stopped communicating with them.
> (*Id*. at 6:23-24.)

Following the Court's order, I saw no evidence that Hagens took prompt steps to correct the impression that Hagens had suggested to the Court that Mr. Floyd was sick, experiencing a health issue, incapacitated, or had suffered a "personal emergency;" that Mr. Floyd had unexpectedly stopped communicating with them for unknown reasons; or that Hagens had simply "lost track" of Mr. Floyd.  (Sanctions Order (Dkt. 203), entire; Dismissal Order (Dkt. 250), entire.)

### III.  Summary of Opinions

12.a.  **Preface**.  The finding of facts and application of the Washington Rules of Professional Conduct ("RPC") to facts to draw legal conclusions about whether counsel violated the RPC is generally a role for the court, not for experts.  *See Eriks v. Denver*, 118 Wash. 2d 451, 457-58 (1992) ("[W]e hold that the question of whether an attorney's conduct violates the relevant rules of professional conduct is a question of law.").  But, because Hagens' Experts have offered opinions on these issues, I have been asked to respond to their analysis.  My expert opinions are responsive in nature, and do not in any way suggest that (1) it is my, or any expert's, role to find facts,[5] (2) an expert

---

[5] The Hagens Experts conceded in their depositions that the Court (not the Hagens Experts) is the fact-finder in this proceeding and that the Court has already entered findings of fact in connection with both the Sanctions Order and the Dismissal Order.  (*See, e.g.,* Bank Dep. Tr. 17:3-5 ("Q.  And you're not purporting to act as a finder of fact in this case?  A. No."); Barnard Dep. Tr. 139:11-13 ("Q. You're not

(continued…)

EXPERT DECLARATION OF MARK J. FUCILE-9
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

displaces the role of the judge in deciding as a matter of law whether a lawyer violated the RPC,[6] or (3) whether Hagens violated the RPC bears on the Court's decision to dismiss this Case.[7] Because the Hagens Experts largely mirrored one another, I will address them collectively rather than individually except as otherwise noted.

b.    **Summary**.  Based on my review of the materials identified in Exhibit 5 and the declarations of Hagens' Experts, my opinions in summary form are as follows:

(1)    ***Duty to abide by client decisions***.  Under RPC 1.2(a), Hagens had a duty to abide by Mr. Floyd's decision to withdraw from the litigation in which he was the sole named plaintiff.  This was Mr. Floyd's choice, not Hagens'.  As the trier of fact, the Court has found that Mr. Floyd on January 16, 2024, informed Hagens that he wanted to withdraw entirely from the litigation he commenced because he did not want to participate in discovery and he confirmed that intention even after Hagens attempted to persuade him that the discovery process could be less onerous than he was assuming. Given Mr. Floyd's instruction to Hagens that he no longer wanted to participate in the litigation, Hagens had an affirmative duty under RPC 1.2(a) to remove him from the Case.  By failing to carry out Mr. Floyd's expressed wishes in a timely fashion, Hagens violated its obligations under RPC 1.2(a).

---

purporting to be the fact finder in this case, correct?  A. I am not."); Holland Dep. Tr. 56:23-24 ("A.  My declaration never characterizes the District Court's judgement as unreasonable[.]").

[6] The Hagens Experts offered no new evidence *regarding Mr. Floyd*.  (Bank Dec. (Dkt. 258), entire; Barnard Dec. (Dkt. 259); Holland Dec. (Dkt. 260, entire.); *see, e.g.,* Bank Dep. 18:20-22 ("Q. So you're not opining about Mr. Floyd's subjective intent?  A. No.").

[7] The Hagens Experts also conceded in their depositions that they are not offering opinions on either the procedural or substantive law applicable to class actions. (*See, e.g.,* Bank Dep. Tr. 16:15-17 ("Q. So you're not offering an opinion on class action litigation?  No."); Barnard Dep. Tr. 90:4-5 ("Q. [A]re you a class action expert?  A. I'm not a class action expert[.]"); Holland Dep. Tr. 20:17-21 ("Q. And you're not here to provide expert opinion on whether the court has jurisdiction under Article 3, correct?  A. In a class action matter? Q. Yes? A. Correct.  No, I'm not here to offer that opinion.").

EXPERT DECLARATION OF MARK J. FUCILE-10
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

While it is not the role of experts to determine facts, because Hagens' Experts have offered alternative interpretations of Mr. Floyd's January 16, 2024 communications, I address that issue too: based on my experience advising lawyers on issues of professional responsibility, legal ethics, and matters arising from the attorney-client relationship, it is my professional opinion that on January 16, 2024, Mr. Floyd communicated to Hagens his desire to withdraw entirely from the litigation and the Court's reading of Mr. Floyd's January 16, 2024 communications was justified and reasonable.

(2)    ***Duty to act with client authority.***  RPC 1.2(f) prohibits a lawyer from continuing to act for a client if the lawyer knows or reasonably should know that the lawyer is acting without the authority of that person.  If Hagens did not understand Mr. Floyd's instructions, it had an affirmative duty under RPC 1.2(f) to promptly confirm its continuing authority to act for Mr. Floyd.  When it could not confirm its authority, Hagens had the affirmative responsibility under RPC 1.16(a)(1) to withdraw from representing Mr. Floyd.

(3)    ***Duty to act with reasonable diligence***. RPC 1.3 requires that a lawyer act with "reasonable diligence and promptness in representing a client."  If Hagens did not understand Mr. Floyd's direction on January 16, 2024, it was required to seek clarification and confirm, without delay, that it had the requisite authority to act on Mr. Floyd's behalf.  Hagens failed to do so and thus violated its obligations under RPC 1.3.

(4)    ***Duty of candor.***  RPC 3.3(a)(1) imposes a clear duty of candor on the part of all counsel to the Court.[8]  Hagens had an unqualified duty to not knowingly make a false statement of fact or law.  Hagens' representations to the Court that it merely "lost track" of Mr. Floyd or suggestions that he may have been sick, experiencing a health

---

[8] A corresponding duty to opposing counsel is imposed by RPC 4.1 that addresses truthfulness in statements to third persons.

EXPERT DECLARATION OF MARK J. FUCILE-11
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

issue, otherwise incapacitated, or had suffered a "personal emergency" violated its duty of candor under RPC 3.3(a)(1).

(5)    ***Duty to correct***. The duty of candor also includes an unqualified duty under RPC 3.3(a)(1) to correct prior misstatements of material fact.  By suggesting that Mr. Floyd had "been a responsive class representative up until [his] lapse in communication" and that he may have experience "some type of personal emergency," Hagens made misstatements of material fact to the Court.  Hagens failure to correct its representations violated its duty to correct under RPC 3.3(a)(1).

### IV.  Analysis

### A.  The Duty to Abide by a Client's Decisions.

13.a.   RPC 1.2(a) provides as follows:

> [A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by RPC 1.4, shall consult with the client as to the means by which they are to be pursued.  A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.  A lawyer shall abide by a client's decision whether to settle a matter.

RPC 1.2(a) reflects the unremarkable notion in the litigation context that it's the client's case—not the lawyer's.  Therefore, RPC 1.2(a) recognizes that the client—not the lawyer—controls the decision whether or not to proceed with the litigation.  Comment 1 to RPC 1.2[9] puts it this way:

> Paragraph (a) confers upon the client the ultimate authority to determine the purposes to be served by legal representation . . . The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client.

---

[9] Comments in Washington are "official" in that, like the text of the rule concerned, the accompanying comments are also adopted by order of the Washington Supreme Court and provide the Washington Supreme Court's guidance on the application of the text of the rule involved.

EXPERT DECLARATION OF MARK J. FUCILE-12
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

b.    In the present context, therefore, it was Mr. Floyd's prerogative to decide whether or not to proceed with his participation in the Case—not Hagens'.  Mr. Floyd's January 16, 2024, communications to Hagens read:

> I have since reconsidered, and for the small little bit amount of money that I may or may not get from a lawsuit it's not worth exposing all my credit card information and log-in credentials.  (PLAINTIFFS_000011.)
>
> . . . .
>
> I pass! (*Id.*)

c.    The Court has already found as a matter of fact that in his January 16, 2024 communications, Mr. Floyd informed his counsel that he did not want to proceed with the litigation:

> Based on the Court's recent *in camera* review of Floyd's communications with his counsel, the Court finds that counsel misrepresented to Defendants and the Court their January 16 communications with Floyd.  On this date, Floyd informed his counsel that he no longer wanted to participate in this litigation because he did not wish to participate in discovery, and reiterated that intention even after counsel attempted to persuade him that the discovery process could be less onerous than he was assuming.  (Sanctions Order (Dkt. 203) at 3:8-13.)

This is the law of the case.   (Dismissal Order (Dkt. 250) at 17.)

d.    Under RPC 1.2(a), Mr. Floyd was the master of his claim.  It was his choice—not Hagens'—on whether to continue or not.  Because Mr. Floyd informed Hagens that he no longer wished to proceed with the litigation, Hagens had a duty, in my professional opinion, under RPC 1.2(a) to carry out that desire and remove him from the Case.  Hagens' failure to do that in a timely manner violated its obligations under RPC 1.2(a).  Even if Hagens did not understand Mr. Floyd's instruction, then, as I will address in the next section, Hagens had a duty under RPC 1.2(f) to promptly confirm its continuing authority to act for Mr. Floyd. It did not do so.

e.    Hagens' Experts have offered alternative interpretations of Mr. Floyd's communications in an effort to justify Hagens failure to act on the communications as

EXPERT DECLARATION OF MARK J. FUCILE-13
Case No. 2:22-cv-01599-KKE

quickly as they could have. (*See, e.g.,* Barnard Dec. (Dkt. 259) at 10:4-6.) The role of experts is not to re-litigate facts that the Court has already found. Fed. R. Civ. P. 52(a). The Court is the trier of fact, not Hagens Experts. *Id*. Nonetheless, because they have offered opinions on interpretations of Mr. Floyd's intention, it is my professional opinion based on my experience as an expert on legal ethics and lawyers' professional responsibility and advising lawyers in matters arising from the attorney-client relationship, that on January 16, 2024, Mr. Floyd communicated to Hagens that he no longer wanted to participate in this litigation and that the Court's finding that Floyd wanted to withdraw from the litigation entirely was justified and reasonable.

**B. The Duty to Act with Client Authority.**

14.a. RPC 1.2(f), which was adopted in Washington in 2011 and has no counterpart in the ABA Model Rules,[10] reads as follows:

> A lawyer shall not purport to act as a lawyer for any person or organization if the lawyer knows or reasonably should know that the lawyer is acting without the authority of that person or organization, unless the lawyer is authorized or required to so act by law or a court order.

b. Comment 15 to Washington RPC 1.2(f) notes that the "mental state" of the lawyer involved includes both "knowledge **or constructive knowledge**." (Emphasis added.)[11] RPC 1.2(f) broadly reflects both Washington common law (*see, e.g., Eriks v. Denver*, *supra*, 118 Wash. 2d at 462-63 (discussing lawyer role as agent)) and statutory

---

[10] The legislative history of Washington RPC 1.2(f) and its accompanying comments are publicly available on the Washington courts website at: https://www.courts.wa.gov/court_rules/?fa=court_rules.proposedRuleDisplay&ruleId=245. *See* Fed. R. Evid. 201(b)(2) (judicial notice).

[11] Comment 15 to RPC 1.2 explains constructive knowledge as used in RPC 1.2(f) with a reference to RPC 1.0A(j). The latter defines the phrase "reasonably should know" as "denot[ing] that a lawyer of reasonable prudence and competence would ascertain the matter in question."

EXPERT DECLARATION OF MARK J. FUCILE-14
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

law (*see, e.g.,* RCW 2.44.010 (authority of attorney)) recognizing that lawyers are agents—*not principals*.

c.    RPC 1.16 addresses mandatory withdrawal in subsection "a" and permissive withdrawal in subsection "b" (both of which are subject to applicable court rule and decision in subsection "c").

Under RPC 1.16(a)(1), a lawyer must withdraw (or, if court approval is required by applicable local rule, seek leave to withdraw) when continuing in "the representation will result in violation of the Rules of Professional Conduct[.]"  Therefore, if a lawyer no longer has authority to act for a client under RPC 1.2(f), RPC 1.16(a)(1) requires withdrawal.[12]  *See* WSBA Advisory Op. 2225 at 2 (2012) ("If a client has disappeared or fails to communicate despite the lawyer's reasonable efforts to locate and communicate with the client, then, depending on the particular circumstances involved, the lawyer may reasonably conclude that the lawyer no longer has the requisite authority to proceed on behalf of the client under RCW Chapter 2.44 and that mandatory withdrawal is triggered under RPC 1.16(a)(1).").

d.    The Court has found as a matter of fact that Mr. Floyd "no longer wanted to participate in this litigation because he did not wish to participate in discovery, and reiterated that intention even after his counsel attempted to persuade him that the discovery process could be less onerous that he was assuming." (Dismissal Order (Dkt. 250) at 3:16-19.)  Hagens knew or should have known based on Mr. Floyd's

---

[12] Hagens' Experts discussed whether Mr. Floyd's January 16, 2024, emails "discharged" Hagens under RPC 1.16(a)(3).  (*See, e.g.,* Bank Dec. (Dkt. 258) at 9.)  By its own terms, however, RPC 1.2(f) is not predicated on a client formally discharging a lawyer.  *See generally State v. Nickels*, 195 Wash. 2d 132, 149 (2020) (Yu, J. Concurrence in Part) (interpreting RPC using general principles of rule construction "begin[ing] with the plain meaning of the rules" and including the precept that a reviewing court "'must not add words where the [court] has chosen not to include them.'") (citing *Lake v. Woodcreek Homeowners Ass'n*, 169 Wash. 2d 516, 526 (2010)).

EXPERT DECLARATION OF MARK J. FUCILE-15
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

communications that it no longer had authority to continue litigating this matter on Mr. Floyd's behalf. If Hagens did not understand Mr. Floyd's instruction of January 16, then it had an affirmative duty under RPC 1.2(f) to promptly confirm its authority to act for Mr. Floyd. When it could not confirm its authority, Hagens had the responsibility, in my professional opinion, under RPC 1.16(a)(1) to withdraw from representing Mr. Floyd.[13] I will address the timing of that decision in the next section. [14]

### C. The Duty to Act with Reasonable Diligence.

15.a. RPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

---

[13] The Court has concluded as a matter of fact that Mr. Floyd did not "suddenly fall out of contact" as Hagens suggested in correspondence with defense counsel and in court filings, and instead made his intent to withdraw from the case clear (Sanctions Order (Dkt. 203) at 6:5-24.) Nonetheless, even in situations involving clients who have "disappeared," RPCs 1.16(b)(5) ("the client fails substantially to fulfill an obligation to the lawyer") and 1.16(b)(6) ("the representation . . . has been rendered unreasonably difficult by the client") provide additional grounds to withdraw. *See* WSBA Advisory Opinion 1873 (1999) (discussing RPC 1.16's similar predecessor).

[14] Whether Hagens had any duty to the proposed—but uncertified—class (such as to seek new plaintiffs) at the point its withdrawal from representing Mr. Floyd was required is a matter of class action procedural law rather than legal ethics. *See generally* Bruce A. Green and Andrew Kent, *May Class Counsel Also Represent Lead Plaintiffs?* 72 Fla. L. Rev. 1083, 1093, 1117-18 (2020) (noting that the duties of counsel to a proposed class precertification, if any, are beyond the realm of ABA Model Rules and their state counterparts). *See also* ABA Formal Op. 07-445, *supra*, at 3 ("Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established."); Washington RPC 1.7, cmt. 25 ("When a lawyer represents or seeks to represent a class of plaintiffs . . . in a class action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer[.]"). I will note that even the procedural rules governing class actions applicable in this Court distinguish between certified class actions from proposed ones. *See* Fed. R. Civ. P. 23(e).

EXPERT DECLARATION OF MARK J. FUCILE-16
Case No. 2:22-cv-01599-KKE

**Fucile & Reising LLP**
**1120 S.E. Madison St.**
**Portland, OR 97214**
**503.860.2163**

b.      RPC 1.3 does not purport to define "diligence" for purposes of modifying a scheduling order under Federal Rule of Civil Procedure 16(b)(4). Instead, RPC 1.3 imposes more general, state-law duties on lawyers practicing in Washington.[15]

c.      If Hagens did not understand Mr. Floyd's January 16, 2024 emails, RPC 1.3 required Hagens to seek clarification and confirm, without delay, that it had the requisite authority to act on Floyd's behalf.  The reasons are twofold.

First, as already discussed, a lawyer in Washington is not permitted to act without client authority.   In *In re Disciplinary Proceeding Against Marshall*, 160 Wash. 2d 317, 338-39 (2007), for example, the Washington Supreme Court disciplined a lawyer under the precursor to RPC 1.2(f) for filing an appeal in the Ninth Circuit without client permission.  Nor can client authority be maintained or recreated simply by sending emails to a client who does not respond.  In *Marshall*, for instance, the court rejected the lawyer's defense that he sent copies of the notice of appeal to the clients involved after-the-fact.  *Id.*

Second, a lawyer who does not promptly confirm authority to proceed runs the risk of exposing the client to sanctions by, as here, leaving the client in the case when discovery or other direct participation by the client is required.  That, in turn, can create a conflict between the respective interests of a lawyer and the client.  *See Angelo*, 2022 WL 1008314 at *10-*11.[16] Here, requests for the production of documents had been served on Mr. Floyd at the time of the January 16 emails, and interrogatories and a

---

[15] For a discussion of the history of RPC 1.3 as a rule of lawyer regulation in Washington, *see* Thomas R. Andrews and Robert H. Aronson, *The Law of Lawyering in Washington* at 5-5 through 5-8 (2012).

[16] The *Angelo* court cited *In re Marriage of Wixom & Wixom*, 182 Wash. App. 881 (2014) on the conflict.  2022 WL 1008314 at *10.  The Washington Court of Appeals in *Wixom* found that a lawyer who tried to shift the risk of sanctions to the lawyer's client had a non-waivable conflict under RPC 1.7(a) and disqualified the lawyer *sua sponte*. 182 Wash. App. at 897-909.

EXPERT DECLARATION OF MARK J. FUCILE-17
Case No. 2:22-cv-01599-KKE

deposition request followed.  (Sanction Order (Dkt. 203) at 2:8-24; Order Granting

Motion to Compel (Dkt. 132) at 6:8-10.)  These were all items that required Mr. Floyd's

direct participation:  he had the documents requested under Federal Rule of Civil

Procedure 34, interrogatory answers must be verified by a party under Federal Rule of

Civil Procedure 33, and he was to be the deponent under Federal Rule of Civil

Procedure 30.  Noncompliance with these rules carries the risk of sanctions under

Federal Rule of Civil Procedure 37,[17] and Defendants indeed later moved for sanctions.

The Court's factual findings also underscore both the responsibility to confirm

authority and the risk of failing to do that promptly.  For example, the Court explained

that "[i]f counsel was unclear as to the extent of the withdrawal that Floyd intended, as

they have repeatedly claimed to be, they should have asked him to clarify." (Dismissal

Order (Dkt. 250) at 12:3-5; *see also* 12:8-13:2.)[18]  Yet "[d]espite numerous attempts by

---

[17] If a lawyer withdrew under these circumstances, it would not relieve the client of the obligation to respond to discovery if the client wished to continue participating in the case involved.  LCR 83.2(b)(1), however, requires a withdrawing lawyer to provide the court and remaining counsel of record with the party's address and telephone number so they can interact with the *pro se* party directly.  In that event, it would be the party's decision whether to proceed or not with participating in the case—unfiltered by the former lawyer's representations to the court.

[18] In its present Motion, Hagens cites a February 26, 2024 email (PLAINTIFFS_000021) which it contends undercuts the Court's  "candor and diligence" analysis. (*See, e.g.,* Motion at 7:14-20 (PACER pagination).)  Hagens argues that privilege prevented it from providing the email to the Court earlier as an effort to "clarify" Mr. Floyd's intent.  (*See, e.g.,* Motion at 7:21-25 (PACER pagination).)  Hagens could have brought the February 26, 2024 email to the Court's attention at several points in the litigation without violating RPC 1.6 by offering it for *in camera* review.  RPC 1.6(b)(5) permits a lawyer to disclose otherwise confidential communications when necessary to "respond to allegations in any proceeding concerning the lawyer's representation of a client[.]" Here, the Court's Order to Provide Documents for *In Camera* Review (Dkt. 199) was expressly within the context of deciding a sanctions motion (*Id*. at 1:13-17) where Hagens' lack of candor and diligence were at issue. Accordingly, Hagens could have submitted the February 26, 2024 email for *in camera* review in connection with defendants' sanctions motion.  At a minimum, Hagens could have raised the February 26, 24 email to challenge the Court's Sanctions Order (Dkt. 203).  But, as noted earlier,

(continued…)

EXPERT DECLARATION OF MARK J. FUCILE-18
Case No. 2:22-cv-01599-KKE

counsel to persuade Floyd to change his mind about his participation, for the next seven months, Floyd never gave his counsel any reason to believe he was reconsidering his decision." (Sanctions Order (Dkt. 203) 6:8-10.)

Although there is no fixed "time clock" in RPC 1.3, the rule's use of the word "reasonable" imports an objective standard and takes into consideration the circumstances involved. Here, those circumstances included client communications suggesting Hagens no longer had authority to act for Mr. Floyd in federal litigation in which discovery was pending and that required the lawyers to make representations about their continuing authority to both the Court and defense counsel. Under these circumstances, Hagens did not have the luxury of time. If it did not understand Mr. Floyd's direction on January 16, then it needed to both confirm immediately its continuing authority to act and, as I will discuss in the next section, represent that authority accurately to the Court and defense counsel. Hagens did not do that. Hagens waited eight days after Mr. Floyd's January 16 communications to reach out to Mr. Floyd. But in its January 24 text to Mr. Floyd, Hagens makes no reference to Mr. Floyd's January 16 emails, nor makes any attempt to "clarify" what Mr. Floyd meant in those communications. (PLAINTIFFS_000018.) The same is true for Hagens' February 1 text (PLAINTIFFS_000019-20) and February 26 email (PLAINTIFFS_000021) to Mr. Floyd—neither makes reference to Mr. Floyd's January 16 communications or specifically asks Mr. Floyd what they meant. In these circumstances, Hagens did not

---

Hagens did not challenge the Court's Sanctions Order and simply paid over $200,000 in attorney's fees and costs. (Order Granting Unopposed Motion for Attorney Fees and Costs (Dkt. 224) at 1:21-22 ("Defendants filed a motion for fees and expenses which Floyd's counsel does not oppose.").) Hagens also could have submitted the February 24, 2024 email in opposing Apple's Motion for Reconsideration (Dkt. 221) where again Hagens' candor and diligence were squarely before the Court.

EXPERT DECLARATION OF MARK J. FUCILE-19
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

act with reasonable diligence as required by RPC 1.3 to seek clarification and confirm it had authority to act on Mr. Floyd's behalf.

**D.  The Duty of Candor.**

16.    Washington RPC 3.3(a)(1) imposes a clear duty of candor on the part of all counsel to the Court.  It provides that "[a] lawyer shall not knowingly … make a false statement of fact or law to a tribunal[.]"

17.    Washington's rule, like its ABA Model Rule counterpart, extends to both affirmative misstatements and the failure to disclose—with Comment 3 to Washington RPC 3.3 noting:

> [A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.  There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.

18.    The duty of candor *for a lawyer's own statements* imposed by RPC 3.3(a)(1) is not tempered by the duty of confidentiality.[19]  Comment 2 to RPC 3.3, which again is drawn from its ABA Model Rule counterpart, observes:

> A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force.  Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal.  Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or vouch for the evidence submitted in a cause, **the lawyer must not allow the tribunal to be misled by false statements of law or fact** or evidence that the lawyer knows to be false.[20]  (Emphasis added.)

---

[19] By contrast, Washington RPC 3.3(c), which addresses a lawyer discovering that the lawyer has offered false evidence, explicitly balances candor and confidentiality. There is no dispute, however, that the statements suggesting that Mr. Floyd was experiencing a health issue, an "incapacitating event," or a "personal emergency" were *Hagens' alone*—not the product of evidence provided by Mr. Floyd.  (Motion, entire.) Therefore, Washington RPC 3.3(c) is not applicable.

[20] *See also* Brooks Holland, Washington State Bar Association Legal Ethics Deskbook, § 21.3(4) at 21-11 (2d ed. 2020) ("No lawyer is permitted to make a false statement to a tribunal[.]").

