# Exhibit A

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

_____
                                        )
JOLENE FURDEK and JONATHAN RYAN, )
on behalf of themselves and all  )
others similarly situated,       )
                                 )
            Plaintiff,  )
      v.              ) No. 2:22-CV-01599-KKE
                      )
AMAZON.COM, INC., and APPLE INC.,)
                                 )
            Defendants.  )
_____

VIDEOTAPED VIDEOCONFERENCE DEPOSITION
UPON ORAL EXAMINATION OF
MARK J. FUCILE
_____

Deposition taken at Buchalter
805 SW Broadway, Suite 1500 - Portland, Oregon 97205

* SOME PARTICIPANTS APPEARED VIA VIDEOCONFERENCE *

DATE TAKEN:  April 9, 2026
REPORTED BY:  Nicole A. Bulldis, RPR, FCRR, OR CSR 24-0130
AZ CR 50955 | CA CSR 14441 | WA CCR 3384

## Page 3

A P P E A R A N C E S (Cont'd)

FOR DEFENDANT APPLE, INC.:
      BENJAMIN G. BRADSHAW
      QUYNHANH TRAN
(via videoconference) SERGEI B. ZASLAVSKY
(via videoconference) JASON YAN
      O'Melveny & Myers LLP
      1625 Eye Street NW
      Washington, DC 20006
      (206) 383-5300
      bbradshaw@omm.com
      qtran@omm.com
      szaslavsky@omm.com
      jyan@omm.com

THE VIDEOGRAPHER:
      DAVID PRISHCHENKO, Buell

      --o0o--

***STENOGRAPHER'S NOTE:  Quotation marks are used for clarity and do not necessarily reflect a direct quote.  All quotations from exhibits are reflected in the manner in which they were read into the record and do not necessarily denote an exact quote from the document.

## Page 2

A P P E A R A N C E S

FOR PLAINTIFFS:

      DAVID J. ELKANICH
      REBECCA B. CASSADY
      Buchalter
      1420 5th Avenue, Suite 3100
      Seattle, WA 98101
      (206) 319-7052
      delkanich@buchalter.com
      bcassady@buchalter.com

(via videoconference) BEN M. HARRINGTON
      Hagens Berman Sobol Shapiro LLP
      715 Hearst Avenue, Suite 300
      Berkeley, CA 94710
      (510) 725-3000
      benh@hbsslaw.com

FOR DEFENDANT AMAZON.COM, INC.:
      MARYANN T. ALMEIDA
      Davis Wright Tremaine LLP
      920 5th Avenue, Suite 3300
      Seattle, WA 98104
      (206) 757-8187
      maryannalmeida@dwt.com

(via videoconference) NOAH W. FITZGEREL
      Sidley Austin LLP
      1501 K Street NW
      Washington, DC 20005
      (202) 736-8000
      noah.fitzgerel@sidley.com

## Page 4

VIDEOTAPED DEPOSITION OF MARK J. FUCILE

EXAMINATION INDEX
EXAMINATION BY                          PAGE
Attorney Elkanich...................................... 6

EXHIBIT INDEX
EXHIBITS FOR IDENTIFICATION                          PAGE
1 Fucile Declaration - Filed 3/13/26................. 9
2 Plaintiffs' Response to Defendants' Motion for
    Attorneys' Fees and Costs.......................... 35
3 Order Granting in Part and Denying in Part
    Defendants' Motion for Discovery Sanctions......... 36
4 **Floyd/Simons Email String - 1/16/24............... 49
6 **Amended Floyd Communications Log.................. 51
7 **Siegel/Floyd Text Message [PLAINTIFFS_000018]..... 93
8 **Simons/Floyd Text String [PLAINTIFFS_000019]...... 97
9 **Harrington/Floyd Email - 2/26/24................. 98
10 Motion to Amend 1st Amended Complaint & to Intervene 103
18 Defendants' Motion for Discovery Sanctions.......... 37
21 Defendants' Opposition to Motion to Amend First
    Amended Complaint and to Intervene................. 109
22 Reply in Support of Motion to Amend First Amended
    Complaint and to Intervene........................ 110
** CONFIDENTIAL EXHIBITS

BUELL REALTIME REPORTING, LLC
206.287.9066 l 800.846.6989

Floyd, et al. v. Amazon.com and Apple, Inc.                                    Mark J. Fucile

Page 13

an expert for one of those law firms?