EXPERT DECLARATION OF MARK J. FUCILE-20
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

19. These obligations do not change when a case is brought as a putative class action. The Washington Court of Appeals recently cited RPC 3.3(a)(1) in imposing sanctions for a lawyer's misrepresentation to the court in a class action proceeding remanded from the Eastern District of Washington. *See Gordon v. Robinhood Financial, LLC*, 31 Wash. App. 2d 185, 208 (2024) ("Our Rules of Professional Conduct prohibit a lawyer from knowingly making a false statement of fact to a tribunal. RPC 3.3(a)(1)[.]"); *see also Gordon v. Robinhood Financial, LLC*, 2021 WL 3173580 (E.D. Wash. July 27, 2021) (unpublished) (decertifying class and remanding to state court).

20. Here, the Court has found that "counsel misrepresented to Defendants and the Court their January 16 communications with Floyd." (Sanctions Order (Dkt. 203) at 3:8-10.) By January 16, counsel knew that Floyd "no longer wanted to participate in this litigation because he did not wish to participate in discovery[.]" (*Id.* at 3:10-11.) And he later "reiterated that intention … after counsel attempted to persuade him that the discovery process could be less onerous than he was assuming." (*Id.* at 3:11-13.) Yet Hagens later suggested to the Court that Mr. Floyd had simply become unresponsive and might be ill or suffering from a personal emergency. (*See, e.g.*, Motion to Amend (Dkt. 80) at 5:7-9, 8:7-9 (PACER pagination)).

21. These statements violated the duty of candor under Washington RPC 3.3(a)(1). I have seen no evidence in which Mr. Floyd suggested to Hagens on or after January 16, 2024, that he was sick, experiencing a health issue, otherwise incapacitated, or experiencing a "personal emergency." (Motion (Dkt. 256), entire.) As the Court explained, "the impression created by Floyd's counsel in correspondence with defense counsel and in court filings was that Floyd had suddenly fallen out of contact in January 2024, for reasons his counsel did not know and possibly unrelated to the litigation, not that he had affirmatively disavowed his prior commitment to the case

EXPERT DECLARATION OF MARK J. FUCILE-21
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

because he did not want to participate in discovery." (Sanctions Order (Dkt. 203) at 6:15-19.)  That impression was false, and Hagens knowingly created it.  *See generally In re Conteh*, 175 Wash. 2d 134, 142 (2012) (discussing the interplay between affirmative misrepresentations and omissions under RPC 3.3(a)(1)); *cf. In re Trejo*, 163 Wash. 2d 701, 727 (2008) (finding "knowing" misconduct when lawyer did not participate in staff theft of client funds but knew that he had failed to supervise assistant).[21]

22.    Notably, *because these were Hagens' own representations to the Court*,[22] they did *not* involve Hagens duty of confidentiality to Mr. Floyd.  For example, Mr. Floyd never told Hagens that he was ill.  No attorney-client privilege, therefore, was involved when Hagens later suggested to the Court that Mr. Floyd may be experiencing a health issue.  Similarly, Hagens had not "lost track" of Mr. Floyd.  Rather, he had told them (twice) that he no longer wished to participate in the Case and then acted consistent with that message by not responding to Hagens' subsequent communications.  Even

---

[21] I would note that Hagens misrepresented the January 16 emails to the Defendants as well.  Washington RPC 4.1(a) prohibits a lawyer from making "a false statement of material fact to a third person[.]"  Comment 1 to RPC 4.1 clarifies that this prohibition extends to misrepresentations "by partially true but misleading statements or omissions that are the equivalent of affirmative false statement."  One of the Hagens' Experts, Ms. Barnard, also discussed RPC 8.4(c), which deals with dishonest conduct.  (Barnard Dec. (Dkt. 259) at 29.)  Comment 1 to RPC 4.1, however, notes that RPC 4.1 is the principal rule applying to false or misleading *statements* to third persons in the course of representing a client, while RPC 8.4(c) primarily addresses dishonest conduct.  Because the events involved here involved Hagens' statements (including omissions) to the Court and opposing counsel, I address them under RPC 3.3(a)(1) and RPC 4.1. and not RPC 8.4(c).

[22] The Court noted this distinction in its Sanctions Order by sanctioning Hagens—not Mr. Floyd.  (Sanctions Order (Dkt. 203) at 1:22-2:3 ("[B]ecause the Court is now aware that Floyd informed his counsel that he wanted to cease participating in this action to avoid discovery obligations months before the Court ordered Floyd to comply with Defendants' discovery requests, and Floyd's counsel failed to candidly and/or accurately describe their client's intentions to Defendants and the Court, it is just to grant Defendants' motion for sanctions as to Floyd's counsel rather than Floyd.").)

EXPERT DECLARATION OF MARK J. FUCILE-22
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

when lawyers believe they are constrained by the duty of confidentiality, that does not give them license through either affirmative statements or the failure to disclose to violate the duty of candor toward to the Court.  A lawyer in these circumstances believing that they needed to reconfirm their authority to act for the client might say, for example: "Your Honor, I can't say why, but we need to reconfirm our authority to act for Mr. Floyd."[23]  That reveals no attorney-client communications (or other confidential information) but is fundamentally different than: "There may be legitimate reasons for his recent non-responsiveness (*e.g.,* health issues or other incapacitating events)."[24] (Dkt. 80 at 5:7-9 (PACER pagination).)

23.    In its Dismissal Order, the Court noted Hagens' representations in granting reconsideration: "An accurate understanding of Floyd's position *and counsel's misconduct* in characterizing that position undermines parts of the Order [Granting the Motion to Amend] that were key to its outcome."  (Dismissal Order (Dkt. 250) at 9:1-3; emphasis in original.)  In its present Motion, Hagens doesn't offer any new evidence regarding Mr. Floyd (Dkt. 256) and the Court has already made findings of fact on the substantive issues involving Mr. Floyd's conduct (*see, e.g.,* Dismissal Order (Dkt. 250) at 3:16-19.)  As to Hagens' conduct, in my professional opinion, Hagens' representations to the Court discussed above violated its duty of candor under Washington RPC 3.3(a)(1).

---

[23] *See* RCW 2.44.010 (authority of attorney); WSBA Advisory Op. 2225, *supra*, at 2 ("RCW Chapter 2.44 governs attorney authority and generally requires an attorney to have client authority to proceed with a representation.").

[24] *Cf.* Washington RPC 1.16, cmt. 3 (noting that a lawyer can tell a court on withdrawal that "professional considerations" require or permit the withdrawal and that does not disclose confidential information); WSBA Advisory Op. 2225, *supra*, at 3 (same).

EXPERT DECLARATION OF MARK J. FUCILE-23
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

**E. The Duty to Correct.**

24.    The duty of candor includes an unqualified obligation to correct prior misstatements of material fact.  Washington RPC 3.3(a)(1) also speaks to this aspect of the duty of candor.  It provides that "[a] lawyer shall not knowingly … fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

25.    Like the duty of candor, the duty to correct a lawyer's own statements is *not* tempered by the duty of confidentiality.[25]

26.    This Court has already found the materiality required to trigger RPC 3.3(a)(1).  "An accurate understanding of Floyd's position *and counsel's misconduct* in characterizing that position undermines part of the Order [allowing the complaint to be amended] that were key to the outcome."  (Dismissal Order (Dkt. 250) at 9:1-3; emphasis in original.)

27.    The duty to correct continues throughout the duration of a case, with Comment 13 to Washington RPC 3.3 noting:

> A practical time limit on the obligation to rectify . . . false statements of . . . fact has to be established.  The conclusion of the proceeding is a reasonably definite point for the termination of the obligation.  A proceeding has concluded within the meaning of this Rule when a final judgment in the proceeding has been affirmed on appeal or the time for review has passed.

28.    As noted above, the Court has already found that "counsel misrepresented to Defendants and the Court their January 16 communications with Floyd."  (Sanctions Order (Dkt. 203) at 3:8-10.)  Again, Hagens gave the impression to the Court in their Motion to Amend on February 29, 2024, that Mr. Floyd had "been a

---

[25] *See* Brooks Holland, *Confidentiality and Candor Under the 2006 Washington Rules of Professional Conduct*, 43 Gonz. L. Rev. 327, 363 (2008) ("Notably, 2006 RPC 3.3(a)(1) does not expressly subordinate a lawyer's duty to correct these past false statements to RPC 1.6 confidentiality.").

EXPERT DECLARATION OF MARK J. FUCILE-24
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

responsive class representative up until this lapse in communication"[26] and suggested that "[t]here may be legitimate reasons for his recent non-responsiveness (*e.g.*, health issues or other incapacitating events)[.]"  (Dkt. 80 at 5:5-9 (PACER pagination).)  Hagens further suggested in its Motion to Amend that Mr. Floyd may have "experienced some type of personal emergency." (*Id*. at 8:8-9.)  However, by the time oral argument occurred on April 30, 2024, Hagens had another unanswered email on March 1 (PLAINTIFFS_000022) that continued the pattern that had begun and was reiterated on January 16: "I pass!"  Hagens also continued to have no information suggesting that Mr. Floyd had "health issues or other incapacitating events" or that he had a "personal emergency."  (Motion (Dkt. 256), entire.)

29.    Yet rather than correct the record on these points, Hagens simply told the Court that it "lost track of a class representative." (April 30, 2024, Hearing Tr. at 4:22-23.)  Similarly, when it saw that the Court had accepted its representations about Mr. Floyd in allowing the complaint to be further amended (Dkt. 98 at 2), Hagens again took no action to correct the record, despite having a number of opportunities to do so.  (Dkt., entire.)  The Court's Dismissal Order notes these failures. (Dismissal Order (Dkt. 250) at 9:3-6.)

30.    In my professional opinion, Hagens' failure to correct its representations to the Court discussed above violated its duty to correct under Washington RPC 3.3(a)(1).

## V. Reservation

31.    I reserve the right to alter or amend the opinions expressed above to the extent that I am provided additional information and also reserve the right to offer additional opinions if requested.

---

[26] The Court has already found: "Floyd never meaningfully participated in discovery[.]" (Dismissal Order (Dkt. 250) at 14:8-9.)

EXPERT DECLARATION OF MARK J. FUCILE-25
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  28 U.S.C. § 1746.

Signed on March 13, 2026, at Lake Oswego, Oregon.

Mark J. Fucile, WSBA No. 23736
Mark@frllp.com
503.860.2163

EXPERT DECLARATION OF MARK J. FUCILE-26
Case No. 2:22-cv-01599-KKE

Fucile & Reising LLP
1120 S.E. Madison St.
Portland, OR 97214
503.860.2163

# Exhibit 1

**Mark J. Fucile**
**Fucile & Reising LLP**
**1120 SE Madison Street**
**Portland, OR 97214**
**503.860.2163**
**Mark@frllp.com**
**www.frllp.com**

## Professional Biography

### Education
- University of California, Los Angeles School of Law
  Juris Doctor, 1982
    —Managing Editor, UCLA Pacific Basin Law Journal
    —Comment Author, UCLA Pacific Basin Law Journal
    —Los Angeles County Bar Association Scholarship
- Lewis & Clark College
  Bachelor of Science in Business Management, 1979
    —Phi Kappa Phi National Honorary
    —Delta Mu Delta National Business Honorary

### Military
- Captain, United States Marine Corps
  Active Duty, 1982-1985
  Platoon Leaders Class College Program, 1975-79

### Bar Admissions
#### States & DC
- Oregon
- Washington
- Idaho
- Alaska
- District of Columbia

#### Federal Courts
- U.S. District Court, Oregon
- U.S. District Court, Western District of Washington
- U.S. District Court, Eastern District of Washington
- U.S. District Court, Idaho
- U.S. District Court, Alaska
- U.S. District Court, District of Columbia
- U.S. Court of Appeals, Ninth Circuit
- U.S. Court of Appeals, Federal Circuit
- U.S. Court of Appeals, District of Columbia Circuit
- U.S. Supreme Court

1

*General Professional Associations*
- American Bar Association
- Oregon State Bar
- Washington State Bar Association
- Idaho State Bar
- Alaska Bar Association
- District of Columbia Bar
- King County (Seattle) Bar Association
- Multnomah (Portland) Bar Association
- Owen M. Panner Inn of Court (Master Member Emeritus)
- Multnomah Bar Judicial Screening Committee (2010-12)

*Professional Recognition*
- A-V Rated, Martindale-Hubbell, Current
- Super Lawyers, 2007-09, 2011-25 Professional Liability
- Best Lawyers in America, 2010-25 Ethics & Professional Responsibility
- Multnomah Bar Award of Merit, 2010
- Washington State Bar Association Professionalism Award, 2022

*Legal Employment*
- United States Marine Corps, 1983-1985
    Office of the Staff Judge Advocate
    Marine Corps Recruit Depot, San Diego
        —Defense Counsel
        —Prosecutor
        —Special Assistant U.S. Attorney

    *Following a nearly year-long training course required of all Marine officers, I prosecuted and defended Marines and sailors in courts-martial and related administrative proceedings at major training and operations commands in Southern California.  I also prosecuted civilians in federal court charged with committing crimes on-base. I received the Navy Commendation Medal for service at this duty station.*

- Stoel Rives LLP, 1985-2005
        —Partner, Litigation Group
        —Ethics Partner

    *I began as a litigation associate and was eventually promoted to capital partner in the Litigation Group of Oregon's largest law firm.  My practice focused on legal ethics, product liability defense and real estate condemnation. I also worked as one of the Firm's Ethics Partners, handling internal professional ethics, attorney-client privilege, and risk management issues for offices throughout the Northwest.*

- Fucile & Reising LLP, 2005-present
        —Co-founder and Partner

2

46

ï   University of Oregon School of Law, 2013-2025
        —Adjunct Instructor
        *I taught the Legal Profession course, which focuses on legal and judicial ethics, as an adjunct for over a decade.*

### *Practice Areas*

#### *Legal Ethics*
*I counsel lawyers, law firms and corporate and governmental legal departments throughout the Northwest on professional ethics and risk management.  My work has included trying lawyer disciplinary cases at the hearing level, briefing and arguing lawyer regulatory cases before the Oregon Supreme Court and handling law firm-related litigation.  I have also served an expert witness on legal ethics and related issues in Oregon, Washington, Idaho, and Alaska.*

#### Related Professional Activities
ï   Editor-in-Chief/contributing author, WSBA Legal Ethics Deskbook
ï   Contributing editor/author, WSBA Law of Lawyering in Washington
ï   Contributing editor/author, OSB Ethical Oregon Lawyer
ï   Chair, WSBA Committee on Professional Ethics (2013-17, 2025-26; Member, WSBA CPE (2017-19, 2023-26)
ï   Chair, WSBA Rules of Professional Conduct Committee (2002-03) Member, WSBA RPC Committee (1998-2003; 2004-2012)
ï   Member, OSB Legal Ethics Committee (2001-03; 2020-2024)
ï   Member, ISB Professionalism & Ethics Section
ï   Member, appointed special committees in Oregon and Washington on revisions to Rules of Professional Conduct
ï   Reporter, appointed WSBA RPC Committee Review Work Group
ï   Member, appointed OSB Discipline System Review Committee
ï   Co-Chair, WSBA Law of Lawyering Conference (2012-2023)
ï   Ethics Columnist, WSBA *Bar News* (formerly *NWLawyer*)
ï   Ethics Columnist, *Multnomah Lawyer*
ï   Contributor on ethics and law firm risk management to:
        —Oregon State Bar *Bulletin*
        —Idaho State Bar *Advocate*
        —WSBA *NWSidebar*
        —DRI *For the Defense*
        —IADC *Defense Counsel Journal*
        —ABA *Professional Lawyer*
    (List of articles and reprints available at www.frllp.com.)

#### Related Professional Associations
ï   Association of Professional Responsibility Lawyers
ï   ABA Center for Professional Responsibility

3

**Related Presentations**
- ï    American Bar Association
- ï    American Law Institute
- ï    Defense Research Institute
- ï    Oregon State Bar
- ï    Oregon Association of Defense Counsel
- ï    Oregon Trial Lawyers Association
- ï    Oregon Law Institute
- ï    University of Oregon School of Law
- ï    Multnomah Bar Association
- ï    Washington State Bar Association
- ï    King County Bar Association
- ï    Washington Defense Trial Lawyers
- ï    Washington State Trial Lawyers Association
- ï    University of Washington School of Law
- ï    Gonzaga University School of Law
- ï    Idaho State Bar
- ï    The Seminar Group
      (List of presentations and reprints available at www.frllp.com.)

### *Product Liability Defense*

*I have handled over 300 product liability cases since the late 1980s, including jury trials in state and federal courts in Oregon and Washington. I have defended both national and Northwest manufacturers in cases involving automobiles, industrial and building products and heavy equipment. I was active for many years in national and state professional defense organizations, including the invitation-only International Association of Defense Counsel, the Defense Research Institute, the Oregon Association of Defense Counsel, and the Washington Defense Trial Lawyers. I have written for the IADC Defense Counsel Journal and DRI's For the Defense magazine.*

### *Condemnation*

*Over the past 30 years, I have handled over 250 real estate condemnation cases, including many jury and court trials over possession, the right to take and valuation. I have both prosecuted and defended direct and inverse condemnation cases involving a wide variety of commercial, residential, industrial and specialty properties in Oregon state and federal courts. I have also handled the "court side" of land use cases for developers. I have written on condemnation for the Oregon State Bar Litigation Journal and the Oregon State Bar Real Estate and Land Use Digest.*

4

# Exhibit 2

**Mark J. Fucile**
**Legal Ethics Articles & Book Chapters**
*Reprints of Articles Available at www.frllp.com*

**Articles**

**Ethics—Alaska**
January-March 2004 Alaska Bar Rag
*Parting Company: Who Gets What in the File When Lawyers & Clients Split*

July-September 2005 Alaska Bar Rag
*Making Contact: The No Contact with Represented Parties Rule*

January-March 2006 Alaska Bar Rag
*Changing Teams: Moving From One Firm to Another*

July-September 2011 Alaska Bar Rag
*The "No Contact" Rule in Class Actions*

July-September 2012 Alaska Bar Rag
*Will You Be My Friend?  Covert Investigations Through Social Media*

December 2016 WSBA NWSidebar
*New Alaska Opinion on "Web Bugs"*

March 2020 WSBA NWSidebar
*Alaska Bar Opinion on Representing Parties and Witnesses in the Same Case*

July 2024 WSBA NWSidebar
*Alaska Supreme Court Addresses Nonclient Claims Against Lawyers*

April 2025 WSBA NWSidebar
*Alaska Adopts "Continuous Representation" Rule*
*for Measuring Limitation Period in Legal Malpractice*

June 2025 WSBA NWSidebar
*New Alaska Ethics Opinion on Artificial Intelligence*

February 2026 WSBA NWSidebar
*Alaska and Oregon Speak to*
*"Actual Innocence" Requirement for Malpractice Claims*

1

**Ethics—Idaho**

September 2004 Idaho State Bar Advocate
*Defensive Lawyering: Why Engagement Letters Are A Lawyer's Best Friend*

September 2005 Idaho State Bar Advocate
*Why Conflicts Matter*

June 2006 Idaho State Bar Advocate
*Making Contact: The "No Contact with Represented Parties" Rule*

February 2009 Idaho State Bar Advocate
*The "Who Is the Client?" Question*

January 2010 Idaho State Bar Advocate
*Screening: An Idea Whose Time Has Come?*

February 2011 Idaho State Bar Advocate
*Inadvertent Production in Electronic Times*

October 2012 Idaho State Bar Advocate
*Going Gray:  Risk Management for Aging Lawyers*

September 2013 Idaho State Bar Advocate
*Outsourcing:  From Here to There*

January 2017 Idaho State Bar Advocate
*Applied Legal Ethics:*
*Disqualifying Counsel in Idaho State and Federal Courts*

November 2017 WSBA NWSidebar
*Idaho Soon to Require Malpractice Insurance*

August 2019 Idaho State Bar Advocate Digital Edition
*Balancing Act:  Choice of Law in Law Firm-Related Litigation*

January 2020 Idaho State Bar Advocate
*When All Is Not Well:  Law Firm Risk Management and Impaired Lawyers*

January 2020 WSBA NWSidebar
*Idaho Supreme Court Allows Fee Disgorgement for Breach of Fiduciary Duty*

October 2023 WSBA NWSidebar
*Idaho Adopts "Entire File" Approach When Withdrawing*

2

51

October 2023 Idaho State Bar Advocate
*How Much Is Too Much?*
*The Indistinct Line Between Advocacy and Improper Deposition Coaching*

March 2025 WSBA NWSidebar
*Idaho Codifies "Entire File" Approach When Withdrawing*

**Ethics—Oregon**
April 2002 Oregon State Bar Bulletin
*Keeping Company: Representing Start-Up Businesses in Good Times and Bad*

June 2002 Oregon State Bar Bulletin
*Waiving Discipline Away: The Effective Use of Disclosure & Consent Letters*
Mark J. Fucile (& Co-Authors)

April 2003 Multnomah Lawyer
*Supreme Court Sets Duties to Prospective Clients*

May 2003 Multnomah Lawyer
*Attorney Liens: Are They Worth It?*

June 2003 Multnomah Lawyer
*Charge It: New OSB Opinion on Credit Cards*

July-August 2003 Multnomah Lawyer
*Blanket Waivers: A Very Useful Practice Management Tool*

September 2003 Multnomah Lawyer
*OSB Considers New Ethics Rules*

October 2003 Multnomah Lawyer
*OSB Answers Lingering "Gatti Rule" Questions*

November 2003 Multnomah Lawyer
*Defensive Lawyering, Part 1: Beginning the Representation*

December 2003 Multnomah Lawyer
*Defensive Lawyering, Part 2: During the Representation*

January 2004 Multnomah Lawyer
*Defensive Lawyering, Part 3: Concluding the Representation*

3

February 2004 Multnomah Lawyer
*Inadvertent Production: Gold Nugget or Rotten Egg?*

March 2004 Multnomah Lawyer
*Parting Company: Who Gets What When Lawyers & Clients Split?*

April 2004 Multnomah Lawyer
*Blast From the Past: New OSB Opinion on Former Client Conflicts*

Spring 2004 OADC Newsletter
*Court of Appeals Holds Even Imperfect Conflict Waiver Letter*
*Provides Key Defense to Lawyer Breach of Fiduciary Duty Claim*

May 2004 Multnomah Lawyer
*Who's Fair Game? The "No Contact" Rule in the Corporate Context*

June 2004 Multnomah Lawyer
*Conflicts, Part 1: Why Conflicts Matter*

July-August 2004 Multnomah Lawyer
*Conflicts, Part 2: Key Ingredients of a Conflict Waver*

September 2004 Multnomah Lawyer
*Conflicts, Part 3: Eliminating Them In the First Place*

October 2004 Multnomah Lawyer
*Deja Vu All Over Again: OSB Considers New Ethics Rules*

November 2004 Multnomah Lawyer
*Telling Clients About Mistakes: When Do You Need a Conflict Waiver?*

December 2004 Multnomah Lawyer
*The New Rules: What's Inside the Box? Part 1 -- Conflicts*

January 2005 Multnomah Lawyer
*The New Rules: What's Inside the Box? Part 2 -- Confidentiality*

February 2005 Multnomah Lawyer
*The New Rules: What's Inside the Box? Part 3 -- The No Contact Rule*

March 2005 Multnomah Lawyer
*The New Rules: What's Inside the Box? Part 4 -- Multijurisdictional Practice*

4

April 2005 Multnomah Lawyer
*Have License, Will Travel: Oregon Extends Reciprocity*

May 2005 Multnomah Lawyer
*Hazardous Duty: Oregon Extends Breach of Fiduciary Duty Claims to Nonclients*

June 2005 Oregon State Bar Bulletin
*Why Conflicts Matter*

June 2005 Multnomah Lawyer
*Good Help: Lawyers' Responsibility for Staff Conduct*

July-August 2005 Multnomah Lawyer
*Getting Crosswise with Cross-Marketing*

July 2005 Oregon State Bar Bulletin
*Managing Conflicts*

September 2005 Multnomah Lawyer
*Taking Stock: Investing in Clients Under the New Rules*

October 2005 Oregon State Bar Bulletin
*Who's Fair Game? Who You Can & Can't Talk to On the Other Side*

October 2005 Multnomah Lawyer
*Trolling for Clients on the Web: Ninth Circuit Rules on Confidentiality of Web Contacts by Prospective Clients*

November 2005 Multnomah Lawyer
*Changing Seasons: Moving from One Firm to Another*