A.  I may have done some work for a Davis Wright partner a number of years ago.  I can't remember if he -- he was a real estate lawyer that was at Davis Wright here in Portland, and I -- off the top of my head, I can't remember if it was an ethics issue or it was -- like, back then, I also did some real estate condemnation, and I can't remember if it was in that area.

Q.  Other than the law firms that we've mentioned, are you aware of any other defense counsel that you or I have not mentioned at this point?

A.  Not that I'm aware of.  Like I said, I didn't go through the certificate of service on the pleadings with a fine-tooth comb.

Q.  Other than defense counsel, did you speak to anybody else about the declaration that you prepared?

A.  No.

Q.  How much time did you spend drafting this report?

A.  I would -- a very ballpark estimate would be probably 30-ish hours or so.

Q.  What did you do for your preparation here today?

A.  I reviewed my declaration.  I reviewed some of the case material that's reflected in the declaration.  I reviewed some of the legal material that's cited in the

Page 14

declaration.  And without getting into the substance, I had a couple of meetings with counsel.

Q.  Okay.  When you had -- say you had meetings with counsel, was it with one particular law firm or multiple law firms?

A.  It would have been multiple law firms.

Q.  Okay.  In the same meeting or in multiple meetings?

A.  In the same meetings.

Q.  Okay.  Do you know how many meetings you had to prepare for this?

A.  We had one video meeting last week, a video meeting on Monday of this week, and then an in-person meeting yesterday afternoon.

Q.  Okay.  Other than yourself, how many other lawyers from the defendants' law firms were in those meetings?

A.  Yesterday is the easiest to recall.  There were three lawyers who were present in person and, I believe, at various times, two or three lawyers by video.

Q.  So a total of five to six lawyers for the -- for your meetings?

A.  Around that for yesterday's meeting.

Q.  You were asked to review declarations provided by Nellie Barnard, Kevin Bank, and Brooks Holland;

Page 15

correct?

A.  Yes.

Q.  And I assume you did so; correct?

A.  I did.

Q.  You know Brooks Holland, don't you?

A.  I do.

Q.  Okay.  And you're familiar with his work in legal ethics, I assume?

A.  I am, at least part of it.

Q.  When you say "part of it," what part are you familiar with?

A.  I'm most familiar with -- Professor Holland was a contributor to the Washington State Bar Association Legal Ethics Deskbook.  I know he's done a lot of writing in the area of criminal defense, and that's not an area that I run into all that often; so I'm not as familiar with his work in that area.

Q.  But you are familiar with his work in the legal ethics field?

A.  Yes.

Q.  And then you cite him, I believe, in your declaration, don't you?

A.  Yes.

Q.  And you're aware that he teaches ethics, as well, at Gonzaga University?

Page 16

A.  Yes.

Q.  Okay.  Have you ever served on a committee with him?

A.  I have.

Q.  Okay.  And what committee did you serve on with him?

A.  I believe the committee that we had joint service on was -- I'll call it an ad hoc committee that was put together mid- -- it was like around 2015, that had to do with the -- Washington had then created a program for licensed legal technicians, and there were issues about creating a set of rules for the LLLTs as they're called in Washington, and then amending the lawyer rules to dovetail with the LLLT rules.  And Brooks and I were on a committee that dealt with that.

Q.  Okay.  You would agree that he is a well-respected ethics scholar; correct?

A.  Yes.

Q.  Okay.  And that he's competent and reasonable in providing -- to provide ethics analysis; correct?

A.  Yes.  We probably have our differences, including today's case, but I would recognize Brooks as an expert.

Q.  Okay.  Indeed, competent and reasonable ethics lawyers can often disagree about how to proceed in a case,

4 (Pages 13 to 16)

Floyd, et al. v. Amazon.com and Apple, Inc.                                        Mark J. Fucile

Page 17

can't they?

A. Correct.

Q. Now, same with Ms. Barnard. You know her professionally, as well, and respect her work; correct?

A. Yes. I don't know Ms. Barnard as well as either Professor Holland or Mr. Bank. I know that she worked with you and Peter Jarvis at Holland & Knight and now works with Colin Folawn, who I know, as Colin being the general counsel of Schwabe, and Ms. Barnard being, I believe, the deputy general counsel.