December 2005 Multnomah Lawyer
*Old Friends in Familiar Places: OSB Reissues Ethics Opinions*

January 2006 Multnomah Lawyer
*New Year's Resolution: Better Conflict Checks*

February 2006 Multnomah Lawyer
*Inadvertent Production Revisited*

February-March 2006 Oregon State Bar Bulletin
*Parting Company: Who Gets What When Lawyers & Clients Split?*

5

March 2006 Multnomah Lawyer
*In-House Counsel: Same Issues, Different Perspective*

April 2006 Multnomah Lawyer
*Insurance Defense: Who's In Charge?*

May 2006 Multnomah Lawyer
*The Long View of Legal Ethics*

July-August 2006 Multnomah Lawyer
*Speaking Freely: The Litigation Privilege*

August-September 2006 Oregon State Bar Bulletin
*Inside Counsel: The Intersection of Law Firm Privilege and Duties to Clients*

September 2006 Multnomah Lawyer
*News from the North: The New Washington RPCs*

October 2006 Multnomah Lawyer
*Setting Up Shop, Part 1: Top 10 Ethical Nuts & Bolts of Starting Your Own Firm*

November 2006 Multnomah Lawyer
*Setting Up Shop, Part 2: Top 10 Ethical Nuts & Bolts of Starting Your Own Firm*

December 2006 Multnomah Lawyer
*Hazardous Duty Revisited: Reynolds v. Schrock*

December 2006 Oregon State Bar Litigation Journal
*Lawyer Liability for Assisting in Breach of Fiduciary Duty: Privilege or Peril*

December 2006 Oregon State Bar Bulletin
*Drawing a Bright Line: The "Who is the Client?" Question*

January 2007 Oregon State Bar Bulletin
*Risky Business: Investing in Clients*

January 2007 Multnomah Lawyer
*The Law of Lawyering: A Resource Guide*

February 2007 Multnomah Lawyer
*High Tech Ethics: New ABA Opinion on Metadata*

6

March 2007 Multnomah Lawyer
*The Lawyer-Witness Rule: What It Is and What It Isn't*

April 2007 Multnomah Lawyer
*Welcome to Oregon: A Roadmap to Pro Hac Vice Admission*

May 2007 Multnomah Lawyer
*Inadvertent Production: New Federal Rules*

June 2007 Multnomah Lawyer
*All or Nothing: Aggregate Settlements*

June 2007 Oregon State Bar Bulletin
*Difficult Conversations: Telling Clients About Mistakes*

July-August 2007 Multnomah Lawyer
*What's the Issue: New OSB Ethics Opinion on Issue Conflicts*

September 2007 Multnomah Lawyer
*Billing Ethics, Part 1: Time-Keeping & Fee Agreements*

October 2007 Multnomah Lawyer
*Billing Ethics, Part 2: Client Trust Accounts*

October 2007 Oregon State Bar Bulletin
*Brave New World: Risk Management in the Electronic Era*

November 2007 Multnomah Lawyer
*Advertising, Part 1: Theory*

December 2007 Multnomah Lawyer
*Advertising, Part 2: Practice*

January 2008 Multnomah Lawyer
*We the People: Representing the Government*

February 2008 Multnomah Lawyer
*Class Actions: Unique Issues, Unique Solutions*

March 2008 Multnomah Lawyer
*Location, Location, Location: Whose Law Applies in Cross-Border Practice?*

7

April 2008 Multnomah Lawyer
*Client Perjury: That Sinking Feeling*

April 2008 Oregon State Bar Bulletin
*When the Government Is Listening In: Advising Clients under Surveillance*
Mark J. Fucile (& Co-Author)

May 2008 Multnomah Lawyer
*Defensive Lawyering Revisited, Part 1: Beginning the Representation*

June 2008 Multnomah Lawyer
*Defensive Lawyering Revisited, Part 2: During the Representation*

July-August 2008 Multnomah Lawyer
*Defensive Lawyering Revisited, Part 3: Concluding the Representation*

September 2008 Multnomah Lawyer
*The Vow of Silence: Confidentiality in Electronic Times, Part 1*

October 2008 Multnomah Lawyer
*The Vow of Silence: Confidentiality in Electronic Times, Part 2*

November 2008 Multnomah Lawyer
*Inadvertent Production Revisited (Again): New Federal Evidence Rule*

December 2008 Multnomah Lawyer
*Lateral Hiring: The Screening Rule*

January 2009 Multnomah Lawyer
*First Among Equals: The Dishonesty Rule*

January 2009 Oregon State Bar Bulletin
*Avoiding Bad News: Risk Management in Law Firm Marketing*

February 2009 Multnomah Lawyer
*Cross Fire: Subpoenas of Law Firm Files*

March 2009 Multnomah Lawyer
*Spring Cleaning: File Retention & Destruction*

Winter 2009 Oregon Association of Defense Counsel Magazine
*The Shifting Sands of Inadvertent Production*

8

Winter 2009 Oregon State Bar Litigation Journal
*Disqualification in Oregon State & Federal Court*

April 2009 Multnomah Lawyer
*Sui Generis: Oregon's Disciplinary System, Part 1*

May 2009 Multnomah Lawyer
*Sui Generis: Oregon's Disciplinary System, Part 2*

May 2009 Oregon State Bar Bulletin
*Weathering the Storm—Law Firm Risk Management in Hard Times*

June 2009 Multnomah Lawyer
*On the Road Again: Practicing Across State Lines in the Northwest*

July-August 2009 Multnomah Lawyer
*Lawyer-Directors: Good Business or Bad?*

September 2009 Multnomah Lawyer
*What Baseball Teaches Us About Law Firm Risk Management*

October 2009 Multnomah Lawyer
*The Mysterious ORS Chapter 9: Lawyers' Statutory Duties*

November 2009 Multnomah Lawyer
*A Delicate Subject: Judicial Disqualification*

December 2009 Multnomah Lawyer
*Helping Those in Need: Clients with Diminished Capacity*

January 2010 Multnomah Lawyer
*Five Years with the RPCs: A Look Back and a Peek Forward*

February 2010 Multnomah Lawyer
*The Squeal Rule: Reporting Others' Misconduct*

Winter 2010 Oregon Association of Defense Counsel Magazine
*Making a Record: Recording Opposing Counsel*

March 2010 Multnomah Lawyer
*The (High) Cost of Discipline, Part 1: The Numbers*

9

April 2010 Multnomah Lawyer
*The (High) Cost of Discipline, Part 2: Trying to Avoid the Numbers*

May 2010 Multnomah Lawyer
*Conflicts Revisited, Part 1:  Current Client Conflicts*

June 2010 Multnomah Lawyer
*Conflicts Revisited, Part 2:  Former Client Conflicts*

July-August 2010 Multnomah Lawyer
*Conflicts Revisited, Part 3:  Eliminating Conflicts*

July 2010 Oregon State Bar Bulletin
*Making News:  Talking with the Media*

Spring 2010 Oregon State Bar Litigation Journal
*Attorney Liens:  Tool or Trap?*

September 2010 Multnomah Lawyer
*Up in the Air:  Cloud Computing and Confidentiality*

October 2010 Multnomah Lawyer
*Getting Crosswise:  Bar Complaints by Current Clients*

November 2010 Multnomah Lawyer
*When Good Clients Go Bad*

December 2010 Multnomah Lawyer
*Losing Track:  Unclaimed Funds in Trust Accounts*

Fall 2010 Oregon Association of Defense Counsel The Verdict
*Center of the Circle:  Lawyer-Directed Investigations*
Mark J. Fucile (& Co-Author)

January 2011 Multnomah Lawyer
*The Hot Potato Rule*

February 2011 Multnomah Lawyer
*Reciprocal Discipline:  The Other Side of the Reciprocity Coin*

March 2011 Multnomah Lawyer
*Staying Covered:  The PLF & Risk Management*

10

April 2011 Multnomah Lawyer
*Bailing Out:  The Mechanics of Withdrawal*

Winter 2011 Oregon Association of Defense Counsel The Verdict
*Litigation Ethics North and South of the Columbia*

Spring 2011 Oregon State Bar Litigation Journal
*Getting Paid:  Attorney Fee Recovery in Oregon State Court*

May 2011 Multnomah Lawyer
*Memorial Day:  Duties to Deceased Clients*

June 2011 Multnomah Lawyer
*Inadvertent Production:  New Rules for Electronic Times*

June 2011 Oregon State Bar Bulletin
*Should You Ever Sue a Client?  (And Alternatives If You Don't)*

July-August 2011 Multnomah Lawyer
*Law Firm Web Sites:  Windows on the World*

September 2011 Multnomah Lawyer
*Will You Be My Friend?  Covert Investigations on the Web*

October 2011 Multnomah Lawyer
*J'accuse!  Threatening Criminal Prosecution*

November 2011 Multnomah Lawyer
*Say What?  Confidentiality and Conflicts on Listservs*

December 2011 Multnomah Lawyer
*All in the Family:  Conflicts in Closely Held Corporations*

January 2012 Multnomah Lawyer
*Whole Meal Deal:  Fixed Fee Agreements*

February 2012 Multnomah Lawyer
*What Can You Say?  Seeking Court Permission to Withdraw*

March 2012 Multnomah Lawyer
*Show Me the Money:  Conflicts and Confidentiality in Litigation Financing*

11

April 2012 Multnomah Lawyer
*Identity Theft:  Loss of Clients' Confidential Data*

May 2012 Multnomah Lawyer
*Keeping Clients Informed:  How Much Is Enough?*

June 2012 Multnomah Lawyer
*Metadata:  The (Really) Fine Print*

July-August 2012 Multnomah Lawyer
*Cloud Computing:  Confidentiality and Coverage*

July 2012 Oregon State Bar Bulletin
*Protecting Yourself:  The Self-Defense Exception to Lawyer Confidentiality*

September 2012 Multnomah Lawyer
*Unwelcome Visitor:  Garnishment of Trust Accounts*

October 2012 Multnomah Lawyer
*Beyond Discipline:  The RPCs and the Law of Lawyering*

November 2012 Multnomah Lawyer
*Changing Horses in Midstream:  Modifying Fee Agreements*

December 2012 Multnomah Lawyer
*Smoking Gun:  Receiving Property Stolen by a Client*

January 2013 Multnomah Lawyer
*The Power of Words:  Three Key Words for Risk Management*

February 2013 Multnomah Lawyer
*Delicate Advice:  Counseling a Client to Breach a Contract*

March 2013 Multnomah Lawyer
*"Nonrefundable" Reminder:  They Can Be Refundable*

April 2013 Multnomah Lawyer
*Choice of Law Is Boring . . . Until It's Not*

May 2013 Multnomah Lawyer
*Winding Down:  Transitioning into Retirement*

12

June 2013 Multnomah Lawyer
*Outsourcing:  From Down the Street to Across the Globe*

June 2013 Oregon State Bar Bulletin
*Moving On:  Duties Beyond the RPCs When Changing Law Firms*

July-August 2013 Multnomah Lawyer
*On the Beach:  Practical Impacts of Suspension*

September 2013 Multnomah Lawyer
*What Can You Say?  Talking with Unrepresented Persons*

October 2013 Multnomah Lawyer
*Electronic Ambush:  Covert Investigations through Social Media*

November 2013 Multnomah Lawyer
*Is the Customer Always Right?  The Intersection of Client Direction and Professional Judgment*

December 2013 Multnomah Lawyer
*A Multitude of Sins:*
*Conduct Prejudicial to the Administration of Justice*

January 2014 Multnomah Lawyer
*A Conversation with New OSB Disciplinary Counsel John Gleason*

February 2014 Multnomah Lawyer
*"A Word from Our Sponsor…"  Oregon's New Advertising Rules*

Spring 2014 Oregon State Bar Litigation Journal
*Pro Hac Vice:  Procedure and Practice in Oregon*

April 2014 Multnomah Lawyer
*ABA "Ethics 20/20" Amendments (Sort of) Come to Oregon*

June 2014 Multnomah Lawyer
*When the Light Goes On:*
*Differences Between Disciplinary Proceedings and Other Litigation*

July-August 2014 Multnomah Lawyer
*Who Is the Client?  New Decisions in Insurance Defense*

13

September 2014 Multnomah Lawyer
*Something Old, Something New:  Oregon's Updated Lateral-Hire Screening Rule*

August-September 2014 Oregon State Bar Bulletin
*Uncomfortable Intersection:  Internal Law Firm Privilege and Duties to Clients*

October 2014 Multnomah Lawyer
*Tug of War:  Fights Over Files*

November 2014 Multnomah Lawyer
*Don't Do This at Home:  Conflict Waivers for Malpractice*

December 2014 Multnomah Lawyer
*Who Decides?  Fee Provisions that Penalize Client Choice*

December 2014 Oregon State Bar Bulletin
*Protecting Yourself and Your Settlement:*
*Risk Management Considerations in Settlement Negotiations*

January 2015 Multnomah Lawyer
*Danger Zone:  Clients Threatening Harm*

February 2015 Multnomah Lawyer
*Voir Dire:  Ethically Investigating Potential Jurors*

March 2015 Multnomah Lawyer
*Commenting on the Comments:  The ABA Model Rule Comments in Oregon*

April 2015 Multnomah Lawyer
*Proceed with Care:  Advising Marijuana Businesses*

April 2015 Oregon State Bar Bulletin
*Risky Business:  Business Deals with Clients*

May 2015 Multnomah Lawyer
*Seeking Credit:  Litigation Funding Issues*

June 2015 Multnomah Lawyer
*For Sale by Owner:  Selling a Law Practice*

July-August 2015 Multnomah Lawyer
*"Law Firm Hygiene":  Small Steps Can Have Big Returns*

14

September 2015 Multnomah Lawyer
*Every Lawyer's Nightmare:  Theft of Client Funds*

Fall 2015 OADC The Verdict
*New OSB Ethics Opinion Prohibits Indemnification by Plaintiffs' Counsel*

October 2015 Multnomah Lawyer
*Pro Bono:  Staying Safe While Doing Good*

November 2015 Multnomah Lawyer
*Common Problems with Common Representation*

December 2015 Multnomah Lawyer
*"Retainer":  A Word in Need of Retiring*

January 2016 Multnomah Lawyer
*Legal Capital:  Affiliated Businesses*

February 2016 Multnomah Lawyer
*Washington's "LLLT" Experiment*

March 2016 Multnomah Lawyer
*Advance Waivers:*
*Effective Tool if Used Wisely*

April 2016 Multnomah Lawyer
*Reciprocal Discipline in Federal Courts*

May 2016 Multnomah Lawyer
*Risk Management for Virtual Offices*

June 2016 Multnomah Lawyer
*Contract Clauses:  Contractual Limitations and Arbitration Provisions*

June 2016 Oregon State Bar Bulletin
*Uncomfortable Position:  You've Just Been Subpoenaed*

July-August 2016 Multnomah Lawyer
*Law Firm Cyber Risk*

September 2016 Multnomah Lawyer
*What's in a Name?  Law Firm Titles and Risk Management*

15

October 2016 Multnomah Lawyer
*First Do No Harm:  Pro Bono and the Duty of Competence*

November 2016 Multnomah Lawyer
*Internal Law Firm Privilege at (Small)er Firms*

December 2016 Multnomah Lawyer
*Gone But Not Forgotten:  Departed Lawyer Conflicts*

January 2017 Multnomah Lawyer
*Golden Handcuffs:  Non-Competes and Penalty Provisions*

February 2017 Multnomah Lawyer
*Making Contact:  The "No Contact" Rule in the Corporate Context*

March 2017 Multnomah Lawyer
*The Road Not Taken:  Declining Representation*

April 2017 Multnomah Lawyer
*Reciprocal Discipline North and South of the Columbia*

May 2017 Multnomah Lawyer
*Spring Cleaning Revisited: Electronic File Retention and Destruction*

June 2017 Multnomah Lawyer
*Legal Capital:  Crowdfunding Litigation*

July-August 2017 Multnomah Lawyer
*Double Indemnity:  Indemnification Provisions in Engagement Agreements*

September 2017 Multnomah Lawyer
*Back to the Future:  New OSB Opinion on File Transitions*

October 2017 Multnomah Lawyer
*Going Dark:  When Clients Disappear*

Fall 2017 Oregon State Bar Litigation Journal
*Uncomfortable Position:*
*Disputed Third-Party Claims Against Law Firm Trust Accounts*

November 2017 Multnomah Lawyer
*Employing Suspended or Disbarred Lawyers:  A Tale of Two States*

16

December 2017 Multnomah Lawyer
*What Can You Say?  Responding to Negative Online Reviews*

Fall 2017 Oregon Association of Defense Counsel The Verdict
*Defense Conflicts:*
*Recent Developments for Insurance Defense Counsel in the Northwest*

January 2018 Multnomah Lawyer
*Delicate Dance:  Risk Management Considerations in Law Firm Mergers*

February 2018 Multnomah Lawyer
*See You in Court:  Threatening Others*

March 2018 Multnomah Lawyer
*Due Process:  Changes to Oregon's Lawyer Discipline System*

April 2018 Multnomah Lawyer
*Free Speech:  Changes to Oregon's Lawyer Marketing Rules*

April 2018 Oregon State Bar Bulletin
*Wise Counsel:  General Counsel for Small and Mid-Size Law Firms*

May 2018 Multnomah Lawyer
*Home Remedies:  Making a Bad Situation Worse*

June 2018 Multnomah Lawyer
*Self-Defense:  Representing Yourself in Lawyer Disciplinary Proceedings*

July 2018 Oregon State Bar Bulletin
*Sharing Space:  Risk Management Issues When Coworking*

July-August 2018 Multnomah Lawyer
*Unraveling:  When Conflicts Develop in Joint Representation*

September 2018 Multnomah Lawyer
*What Lawyers Should Know About Judicial Ethics*

October 2018 Multnomah Lawyer
*Risk Management for Pro Bono Work*

November 2018 Multnomah Lawyer
*Conflicts Counsel:  A Practical Solution for a Difficult Problem*

17

December 2018 Multnomah Lawyer
*New Year's Resolutions: Consistency in Conflict Checks and Closing Files*

January 2019 Multnomah Lawyer
*Fair Trial:  New Oregon Ethics Opinion on "Affidaviting" Judges*

February 2019 Multnomah Lawyer
*Honest Broker:  Lawyers as Escrow Agents*

March 2019 Multnomah Lawyer
*Aging in Place:  Risk Management for Older Lawyers and Their Firms*

March 2019 Oregon Business Lawyer
*Risky Business:  Ethical & Risk Management Issues for Business Lawyers*

April 2019 Multnomah Lawyer
*Contacting Former Employees North and South of the Columbia*

April 2019 Oregon State Bar Bulletin
*From Beginning to End:  Risk Management Over the Life Cycle of Technology*

May 2019 Multnomah Lawyer
*Instant Answers:  Providing Advice under Time Constraints*

June 2019 Multnomah Lawyer
*Estates and Trusts:  Who Is the Client?*

July-August 2019 Multnomah Lawyer
*In Between:  Duties to Prospective Clients*

September 2019 Multnomah Lawyer
*Home Turf:  Handling Multiple Cases in the Same Courthouse*

October 2019 Multnomah Lawyer
*Helping Those in Need:  Oregon's Unique Lawyer-Mediator Rule*

November 2019 Multnomah Lawyer
*"The File"—What It Is and What It's Not*

December 2019 Multnomah Lawyer
*One at a Time:  Restrictions on Future Representation in Settlement Agreements*

18

January 2020 Multnomah Lawyer
*New Year, New Beginning:  Leaving a Law Firm*

February 2020 Multnomah Lawyer
*"Illegal" Fees:  How to Avoid Getting Pulled Over*

March 2020 Multnomah Lawyer
*Get It in Writing:  Fixed Fees "Earned Upon Receipt"*

April 2020 Multnomah Lawyer
*Who Is the Client?  Representing Closely Held Corporations*

April 2020 Oregon State Bar Bulletin
*The Human Dimension:*
*Lawyers, Staff Play Critical Role in Fighting Tech-Enabled Scams*

May 2020 Multnomah Lawyer
*Trust Accounts:  What Goes In and What Comes Out*

June 2020 Multnomah Lawyer
*Golden Handcuffs:  Restrictive Covenants in Law Firm Employment Agreements*

July-August 2020 Multnomah Lawyer
*Keeping Track:  Calendaring in Law Firm Risk Management*

September 2020 Multnomah Lawyer
*Hot Money:  Disputed Funds in Trust*

October 2020 Multnomah Lawyer
*Pro Bono:  Risk Management Considerations for Nonprofit Board Membership*

November 2020 Multnomah Lawyer
*What Malpractice Renewal Questionnaires*
*Teach About Law Firm Risk Management*

December 2020 Multnomah Lawyer
*Giving Thanks:  "Thank You" Gifts to Referral Sources*

January 2021 Multnomah Lawyer
*In Transit:  Temporary Practice While Pending Reciprocal Admission*

February 2021 Multnomah Lawyer
*Missing in Action:  When Clients Disappear During Settlement Negotiations*

19

March 2021 Multnomah Lawyer
*Getting Covered:  Cyber Risk Insurance*

April 2021 Multnomah Lawyer
*Gone Fishing:  Closing a Law Practice*

April 2021 Oregon State Bar Bulletin
*A Balancing Act:  Conflicts and Confidentiality in Insurance Defense*

May 2021 Multnomah Lawyer
*The Sound of Silence:  "Noisy Withdrawal"*

June 2021 Multnomah Lawyer
*In-House Counsel:  Same Issues, Different Perspective*

July-August 2021 Multnomah Lawyer
*Judicial Guidance:  When a Court Order Is Your Friend*

September 2021 Multnomah Lawyer
*Limited Fund Conflicts and a Practical Solution*

October 2021 Multnomah Lawyer
*RPC 6.5:  Conflict Solution for Pro Bono Clinics*

November 2021 Multnomah Lawyer
*Risk Management Basics, Part 1:  Conflict Checks*

December 2021 Multnomah Lawyer
*Risk Management Basics, Part 2:  Engagement Agreements*

January 2022 Multnomah Lawyer
*Risk Management Basics, Part 3:  Closing Files*

February 2022 Multnomah Lawyer
*What Can You Say?*
*Rebutting Negative Online Reviews*

March 2022 Multnomah Lawyer
*No Law Firm Lawyer Is an Island:*
*Imputed Conflicts under RPC 1.10(a)*

20

April 2022 Multnomah Lawyer
*Reasonable Expectations:*
*Oregon's Test for Attorney-Client Relationships*

May 2022 Multnomah Lawyer
*Traps for the Unwary:*
*The Dangers of Dabbling*

June 2022 Multnomah Lawyer
*Hybrid Offices, Part 1:*
*Inside the Brick and Mortar*

July-August 2022 Multnomah Lawyer
*Hybrid Offices, Part 2:*
*Beyond the Brick and Mortar*

Summer 2022 Oregon State Bar Litigation Journal
*The Curious Case of the Purloined Document*

September 2022 Multnomah Lawyer
*Difficult Conversation:  Confronting Clients about Perjury*

October 2022 Multnomah Lawyer
*Helping Those in Need:*
*Clients with Diminished Capacity*

November 2022 Multnomah Lawyer
*Fair Play:  Compensating Fact Witnesses*

December 2022 Multnomah Lawyer
*RPC 2.3:  Opinions to Third Persons*

January 2023 Multnomah Lawyer
*What's In a Name?*
*Rules Governing Law Firm Names*

February 2023 Multnomah Lawyer
*What Was Old Is New:*
*Soliciting Clients under RPC 7.3*

March 2023 Multnomah Lawyer
*The Road Ahead:  Oregon's New Comity Admission Rule*

21

April 2023 Multnomah Lawyer
*Electronic Geography:  New OSB Opinion on Remote Work*

May 2023 Multnomah Lawyer
*My Soup Was Cold!*
*New OSB Opinion on Rebutting Negative Online Reviews*

June 2023 Multnomah Lawyer
*Depositing Funds into Trust to Correct Bank Errors or Thefts*

June 2023 Oregon State Bar Bulletin
*The New Geography of Law Firm Risk Management:*
*Handling Hybrid, Remote Work*

July-August 2023 Multnomah Lawyer
*New OSB Opinion on Staff Theft of Client Funds*

September 2023 Multnomah Lawyer
*Stuck in the Middle:  Disputed Funds Held in Trust*

October 2023 Multnomah Lawyer
*RPC 1.2(b):  Limited Scope Representations*

November 2023 Multnomah Lawyer
*Splitting Fees in Oregon and Beyond*

December 2023 Multnomah Lawyer
*Delicate Subject:  Helping Colleagues in Need*

January 2024 Multnomah Lawyer
*New Year, New Tech:  Competence and Confidentiality*