Q. And you just indicated it, but that you know Kevin Bank as well?

A. I do.

Q. How do you know Kevin? Or Mr. Bank, I should say.

A. I --

Q. We all know each other, so it's easy --

A. I'm afraid I will slip into that same vernacular. But I first met Kevin, Mr. Bank, when he was at the Washington State Bar Disciplinary Counsel's Office, and I would run across him primarily in two capacities there. The first is, at that time, I was on what was called the Rules of Professional Conduct Committee for the Washington State Bar, and we usually had someone from the Disciplinary Counsel's Office who would sit in on our

Page 18

meetings. Most often, it was the chief disciplinary counsel. But if he wasn't available, he would sometimes send Mr. Bank.

And then for a time, Mr. Bank and I shared space in a column in the Washington State Bar magazine, so we would trade off. I would do one oriented toward lawyers in private practice, and then Mr. Bank would do one oriented toward disciplinary defense.

Q. In that capacity -- and do you know he's in private practice now and no longer with the Washington State Bar; correct?

A. I do, yes.

Q. And you had opportunities to interact with him since he's been in private practice?

A. I have.

Q. Now, you would agree that Mr. Bank has a substantial experience applying the Rules of Professional Conduct in real-world settings; correct?

A. Certainly in the disciplinary realm, yes.

Q. Okay. And Mr. Bank is competent and able to provide ethics advice as well; correct?

A. Correct.

Q. Okay. Now, in your declaration, you state that the court doesn't need expert testimony to decide these issues; correct?

Page 19

A. Correct.

Q. Okay. You explain that the interpretation and application of the RPCs is a matter of law for the court; right?

ATTY BRADSHAW: Object to the form. Misstates testimony.

THE DEPONENT: Under the Eriks case in Washington, yes.

Q. (By Atty Elkanich) Okay. And you assert that judges are capable of interpreting the RPCs without expert assistance; is that right?

ATTY BRADSHAW: Object to the form. Misstates testimony.

THE DEPONENT: I think I did state it somewhat differently in my declaration. But in this instance, I found it rather unusual, to go to your question just before the last one, that the court had already made two rulings, the sanctions order and the dismissal order, that were findings of fact, and the -- and actually had dismissed the case, and then the experts came in. I found that to be a very unusual procedural posture for experts trying to re-litigate things after a case had actually been dismissed.

Q. (By Atty Elkanich) All right. So I guess my question, though, was your position is that the judge

Page 20

doesn't need expert testimony and is capable of interpreting the RPCs by themselves; correct?

ATTY BRADSHAW: Object to the form. Misstates Mr. Fucile's declaration.

THE DEPONENT: The judge has already made findings of fact, both in the sanctions order and the dismissal order, on issues that certainly, at this point, touch on the RPCs, although the judge did not reference the RPCs in either the sanctions order or the dismissal order. But under Washington law, under the Eriks case and other cases, ultimately, the question of whether or not a lawyer has violated the RPCs is an issue of law for the court.

Q. (By Atty Elkanich) And so the court is not required to also accept your views on the RPCs; correct?

ATTY BRADSHAW: Object to the form.

THE DEPONENT: Under Eriks, the court is ultimately, because the -- Washington, under Eriks, has decided that whether or not a lawyer has violated the RPCs is a legal issue, then the court is free to place whatever weight it considers or reject altogether expert declarations that might be offered.

Q. (By Atty Elkanich) So the court could consider your expert declaration or it could reject it completely; correct?

5 (Pages 17 to 20)

Floyd, et al. v. Amazon.com and Apple, Inc.                                        Mark J. Fucile

Page 21

A.  That would be at the discretion of the court.

Q.  Or that -- the views that you espouse in your declaration, the court could consider those or reject those as well; correct?

ATTY BRADSHAW:  Object to the form.  Calls for speculation.

THE DEPONENT:  The court could accept or reject the expert opinions.  The court has already -- in terms of the facts that are cited in the report, the court has already made rulings as the fact-finder on the facts.

Q.  (By Atty Elkanich) So I think that you're agreeing with me -- correct? -- that the court could reject the conclusions you draw in your declaration.  Correct?

ATTY BRADSHAW:  Object to the form.  Asked and answered and misstates testimony.

THE DEPONENT:  Under Eriks, the court is the -- because it's a legal issue on whether or not an RPC has been violated, then the court is free to reject any of the expert declarations that have been offered, including mine.

Q.  (By Atty Elkanich) Thank you, Mr. Fucile.  But experts can still assist courts by explaining norms and reasonableness; correct?