February 2024 Multnomah Lawyer
*Five Things Not to Do When Responding to Bar Complaint*

March 2024 Multnomah Lawyer
*RPC 4.2 and the "Reply All" Conundrum*

April 2024 Multnomah Lawyer
*Two Oregon Privilege Decisions of Note*

May 2024 Multnomah Lawyer
*"Informed Consent"*

22

June 2024 Multnomah Lawyer
RPC 1.12:  Arbitrators, Mediators, and *Pro Tem* Judges

July-August 2024 Multnomah Lawyer
*Gone but Not Forgotten:  Unclaimed Funds in Trust Accounts*

September 2024 Multnomah Lawyer
*Remember Me?  Former Client Conflicts*

October 2024 Multnomah Lawyer
*RPC 2.4(b):  Oregon's Unique Lawyer-Mediator Rule*

November 2024 Multnomah Lawyer
*Using Virtual Assistants in Law Practice:*
*Risk Management Considerations*

December 2024 Multnomah Lawyer
*Whatever Happened to "Zeal"?*

January 2025 Multnomah Lawyer
*What Was Old Is New:*
*Inadvertent Production in an Age of Artificial Intelligence*

February 2025 Multnomah Lawyer
*Two-Level Disqualification:*
*The Lawyer Witness Rule*

March 2025 Multnomah Lawyer
*Choosing Wisely:*
*Vetting Clients on Intake*

April 2025 Multnomah Lawyer
*Sales Pitch:*
*New OSB Opinion on Using Client Information in Lawyer Marketing*

May 2025 Multnomah Lawyer
*Good Counsel:*
*New OSB Opinion on AI Tools in Law Practice*

June 2025 Multnomah Lawyer
*Speaking Out:*
*Talking with the Media*

23

July 2025 Oregon State Bar Bulletin
*Keeping a Secret:*
*Preserving Client Confidentiality in "Interesting Times"*

July-August 2025 Multnomah Lawyer
*Delicate Dance:  Job Negotiations with Opposing Counsel*

September 2025 Multnomah Lawyer
*Gone But Not Forgotten:*
*Conflicts and Claims Involving Former Firm Lawyers*

October 2025 Multnomah Lawyer
*Helping Those in Need:*
*New Rule on Financial Assistance for Indigent Pro Bono Clients*

November 2025 Multnomah Lawyer
*Where's My Money:   Compensation for Past Work*

December 2025 Multnomah Lawyer
*Not So Fast!  Clients Offering Opponents' Privileged Materials*

January 2026 Multnomah Lawyer
*Lawyer Beware:  Pitfalls of Trying to Silence the Squeaky Wheel*

February 2026 Multnomah Lawyer
*Online Reviews:  Paying for Them or Removing Them*

March 2025 Multnomah Lawyer
*AI Hallucinations:  Could It Happen Here?*

**Ethics—Washington**
August 2004 Washington State Bar News
*Why Conflicts Matter*

October 2004 Washington State Bar News
*Managing Conflicts*

December 2004 Washington State Bar News
*Alternative Fee Arrangements: How Long Do the PRCs Apply?*

May 2005 Washington State Bar News
*Inadvertent Production: Gold Nugget or Rotten Egg?*

24

July 2005 Washington State Bar News
*Who's Fair Game? Who You Can & Can't Talk to On the Other Side*

November 2005 Washington State Bar News
*Taking Stock: Investing in Clients*

January 2006 Washington State Bar News
*Keeping Counsel: The Attorney-Client Privilege Within Law Firms*

March 2006 Washington State Bar News
*The "Who is the Client?" Question*

May 2006 Washington State Bar News
*Discovery Ethics: Playing Fair While Playing Hard*

July 2006 Washington State Bar News
*Have License, Will Travel: A Roadmap to Lawyer Licensing Around the Northwest*

November 2006 Washington State Bar News
*A Tri-State Look at the Tri-Partite Relationship: Key Insurance Defense Issues in Washington, Oregon & Idaho*

February 2007 Washington State Bar News
*In-House Counsel: Same Issues, Different Perspective*

April 2007 Washington State Bar News
*Where Is the Law? A Resource Guide to the Law of Lawyering*

June 2007 Washington State Bar News
*Inadvertent Production: Where We've Been & Where We're Going*

August 2007 Washington State Bar News
*The "Who Is the Client?" Question Revisited*

October 2007 Washington State Bar News
*The Lawyer-Witness Rule: What It Is and What It Isn't*

January 2008 Washington State Bar News
*Law Firm Marketing, Part 1: Theory*

April 2008 Washington State Bar News
*Law Firm Marketing, Part 2: Practice*

25

July 2008 Washington State Bar News
*Defensive Lawyering (And Why It's Good for Both Lawyers & Clients)*

October 2008 Washington State Bar News
*Blast from the Past: The Former Client Conflict Rule*

December 2008 Washington State Bar News
*We the People: Representing the Government*

February 2009 Washington State Bar News
*Applied Legal Ethics: Disqualification in Washington Courts*

May 2009 Washington State Bar News
*Billing Ethics*

July 2009 Washington State Bar News
*Breaking Up: Who Gets What When Lawyers and Clients Split?*

October 2009 WSBA Bar News Ethics & the Law Column
*Inadvertent Production Revisited (Again)*

February 2010 Washington State Bar News
*Saying Goodbye: The Withdrawal Rule*

April 2010 Washington State Bar News
*Spring Cleaning: File Retention and Destruction*

June 2010 Washington State Bar News
*Outsourcing:  Here and There*

August 2010 Washington State Bar News
*Discovery Ethics Revisited*

October 2010 Washington State Bar News
*Settlement Ethics*

December 2010 Washington State Bar News
*Changing Horses in Midstream:  Modifying Fee Agreements*

March 2011 Washington State Bar News
*Inadvertent Production Revisited (Yet Again)*

26

June 2011 Washington State Bar News
*Electronic Ethics, Part 1:  Friends and Other Strangers*

September 2011 Washington State Bar News
*Electronic Ethics, Part 2:  Electronic Communication, Metadata and File Storage*

December 2011 Washington State Bar News
*The Lateral-Hire Screening Rule:  How It Works*

February 2012 Washington State Bar News
*Lawyer Beware:  The Consumer Protection Act*

May 2012 Washington State Bar News
*Attorney Liens:  Tool or Trap?*

August 2012 Washington State Bar News
*Know Before You Go:  Practicing Across State Lines in the Northwest*

November 2012 Washington State Bar News
*Electronic Update:  New WSBA Advisory Opinions on Metadata and Cloud Computing*

March 2013 WSBA NWLawyer
*Saying Goodbye:  Documenting the End of a Representation*

July-August 2013 WSBA NWLawyer
*Good Help:  Lawyer Responsibility for Staff Conduct*

September 2013 WSBA NWLawyer
*Good Cents:  The RPCs and Fee Disputes*

November 2013 WSBA NWLawyer
*Cross-Fire:  Subpoenas of Law Firm Files*

April-May 2014 WSBA NWLawyer
*Growing Up and Growing Old:*
*Ethics Issues in the Life Cycle of a Business*

July-August 2014 WSBA NWLawyer
*Electronic IQ:*
*Competence in an Era of High-Tech Lawyering*

27

February 2015 WSBA NWLawyer
*I-502 and Lawyers:*
*Guidance from the Supreme Court*

April 2015 WSBA NWSidebar
*Jacobson v. INC Research LLC:*
*Court Allows Supplemental Proceeding to Enforce Attorney Liens*

April-May 2015 WSBA NWLawyer
*Digital Self-Portraits:*
*Investigations through Electronic Social Media*

April 2015 WSBA NWSidebar
*Taylor v. Bell:*
*Court of Appeals Emphasizes Importance of Defining Scope of Representation*

May 2015 WSBA NWSidebar
*Cruz v. Chavez:*
*Court of Appeals Cites "No Contact" Rule in Rejecting Settlement*

June 2015 WSBA NWSidebar
*Emerging Regional Consensus:*
*Prohibiting Indemnification by Plaintiffs' Counsel*

July 2015 WSBA NWSidebar
*Court of Appeals Revisits the "Who Is the Client?"*
*Question in Insurance Defense*

Summer 2015 WDTL Defense News
*The "No Contact" Rule and LLLTs*

August 2015 WSBA NWSidebar
*Court of Appeals on What Is a "Necessary" Witness*
*Under the Lawyer-Witness Rule*

August 2015 WSBA NWSidebar
*Court of Appeals Discusses Disqualification*
*Standards for Former Client Conflicts*

September 2015 WSBA NWSidebar
*Court of Appeals Outlines Statute of Limitation*
*For Lawyer Breach of Fiduciary Duty Claims*

28

October 2015 WSBA NWSidebar
*Court of Appeals Clarifies Disqualification Standards*
*for Improper Access to Privileged Information*

November 2015 WSBA NWSidebar
*New Ethics Opinion on Process Server*
*Communication with Opposing Party*

December 2015 WSBA NWSidebar
*Eastern District Addresses*
*Lateral-Hire Screening to Avoid Disqualification*

January 2016 WSBA NWSidebar
*Appeals Court Holds No Duty to Nonclient*
*Trust Beneficiary in Legal Malpractice Case*

January 2016 WSBA NWSidebar
*Court of Appeals Cites Common Law Roots*
*of Lawyer-Witness Rule in Overturning Conviction*

February 2016 WSBA NWLawyer
*Danger Zone:  Business Deals with Clients*

February 2016 WSBA NWSidebar
*Court of Appeals Outlines Contours of*
*"Continuous Representation Rule" for Legal Malpractice*

April 2016 WSBA NWSidebar
*Court of Appeals Reiterates No CPA*
*Claims for Asserted Malpractice Alone*

April-May 2016 WSBA NWLawyer
*"Gray Area":  Selling a Law Practice*

April 2016 WSBA NWSidebar
*Do You Need an Expert for a Legal Malpractice Case?*
*Yes, No and Maybe So…*

May 2016 WSBA NWSidebar
*Court of Appeals Discusses Interplay*
*Between RPC 1.16 and CR 71 on Withdrawal*

29

June 2016 WSBA NWSidebar
*U.S. District Court Disqualification Case Highlights*
*Importance of Engagement Agreements*

June 2016 WSBA NWLawyer
*Statistically Speaking:*
*Using Statistics to Guide Risk Management*

June 2016 WSBA NWSidebar
*Court of Appeals Addresses Insurance Defense*
*Conflicts in Reservation of Rights Context*

August 2016 WSBA NWSidebar
*Court of Appeals Discusses Lawyer Web Advertising*
*under the Consumer Protection Act*

August 2016 WSBA NWSidebar
*Court of Appeals Holds Fee Rules Don't Apply*
*to In-House Counsel's Wages*

September 2016 WSBA NWSidebar
*Supreme Court Reaffirms "Actual Innocence" Requirement*
*For Malpractice Claims from Criminal Cases*

September 2016 WSBA NWSidebar
*Court of Appeals Finds Fee Dispute Alone*
*Doesn't Support Consumer Protection Act Claim*

October 2016 WSBA NWLawyer
*Unwelcome Visitor:*
*Garnishment of Trust Accounts*

October 2016 WSBA NWSidebar
*Court of Appeals Outlines Standards for Implied Waiver of*
*Attorney-Client Privilege in Settlement Reasonableness Hearings*

November 2016 WSBA NWSidebar
*Court of Appeals Discusses Arbitration of Legal Malpractice Claims*

November 2016 WSBA NWSidebar
*Supreme Court Holds No Privilege for Communications with Former Employees*

30

December 2016-January 2017 WSBA NWLawyer
*The Problem of "Bad" Clients*

December 2016 WSBA NWSidebar
*New Advisory Opinion on "Virtual Offices"*

February 2017 WSBA NWSidebar
*U.S. District Court Highlights Importance of Defining Client Decision-Maker*

March 2017 WSBA NWSidebar
*Court of Appeals Distinguishes Legal Malpractice and Breach of Fiduciary Duty*

April 2017 WSBA NWSidebar
*Court of Appeals Reiterates No Duty to Will Beneficiaries*

June 2017 WSBA NWLawyer
*Law Firm Hygiene:  Small Steps Can Pay Big Dividends*

July 2017 WSBA NWSidebar
*Knowing When to Go:*
*Court of Appeals Affirms Sanctions Against Lawyer*
*for Continuing After Disqualification*

July-August 2017 WSBA NWLawyer
*New Ways, New Issues:  Law Firm Risk Management for Virtual Offices*

July 2017 WSBA NWSidebar
*Court of Appeals Discusses Implied Waiver of Privilege*
*When Claiming Attorney Fees as Damages*

August 2017 WSBA NWSidebar
*Court of Appeals Highlights Importance of Written Fee Agreement*

August 2017 WSBA NWSidebar
*Court of Appeals Rules on Authority of Insurance Defense Counsel*

October 2017 WSBA NWLawyer
*Engagement Agreements:  The Cornerstone of Law Firm Risk Management*

October 2017 WSBA NWSidebar
*Supreme Court Holds Order Allowing Withdrawal Precludes*
*Subsequent Malpractice Claim Over the Withdrawal*

November 2017 WSBA NWLawyer
*Parting Ways:  The Mechanics of Withdrawal*

31

January 2018 WSBA NWSidebar
*New WSBA Advisory Opinion on Withdrawal*

January 2018 WSBA NWSidebar
*Federal Court Decision Highlights*
*Importance of Engagement Agreements*

February 2018 WSBA NWLawyer
*Local Counsel in an Era of National Litigation*

March 2018 WSBA NWSidebar
*Supreme Court Approves RPC Amendments on Imputed Conflicts*

March 2018 WSBA NW Lawyer
*The "No Contact" Rule Revisited*

March 2018 WSBA NWSidebar
*Court of Appeals Interprets "Proceeds"*
*Attached by Attorney Lien in Dissolution Case*

April 2018 WSBA NWSidebar
*Court of Appeals:  Claiming Attorney Fees as Damages Waives Privilege*

April-May 2018 WSBA NWLawyer
*Delicate Art:  Responding to Negative On-Line Reviews*

June 2018 WSBA NWSidebar
*Appeals Court Considers Prosecutor's Subpoena for*
*Letter Held by Former Defense Counsel*

June 2018 WSBA NWSidebar
*Confirming When Representation Begins Matters*

July 2018 WSBA NWLawyer
*The Tripartite Relationship in the 21st Century*

August 2018 WSBA NWSidebar
*Supreme Court Holds No Double Jeopardy for Lawyer Discipline*

August 2018 WSBA NWLawyer
*Changing Teams:*
*New WSBA Advisory Opinion on Moving from Firm to Firm in Private Practice*

September 2018 WSBA NWLawyer
*Two-Dimensional Disqualification:  The Lawyer-Witness Rule*

32

December 2018 WSBA NWSidebar
*U.S. District Court Highlights Importance of "Non-Engagement" Letters*

December 2018 WSBA NWLawyer
*Advance Waivers as a Practice Management Tool*

January 2019 WSBA NWSidebar
*New Marijuana-Related Amendments to the RPCs*

January 2019 WSBA NWLawyer
*Beyond Discipline:  The RPCs and the Law of Lawyering*

February 2019 WSBA NWSidebar
*New WSBA Advisory Opinion on "Quadripartite" Relationships*

February 2019 WSBA NWSidebar
*New WSBA Advisory Opinion on Contacting Government Employees*

March 2019 WSBA NWLawyer
*Looking Forward:  Proposed Amendments to Lawyer
Marketing Rules under Review*

April 2019 WSBA NWSidebar
*Court of Appeals Discusses Elected Prosecutor Conflicts*

April 2019 WSBA NWLawyer
*Legal Capital:  Law Firm Risk Management in Litigation Funding*

May 2019 WSBA NWSidebar
*Appeals Court Weighs in on Successor Personal
Representative Malpractice Claims*

May 2019 WSBA NWLawyer
*Attorney Liens:  Proceed with Caution*

June 2019 WSBA NWLawyer
*Taking Stock:  Navigating Risk When Investing in Clients*

July-August 2019 WSBA NWLawyer
*Double Trouble:  Reciprocal Discipline Reporting Around the Northwest*

August 2019 WSBA NWSidebar
*Lawyer as Witness:  What the Court of Appeals Said about RPC 3.7*

33

September 2019 WSBA NWLawyer
*Electronic Files:  Same Duties, New Dynamics*

September 2019 WSBA NWSidebar
*Washington Supreme Court:  In-House Counsel Can Sue for Wrongful Discharge*

October 2019 WSBA NWSidebar
*Court of Appeals:  New Standard in Disqualification for Former Client Conflicts*

October 2019 WSBA NWLawyer
*First Do No Harm:  Law Firm Risk Management in Pro Bono Work*

November 2019 King County Bar Association Bar Bulletin
*Conflicts Revisited:  Current Client Conflicts*

November 2019 WSBA NWLawyer
*Common Clauses:  Dispute Resolution Provisions in Fee Agreements*

November 2019 WSBA NWSidebar
*Appeals Court Rejects Corporate Attorney-Client Privilege
for "Functional Employees"*

December 2019 King County Bar Association Bar Bulletin
*Conflicts Revisited:  Former Client Conflicts*

December 2019-January 2020  WSBA NWLawyer
*All in the Family:  Corporate Family Conflicts*

February 2020 WSBA NWLawyer
*Dual Roles:  Lawyers as Corporate Directors*

February 2020 WSBA NWSidebar
*State Supreme Court Revisits Elected Prosecutor Conflicts*

March 2020 WSBA NWLawyer
*Doing Business:  RPC 5.7 and "Law-Related Services"*

April 2020 King County Bar Association Bar Bulletin
*Confidentiality Revisited, Part 1:  The Duty*

April/May 2020 Washington State Bar News
*Spring Cleaning:  File Retention and Destruction*

34

April 2020 WSBA NWSidebar
*Oregon Lawyer Disciplined Over Rebuttals of Negative Online Reviews*

May 2020 WSBA NWSidebar
*Washington Supreme Court Holds*
*Unauthorized Practice of Law Strict Liability Offense*

May 2020 WSBA NWSidebar
*Plein Redux:  Supreme Court Reverses Court of Appeals on*
*Disqualification for Former Client Conflict*

June 2020 King County Bar Association Bar Bulletin
*Confidentiality Revisited, Part 2:  The Exceptions*

June 2020 Washington State Bar News
*Cautionary Tale:  Internet Scam Targeting Lawyer Trust Accounts*

June 2020 WSBA NWSidebar
*Heading South:  Oregon Allows Temporary*
*Practice Pending Reciprocal Admission*

July 2020 WSBA NWSidebar
*Fine Print:  Federal District Court Distinguishes*
*Disciplinary and Malpractice Defense in Coverage Decision*

September 2020 Washington State Bar News
*Tough Talk:  Telling Clients About Mistakes*

October 2020 Washington State Bar News
*Pro Bono:  Doing It Right While Doing the Right Thing*

October 2020 WSBA NWSidebar
*Risk Management by the Numbers:  New ABA Study on Malpractice Claims*

November 2020 Washington State Bar News
*Exploring 3 Keys to an Ethical Exit*

December 2020 King County Bar Association Bar Bulletin
*Grounds for, and Mechanics of, Withdrawal—Part 1*

December 2020 WSBA NWSidebar
*Supreme Court Applies Corporate Attorney-Client*
*Privilege to "Functional Employees"*

35

December 2020-January 2021 Washington State Bar News
*In House Counsel:  Things Look Different Here*

January 2021 King County Bar Association Bar Bulletin
*Grounds for, and Mechanics of, Withdrawal—Part 2*

January 2021 WSBA NWSidebar
*ABA Issues New Ethics Opinion on Remote Working*

January 2021 WSBA NWSidebar
*Washington Supreme Court Approves*
*Major Changes to Lawyer Marketing Rules*

February 2021 Washington State Bar News
*A Useful Tool:  Lateral Hire Screening*

February 2021 King County Bar Association Bar Bulletin
*ABA's Profile of Legal Malpractice Claims 2016-2019*

Winter 2021 Washington Defense Trial Lawyers Defense News
*Heading South:  Key Differences Between the*
*Washington and Oregon Versions of the "No Contact" Rule*

March 2021 Washington State Bar News
*Don't Try This at Home:*
*Responding to Cyber Intrusions and Data Breaches*

March 2021 WSBA NWSidebar
*Court of Appeals Issues Rare Decision on*
*Revoking Consent to Conflict Waiver*

April-May 2021 Washington State Bar News
*Hanging It Up:  Closing a Law Practice on Retirement*

May 2021 WSBA NWSidebar
*Court of Appeals Voids Fee-Sharing Agreement*

June 2021 Washington State Bar News
*Words Matter:  The Terminology Section of the RPCs*

July-August 2021 Washington State Bar News
*Deed of Trust:  Lawyer as Escrow*

36

July 2021 WSBA NWSidebar
*Federal Court Looks at Prospective Client Rule*

August 2021 WSBA NWSidebar
*Federal Court Looks to Choice-of-Law Provision in Legal Malpractice Case*

September 2021 Washington State Bar News
*Get It in Writing:*
*Practical Approaches to Documenting Fee Agreements and Modifications*

October 2021 WSBA NWSidebar
*Federal Court Enforces Arbitration Provision in Engagement Agreement*

October 2021 Washington State Bar News
*RPC 1.14:  Representing Clients with Diminished Capacity*

November 2021 Washington State Bar News
*What's Left?  Law Firm Risk Management After the Marketing Rule Amendments*

December 2021-January 2022 Washington State Bar News
*New Normal:  Risk Management for "Hybrid" Offices*

Fall 2021 Washington Defense Trial Lawyers Defense News
*Uncomfortable Position:*
*Conflicts Among Jointly Represented Clients*

January 2022 WSBA NWSidebar
*Washington Supreme Court Outlines*
*Contours of Confidentiality Rule*

February 2022 Washington State Bar News
*Common Problems with Common Representation*

March 2022 Washington State Bar News
*RPC 1.13:  Organizational Clients*

April-May 2022 Washington State Bar News
*Tough Call:  Reporting Misconduct under RPC 8.3*

April 2022 WSBA NWSidebar
*Federal Court Finds No Personal Jurisdiction*
*Over Out-of-State Attorney*

37

May 2022 WSBA NWSidebar
*Washington Court of Appeals Addresses
"Professional Judgement" Rule in Legal Malpractice*

June 2022 Washington State Bar News
*Done Deal:  Settlement Ethics*

June 2022 WSBA NWSidebar
*Court of Appeals:  New Management Entitled to Law Firm File*

July-August 2022 Washington State Bar News
*Check Please!  Risk Management for Timekeeping and Billing*

August 2022 WSBA NWSidebar
*Federal Court Orders Attorney Testimony in Insurance Bad Faith Case*

September 2022 Washington State Bar News
*Disqualification:  The "Red Card" of Litigation Ethics*

October 2022 Washington State Bar News
*Anonymous Assistance:  Ghostwriting in Washington State Courts*

November 2022 Washington State Bar News
*What Lawyers Should Know About Judicial Ethics*

November 2022 WSBA NWSidebar
*Court of Appeals Discusses "Professional Judgment" Rule for Legal Malpractice*

November 2022 WSBA NWSidebar
*Federal Court Rules Tardy Disqualification Motion Waived*

December 2022-January 2023 Washington State Bar News
*RPC 2.3:  Evaluation for Use by Third Persons*

Fall 2022 Washington Defense Trial Lawyers Defense News
*"Reply All":  Washington Takes a More Cautious Approach than the ABA*

January 2023 WSBA NWSidebar
*Federal Court Disqualifies Law Firm for Conflict with Key Witness*

February 2023 Washington State Bar News
*Team Sport:  Co-Counsel Relationships*

38

February 2023 WSBA NWSidebar
*Court of Appeals Addresses Receipt of*
*Inadvertently Produced Privileged Documents*

February 2023 WSBA NWSidebar
*Supreme Court Examines Right to Counsel*
*Involving Criminal Defense Lawyer Not Licensed in Washington*

March 2023 WSBA NWSidebar
*Timing Is Everything:*
*Motion to Withdraw with Pending Summary Judgment Denied*

March 2023 Washington State Bar News
*RPC 5.6(a):  Restrictive Covenants in Law Firm Employment Agreements*

April/May 2023 Washington State Bar News
*RPC 3.5:  Jury Research Before and After the Verdict*

May 2023 WSBA NWSidebar
*Court of Appeals Rules on Law Firm Trade Secrets Claim*

June 2023 Washington State Bar News
*Here and There:  Remote Work in Washington and Beyond*