ATTY BRADSHAW:  Object to the form.

Page 22

THE DEPONENT:  It's up to the judge in terms of whether or not the judge wants to take an expert's report or testimony and put whatever weight the court considers appropriate.

Q.  (By Atty Elkanich) Right.  But even if it is a question of law, the court may still find value in expert opinions; correct?

ATTY BRADSHAW:  Object to the form.

THE DEPONENT:  That would be up to the court.

ATTY BRADSHAW:  Calls for spec- --

Hey, Mark.  Just let me state -- finish my objection before...

THE DEPONENT:  Sure.

ATTY BRADSHAW:  So I object to the form.  Calls for speculation.

Go ahead and answer now.

THE DEPONENT:  That would be at the court's discretion.

Q.  (By Atty Elkanich) Okay.  But, in your experience, you have submitted declarations to the court where the issue was a question of law in the past, haven't you?

ATTY BRADSHAW:  Object to the form.  Vague and ambiguous.

Page 23

THE DEPONENT:  Some of the cases that I have submitted declarations on have involved issues relating to the RPCs, and the courts have been free to accept or reject the expert testimony involved.

Q.  (By Atty Elkanich) Indeed, according to Exhibit 1 of your declaration, there are over 80 instances in which you were retained as an expert in an ethics issue; correct?

A.  Correct.

Q.  Okay.

A.  And some of those have involved outreach of the fiduciary duty, which is a little bit different issue than pure RPC-related issues.

Q.  But you would agree the vast majority included some interpretation of the Rules of Professional Conduct?

A.  Yes.

Q.  Okay.  You offered opinions about how the ethics rules would apply in various circumstances; correct?

A.  Correct.

Q.  And you've given ethics opinions in a wide range of cases including sanctions cases, for example?

ATTY BRADSHAW:  Object to the form.  Vague and ambiguous.

THE DEPONENT:  Some may have involved sanctions.  Many have involved fee disputes, issues

Page 24

relating to the RPCs, but some may have touched on sanctions as well.

Q.  (By Atty Elkanich) Okay.  So, for example, if you look at Exhibit 1 on your declaration, which would be...

I apologize.  I would like Exhibit 3, please.  Page 120.

ATTY BRADSHAW:  David, Page 120?

Q.  (By Atty Elkanich) It is Page 120 at the bottom.

A.  And, david, are -- when you refer to pages, are you referring to the bottom pagination or the PACER pagination?

Q.  Thank you for asking, Mark.  It's at the bottom, Page 120.

ATTY BRADSHAW:  Well, I think it's the -- at the bottom, not the page of the actual exhibit, but the page number in the --

ATTY ELKANICH:  Oh, good point.

ATTY BRADSHAW:  -- PDF.

Q.  (By Atty Elkanich) I should say the top.  It's 117 at the top.

A.  Okay.  Got it.

THE STENOGRAPHER:  If I could just ask you guys to keep your voice up since I'm back here?

ATTY ELKANICH:  Yes.  Apologies.

Q.  (By Atty Elkanich) For example, if you look

6 (Pages 21 to 24)

Floyd, et al. v. Amazon.com and Apple, Inc.    Mark J. Fucile

Page 133

witness.  Mark, thank you very much for your time today.

THE VIDEOGRAPHER:  All right.  This concludes the video-recorded deposition of Mark Fucile. We're going off the record at 1:32 PM.

(Deposition concluded at 1:32 PM.)

(Reading and signing was requested pursuant to FRCP Rule 30(e).)

--o0o--

Page 134

CERTIFICATE

STATE OF WASHINGTON )
                                        ) ss
COUNTY OF CLARK    )

I, Nicole A. Bulldis, RPR, a Certified Court Reporter, do hereby certify under the laws of the State of Washington:

That the foregoing videotaped deposition upon oral examination of Mark Fucile was taken stenographically by me on April 9, 2026, and transcribed under my direction;

That the witness was duly sworn by me to testify truthfully, and that the transcript of the deposition is full, true, and correct to the best of my ability;

That I am not a relative, employee, or counsel of any party to this action or relative or employee of such counsel, and that I am not financially interested in the said action or the outcome thereof.

Reading and signing was requested pursuant to FRCP Rule 30(e).

IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of April 2026.



Nicole A. Bulldis, RPR
WA CCR No. 3384

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989