June 2023 WSBA NWSidebar
*Federal Court Finds No Private Right of Action for Unauthorized Practice*

July/August 2023 Washington State Bar News
*RPC 1.12:  Conflicts and Former Judges, Arbitrators, and Mediators*

July 2023 WSBA NWSidebar
*Court of Appeals Issues Rare Decision on Litigation Privilege*

August 2023 WSBA NWSidebar
*Federal Court Disqualifies In-House Counsel*

September 2023 Washington State Bar News
*My Soup Was Cold!*
*Tips for Safely Rebutting Negative Online Reviews*

October 2023 Washington State Bar News
*RPC 6.5:  A Practical Solution for Conflicts at Pro Bono Clinics*

39

November 2023 WSBA NWSidebar
*Federal Court Applies Attorney-Client Privilege*
*to "Functional Employee" of Corporation*

November 2023 Washington State Bar News
*The Chatbot Made Me Do It!*
*Competence and Confidentiality in an Age of Artificial Intelligence*

November 2023 WSBA NWSidebar
*Court of Appeals Upholds Fee Allocation*
*in Law Firm Separation Clause*

December 2023 WSBA NWSidebar
*Court of Appeals Cites "End of Engagement"*
*Letter in Dismissing Claim Against Law Firm*

December 2023-January 2024 Washington State Bar News
*Nuts & Bolts:  The Mechanics of Conflict Waivers*

January 2024 WSBA NWSidebar
*Federal Court Surveys Need for Expert to Support Legal Malpractice Claim*

February 2024 Washington State Bar News
*RPC 1.4:  The Communication Rule*

February 2024 WSBA NWSidebar
*Court of Appeals Discusses Emotional Distress Damages for Legal Malpractice*

March 2024 WSBA NWSidebar
*Federal Court Denies Disqualification on*
*Lawyer-Witness Rule in Bad Faith Litigation*

Winter 2023-2024 WDTL Defense News
*Delicate Dance:  Navigating Conflicts When Defending*
*Under a Reservation of Rights*

March 2024 Washington State Bar News
*Expecting the Unexpected:*
*Reducing Ambiguity in Law Firm Risk Management*

March 2024 WSBA NWSidebar
*Court of Appeals Parses Intersection of Doctor-Patient*
*and Attorney-Client Privileges in Medical Malpractice Litigation*

40

April-May 2024 Washington State Bar News
*Memorial Day:  Duties to Deceased Clients*

April 2024 WSBA NWSidebar
*Court of Appeals Affirms Dismissal of
Legal Malpractice Claim on Lack of Causation*

May 2024 WSBA NWSidebar
*Federal Court Relies on Washington Decision to
Order Return of Confidential Documents*

June 2024 Washington State Bar News
*Deposition Misconduct:  Rules, Risks, and Remedies*

June 2024 WSBA NWSidebar
*Court of Appeals Distinguishes "Injury" from "Damages"
in Holding Malpractice Claim Time-Barred*

July/August 2024 Washington State Bar News
*Good Help:  Non-lawyer Assistants—Human and Virtual*

August 2024 WSBA NWSidebar
*Court of Appeals Affirms Order Prohibiting
Pro Se Party from Contacting Represented Opponent*

August 2024 WSBA NWSidebar
*Court of Appeals Affirms Denial of Withdrawal with Sanctions Pending*

September 2024 Washington State Bar News
*Conflicts Arising from Sanctions Motions:
An Analytical Framework*

September 2024 WSBA NWSidebar
*Federal Court Orders Lawyer to Turn Over File to Former Client*

October 2024 Washington State Bar News
*RPC 4.3:  Dealing with Unrepresented Persons*

November 2024 WSBA NWSidebar
*Court of Appeals Affirms Dismissal of
Legal Malpractice Claim on Statute of Limitation*

41

November 2024 Washington State Bar News
*Hard at Work:  Diligence under RPC 1.3*

December 2024-January 2025 Washington State Bar News
*Reckoning:  The Duty to Correct under RPC 3.3*

February 2025 Washington State Bar News
*Client Perjury:  That Sinking Feeling*

March 2025 Washington State Bar News
*RPC 1.18:  Duties to Prospective Clients*

March 2025 WSBA NWSidebar
*Oregon Issues Ethics Opinion on AI in Law Practice*

April 2025 WSBA NWSidebar
*Federal Court Surveys "Actual Innocence"*
*Requirement for Legal Malpractice Claims*

April-May 2025 Washington State Bar News
*Fair Pay:  Compensating Fact Witnesses*

May 2025 WSBA NWSidebar
*Court of Appeals Navigates Intersection of*
*Doctor-Patient and Attorney-Client Privileges*

June 2025 WSBA NWSidebar
*Court of Appeals Finds No Litigation Privilege*
*for Law Firm Acting as Debt Collection Agency*

June 2025 Washington State Bar News
*RPC 2.1:  Telling Clients Hard Truths*

July 2025 WSBA NWSidebar
*Court of Appeals Addresses*
*Litigation Privilege in Anti-SLAPP Context*

July-August 2025 Washington State Bar News
*Making News:  Talking with the Media*

August 2025 WSBA NWSidebar
*Federal Court Clarifies Fiduciary Exception and Internal Law Firm Privilege*

42

September 2025 Washington State Bar News
*Fessing Up:  The Duty to Correct Inaccurate Legal Citations*

September 2025 WSBA NWSidebar
*Federal Court Addresses Standing to Bring
Disqualification Motion under Former Client Conflict Rule*

October 2025 Washington State Bar News
*Good Counsel:  New WSBA Advisory Opinion
on Reporting Client Data to Legal Aid Funders*

November 2025 WSBA NWSidebar
*Court of Appeals Affirms Disqualification for Former Client Conflict*

November 2025 Washington State Bar News
*'Tis the Season:  Gifts Given and Received*

December 2025 WSBA NWSidebar
*Federal Court Discusses Standard of Care for LPO Malpractice Claims*

December 2025-January 2026 Washington State Bar News
*Whatever Happened to Zeal?*

January 2026 WSBA NWSidebar
*Court of Appeals Finds Receiver Controls
Corporation's Attorney-Client Privilege*

February 2026 Washington State Bar News
*Crossing Over:  Confidentiality at International Borders*

March 2026 WSBA NWSidebar
*Parade of Horribles:
Federal Court Surveys Sanctions for AI Fake Citations*

**Ethics—National**
1997 ABA Professional Lawyer
*Recent Attorney-Client Privilege Decisions: Some Cases of Interest to In-House
Counsel*

1999 ABA Professional Lawyer
*Disqualification Motions and the RPCs:
Recent Decisions Using Ethics Rules as the Basis for Disqualification*

43

1999 ABA Professional Lawyer
*The Inside Story*

2000 Notre Dame Journal of Law, Ethics & Public Policy
*Inside an In-House Legal Ethics Practice*

May 2002 ACCA Docket
*Timing is Everything: When Document Retention Policies & Related In-House Counsel Advice Intersect with Government Investigations & Litigation*

November 2007 DRI For the Defense
*Inside Counsel: The Attorney-Client Privilege Within Law Firms*

February 2008 DRI For the Defense
*Inadvertent Production: Where We've Been & Where We're Going*

June 2008 DRI For the Defense
*Class Action Ethics*

Fall 2008 DRI Professionalism Perspectives
*Cross Fire: Responding to Third Party Subpoenas of Law Firm Files*

February 2009 DRI For the Defense
*Settlement Ethics*

Spring 2009 ABA Professional Lawyer
*Important Choices: Choice of Law under Model Rule 8.5(b)*

Summer 2009 Defense Counsel Journal
*The Double-Edged Sword—Internal Law Firm Privilege and the Fiduciary Exception*

December 2009 DRI For the Defense
*Spoliation Ethics: The Intersection of "Litigation Holds" and Destruction of Evidence*

February 2010 DRI For the Defense
*Beyond Bar Discipline: Why Conflicts Matter*

Spring 2010 ABA Professional Lawyer
*Law Firm Risk Management by the Numbers*

44

October 2010 DRI For the Defense
*Aggregate Settlements:  What They Are and What They Aren't*

January 2011 DRI For the Defense
*In-House Counsel Licensing and the Attorney-Client Privilege*

Spring 2011 ABA Professional Lawyer
*Giving Lawyers Their Due:  Due Process Defenses in Disciplinary Proceedings*

Summer 2011 Defense Counsel Journal
*The Aggregate Settlement Rule:  A Rule in Search of a Definition*

July 2011 DRI For the Defense
*Lawyer-Directed Investigations*

Summer 2011 DRI Professionalism Perspectives
*Disqualification:  Applied Legal Ethics*

June 2012 DRI For the Defense
*Beyond Discipline:  Litigation Remedies for "No Contact" Rule Violations*

Spring 2012 ABA Professional Lawyer
*"Model" Doesn't Mean "Uniform":  The Continuing Importance of State Variation*

July 2013 DRI For the Defense
*Always Allies?  Representing Multiple Defendants in the Same Case*

October 2014 DRI For the Defense
*Fair Play:  Compensating Fact Witnesses*

March 2015 DRI For the Defense
*River Pilot:  Local Counsel in an Age of National Litigation*

Spring 2015 ABA Professional Lawyer
*The Intersection of Professional Duties and Federal Law as
States Decriminalize Marijuana*

Winter 2016 Defense Counsel Journal
*Discretion Is the Better Part of Valor:
Rebutting Negative Online Client Reviews*

45

October 2016 DRI For the Defense
*Internal Law Firm Privilege and the*
*Continuing Duty to Disclose Conflicts*

Fall 2016 ABA Professional Lawyer
*Public Discipline Is More "Public" Than Ever:*
*The Impact of Web-Based Lawyer Rating Services on Discipline*

December 2017 DRI For the Defense
*Insurance Defense:  Conflicts and Confidentiality*

Winter 2018 Defense Counsel Journal
*Law Firm Nightmare:*
*Clients Using Lawyer Services for Ponzi Schemes*

June 2018 DRI For the Defense
*Words Matter:  Corporate Affiliate Conflicts and Disqualification*

Fall 2018 ABA Professional Lawyer
*The Bookkeeper Did It!  Lawyer Responsibility for Staff Theft of Client Funds*

November 2019 DRI For the Defense
*Corporate Contact:  In-House Counsel and the "No Contact" Rule*

August 2020 DRI For the Defense
*Reasonable Suspicion:  Clients Involved in Suspicious Activities*

Fall 2020 ABA Professional Lawyer
*Model Rule 1.16(a)(2):  Where Wellness Meets Withdrawal*

Fall 2021 Defense Counsel Journal
*Center of the Circle:*
*In-House Counsel, the Crime-Fraud Exception and "Reasonable Suspicion"*

December 2021 ALI Practical Lawyer
*Two Lawyers, One Client:*
*Ethical Considerations in Co-Counsel Relationships*

December 2021 DRI For the Defense
*Discreet Counsel:*
*Navigating Confidentiality in Listserv Posts*

46

Fall 2022 Defense Counsel Journal
*The Changing Geography of Law Practice:*
*Law Firm Risk Management Considerations*

Fall 2024 Defense Counsel Journal
*Emerging Artificial Intelligence Risk Management Considerations for Law Firms*

## **Book Chapters**

**Ethics—Oregon**
***Oregon State Bar Ethical Oregon Lawyer (rev. ed. 2015)***
- Chapter 1
  *Overview of Resources on the Law Governing Lawyers*
- Chapter 5
  *Identification of the Client in Organizational Settings*
- Chapter 12
  *Practice Organization, Management & Sales*
- Chapter 19
  *Reciprocal Admissions and Related Licensing Issues*
- Chapter 20 (with co-authors)
  *Conflict Waiver Letters*

***Oregon State Bar Fee Agreement Compendium (rev. ed. 2018)***
- Chapter 11
  *Fixed Fee Agreements*

***Oregon State Bar Land Use (rev. ed. 2010)***
- Chapter 15 (with co-authors)
  *Ethics in Land Use Practice*

**Ethics—Washington**
***Washington State Bar Association Legal Ethics Deskbook (2nd ed. 2020)***
- Chapter 2
  *Law Firm Marketing*
- Chapter 6
  *Law Practice Organization, Management, and Sales*
- Chapter 9
  *Litigation Ethics*
- Chapter 10
  *Identification of the Client in Organizational Settings*
- Chapter 14
  *Legal Malpractice*
- Chapter 17
  *Reciprocal Admission, Multijurisdictional Practice and Choice of Law*

47

***Washington State Bar Association***
***The Law of Lawyering in Washington (2012)***

- Chapter 2 (Co-author)
  *Admission to Practice and Unauthorized Practice*
- Chapter 11
  *Law Firm Marketing*
- Chapter 14
  *Law-Practice Organization, Management, and Sales*
- Chapter 15
  *Legal Malpractice and Other Theories of Lawyer Liability*

***Washington State Bar Association***
***Washington Family Law Deskbook (rev. ed. 2022)***

- Chapter 4
  *Ethical Considerations for the Family Law Practitioner*
- Chapter 5
  *Malpractice*

48

# Exhibit 3

**Mark J. Fucile**
**Legal Ethics Presentations**
*Reprints of Presentation Papers/PowerPoints Available at www.frllp.com*

**Ethics—Idaho**
November 21, 2003
Idaho State Bar
*Ethics for Idaho Business Lawyers & Litigators*
Location: Boise

June 1 and 22, 2007
Idaho State Bar
*High Tech Ethics: Law Firm Risk Management on the Digital Frontier*
Location: Boise & Coeur d'Alene

July 10, 2009
Idaho State Bar
*Law Firm Risk Management in Hard Times*
Location: Boise

**Ethics—Oregon**
November 16, 2000
Oregon Legal Ethics Seminar
*Disqualifications & Sanctions: Recent Developments in the Northwest*
Location: Portland

September 13, 2002
Oregon State Bar
*Defensive Lawyering*
Location: Portland

November 8, 2002
Oregon Law Institute
*Business Ethics Issues in Oregon & Washington: A Tale of Three Cases*
Location: Portland

December 15, 2005
Multnomah Bar
*First Annual Ethics Tune-Up*
Location: Portland

1

2

May 18, 2006
Oregon Eminent Domain Conference
*Condemnation Ethics*
Location: Portland

June 3, 2006
Oregon State Bar Tax Institute
*Section 876 (of Torts, Not the Tax Code) & Why It's Important to Business Lawyers*
Location: Portland

June 17, 2006
Oregon Association of Defense Counsel Annual Meeting
*Litigation Ethics*
Location: Bend

November 3, 2006
Oregon Water Law Conference
*Murky Waters: Ethical Issues in Water Resources Practice*
Location: Portland

December 5, 2006
Multnomah Bar
*Second Annual Ethics Tune-Up*
Location: Portland

March 15, 2007
Multnomah Bar Young Lawyers Section
*Professionalism and Ethics*
Location: Portland

August 11, 2007
Oregon State Bar Real Estate & Land Use Section Annual Meeting
*RPC 4.2's "No Contact" Rule: Who You Can & Can't Talk to on the Other Side*
Location: Bend

September 27, 2007
Oregon State Bar Computer & Internet Law Section
*Electronic Ethics*
Location: Portland

October 12, 2007
Oregon State Bar
*Disclosure & Consent Letters*
Location: Portland

October 23, 2007
Multnomah Bar
*Third Annual Ethics Update*
Location: Portland

October 26, 2007
Oregon Law Institute
*Legal Ethics in Dealing with the Government*
Location: Portland

November 2, 2007
Oregon Water Law Conference
*Tricky Currents:  Ethical Issues in Water Resource Litigation*
Location: Portland

December 27, 2007
Oregon State Bar
*High Tech Ethics: Law Firm Risk Management on the Digital Frontier*
Location: Lake Oswego, Oregon

March 18, 2008
Multnomah Bar Young Litigators Forum
*Professionalism & Ethics*
Location: Portland

May 2, 2008
Oregon Wetlands Conference
 *Avoiding the Swamp:  RPC 4.2's "No Contact" Rule*
Location: Portland

May 30, 2008
Oregon Federal Practice CLE
*Rules Surrounding Disqualification of Counsel*
Location: Portland

3

April 23, 2009
Oregon Wetlands Conference
*Law Firm Risk Management in Real Estate Development Practice*
Location: Portland

October 8, 2009
Oregon State Bar
*Risk Management by the Numbers: How to Avoid Becoming a Statistic*
Location:  Tigard, Oregon

November 19, 2009
Multnomah Bar
*High Tech Ethics*
Location: Portland

November 18, 2010
Seminar Group "Best of CLE"
*The Intersection of Attorney-Client Privilege & Law Firm Risk Management*
Location:  Portland

February 4, 2011
Oregon State Bar/Washington State Bar Northwest Securities Institute
*Ethics Issues in Securities Practice*
Location:  Portland

February 8, 2011
Owen M. Panner Inn of Court
*You Make the Call*
Location:  Portland

December 13, 2011
Multnomah Bar
*Duties to Third Parties*
Location:  Portland

June 7, 2012
Seminar Group Oregon Eminent Domain Conference
*Electronic Ethics 2012*
Location:  Portland

4

December 19, 2012
Multnomah Bar Association
*Managing Your Risk:  The Intersection of Claim Prevention & Professional Responsibility*
Location:  Portland

May 2, 2013
Oregon Association of Defense Counsel
*Representing Businesses in Litigation:*
*Navigating Conflicts While Preserving Privilege*
Location:  Portland

June 6, 2013
Oregon Eminent Domain Conference
*Changing Horses in Midstream:  Modifying Fee Agreements*
Location:  Portland

September 23, 2013
Multnomah Bar Association
*Practicing in Oregon and Washington:  A Guide to the Unwary*
Location:  Portland

March 19, 2014
Multnomah Bar Association
*I Need Some Advice:  The Status of Internal Law Firm Privilege in Oregon*
Location:  Portland

June 5, 2014
Oregon Eminent Domain Conference
*Ethics in Eminent Domain:  The "No Contact" Rule—Variations on a Theme*
Location:  Portland

June 20, 2014
University of Oregon School of Law Plugged-In Portland Conference
*Emerging Trends in Legal Ethics and Professionalism*
Location:  Portland

October 1, 2014
Multnomah Bar Association
*Privilege and Ethics Issues Related to In-House General Counsel within*
*a Small or Mid-Sized Law Firm*
Location:  Portland

5

November 14, 2014
Oregon Law Institute
*Hot Topics in Legal Ethics*
Location:  Portland

December 12, 2014
The Seminar Group
*New Developments in Lawyer Ethics*
Location:  Portland

April 8, 2015
Multnomah Bar Association
*Ins and Outs of Buying, Selling or Transitioning In or Out of Law Practice*
Location:  Portland

May 12, 2015
Oregon Association of Defense Counsel
*Cyber Liability Claims*
Location:  Portland

June 4, 2015
Oregon Eminent Domain Conference
*Ethics in Eminent Domain:  New Oregon Landscape on Joint Representation*
Location:  Portland

January 22, 2016
Oregon State Bar
*Legal Ethics Guidelines and Challenges: Representing Clients with Dementia and their Families*
Location:  Tigard

April 12, 2016
Owen M. Panner Inn of Court
*The Entrepreneurial Lawyer*
Location:  Portland

June 10, 2016
Oregon Eminent Domain Conference
*Cyber Security and Law Firm Risk Management*
Location:  Portland

6

October 7, 2016
Oregon State Bar 2016 Elder Law Conference
*Changing Situations and Developing Conflicts*
Location:  Portland

June 2, 2017
Oregon Eminent Domain Conference
*Ethical Considerations:  Investigations Through Electronic Social Media*
Location:  Portland

November 2, 2018
Oregon State Bar Business Law Section CLE
*Risky Business:  Ethical and Risk Management Issues for Business Lawyers*
Location:  Portland

June 6, 2019
Oregon Eminent Domain Conference
*Ethical Issues When Litigating Multiple Cases in the Same Courthouse*
Location:  Portland

November 8, 2019
Oregon State Bar Business Law Section CLE
*Law Firm Hygiene:  Small Steps Can Pay Big Dividends*
Location:  Portland

June 4, 2021
Oregon Eminent Domain Conference
*Getting Information Without Getting Burned*
Location:  Webinar

December 16, 2021
Oregon State Bar
*"Hybrid" Offices and "Remote" Work:*
*Law Firm Risk Management Considerations*
Location:  Webinar

February 16, 2022
JR Campbell Inn of Court, Bend, Oregon
*Rebutting Negative On-Line Reviews*
Location:  Webinar

7

March 4, 2022
Public Interest Environmental Law Conference
*"Hybrid" Offices and "Remote" Work:*
*Law Firm Risk Management Considerations*
Location:  Webinar

March 2, 2023
Oregon Trial Lawyers Association Annual CLE
*Protecting Yourself and Your Settlement:*
*Risk Management Considerations in Settlement Negotiations*
Location:  Portland

May 12, 2023
Oregon Eminent Domain Conference
*"My Soup Was Cold" (Safely) Responding to Negative Online Reviews*
Location:  Portland

March 19, 2024
Multnomah Bar Association
*New Day, New Tools:  Risk Management Considerations*
*When Using AI-Enabled Tools in Law Practice*
Location:  Webinar

August 9, 2024
Oregon State Bar
*The Chatbot Made Me Do It!*
*Competence and Confidentiality in an Age of Artificial Intelligence*
Location:  Skamania Lodge, WA

June 5, 2025
Oregon Eminent Domain Conference
*The Chatbot Made Me Do It!*
*Competence and Confidentiality in an Age of Artificial Intelligence*
Location:  Portland

**Ethics—Washington**
December 19, 1998
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

8

106

December 11, 1999
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

December 9, 2000
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

December 1, 2001
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

November 16, 2002
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

November 15, 2003
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

December 11, 2004
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

October 28, 2005
Washington State Bar
*Reciprocity, In-House Counsel Admission and Multijurisdictional Practice in Washington (and Beyond)*
Location: Seattle

December 1, 2005
Washington Defense Trial Lawyers Annual Ethics Seminar
*The New Rules*
Location: Seattle

9

December 10, 2005
University of Washington School of Law Professional Responsibility Institute
*Disqualification: The Year in Review*
Location: Seattle

September 18, 2006
Washington State Bar
*Crossing State Lines: New Rules on Multijurisdictional Practice*
Location: Seattle

October 19, 2006
Washington State Bar
*Ethical & Malpractice Issues in Probate Administration*
Location: Vancouver

December 1, 2006
Washington State Bar Annual Real Estate Conference
*The "Who is the Client" Question*
Location: Seattle

December 7, 2006
Washington Defense Trial Lawyers Annual Ethics Seminar
*The New Rules: Litigation Ethics Under the New Washington RPCs*
Location: Seattle

December 13, 2006
Washington State Bar Law of Lawyering Conference
*Commenting on the Comments*
Location: Seattle

May 18, 2007 (cancelled)
Washington Law Institute
*Ethical Issues When Investing in Clients*
Location: Seattle

July 11, 2007
Washington State Bar
*High Tech Ethics: Law Firm Risk Management on the Digital Frontier*
Location: Statewide Telephone Seminar

10

December 1, 2007
University of Washington School of Law Professional Responsibility Institute
Disqualification—2007 Update
Location: Seattle

December 6, 2007
Washington Defense Trial Lawyers
*Annual Ethics Seminar*
Location: Seattle

December 12, 2007
Washington State Bar Law of Lawyering Conference
*Secret Codes & Disappearing Ink are Not Just for Spies-Ethical and Risk Management Issues in the Creation and Dissemination of Electronic Data*
Location: Seattle

June 8, 2008
WSBA Real Property, Probate & Trust Section Mid-Year Meeting
*Ethical & Risk Management Considerations: Conflicts of Interest*
Location: Vancouver

December 10, 2008
Washington State Trial Lawyers Association
*Annual Ethics CLE*
Location: Seattle

December 18, 2008
Washington State Bar Law of Lawyering Conference
*The Vital Titles- Ethics Hypotheticals Based Upon the RPC's Eight Sections*
Location: Seattle

May 13, 2009
Washington State Bar
*The Legal Ethics Deskbook Live: New Rules, New Resources*
Location: Seattle

June 3, 2009
Washington State Bar
*Ethics for Government Lawyers*
Location: Statewide Telephone Seminar

11

November 13, 2009
Washington State Bar Law of Lawyering Conference
*Entangled and Divided Loyalties*
Location: Seattle

December 3, 2009
Washington Defense Trial Lawyers
*Annual Ethics Seminar*
Location: Seattle

December 16, 2009
Washington State Bar
*Keeping Counsel-The Attorney-Client Privilege with Law Firms & Its Significance to Law Firm Risk Management*
Location: Seattle

April 2, 2010
Washington Defense Trial Lawyers Southwest Washington Membership CLE
*Ethics North & South of the Columbia*
Location: Portland

June 22, 2010
Washington State Bar
*Ethical Issues in the Life Cycle of a Business Entity*
Location:  Seattle

October 6, 2010
Washington State Bar
*New Developments in Discovery-Related Ethics Issues*
Location:  Seattle

November 9, 2010
Washington State Bar Law of Lawyering Conference
*The Year in Ethics Summary—Ethical Decisions & Trends*
Location:  Seattle

November 18, 2011
Washington State Bar Corporate Counsel Institute
*Ethics*
Location:  Seattle

12

December 9, 2011
Washington State Bar Law of Lawyering Conference
*Changing Horses in Midstream:  Modifying Fee Agreements*
Location:  Seattle

October 5, 2012
Washington State Bar
*Good Billing Practices Reduce Malpractice Claims*
Location:  Seattle

December 13-14, 2012
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

July 19, 2013
Washington State Bar
*Ethics for the Solo & Small Firm Practitioner*
Location:  Vancouver

September 27, 2013
Washington Defense Trial Lawyers
*Ethics Opinions on Indemnification*
Location:  Seattle

December 19-20, 2013
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

July 26, 2014
Washington State Bar
*Legal Challenges of the Cloud*
Location:  Vancouver

December 18, 2014
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

13

April 16, 2015
Gonzaga University School of Law
*Social Media & Legal Ethics:*
*Clarke Family Ethics and Professionalism Annual Conference*
Location:  Spokane

December 10-11, 2015
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

May 16, 2016
Washington Defense Trial Lawyers
*National Trends in Social Media Use for Investigations and Jury Selection*
Location:  Seattle

December 7-8, 2016
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

December 15, 2017
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

December 14, 2018
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

November 5, 2019
Davis Wright Tremaine LLP
*Special Rules that Apply to In-House Lawyers Doing Pro Bono*
Location:  Seattle

December 13, 2019
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Seattle

14

January 8, 2020
King County Bar Association
*Law Firm Hygiene:  Small Steps Can Pay Big Dividends*
Location:  Seattle

July 31, 2020
Washington State Bar
*Putting the Gears in Order:*
*Structuring Your Firm to Serve the Moderate Means Client*
Location:  Webinar

November 6, 2020
Washington State Bar
*Ethics in the House:  Professional Conduct in the Corporation*
Location:  Webinar

February 10, 2021
King County Bar Association
*Saying Goodbye—The Withdrawal Rule*
Location:  Webinar

April 14, 2021
Washington State Bar
*Changes to the Lawyer Advertising and Communication Rules*
Location:  Webinar

July 30, 2021
Washington State Bar
*Ethical Issues Involved in Negative On-Line Reviews*
Location:  Webinar

December 9-10, 2021
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Webinar

December 16, 2022
Washington State Bar
*Law of Lawyering Conference* (Co-Chair)
Location:  Webinar

15

May 10, 2023
King County Bar Association
*Law Firm Hygiene:  Small Steps Can Pay Big Dividends*
Location:  Webinar

September 20, 2023
Washington State Bar Association
*Lawyer as Escrow:  Risk Management Issues*
Location:  Webinar

December 15, 2023
Washington State Bar
Law of Lawyering Conference (Co-Chair)
Location:  Seattle & Webinar

July 16, 2024
Washington State Bar
*New Day, New Tools:  Risk Management Considerations
When Using AI-Enabled Tools in Law Practice*
Location:  Webinar

September 18, 2024
Washington State Bar
*Ethical Considerations Involving Attorney and Firm Conflicts*
Location:  Webinar

December 5, 2024
Washington State Bar
Deposition Misconduct:  Rules, Risks, and Remedies
Location:  Webinar

February 12, 2025
King County Bar Association
*Law Firm Hygiene:  Small Steps Can Pay Big Dividends*
Location:  Webinar

December 10, 2025
Clark County Bar Association
*Keeping a Secret:  Protecting Client Confidentiality*

16

**Ethics—National**
June 3, 1999
ABA National Conference on Professional Responsibility
*Disqualification Motions & the RPCs*
Location: San Diego

October 1, 2008
Strafford Legal Publications
*Ethical Risks of Online Communications by Law Firms*
Location: National Teleconference

February 11, 2009
Strafford Legal Publications
*Law Firm In-House Ethics Consulting*
Location: National Teleconference

May 6, 2009
Strafford Legal Publications
*Ethical Pitfalls in Settlement Negotiations*
Location: National Teleconference

July 29, 2009
Strafford Legal Publications
*Ethical Pitfalls in Client Billing and Fee Collection*
Location: National Teleconference

December 1, 2009
Strafford Legal Publications
*Ethical Risks of Online Communications by Attorneys*
Location: National Teleconference

February 22, 2012
Strafford Legal Publications
*Ethical Considerations in Client Billing and Fee Collection*
Location:  National Webinar

March 20, 2014
American Law Institute
*Breaking Up Is Hard to Do:*
*Ethically Terminating the Attorney-Client Relationship*
Location:  National Webinar

17

October 22, 2014
American Law Institute
*For the Love of Money:*
*Risk Management and Ethical Considerations in Collecting Attorney Fees*
Location:  National Webinar

June 19, 2015
American Law Institute
*Conflicts, Confidentiality, and Exceptions to the Internal Law Firm Privilege:*
*For Whose Greater Good?*
Location:  National Webinar

March 2, 2016
American Law Institute
*Yours, Mine, Ours:*
*Ethical Considerations in Co-Counsel Relationships*
Location:  National Webinar

September 28, 2016
American Law Institute
*Consenting Clients:*
*Privilege, Conflicts and Other Ethical Traps of Joint Representations*
Location:  National Webinar

June 22, 2017
Defense Research Institute
*Ethical Implications of Marijuana for Lawyers*
Location:  Seattle

November 16, 2017
American Law Institute
*Breaking Up Is Hard to Do:*
*Ethically Terminating the Attorney-Client Relationship*
Location:  National Webinar

April 12, 2018
American Law Institute
*For the Love of Money:*
*Risk Management and Ethical Considerations in Collecting Attorney Fees*
Location:  National Webinar

18

June 11, 2019
American Law Institute
*Consenting Clients:*
*Privilege, Conflicts and Other Ethical Traps of Joint Representations*
Location:  National Webinar

November 26, 2019
Defense Lawyers of Wyoming
*Dual Roles:  Lawyer-Directors for Firm Clients*
Location:  Webinar

January 29, 2020
American Law Institute
*Ethics of Mobile Lawyering:*
*Practicing Everywhere (and Nowhere) at the Same Time*
Location:  National Webinar

October 21, 2020
American Law Institute
*Breaking Up is Hard to Do:*
*Ethically Terminating the Attorney-Client Relationship*
Location:  National Webinar

February 11, 2021
American Law Institute
*Two Lawyers, One Client:*
*Ethical Considerations for Co-Counsel Relationships*
Location:  National Webinar

November 8, 2021
American Law Institute
*Ethical Negotiations:*
*Six Principles for Effective (But Not Deceptive) Advocacy*
Location:  National Webinar

August 18, 2022
American Law Institute
*Rules of Engagement:  Ethics of Engagement Letters*
Location:  National Webinar

19

February 22, 2023
American Law Institute
*I'll Consent to That:  Practical Advice on Effective Conflict Waivers*
Location:  National Webinar

January 17, 2024
American Law Institute
*Joint Representations:  Privilege, Conflicts, and Other Ethical Traps*
Location:  National Webinar

January 16, 2025
American Law Institute
*Engagement Agreements:*
*Best Practices for Ethical and Effective Representation*
Location:  National Webinar

January 22, 2025
American Bar Association
*So You Want to Be an Expert Witness—*
*The Ethics of Experting*
Location:  National Webinar

*Note:  This list only includes public programs.  It does not include programs that I only moderated and does not include law school classes I taught.*

20

# Exhibit 4

**Mark J. Fucile**
**Legal Ethics Expert Testimony**
(Listed chronologically with the most recent first)

| Case | Court | Testimony |
|---|---|---|
| *2026* | | |
| Taylor & Castro v. Ebenger 20-2-00461-04 | Washington Superior Court Chelan County | Trial (2026) Deposition (2025) |
| *2025* | | |
| Simpson v. Davis Wright Tremaine LLP 25-2-00724-3-SEA | Washington Superior Court King County | Declaration |
| In re Filer Survivor's Trust 24-4-04034-7-SEA | Washington Superior Court King County | Deposition |
| Tran v. Fitzer 23-2-24280-7-SEA | Washington Superior Court King County | Declaration |
| *2024* | | |
| Richards v. Jurva Martin PC Private Arbitration | Arbitration Portland | Arbitration |
| SCI Oregon v. Nyo 23cv18175 | Oregon Circuit Court Multnomah County | Declaration |
| West Linn-Wilsonville School District v. City of West Linn 22cv06982 | Oregon Circuit Court Clackamas County | Trial |
| In re Estate of Ross 21-4-05712-1-SEA | Washington Superior Court King County | Declarations |
| Client v. Law Firm (Names withheld) | Private Dispute Seattle | Declaration |
| Chasney v. Colby Nipper, PLLC CV01-22-06448 | Idaho District Court Ada County | Declarations (2024 & 2023) |
| Otorowski Morrow & Golden PLLC v. Tinker Law Firm PLLC 23-2-01081-7-SEA | Washington Superior Court King County | Declaration |
| *2023* | | |
| Vandivere v. Vertical World, Inc. 19-2-27385-2-SEA | Washington Superior Court King County | Declaration |
| Tidewater Investments v. Emerge Law Group 19cv23921 | Oregon Circuit Court Multnomah County | Trial |

1

| | | |
|---|---|---|
| Brodkowitz v. Friedman Rubin PLLP<br>Private Arbitration | Arbitration<br>Seattle | Declarations |

*2022*

| | | |
|---|---|---|
| Halverson Law PLLC v. Baker<br>22-2-13576-0-SEA | Washington Superior Court<br>King County | Declaration |
| US v. Rice<br>3:20-cr-0028-4-SI | U.S. District Court<br>Oregon | Declaration |
| McClellan v. Fitzsimmons<br>20-2-00238-09 | Washington Superior Court<br>Douglas County | Declarations<br>(2022 & 2020) |

*2021*

| | | |
|---|---|---|
| XRT v. Markowitz Herbold PC<br>Private Arbitration | Arbitration<br>Portland | Arbitration<br>Declaration |
| Draper v. Dorsey & Whitney LLP<br>20-2-01990-9 | Washington Superior Court<br>King County | Declaration |
| Karstetter v. King County Corrections Guild<br>16-2-12397-0-SEA | Washington Superior Court<br>King County | Declaration<br>Deposition |
| Eberhard v. Bryant<br>17PB07766 | Oregon Circuit Court<br>Deschutes County | Hearing |
| Banghart v. Van Kampen & Crowe PLLC<br>20-2-08168-0-SEA | Washington Superior Court<br>King County | Declarations<br>(2021 & 2020) |
| Palmgirl v. True Science Founders LLC<br>CV01-18-08926 | Idaho District Court<br>Ada County | Declaration |
| Claus v. Canyon County<br>1:19-cv-00197-REB | U.S. District Court<br>Idaho | Declarations<br>(2021 & 2020) |

*2020*

| | | |
|---|---|---|
| Duffy v. Markowitz/Kowal<br>Private Arbitration | Arbitration<br>Orange County, CA | Arbitration<br>Declaration |
| Jubb v. Reser's<br>Private Arbitration | Arbitration<br>Portland | Declaration |
| Allied Fuel v. Grant<br>19-2-14217-1-SEA | Washington Superior Court<br>King County | Declaration |
| Quinn v. City of Vancouver<br>3:17-cv-05969-BHS | U.S. District Court<br>Western District of Washington | Deposition<br>Declaration |
| Hollins v. Zbaraschuk<br>14-2-26708-8-KNT | Washington Superior Court<br>King County | Declaration |

2

*2019*

| | | |
|---|---|---|
| Kosnoff v. Fasy Private Arbitration | Arbitration Seattle | Arbitration Declaration |
| Providence v. Mancuso 16CV38474 | Oregon Circuit Court Multnomah County | Declaration |
| Dabdab v. Al Daghestani 19-4-00474-9 | Washington Superior Court Pierce County | Declaration |
| Cantu v. Yakima School District No. 7 18-2-03333-39 | Washington Superior Court Yakima County | Deposition Declaration |

*2018*

| | | |
|---|---|---|
| In re Perkins ODC File No. 18-00628 | Washington State Bar | Declaration |
| Potter v. Gaffney 12-2-08821-7-SEA | Washington Superior Court King County | Trial Declarations |
| Gibson v. Gibson 17-3-00075-9 | Washington Superior Court Kittitas County | Declaration |
| Eskridge v. Fletcher 17-2-05247-7-SEA | Washington Superior Court King County | Declaration (2018) Deposition (2017) |
| Anchorage School District v. M.G. 3:17-cv-00157-SLG | U.S. District Court Alaska | Declaration |

*2017*

| | | |
|---|---|---|
| Baker v. Dean Standish Perkins 17-2-16431-3-SEA | Washington Superior Court King County | Declaration |
| Chicago Title v. Xu 16-2-06416-7-SEA | Washington Superior Court King County | Deposition |
| Rhodes v. Gould 16-2-18213-5-SEA | Washington Superior Court King County | Declaration |

*2016*

| | | |
|---|---|---|
| Habeeb v. Polakoff 15-2-27243-8-SEA | Washington Superior Court King County | Declaration |
| Barcus v. Lester 15-05210-BHS | U.S. District Court Western District of Washington | Declarations |
| In re Examination of Privilege Claims MC15-15-JPD | U.S. District Court Western District of Washington | Declaration (2016) Declarations (2015) |

3

122

*2015*

| | | |
|---|---|---|
| Spencer v. Badgley Mullins Turner PLLC<br>15-2-02296-2-SEA | Washington Superior Court<br>King County | Deposition |
| Fisher v. Holcomb<br>10-2-0379-4 | Washington Superior Court<br>Kitsap County | Declaration |
| Boyd Coffee v. Miller Nash LLP<br>14-2-26387-2-SEA | Washington Superior Court<br>King County | Deposition<br>Declaration |

*2014*

| | | |
|---|---|---|
| OfficeMax v. Nixon Peabody LLP<br>CV OC 1209327 | Idaho District Court<br>Ada County | Declaration |
| Schmidt/Demeter v. ACCI<br>11-2-28529-4-KNT | Washington Superior Court<br>King County | Declaration |

*2013*

| | | |
|---|---|---|
| In re Persels & Associates, LLC<br>DM-12-0049 | State of Oregon<br>Office of Administrative Hearings | Declarations |
| Boyer v. Reed Smith LLP<br>3:12-cv-05815 RJB | U.S. District Court<br>Western District of Washington | Declaration |
| Evraz v. Continental Insurance<br>3:08-cv-00447-AC | U.S. District Court<br>Oregon | Declaration |
| Icicle Seafoods v. Sanford<br>13-2-07607-1-SEA | Washington Superior Court<br>King County | Report |
| Sauvage v. McKay<br>Private Arbitration | Arbitration<br>Seattle | Arbitration<br>Report |

*2012*

| | | |
|---|---|---|
| Walleri v. Tanana Chiefs Conference, Inc.<br>4FA-11-981 CI | Alaska Superior Court<br>Fourth Judicial District | Affidavit |
| Sauvage v. McKay<br>12-2-19597-8-SEA | Washington Superior Court<br>King County | Declaration |
| Berry & Beckett, P.L.L.P. v. Atkins<br>10-2-38764-1-SEA | Washington Superior Court<br>King County | Deposition<br>Declaration |
| Bradford v. West<br>11-2-03356-1 | Washington Superior Court<br>Snohomish County | Declaration |

*2011*

| | | |
|---|---|---|
| Amort v. NWFF, Inc.<br>11-10124 | Oregon Circuit Court<br>Benton County | Declaration |

4

| | | |
|---|---|---|
| Rafel Law Group PLLC v. Defoor<br>10-2-22050-0-SEA | Washington Superior Court<br>King County | Deposition |
| Stokes Lawrence, P.S. v. Bishop<br>09-2-45211-3-SEA | Washington Superior Court<br>King County | Deposition |
| Fair v. Powers and Therrien<br>07-2-00652-9 | Washington Superior Court<br>Chelan County | Deposition<br>Declaration |
| Doyon Drilling, Inc. v. Loadmaster<br>10-cv-00094-HRH | U.S. District Court<br>Alaska | Declaration |

**2010**

| | | |
|---|---|---|
| Yousoufian v. Sims<br>00-2-09581-3-SEA | Washington Superior Court<br>King County | Declaration |
| Smidt v. McPherson<br>09-cv-05318-RBL | U.S. District Court<br>Western District of Washington | Deposition<br>Declarations |
| Ellis, Li & McKinstry PLLC v. MacDonald<br>08-2-43607-1-SEA | Washington Superior Court<br>King County | Deposition (2010)<br>Declaration (2010)<br>Declaration (2009) |

**2009**

| | | |
|---|---|---|
| Calbag Metals Co. v. MMI<br>Private Arbitration | Arbitration<br>Portland | Declaration |

**2008**

| | | |
|---|---|---|
| State of Oregon v. Marsh & McLennan<br>0508-08454 | Oregon Circuit Court<br>Multnomah County | Declaration |
| Banks v. City of Ocean Shores<br>03-2-01811-9 | Washington Superior Court<br>Grays Harbor County | Declaration |
| Westward Hoe v. Dickson Steinacker LLP<br>07-2-29316-7-SEA | Washington Superior Court<br>King County | Deposition<br>Declaration |
| International Steel & Tube Industries v. Axelrod<br>CV-07-1897-MO | U.S. District Court<br>Oregon | Declaration |
| White & Lee LLP v. Secure Resolutions, Inc.<br>0606-06241 | Oregon Circuit Court<br>Multnomah County | Arbitration |

**2007**

| | | |
|---|---|---|
| B-Line LLC v. Weinstein & Riley, P.S.<br>07-2-29741-3-SEA | Washington Superior Court<br>King County | Declaration |
| Assurance Co. of America v. MDF Framing<br>CV-06-169-MO | U.S. District Court<br>Oregon | Deposition<br>Declaration |
| Best v. BNSF Railway Company<br>CV-06-172-RHW | U.S. District Court<br>Eastern District of Washington | Declaration |

5

| | | |
|---|---|---|
| Cox v. BNSF Railway Company<br>CV-07-033-FVS | U.S. District Court<br>Eastern District of Washington | Declaration |
| Kavanagh v. Union Pacific Railroad Company<br>CV-06-5084-RHW | U.S. District Court<br>Eastern District of Washington | Declaration |
| Frakes v. Nay<br>0507-07686 | Oregon Circuit Court<br>Multnomah County | Trial |
| City of Warrenton v. Pease & Sons, Inc.<br>03-2320 | Oregon Circuit Court<br>Clatsop County | Hearing (2007)<br>Declaration (2006) |

### 2006

| | | |
|---|---|---|
| Lee Engineering, Inc. v. City of Warrenton<br>CCV-0305262 | Oregon Circuit Court<br>Clackamas County | Declaration |
| Lanterman v. Dorsey & Whitney LLP<br>05-2-11113-5-SEA | Washington Superior Court<br>King County | Declaration |
| Hoyt v. Amaro<br>CV04-3023 | Idaho District Court<br>Kootenai County | Affidavit |
| Seaton v. Krafchick<br>05-2-14594-3-SEA | Washington Superior Court<br>King County | Declaration |

### 2004

| | | |
|---|---|---|
| Tortorelli v. Stafford Frey Cooper<br>99-2-22673-9-SEA | Washington Superior Court<br>King County | Declaration |

6

# Exhibit 5

**Material Provided/Reviewed**

| Docket # (if applicable) | Description |
|---|---|
| 80 | Motion to Amend |
| 81 | Declaration ISO Motion to Amend |
| 81-1 | Ex. A |
| 81-2 | Ex. B |
| 86 | Defendants' Opposition to Motion to Amend |
| 87 | Declaration ISO Opposition to Motion to Amend |
| 92 | Reply ISO Motion to Amend |
| | Transcript of Hearing on Motion to Amend (04.30.2024) |
| 98 | Order Granting Motion to Amend |
| 99 | Second Amended Complaint |
| 104 | Apple's Motion to Compel |
| 114 | Plaintiffs' Opposition to Apple's Motion to Compel |
| 115 | Declaration ISO Opposition to Motion to Compel |
| 115-1 | Ex. A |
| 115-2 | Ex. B |
| 127 | Plaintiffs' Reply ISO Cross-Motion to Withdraw |
| 132 | Order Granting Motion to Compel |
| 135 | Order Granting Stipulation re Floyd Deadline |
| 140 | Motion to Withdraw as Counsel |
| 141 | Declaration ISO Motion to Withdraw |
| 141-1 | Ex. A |
| 143 | Apple Response to Motion to Withdraw |
| 144 | Declaration ISO Apple Response |
| 149 | Reply ISO Motion to Withdraw |
| 150 | Declaration ISO Reply ISO Motion to Withdraw |
| 152 | Defendants' Motion for Discovery Sanctions |
| 153 | Declaration ISO Motion for Discovery Sanctions |
| 156 | Response to Motion for Discovery Sanctions |
| 157 | Declaration ISO Response to Motion for Discovery Sanctions |
| 162 | Defendants' Reply ISO Motion for Discovery Sanctions |
| | Transcript of Hearing on Motion to Withdraw (11.05.2024) |
| 172 | Defendants' Motion to Compel |
| 172-1 | Proposed Order Granting Motion to Compel |
| 173 | Declaration ISO Motion to Compel |
| 176 | Plaintiffs' Opposition to Motion to Compel |
| 176-1 | Baldwin Declaration |
| 180 | Defendants' Reply ISO Motion to Compel |

1

|       | Transcript of Hearing on Motion to Compel (02.06.2025) |
| 196   | Order on Motion to Compel |
| 199   | Order to Provide Documents for *In Camera* Review |
| 203   | Sanctions Order |
| 208   | Motion for Attorneys' Fees and Costs |
| 221   | Apple Motion for Reconsideration |
| 223   | Response to Motion for Attorneys' Fees and Costs |
| 224   | Order on Attorney Fees |
| 226   | Plaintiffs' Opposition to Motion for Reconsideration |
| 229   | Apple Reply ISO Motion for Reconsideration |
| 250   | Dismissal Order |
| 256   | Plaintiffs' Motion to Alter/Amend Judgment |
| 258   | Bank Declaration |
| 259   | Barnard Declaration |
| 260   | Holland Declaration |
|       | Plaintiffs' Document Production 000001-120 |
|       | Floyd Communications Privilege Log |
|       | Bank Deposition Transcript (01.23.2026) |
|       | Barnard Deposition Transcript (01.30.2026) |
|       | Holland Deposition Transcript (02.04.2026) |

*Note*:  Docket report in PACER also reviewed (as of 1.26.2026)

2

# EXHIBIT 7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

|                                    |                        |
|------------------------------------|------------------------|
| STEVEN FLOYD, JOLENE FURDEK, and JONATHAN RYAN, on behalf of themselves and all other similarly situated, | ) C22-01599-KKE ) ) SEATTLE, WASHINGTON |
|                                    | ) June 16, 2025 |
| Plaintiffs,                        | ) ) 2:00 p.m. |
| v.                                 | ) ) Motion Hearing |
| AMAZON.COM, INC., a Delaware corporation, and APPLE INC., a California corporation, | ) ) ) |
| Defendants.                        | ) |

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE KYMBERLY K. EVANSON
UNITED STATES DISTRICT JUDGE

_____


APPEARANCES:


 For the Plaintiffs:        Steve W. Berman
                            Meredith Simons
                            Hagens Berman Sobol Shapiro LLP
                            1301 2nd Avenue
                            Suite 2000
                            Seattle, WA 98101

                            Ben Harrington
                            Hagens Berman Sobol Shapiro LLP
                            715 Hearst Avenue
                            Suite 300
                            Berkeley, CA 94710

Stenographically reported - Transcript produced with computer-aided technology

Debbie Zurn - RMR, CRR - Federal Reporter - 700 Stewart St. - Suite 17205 - Seattle WA  98101 - (206) 370-8504

For the Defendant          Anna Pletcher
Apple:                     O'Melveny & Myers
                           Two Embarcadero Center
                           28th Floor
                           San Francisco, CA 94111

                           Benjamin Bradshaw
                           O'Melveny & Myers
                           1625 Eye Street NW
                           Washington, DC 20006

                           Mark Steven Parris
                           Orrick Herrington & Sutcliffe LLP
                           401 Union Street
                           Suite 3300
                           Seattle, WA 98101

For the Defendant          Benjamin Mundel
Amazon:                    Sidley Austin
                           1501 K. Street NW
                           Suite 600
                           Washington, DC 20005

                           John Goldmark
                           Davis Wright Tremaine
                           920 Fifth Avenue
                           Suite 3300
                           Seattle, WA 98104

tomorrow, because there's been no adjudication.  And the statute of limitations would run, four years back from the day we file this case.  So certainly we did not believe there was any basis for dismissal with prejudice as to those two claims.

Your Honor, that's it, unless you have questions.

THE COURT:  Well, I do have questions, Mr. Berman.  So help me understand your response, if you have one, to the diligence issue.  Now, I know you said there's nothing in the record going back prior to January 2024 that would inform the court's evaluation of diligence.  That's because Apple didn't have any reason to seek communications prior to January 2024, when they moved to compel.  Your counterpart for Apple argued that the court should look at communications, or that at least it's relevant what was happening back in September 2023, with respect to Mr. Floyd's ability or inability or unwillingness to participate in discovery.

So why shouldn't the court look back at that position?  And I think with respect to the jurisdictional issue, the argument is that this case is unlike the other cases where leeway was given, because of the misrepresentations of the plaintiff's intent.  So help me understand why the court should just march ahead on the basis of findings that were made without a full picture of what was happening.

MR. BERMAN:  I've reviewed those communications.  If

you would like to review them in camera, again, we'd be glad to submit them.  Because I think that they show that we did exercise diligence, that the first time we were on notice of an issue was January 16th, right?

And remember, in our motion to amend, we did not conceal the fact we were having trouble getting ahold of Mr. Floyd.  But I'd be glad to submit that material in camera to you.

THE COURT:  But your motion to amend says he may have had a medical emergency.  It wasn't that he didn't wanted to participate.  Doesn't this set this case apart from *Castillo*, from *Vue*, from *Fife*?  Isn't that different?

MR. BERMAN:  It is different.  But ultimately, what the courts and all these cases are trying to do, is when you have a class representative, no longer wishes to participate, the courts try to make sure that the interests of the class are protected.  That's what *Fife* did.  That's what the Ninth Circuit case did in *Degamo*.  And that's what the courts do.

I submit, Your Honor, assuming that you find nothing from September to January that would have indicated to us that Mr. Floyd wanted out -- don't forget in August, he reappeared and seemed to be interested in the case.  But I don't think you'll find anything.

So the question is, did we exercise diligence in the period from January and when we filed our motion to amend, and I submit to the court, we did.  There's no simultaneous

requirement in the cases that you have to dismiss, and the next day file with a new class representative.

THE COURT:  So I know in your motion to amend, you relied on *Fife*.  Similar situation, at least to some extent. If plaintiffs knew at the time that they filed that motion that there was authority that permitted substitution of parties, why didn't the plaintiffs just say that Mr. Floyd didn't want to participate anymore?

MR. BERMAN:  For two reasons.  One, I know you made the finding that he was clear.  But we were looking for what we thought was a clear indication from him to dismiss the case.  Because this is not unusual.  I think counsel for Apple said it's not unusual that class representatives drop out.  And so it's not unusual for us to have a class representative, even though we explain the discovery process when we're retained, when the discovery actually comes in and they see the extent of it, they get cold feet, they go, "Holy cow.  I didn't realize this is what I signed up for."  So we wanted to make sure that process was completed with Mr. Floyd.  We fully understood, "I want out, period."

Second, we had a case that was already ongoing, right?  We had already agreed on various discovery responses, what was going to be produced by the plaintiffs.  Because we didn't want to delay the case and because we wanted to show diligence, you might remember that in the motion to amend, we

also told the court that the new plaintiffs have already received the document request from the defendants, they began gathering documents, and this case is going to march on, unaffected.

So we thought it was most efficient to just simply amend the complaint. And we did also suggest, if amendment was not proper, then intervention was proper. So we approached it two ways. But we did not, at the time, think it made sense to just file a new case.

But that's essentially where we are now, because Floyd is out. We now have a new case with a class period that coincides with the plaintiffs' statute of limitations, so we're not seeking to take any advantage of some extended statute of limitations, by virtue of Floyd being in or out.

THE COURT: I asked you in a minute order on Friday to come prepared to discuss whether you believe these communications that the court reviewed in camera, remain privileged. What's your position on that?

MR. BERMAN: Our position is that they do remain privileged, because even though Mr. Floyd doesn't want our representation anymore -- right? -- he hasn't waived the privilege. And the privilege continues, even when you're fired by a client. So we believe they are privileged.

THE COURT: And Floyd is the privilege holder, as the client. Is there any evidence that Floyd intends to assert

amend is reconsidered and denied, and the case dismissed, then the new plaintiffs would have to file anew. That's what I understood counsel to be saying.

MR. BERMAN: Yes. If you don't allow the amendment and we filed it anew, they would be going back four years from the date they filed. And they would not be relying on any American Pipe tolling.

So the concerns that were articulated by Justice Ginsburg, just would just not apply in that circumstance.

THE COURT: All right. Thank you.

All right. Thank you, counsel. I appreciate your arguments and your briefing on this matter. I will take the motion under advisement and issue an order as soon as reasonably practicable.

And until then, we'll be in recess.

(Adjourned.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Debbie Zurn*

DEBBIE ZURN
COURT REPORTER

# EXHIBIT 8

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

_____

                                  )
STEVEN FLOYD, individually and    )
on behalf of all others similarly)
situated,                         )
                                  )
                    Plaintiff,    )
           v.                     ) No. 2:22-cv-01599 KKE
                                  )
AMAZON.COM and APPLE INC.,        )
                                  )
                    Defendants.   )
_____


VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION

OF

NELLIE Q. BARNARD

_____


Deposition taken at David Wright Tremaine LLP

560 SW 10th Avenue, Suite 700 - Portland, Oregon 97205


* SOME PARTICIPANTS APPEARED VIA VIDEOCONFERENCE *


DATE TAKEN:    January 30, 2026
REPORTED BY:   Nicole A. Bulldis, RPR, FCRR, OR CSR 24-0130
               AZ CR 50955 | CA CSR 14441 | WA CCR 3384


BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 34

Paragraph (aa).

Q.   Okay.  And so this is what I'm referring to when I say you saw the discovery history that led to the court reviewing those documents in camera.

A.   I did.

Q.   Okay.  Specifically, the ones at -- that's at Docket 203 -- or, sorry -- Docket 199.

A.   I see the -- the order to provide documents for in-camera review in Paragraph (z), yes.

Q.   Okay.  When the court ordered that, as you said, it appears to have been inadvertent that the court didn't include the February 26th email on her list, and she included everything around it; right?

A.   Correct.

Q.   Could counsel have submitted a letter to the court saying, "We believe you've inadvertently left this off, and for completeness we think you should consider this one as well"?

A.   That's a possible thing that could've happened, but it would mean that counsel would've had to have been aware that that specific document hadn't been requested, and I don't have information about that.

Q.   Okay.  So you don't know at that time the judge asked for that, Hagens Berman looked at their own privilege log and saw that that communication was missing

Floyd, et al. v. Amazon.com and Apple, Inc.                        Nellie Q. Barnard

Page 35

and decided to alert the court.  You have no idea if that happened?

A.    I don't have any information about that.

Q.    Okay.  And you have no idea if they looked at the judge's order and said, "Hmm, that's weird, but I guess we have to do exactly what she says"?  You don't know if they did that?

A.    I don't have any information about that.

Q.    But there's certainly no rule that would've prohibited them from saying, "Hey, judge, for completeness, we think you should also include this email"; right?

A.    I'm not aware of a rule that would've prohibited that, no.

Q.    All right.  So let's start with -- let's go back to your report.  Well, I guess we're on your report.

Can you turn to Page 12?  All right.  So Paragraph 25, you write, "In this case, the communications between Hagens Berman and Mr. Floyd indicate that Mr. Floyd did not terminate the attorney-client relationship in January 2024"; is that correct?

A.    That is what's written in Paragraph 25, yes.

Q.    And that's your opinion?

A.    It is.

Q.    Okay.  When you discussed the January 2024

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 64

A.    That is true.   I have drawn a different conclusion than the judge did in the order from September of 2025.

Q.    Let's turn to Paragraph 1 of your expert report, please.  Let me know when you're there.

A.    I'm there.

Q.    I'm going to draw your attention to Line -- in between 18 and 19, where they're saying, "Specifically, I have been asked to provide an opinion regarding certain ethical obligations of counsel of record from Hagens Berman to their former client, Plaintiff Floyd -- Steven Floyd, to the court and to the defendants."  Do you see that?

A.    I see Paragraph 1, yes.

Q.    And is that correct?

A.    Is the sentence starting with the word "specifically" correct?

Q.    Is this -- this is your -- this is the scope of your opinions; correct?  I mean, this is -- you wrote these words; right?

A.    I did, yes.

Q.    Okay.  So is it correct that you have been asked to provide that opinion?

A.    What's reflected in Paragraph 1 is correct.

Q.    Okay.  So you were asked to provide an opinion

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 90

Q.    You're aware this case had not been certified as of May 8, 2024; correct?

A.    That is my understanding, yes.

Q.    And are you a class action expert?

A.    I'm not a class action expert, but I'm aware that there is a Ninth Circuit authority that states that even in the context of a class that has not been certified, the lawyer for the class owes fiduciary obligations to the putative class.

Q.    Okay.  If the named plaint- -- if the sole named plaintiff is inadequate, do they have an obligation -- the counsel for the putative class, do they have an obligation to go find additional class members?

A.    I don't have an opinion as to whether or not this plaintiff was adequate or not.

Q.    Okay.  Would it have been a violation of Hagens Berman's ethical duties if, after the, let's say, January 16, 2024, "I pass" email, they had contacted defendants within the same week to say, "Our plaintiff appears to be unwilling to engage in discovery.  We would like to seek to add additional plaintiffs"?

A.    Would it have been -- say the first part of your question again?  I'm sorry.

Q.    Would it have been a violation of their ethical duties if they had proceeded that way?

Page 139

or communicated that he didn't want to continue to participate, that's a fact-specific inquiry; correct?

A.   Yes.   And I think not only is it a fact-specific inquiry, I think it's a fact-intensive inquiry.   And I think that -- I think that it's -- it's clear to me, from the January 16th email, that at this stage, after the January 16 communications, that on this date that Hagens Berman didn't have enough information to conclude that Mr. Floyd wanted to withdraw from participating in the litigation.

Q.   You're not purporting to be the fact finder in this case; correct?

A.   I am not.

Q.   Okay.   Judge Evanson -- do you know Judge Evanson?

A.   I don't.

Q.   Have you ever appeared before Judge Evanson?

A.   I have not.

Q.   Okay.   Did Judge Evanson hire you or appoint you to be the fact finder in this case?

A.   No.

Q.   Okay.   She's -- she's reserved that to herself -- right? -- as the -- as the judge.

A.   I've been --

Q.   Strike that.

Page 140

Who is the fact finder in this case?

A.    It could either be a jury or it could be the judge.

Q.    Okay.  Do -- antitrust claims under Section 1 of the Sherman Act, are they entitled to be heard by a jury at trial?

A.    I'm not an expert on antitrust cases.

Q.    Okay.  Are you familiar with Section 1 of the Sherman Act?

A.    As a general matter, yes.

Q.    Okay.  But you don't know whether or not a claim brought under Section 1 of the Sherman Act entitles a jury by trial -- or trial by jury?  Excuse me.

A.    I don't.  I'm not here purporting to give expert testimony about the Sherman Act.  I'm here as --

Q.    I got it.

A.    -- as an expert on the Rules of Professional Conduct.

Q.    Okay.  And have you read the amended complaint in this case?

A.    No.  I don't believe that's reflected in Paragraph 15 of my expert declaration.

Q.    Did you ask counsel to provide you with the amended complaint?

A.    No, I didn't.  It's possible that I reviewed it

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 158

A.   No.   Ms. Simons called Mr. Floyd after the January 16th email exchange and wasn't able to reach him.

Q.   Okay.   And when did she make that call?

A.   On the 16th.

Q.   On the 16th.

Okay.   Well, starting on the 17th, there are no communications or efforts to make any contact with Mr. Floyd until Mr. Siegel sends his text on January 24th; is that right?

A.   Yes.   That's consistent with the privilege log.

Q.   Okay.   And you would agree with me, looking at Mr. Siegel's text, that he make no reference to Mr. Floyd's January 16th communications in that text.

A.   I don't think that's true.

Q.   Okay. Where does he refer to Mr. Floyd's January 16th communications?

A.   He says in the second paragraph of the text, "I'm concerned that there might be some confusion about what you need to do for the case and what you could get out of it.  Can we talk?  Let me know when is good for you."  And I think it's reasonable to infer under the circumstances that he's referring to Mr. Floyd's January 16th emails.  Although, I'll agree with you he doesn't specifically reference the January 16th emails.

Q.   Okay.   Okay.   Now -- and I'm not trying to be

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 159

obnoxious at all, but you're not a linguist; right?

A.    I'm not, but I think that language is an important part of being a lawyer, and I think all lawyers are trained to interpret language.

Q.    Okay.    But you're not being offered as someone who has expertise in linguistics; correct?

A.    That's true.

Q.    Okay.    Same, you're not a psychologist; right?

A.    No, I'm not, but lawyers are trained to make inferences from facts.    That's what we do.    That's what judges do.

Q.    That's your opinion that that's what judges do and that's what we, as lawyers do, we make inferences from -- from facts?

A.    That is part of your job as a lawyer, yes, absolutely.

Q.    Okay.

A.    I'm surprised that's controversial.

Q.    Why don't we go to Paragraph 45 in your report?

A.    I'm there.

Q.    Page 20 of your report; right?    Paragraph 45.

A.    Yup.

Q.    Okay.    In 45(a), you're quoting something here. "Up until recently, Mr. Floyd has been an attentive and responsive class representative."    Do you see that?

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 186

C E R T I F I C A T E

STATE OF WASHINGTON )
                     ) ss
COUNTY OF CLARK      )


        I, Nicole A. Bulldis, RPR, a Certified Shorthand
Reporter, do hereby certify under the laws of the State of
Oregon and the State of Washington:

        That the foregoing videotaped deposition upon oral
examination of Nellie Q. Barnard was taken stenographically
by me on January 30, 2026, and transcribed under my
direction;

        That the witness was duly sworn by me to testify
truthfully, and that the transcript of the deposition is
full, true, and correct to the best of my ability;

        That I am not a relative, employee, or counsel of
any party to this action or relative or employee of such
counsel, and that I am not financially interested in the
said action or the outcome thereof.



        IN WITNESS WHEREOF, I have hereunto set my hand

this 3rd day of February 2026.


_____
Nicole A. Bulldis, RPR
OR CSR No. 24-0130
WA CCR No. 3384

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

# EXHIBIT 9

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

_____

STEVEN FLOYD, individually,      )
and on behalf of all others      )
similarly situated,              )
                 Plaintiff,      )
                                 )
     vs.                         ) No. 2:22-CV-01599-KKE
                                 )
AMAZON COM INC., and             )
APPLE, INC.,                     )
                 Defendants.     )
_____
          VIDEOTAPED VIDEOCONFERENCE DEPOSITION
              UPON ORAL EXAMINATION OF
                  BROOKS HOLLAND
_____

          Taken at:  Davenport Hotel

                     10 South Post Street

                     Lincoln Room

                     Spokane, Washington 99201

DATE TAKEN:     February 4, 2026, 9:05 a.m. PST

REPORTED BY:    Caryn E. Winters, CRR, RPR, CCR, CSR

                WA 2496 CA 14512 ID SRL-718

VIDEOGRAPHER:   Viktor Bezman

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 19

in granting motions for leave to amend under Federal Rule of Civil Procedure 15, correct?

A    I learned more than I knew in working on this case. I'm trying to think, when you say "expert," I do not have a research background or a practice background on that judgment by a court, no.

Q    And you're not offering opinions in this matter on Federal Rule of Civil Procedure 15, correct?

A    That rule was relevant to my opinion, but I don't offer an opinion on that rule in isolation as an expert. But I do believe that it was relevant to my opinion in that I was competent to incorporate that rule into my ethics opinion.

Q    But you would estimate you're offering an opinion on legal ethics, not on factors under FRCP 15 that go into whether to grant a motion for leave to amend, correct?

A    That's correct.  But as you noted earlier, legal ethics is a very comprehensive field.  It's impossible to ignore these other considerations in rendering an ethical opinion.

Q    You're not an expert in Federal Rule of Civil Procedure 16, correct?

A    In the way we discussed, no.

Q    And you're not an expert in what constitutes good cause for modifying the schedule under Federal Rule of Civil

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 20

Procedure 16, correct?

A    I have not researched in that area, and that's not my practice experience, no.

Q    You're not an expert in Article 3 of the U.S. Constitution, correct?

A    Article 3 of the U.S. Constitution?  I've taught Constitutional law many times, although it's been a few years.

Q    Are you purporting to offer expert opinions in Article 3 of the U.S. Constitution in that matter?

A    That's not why I was retained, but if you want to talk about Article 3, I would be happy.  I was just having fun with my criminal procedure students, reminding them that Article 3 includes a jury trial provision in the original Constitution before the 6th Amendment, but, yeah, I'm not here to purport to be a Constitutional law expert.

Q    And you're not here to provide expert opinion on whether the court has jurisdiction under Article 3, correct?

A    In a class action matter?

Q    Yes?

A    Correct.  No, I'm not here to offer that opinion.

Q    Let's introduce tab 4.

                    (Exhibit 2 marked)

Q    (By Mr. Zaslavsky)  So you've been handed what has been marked as Exhibit 2, which is a document containing

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 22

question.  Go ahead, you can answer.

A    I don't believe I'm in a position to comment on the District Court's expertise.  But if you're asking me for my opinion about whether this email on its own expresses the intention to withdraw that the court concluded in your email, is that your question?

Q    (By Mr. Zaslavsky)  That is not my question.

A    Okay.  Please rephrase.  Thank you.

Q    My question is whether you think the judge lacked the expertise to interpret what was in these emails?

A    I'm sure the District Court has a high level of expertise.  I would not render an opinion about the District Court's expertise.

Q    You don't think that you have some unique expertise that allows you to interpret these emails that the court does not possess?

A    I think I have expertise that could help to inform the court in making a judgment on counsel's motion to reconsider the court's order in response to your motion to reconsider in granting dismissal because I can bring that expertise to the full picture of the record in this matter.  And also this record includes some information that to my knowledge was not before the District Court when it entered its order, in particular the February 26th email from counsel Harrington at Hagens Berman.

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Brooks Holland

Page 23

Q    Appreciating all that, but sticking specifically with my question, just the question of reading, interpreting these two emails, does the court have the expertise to interpret these two emails for itself?

MR. ELKANICH:  I'm going to object again to the form of the question.  Asked and answered and knowledge. But go ahead.

A    And as we're talking as lawyers in this deposition, I will resist the idea of commenting on the District Court's expertise.  I presume the District Court brings broad expertise to the judgment it delivers in any matter before it.  But also doing an appellate practice from the Western District, that doesn't mean that other perspectives could not be brought to bear.  And here it's in a motion to consider that might help the court to reconsider its judgment premised then on expertise, but perhaps now with more information and insight, it would reconsider.  That's what I believe I'm here to share.  I'm not here to question the court's expertise.

Q    (By Mr. Zaslavsky)  What expertise do you bring that the court does not have that is helpful for interpreting what is meant by "it's not worth exposing my credit card information and log-in credentials"?

MR. ELKANICH:  I'm going to object to the form of the question.  But go ahead.

Floyd, et al. v. Amazon.com and Apple, Inc.                          Brooks Holland

Page 24

A    My response does not address what the court does not have because I am not here to comment on expertise the court does or does not have.  I believe the court brings with its own experience and knowledge and staff and resources expertise to each problem.

Any expert can be informed by other experts, particularly with particular disciplinary expertise in rendering a judgment, especially if that expertise can focus on information that may not have been in front of a court or could put that information in a different light because of particular research or practice experience.  And that is what I do believe I can bring to this email.

But put it into the entire context from my research, my practice experience, and my other knowledge, greater context into how counsel did, and could have, responded to this email on January 16th.

Q    So the -- I'm just trying to understand your response.  Is the expertise you're bringing here is how counsel could have responded to the January 16 emails?

A    Well, and how they did respond, as my declaration makes clear.  I believe that counsel's facing a difficult situation with competing interests, including responsibility to the court and opposing counsel.

And as I explained in the declaration, the court's judgment in the order appear to be that counsel

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 27

lawyer would not have?

A    No.  And that's exactly the concern I raised in my declaration, is that none of us, including counsel at Hagens Berman, could read Floyd's mind.  And interpreting a one-sentence email, followed by a terse two word response in the email, that certainly raised issues for counsel.  And counsel's response indicates that counsel identified those issues and reacted to them in trying to balance their myriad responsibilities and interests here.

            But, no, I don't know precisely what Mr. Floyd meant subjectively, and I don't think from the record Hagens Berman clearly could identify what they meant.  So they had to work with that uncertainty because complicating this January 16 email is that Floyd never communicated again with counsel to confirm what this email did or did not mean, and counsel had to work in a significant information void in determining their responsibilities and course of conduct.

Q    Was Judge Evanson's interpretation on Floyd's January 16th emails as communicated a desire to withdraw unreasonable?

A    Well, that's the issue, counsel, as I make clear in my declaration.  My opinion is directed to whether, as the court found, counsel at Hagens Berman engaged in misconduct.  And I concluded, in light of the information available to me, that their judgment was reasonable.

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 32

I appreciate that you're trying to provide a complete answer. Please pay attention to the question, do not go beyond what the question asked.

If there are continuing long answers that are not responsive to the questions, we will be making application to the court to extend the time for the deposition.

MR. ELKANICH: And I'll object to the commentary as well. The questions are very broad, asking for broad answers. You know, go ahead.

A    Thank you, counsel. Happy to work with you on the Q and A. But if -- as an expert witness, rather than a fact witness, I think that some additional context is necessary. That's why I'm responding. But happy to listen to your questions for further guidance.

Q    (By Mr. Zaslavsky) You're not opining that Judge Evanson's interpretation of Floyd's January 16th emails was illogical, right?

A    Illogical?

Q    Correct?

A    I would not use illogical as a descriptor for the District Court's decision-making.

Q    You're not opining that Judge Evanson's interpretation of Floyd's January 16th emails was implausible, correct?

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 33

A   Implausible?  Define implausible in this context, please.

Q   I think I have the same knowledge of the word implausible as you do.  I did not use it in any unusual sense.

MR. ELKANICH:  I'll object to the form of the question as confusing to the witness.

A   What I will say, counsel, is if your questions are asking me to position the District Court as wrong in its logic or expertise, I'm not in a position to comment and would not take that kind of prerogative.

If you're asking me whether the District Court's opinion landed on a particular interpretation of the record --

And if you read the District Court's order at the end, she characterizes the January 16th email in totally different wording than the wording of the email itself.  Her characterization positions it as the clear and affirmative withdrawal of a witness with knowledge of the law and apparently good advice from counsel.  It's a very clear withdrawal of wording that she uses.

My point isn't to discuss how wrong the court was to have a concern about this issue and the procedure in the case but to provide greater insight that counsel working with the information available to counsel in real time,

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 56

was reasonable and not misconduct.

Q    I appreciate that's your opinion.  I'm not asking you, however, about counsel's interpretation.  I'm just asking about the specific finding by the judge that Floyd had not been actively participating in discovery, whether that finding is unreasonable based on the record you reviewed?

A    My opinion supports Hagens Berman in asking the court to reconsider that judgment in light of the totality of information.  And my opinion, as well as, I believe, some other opinions that were submitted, just as your clients persuaded her to reconsider her prior order granting an amendment to the complaint to add the other named plaintiffs, like Floyd indicated he wanted to reconsider. People reconsider.

Q    I understand.  Is it your testimony that her finding that Floyd had not been actively participating in discovery is unreasonable?

A    My --

MR. ELKANICH:  Objection.  Asked and answered. Object to the form of the question.  Go ahead.

THE WITNESS:  Sure.

A    My declaration never characterizes the District Court's judgment as unreasonable, and I stand by the declaration and the position it takes.

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 59

Evanson's specific finding that Floyd did not provide any written information or documents responsive to defendant's discovery requests?  You can answer "yes," "no," or "I have no opinion based on my review of the record"?

A    It --

MR. ELKANICH:  Objection.  Asked and answered. Go ahead.

A    I will answer it not as a question of whether I agree with the judge.  The information in front of me that I reviewed for my opinion does not indicate that discovery had proceeded between the parties to the point of January 16.

Q    (By Mr. Zaslavsky)  Now, you've reviewed the February 26th, 2024, email from counsel to Floyd.  I believe it is Bates page 021 in Exhibit 2, correct?

A    Correct.

Q    Does this email have any relevance to -- for your interpretation of what Floyd meant in his January 16th email?

A    Are you asking whether counsel Harrington's email to Floyd evidences to me what Floyd meant on January 16th?

Q    That is correct, that is the question.

A    No, I do not think that counsel's email gives me insight into the subjective state of mind of Floyd on the 16th.  It does provide very relevant information about counsel's judgment and decision-making, but --

Floyd, et al. v. Amazon.com and Apple, Inc.                      Brooks Holland

Page 63

forthcoming means in the context of an advocate before a tribunal of the adversary system.  So I'm going to have to ask you to be a little more specific on what you mean.  Rule 3.3 is very specific.

Q    Well, it's a direct quotation from your textbook, so --

A    Yeah.

Q    Do you agree with the direct communication from your textbook that counsel have a responsibility to, quote, "Always be honest and forthcoming with a tribunal"?

A    Sure.

Q    And could you explain to me what being forthcoming means in this context?

A    Rule 3.3 provides the lawyer's responsibility as an officer of the legal system, or sometimes we hear more officer of the court, never knowingly to make a false statement of fact or law to a tribunal.

Q    Is it true that a lawyer may violate Rule 3.3(a) not just by an affirmative misstatement but by failure to disclose pertinent facts?

A    That's correct, an omission can constitute a false statement.  But it is a much more complex question of whether an omission can constitute a false statement when the lawyer is saying nothing.  And the question is whether the false statement in the total context is leading the

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 64

court knowingly to a false conclusion of fact.

Q    When you say "The question is whether the false statement in the total context is leading the court knowingly to a false conclusion of fact," that false statement can include both an omission, as well as an affirmative misrepresentation?

A    Correct.

Q    Got it.  So does this -- another way to say it, a lawyer cannot fail to disclose pertinent facts when that failure to disclose would mislead a court about some material fact?

A    And you're asking the question in a broader way that doesn't include the language of RPC 3.3 in terms of misleading.  We need to define misleading in an important way.

Misleading under the Rules of Professional Conduct is premised under the idea that the lawyer is making a statement of fact that is true but the lawyer knows the use of that true statement in context will lead the court to a false conclusion.  That's distinct from making a false statement of fact.

I'm working in my head through comments two and three for Rule 3.3.

Both highly contextual questions involve a lot of judgment.  And, of course, attached to this judgment is

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 70

A    No, I don't think that's correct.  3.3(c) is a provision that informs the entirety of the rule, and it reminds lawyers that in this duty they need also to contemplate the duty of confidentiality.  That's why we have this classic conflict to which I refer from the preamble in my motion.

And I think it becomes particularly acute when we're talking about omissions when a lawyer says, "I'm going to engage in selective disclosures to protect the interests of the court and the opposing party, but I will withhold specific factual information that it is protected by Rule 1.6 if I do not believe that omission will mislead the court into a false conclusion of fact."

Q    So do you disagree with the statement that Rule of Professional Conduct for Washington 3.3(a)(1) does not expressly subordinate a lawyer's duty to correct past false statements to RPC 1.6, confidentiality?

A    Are you asking me --

MR. ELKANICH:  Yeah, excuse me.  I'm just going to put an objection.  If counsel is reading from something that he would like the expert witness to review and to affirm or not affirm, he should show him the document.  Otherwise, it's out of context.  But go ahead.

A    If what you're asking me is if we have a lawyer who's made a statement to the court that is factually false but

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 71

did not know it at the time, and later comes to learn "I had made a false statement of fact to the court," whether the lawyer has a duty to correct it, notwithstanding the duty of confidentiality, I would say, short answer, probably yes.

But, two, RPC 3.3 could be written a little bit better to make this clearer for lawyers. I think 3.3 in Washington is a little difficult to navigate because 3.3(c) still gives primacy to RPC 1.6. Model Rule 3.3 with its subsection (c) clarifies that decision-making process a little bit more.

But the whole thing is premised on a lawyer concluding "I have made a false statement of fact, and I know it." My experience is most lawyers when in that position find a way to take care of it.

Q    (By Mr. Zaslavsky)  Okay.  I'm going to read you back a part of your answer just because I want to clarify something.

A    Sure.

Q    You answered, "If what you're asking me is if we have a lawyer who's made a statement to the court that is factually false but it did not know it at the time, and later comes to learn 'I had made a false statement of fact to the court,' whether the lawyer has a duty to correct it, notwithstanding the duty of confidentiality, I would say, short answer, probably yes."

Floyd, et al. v. Amazon.com and Apple, Inc.                Brooks Holland

Page 72

What I want to know is whether the lawyer also has a duty to correct if the lawyer made a false statement to the court that is factually false and the lawyer did know at the time that it was false?  Was the answer probably yes?

A    Under 3.3(a), if the lawyer knows at the time of making the statement that the statement is false in the way of comments two and three, clarify the meaning of falsehood, the way Rule 1.10 defines knowledge of a falsehood --

If the lawyer is standing there in real time knowingly making a false statement, the lawyer cannot make it in the first place.

Q    I agree, but then if they do make it they have a duty to correct, notwithstanding the duty of confidentiality.  Do we agree with that?

A    If the lawyer knows it was false.  Things like incomplete are different than false.  So just want to clarify what we're talking about in terms of the elements.

The comments are very clear, lawyers are not an open book and font of information for everything the court and the opposing party might want to know about their world.  But if the lawyer has made a false statement of fact, and now it is material to the court's judgment, 3.3 imposes a duty to correct, yes.

Q    Notwithstanding confidentiality obligations, correct?

A    The relationship between the two are very complex,

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 73

but that's why I said "probably yes."  There is this duty the way 3.3 is defined because the rule is written as a type of duty.  But what I will keep reiterating is the way 3.3(c) is written in Washington reminds lawyers of the duty of confidentiality under 1.6 not being subordinate to that rule in navigating what disclosures to make and what disclosures not to make consistent with the duty of confidentiality.

3.3(a), in requiring the disclosures, does not require an open book or an open file to fulfill that duty. Lawyers can go to the court and say "My situation his changed" and provide enough information for the court and an opposing party to take corrective action without disclosing, for instance, substantive confidential information from the client.

Q   Rule 3.3(c) in Washington deals with material evidence offered by the lawyer, correct?

A   In the presentation of evidence?

Q   Yes?

A   Yes.

Q   And the Rule 3.3(a) is distinct because it deals with statements of factual law made by lawyers to the tribunal, correct?

A   Those subsections deal with those different issues, correct.

Q   Okay.  Does a lawyer also have an obligation not to

Floyd, et al. v. Amazon.com and Apple, Inc.                      Brooks Holland

Page 74

mislead opposing counsel about material facts?

A    You're using the word misleading again.  Rule 4.1 prohibits a lawyer from knowingly making a false statement of fact to opposing counsel, correct.

Q    And you wrote in your report, paragraph 13, "Counsel also could not mislead the opposing party about material facts."  So that mislead is the word that you used, correct?

A    Correct.  I was using mislead in the context there that I defined where you make factually true assertions that you know will mislead the audience to a false conclusion of fact.  In the adversary system we do have to be careful about what we mean by misleading.

Q    And in the context of Rule 4.1, does a false statement of fact also include an omission?

A    It could.  The rules are very consistent.  If you go to 7.1 also about communication by lawyers, an omission in context can be misleading if in that context the lawyer knew that it would lead the audience to a false conclusion of fact.

Q    If a client sends an email to counsel that raises a question of whether the client intends to withdraw, does counsel violate the obligation not to mislead opposing counsel if he emails opposes counsel the client has not informed them of any intention to withdraw?

A    No.  As I indicated earlier, if Hagens Berman's

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 109

it's relevant.  What weight it has in that equation would depend on much more information, including, as we discussed, prior communications, all the other factors.

Q    Do you agree that Mr. Floyd's January 16th email triggered the obligation to confirm his intentions?

A    Yes.   The meaning of the email, yes.

Q    From what you have seen in the record, is there any indication that Mr. Floyd knew what, quote, withdraw as a class representative, end quote, meant?

A    From the record, do I know whether Floyd understood the precise legal meaning of that phrase?

Q    Yes?

A    I don't know either way.  It's used at different points in the communication, and I don't see anything from Floyd indicating he did not understand what this terminology meant.

Q    Did you see anything indicating he did know what it meant?

A    No.  But usually when I work with my clients they don't say, "Thanks, counsel.  I understood that phrase." Usually you hear it when I'm not communicating effectively.

Q    Are Floyd's actions after the winter of 2024 relevant to interpreting whether he intended to withdraw in January of 2024?

A    I need you to clarify a little bit what you mean by

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 187

terms, and more during the off term such as winter break and summer or spring break.  Except for ad hoc things where I get a phone call, and a lawyer and I try to find a half an hour over a lunch so I can talk with the lawyer and hopefully help the lawyer.  These things are less predictable.

Q    Thanks for your time.  Mr. Zaslavsky is going to follow up with a few more questions.

MS. ALMEIDA:  Sorry that I just butchered your name.

MR. ZASLAVSKY:  You did pretty good.

WITNESS:  Thank you.

(Pause in proceedings)

EXAMINATION

Q    (By Mr. Zaslavsky)  Okay.  I think you have the communications log and the set of communications in front of you?

A    I do.

Q    If you want to consult them, feel free to do so.

Is it accurate that Floyd's counsel did not ask him if he wanted to withdraw at least until February 26th, 2024?

A    You're asking whether the first communication that explicitly raised the question of withdrawing from the representation was February 26th?

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Floyd, et al. v. Amazon.com and Apple, Inc.                    Brooks Holland

Page 188

Q    Yes.

A    I believe I know the answer, but let me just verify.

(Pause to review document)

A    Yes, my review here confirms my recollection that the February 26th email was the first communication to raise the question of withdrawal from the case as a plaintiff, Mr. Floyd, explicitly.

Q    And is it correct that Floyd's counsel did not ask Floyd at any point what he meant by "I pass" in his January 16 email?

A    I did not see a question that asked him to explain that particular statement.

Q    Okay.  Let's turn to the February 26th email.  It's at Bates page 021 in what I believe is Exhibit 2.

A    I'm there.  Thank you.

Q    Okay.  And in that email, the last sentence, Mr. Harrington writes "If you want to withdraw as a class representative, please let us know that affirmatively," correct?

A    That's the last sentence, correct.

Q    The February 26th email does not explain what this means, correct?

A    No.

Q    To go back to something we discussed before, can you point me to any rule or authority that says Hagens Berman

Page 196

STATE OF WASHINGTON )
                    :   ss:   REPORTER'S CERTIFICATE
COUNTY OF SPOKANE   )

          I, Caryn E. Winters Keller, a certified court
reporter in and for the states of Washington, California,
and Idaho, do hereby certify:

          That the foregoing video deposition of BROOKS
HOLLAND was taken on the date and at the time and place as
shown on Page 1 hereto;

          That the witness was sworn upon their oath to
tell the truth, the whole truth and nothing but the
truth, and did thereafter make answers as appear herein.

          That the foregoing is a true and correct
transcription of my shorthand notes of the requested
deposition transcribed by me or under my direction;

          Reading and signing was requested pursuant to
FRCP Rule 30(e).

          WITNESS my hand this 6th day of February, 2026.




                    _____
                    CARYN E. WINTERS KELLER, CRR, RPR
                    WA CCR 2496 CA CSR 14512 ID CSR SRL-718

# EXHIBIT 10

Page 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STEVEN FLOYD, individually and on          )
behalf of all others similarly situated,)
                                           )
          Plaintiff,                       )
                                           )
     v.                                    ) Case No.
                                           ) 2:22-cv-01599
AMAZON.COM INC. and APPLE INC.,            ) KKE
                                           )
          Defendants.                      )

VIDEO-RECORDED DEPOSITION UPON ORAL EXAMINATION

OF

KEVIN BANK

Taken at 920 Fifth Avenue, Suite 3300

Seattle, Washington

DATE TAKEN:    January 23, 2026

REPORTED BY:   KATHLEEN HAMILTON, RPR, CRR, CCR 1917
               California CSR 11595

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                    Kevin Bank

Page 16

Q.   Okay.  Are those opinions that you have offered in the past in other cases involving sanctions orders?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  You mean expert opinions?

BY MR. YAN:

Q.   Yes, expert opinions.

A.   No.  Not to my -- the best of my recollection, no.

Q.   Okay.

So as you wrote, "The effect of the September 29th, 2025, order was to dismiss the case upon reconsideration of the prior order granting plaintiffs' leave to amend their Complaint"; correct?

A.   That's correct.

Q.   Okay.  So you're not here offering an opinion on class action litigation?

A.   No.

Q.   Okay.  And you're not here offering an expert opinion on jurisdictional issues under Article 3 of the U.S. Constitution?

A.   No.

Q.   Okay.  And you're not here to offer an expert opinion on the Federal Rules of Civil Procedure?

A.   No.

Q.   Okay.  And the Court in its September 29, 2025,

Floyd, et al. v. Amazon.com and Apple, Inc.                          Kevin Bank

Page 17

order made certain findings of fact; correct?

A.   Yes.

Q.   Okay.   And you're not purporting to act as a finder of fact in this case?

A.   No.

Q.   Okay.

So let's look at some of those specific findings.  I just want to understand whether you are intending to offer any expert opinions on issues related to those findings.

A.   Okay.

Q.   So if you go to Exhibit 2, page 15.  In lines 3 through 5, the Court says, "Kirby is now the least factually analogous case of the three, given that the named plaintiff in that case was willing to continue serving as a named plaintiff and Floyd wanted to abandon the litigation entirely"; is that correct?

A.   That's -- yeah.

Q.   Okay.

A.   I'm reading that.

Q.   So are you offering any opinion regarding the Court's finding that, in retrospect, Floyd's subjective intent was to withdraw from the litigation entirely on January 16th, 2024?

        MR. HARRINGTON:  Objection to form.

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Kevin Bank

Page 18

THE WITNESS:  Yeah, I don't want to get into any, you know, disputes with the judge.  I'm here to just give ethics testimony --

BY MR. YAN:

Q.   Okay.  So --

A.   -- as -- as outlined in my report.

Q.   Okay.  So for purposes of developing the opinions in your report, did you accept the factual premise that Floyd's subjective intent was to withdraw entirely?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  There's a difference between what his subjective intent might have been, looking at a text or an email, and what a lawyer's obligations are. We don't know.  I don't know what his subjective intent was, and I don't believe that he expressed a subjective intent that was clear.  So that's what I will be testifying about.

BY MR. YAN:

Q.   Okay.  So you're not opining about Mr. Floyd's subjective intent?

A.   No.

MR. HARRINGTON:  Objection to form.

BY MR. YAN:

Q.   Would any of your opinions have been different

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                    Kevin Bank

Page 28

used in RPC 1.16(a)(3), and he never instructed Hagens Berman to withdraw him as class representative."

A.    Correct.

Q.    Okay.  So going back to the language that the Court used, are you offering an opinion... are you offering an opinion that Floyd did not express a desire to withdraw from the litigation entirely in his January 16th, 2024, communications?

A.    I'm offering an opinion that what he said was ambiguous, and that under RPC 1.2 and 1.3, a lawyer is required to make further inquiry as to the true intentions of the client in this situation.

Q.    So what do you mean by "ambiguous" in that response?

A.    "Ambiguous" is, I think, very clear under the case law.  You require -- you know, it's required that the attorney obtain -- I'm quoting the Taggares case -- specific consent to relinquishing a substantial right in litigation.  Yeah, so anything that even smacks of ambiguity must be followed up on.

Q.    Okay.  So is it fair to say that an ambiguous statement is capable of multiple reasonable interpretations?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  Yes.

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Kevin Bank

Page 29

BY MR. YAN:

Q.   Okay.   So then because the statement -- let me start over.

Because you agree that January -- the January 16th, 2024, communication was at least ambiguous regarding whether Mr. Floyd wanted to withdraw entirely, you are not offering an opinion that the January 16th, 2024, communication could not possibly be interpreted as expressing a desire to withdraw; correct?

MR. HARRINGTON:   Objection to form.

THE WITNESS:   It could have.

BY MR. YAN:

Q.   Okay.   You're opining that it could also have been reasonably interpreted by Hagens Berman as not expressing a desire to withdraw?

A.   Correct.

MR. HARRINGTON:   Objection to form.

BY MR. YAN:

Q.   Okay.

Let's go to page 14 of the order, line -- starting with line 14.  So, "Counsel concealed Floyd's intentions and mischaracterized it as simply his failure to communicate for unknown reasons, possibly a personal emergency, while at the same time insisting that Floyd had not withdrawn."

Page 40

candor by counsel.

Q.   Okay.  That's what I wanted to clarify.

So you do offer an opinion that you believe counsel did not demonstrate a lack of candor, but you have no opinion regarding the Court's application of Rules 15 and 16 to those findings of fact?

A.   That's correct.

Q.   Okay.

And that's because in your -- in formulating the opinions in your report, in assessing Hagens Berman's diligence, you applied the RPCs; correct?

MR. HARRINGTON:   Objection to form.

THE WITNESS:   Yes, I was -- I was referring to diligence as it's defined in the RPCs.

BY MR. YAN:

Q.   Okay.  So you don't know sitting here whether there's any differences between what constitutes diligence under the RPCs versus diligence under the Federal Rules of Civil Procedure; correct?

A.   Correct.  I'm not offering an opinion on diligence under that particular Federal Rule --

Q.   Okay.  And you don't know --

A.   -- of Civil Procedure.

Q.   Oh.

A.   Civil Procedure, sorry.

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Kevin Bank

Page 41

Q.   Yes, yes.

And you don't know whether the standard for diligence could be stricter or less strict under one set of rules versus the other?

A.   I don't.

Q.   Okay.  And you don't know -- well, let me start over.

RPC 1.3 applies during the entire course of a representation; correct?

A.   Yes.

Q.   Okay.  You don't know whether FRCP 16 only applies under certain situations?

A.   I don't.

Q.   Okay.  And on page 17 of the Court's order, line 13, the Court writes, "Floyd's counsel should have appreciated on January 16th that a new plaintiff was needed."

Do you see that?

A.   Sorry, give me the line again.

Q.   Yeah, starting on line 15, actually.

A.   Okay.

Q.   Yeah.  Middle of line 15.  "Floyd's counsel should have appreciated on January 16th that a new plaintiff was needed"; correct?  A correct reading?

A.   Yes, yes.

a5b4de2f-878b-45c2-b618-fbb685f04f84

Page 44

THE WITNESS:  Well, the -- the class plaintiff would need, at some point, to participate in discovery, if the discovery was deemed appropriate.  But at that point, my understanding is he had been asked to provide some very specific information, and he was having some nervousness about it and expressing that.

BY MR. YAN:

Q.   Okay.  All right.

Page 12 of the Court's order, line 3.  "If counsel was unclear" -- oh, let me know when you're there.

Page 12, line 3.  "If counsel was unclear as to the extent of the withdrawal that Floyd intended, as they have repeatedly claimed to be, they should have asked him to clarify."

So I'll just stop there.

A.   Okay.

Q.   You agree with that opinion -- right? -- or that piece of the Court's order, that they had an obligation to clarify Floyd's intentions?

A.   Yes, I do.

Q.   Okay.  So continuing, "Counsel did not contact him for that purpose until after the motion for leave to amend was filed and the additional plaintiffs had been identified.  And even at that time, counsel did not

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Kevin Bank

Page 46

A.    Correct.

        MR. HARRINGTON:  Objection to form.

BY MR. YAN:

Q.    Okay.  You did not apply the Federal Rules of Civil Procedure?

A.    Correct.  My opinion is based on the RPCs.

Q.    Okay.  And you're not opining that Hagens Berman couldn't have tried harder or couldn't have reached out sooner to attempt to clarify Floyd's intentions; correct?

A.    It's no simple answer to how often you have to reach out.  The question is whether it's a reasonable diligence.

Q.    Sure.  But in reaching the conclusion that Hagens Berman's behavior was reasonable or ethical, you're not saying that Hagens Berman couldn't have acted faster or couldn't have tried harder to clarify Floyd's intentions?

        MR. HARRINGTON:  Objection to form.

        THE WITNESS:  It's always possible, and different attorneys might do different things and have different approaches.

BY MR. YAN:

Q.    Okay.  And, again, you don't know whether Federal Rules of Civil Procedure 16 might have imposed a

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                    Kevin Bank

Page 50

MR. HARRINGTON:  Just so we're on -- he's on the same page, what's the Bates number?

MR. YAN:  Oh, yeah.

BY MR. YAN:

Q.    So the first Bates number of the document is PLAINTIFFS_000011, and the page we're on now is 12.  So the bottom of page -- Bates 12.

A.    Okay.  So can you repeat the question?

Q.    So the first email is from Meredith Simons at Hagens Berman to Mr. Floyd on January 16th requesting assistance with collecting specific financial information for discovery; correct?

A.    Correct.

Q.    Okay.  And then the next email is from Mr. Floyd, also on January 16th.  The first four words are:  "I have since reconsidered"; correct?

A.    Yeah.  It goes on, but yes.

Q.    Okay.  So Mr. Floyd's reconsidering his participation in the case; correct?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  (Reviews exhibit.)

He says -- the words are what the words are.

BY MR. YAN:

Q.    Okay.  So as we discussed earlier, a plausible interpretation of these words is that Mr. Floyd wanted

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                    Kevin Bank

Page 51

to withdraw entirely from the case; correct?

A.    Well, there's -- you know, there's the common parlance interpretations, and that's actually somewhat separate from the lawyers' obligation when they read a communication like that.  So I just want to make very clear, you know, in common parlance and for an average person who's not a lawyer reading this, yes, you could reach that conclusion.

Q.    Okay.  And Mr. Floyd is not a lawyer as far as you know; correct?

A.    I have no knowledge of that.

Q.    Okay.

But in your opinion as an attorney, this was not clear enough for Hagens Berman to file a formal notice of withdrawal; correct?

A.    Correct.

Q.    Okay.  And that's because Mr. Floyd did not provide a specific instruction?

A.    Yes, that's correct.

Q.    Okay.

And Mr. Floyd goes on to give the reasons why he's reconsidering.  He says, "For the small little bit of money that I may or may not get from a lawsuit, it's not worth exposing all my credit card information, login credentials"; correct?

a5b4de2f-878b-45c2-b618-fbb685f04f84

Floyd, et al. v. Amazon.com and Apple, Inc.                    Kevin Bank

Page 61

A.    (Reviews exhibit.)

You can proceed.  Thank you.

Q.    Okay.

So... again, Mr. Harrington does not provide specific instructions for Mr. Floyd to withdraw from the case, if that is his desire; correct?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  I don't believe that is correct, because his last statement is, "If you want to withdraw as a class representative, please let us know that affirmatively."

BY MR. YAN:

Q.    Okay.  So this email, six weeks at -- well, first, you agree this email was sent approximately six weeks after the January 16th communication; correct?

A.    Give or take, yes.

Q.    Okay.  So this email, six weeks after the January 16th communication, is the first time, as far as you can tell from the record, anyone at Hagens Berman gives Mr. Floyd an option to affirmatively withdraw from the case?

MR. HARRINGTON:  Objection to form.

THE WITNESS:  It's the first time it's so stated, yes.

BY MR. YAN:

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Kevin Bank

Page 129

C E R T I F I C A T E

STATE OF WASHINGTON

COUNTY OF KING


        I, Kathleen Hamilton, a Certified Shorthand Reporter and Notary Public in and for the State of Washington, do hereby certify that the foregoing transcript of the deposition of KEVIN BANK, having been duly sworn, on JANUARY 23, 2026, is true and accurate to the best of my knowledge, skill and ability. Reading and signing was not requested pursuant to FRCP Rule 30(e).

        IN WITNESS WHEREOF, I have hereunto set my hand and seal this 2ND day of FEBRUARY, 2026.



        KATHLEEN HAMILTON, RPR, CRR, CCR #1917

a5b4de2f-878b-45c2-b618-fbb685f04f84