# Exhibit G

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

_____
                                    )
STEVEN FLOYD, individually and   )
on behalf of all others similarly)
situated,                        )
                                 )
            Plaintiff,  )
      v.            ) No. 2:22-cv-01599 KKE
                                 )
AMAZON.COM and APPLE INC.,     )
                                 )
            Defendants.  )
_____

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION
OF
NELLIE Q. BARNARD
_____

Deposition taken at David Wright Tremaine LLP
560 SW 10th Avenue, Suite 700 - Portland, Oregon 97205

* SOME PARTICIPANTS APPEARED VIA VIDEOCONFERENCE *

DATE TAKEN:   January 30, 2026
REPORTED BY:  Nicole A. Bulldis, RPR, FCRR, OR CSR 24-0130
AZ CR 50955 | CA CSR 14441 | WA CCR 3384

Page 2

A P P E A R A N C E S
FOR PLAINTIFFS:
        DAVID J. ELKANICH
        Buchalter
        1420 5th Avenue, Suite 3100
        Seattle, WA 98101
        (206) 319-7052
        delkanich@buchalter.com

(via videoconference) BEN M. HARRINGTON
        Hagens Berman Sobol Shapiro LLP
        715 Hearst Avenue, Suite 300
        Berkeley, CA 94710
        (510) 725-3000
        benh@hbsslaw.com

FOR DEFENDANT AMAZON.COM, INC.:
        JACQUELYN E. FRADETTE
(via videoconference) ELIZABETH NOEL ERTLE
(via videoconference) NOAH W. FITZGEREL
        Sidley Austin LLP
        1501 K Street NW
        Washington, DC 20005
        (202) 736-8000
        jfradette@sidley.com
        elizabeth.ertle@sidley.com
        noah.fitzgerel@sidley.com

FOR DEFENDANT APPLE, INC.:
        BENJAMIN G. BRADSHAW
(via videoconference) SERGEI B. ZASLAVSKY
(via videoconference) JASON YAN
(via videoconference) CARI M. MANNING
        O'Melveny & Myers LLP
        1625 Eye Street NW
        Washington, DC 20006
        (206) 383-5300
        bbradshaw@omm.com
        szaslavsky@omm.com
        jyan@omm.com
        cmanning@omm.com

Page 3

A P P E A R A N C E S (Cont'd)

FOR DEFENDANT APPLE, INC. (Cont'd):
(via videoconference) COLLEEN K. POWERS
        Apple, Inc.
        1 Apple Parkway
        Cupertino, CA 95014
        (551) 486-0362
        colleenpowers@apple.com


THE VIDEOGRAPHER:
        BRANDON DAVIS, Buell Realtime


        --o0o--


***STENOGRAPHER'S NOTE:  Quotation marks are used for
clarity and do not necessarily reflect a direct quote.  All
quotations from exhibits are reflected in the manner in
which they were read into the record and do not necessarily
denote an exact quote from the document.

Page 4

VIDEOTAPED DEPOSITION OF NELLIE Q. BARNARD

        EXAMINATION INDEX
EXAMINATION BY                          PAGE
Attorney Fradette...................................... 6
Attorney Bradshaw...................................... 109

        EXHIBIT INDEX
        (Exhibits to be provided by counsel.)
EXHIBITS FOR IDENTIFICATION                  PAGE
1 Barnard Expert Declaration - Filed 10/27/25......... 8
2 Floyd Text Message String [PLAINTIFFS_000046]....... 20
3 Floyd/Simons Email String - 1/16/24................. 36
4 Siegel/Floyd Text Message [PLAINTIFFS_000018]....... 73
5 Simons/Floyd Text Message String [PLAINTIFFS_000019] 76
6 Harrington/Floyd Email - 2/26/24.................... 31
8 Motion to Amend First Amended Complaint and to
  Intervene.......................................... 92
9 Privilege Log....................................... 39
12 [DUPLICATE OF EXHIBIT 2]........................... 100
15 Stipulated Motion and Proposed Order Re Floyd's
   Deadline to Respond to Interrogatories & RFPs...... 104
16 Plaintiff Communications [PLAINTIFFS_000001-000120]. 125
17 RPC 3.3 - Candor Toward the Tribunal................ 167
        --o0o--

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

Floyd, et al. v. Amazon.com and Apple, Inc.                                          Nellie Q. Barnard

Page 49

A. It -- the email says what it says, and my opinion is that it's reasonable for a lawyer to draw the conclusions that I've noted in my expert report, that this email is focused on discovery. It's also important, though, that because the scope and import of this email is not very clear, that a lawyer in Hagens Berman's position should follow up with Mr. Floyd to understand exactly what he means.

Q. Okay. So you agree that there's enough raised in here that they should follow up, not just about discovery, but also about his intentions overall; right?

A. I believe that Hagens Berman needs to follow up to this email -- and they did -- to understand the scope of his -- of his hesitance and -- and what his goals are and objectives are for the litigation.

Q. Okay. And so she does. As we said, she says, "I understand that reaction and there's things we can do"; right? And then she says that she'll call in 30 minutes; correct?

A. I'm just going to take a minute to read the email.
(Reviews exhibit.)
Okay. I've read the email. What was your question?

Q. So she sends him the protective order; correct?

Page 50

A. She says in the email that she's attached the protective order, so I assume that she did.

Q. Okay. And she says, "There are several things we can do to protect your credit card information"; correct?

A. She does say that, yes.

Q. So she's informing him there's alternatives to the, you know, potential invasiveness of discovery; correct?

A. She is addressing -- I think this email reflects that Ms. Simons understood Mr. Floyd's email to be hesitance about engaging in discovery and the invasiveness of discovery, and she's trying to address that in this email.

Q. Right. She's informing him of alternatives; correct?

A. I don't know that a protective order is an alternative. It's a way to protect sensitive financial information. It's not a way to not produce the sensitive financial information.

Q. Okay. So, like, perhaps she could've explained other ways than just the protective order; right?

A. I don't know. What -- what other ways?

Q. His response is, "I pass"; correct?

A. That is what Mr.Floyd says, yes.

Page 51

Q. Okay. And it looks like there's an emoji that didn't come through just above that.

A. Yeah. I see a question mark in a box.

Q. He doesn't say, "Okay. Tell me -- tell me what the other options might be."

A. His email just says, "I pass."

Q. Yeah. He doesn't say, "Okay. Well, if it won't be exposed, then I'm -- I'm okay with it"; right? He just says, "I pass" and nothing else.

A. His email says, "I pass."

Q. And she didn't reply to that; correct?

A. I don't see a reply in this email chain, no.

Q. And the privilege log does not reflect a reply to this email chain in writing; correct?

A. I'm just going to look at the privilege log.
(Reviews exhibit.)
So in looking at -- this email is reflected in Rows 30, 31, and 32 and 33. And then in Row 34, on January 16, 2024, at 12:28 PM, which is about three minutes after Mr. Floyd's email, where he says, "I pass," it looks like Ms. Simons called Mr. Floyd and he did not answer.

Q. Okay. So there's no further follow up on January 16th; correct?

A. There's no further follow up from Ms. Simons

Page 52

following up. She followed up, he didn't answer, and that's the last communication that's reflected in the privilege log on January 16th.

Q. Okay. If Mr. Floyd wanted out of the case at this time -- and I think we can agree now he did -- what would he have needed to say to communicate that to Ms. Simons at that time?

ATTY ELKANICH: Object to the form of the question.
Go ahead.

THE DEPONENT: So I -- I don't agree that we know now that Mr. Floyd wanted out of the case in January 2024.

Q. (By Atty Fradette) If he did, what would he have needed to say?

A. He would have needed to respond to his lawyers and tell them, "I don't want to proceed with the case."

Q. Okay. So he needed to use the words, "I don't want to proceed with the case"?

A. He -- I don't think he needs to be that precise. He needs to communicate in some fashion to his lawyers that he doesn't want to be the named representative of the case anymore. And simply saying, "I pass," it's not clear -- you know, it's not clear what he is intending, and it's also -- you know, he -- he has legal claims that

13 (Pages 49 to 52)

Floyd, et al. v. Amazon.com and Apple, Inc.                    Nellie Q. Barnard

Page 185

deposition, and we are off the record at 3:01 PM.

THE STENOGRAPHER: You're ordering the deposition, correct?

ATTY FRADETTE: Yes, yes.

ATTY BRADSHAW: Yes.

ATTY FRADETTE: Well, I guess we don't have a standing order with y'all so I need to fill out a sheet or whatever you have.

THE STENOGRAPHER: If you just tell me, I'll keep it on the record what your order is.

ATTY FRADETTE: Okay. Can I have a rough tonight?

ATTY BRADSHAW: If we can get the rough, and what are the options in terms of getting the transcript?

THE STENOGRAPHER: Yes, and the office told me Tuesday was when you wanted it.

ATTY FRADETTE: That's fine.

ATTY BRADSHAW: Great.

THE STENOGRAPHER: David, are you guys ordering?

ATTY ELKANICH: Same order.

(Deposition concluded at 3:03 PM.)

(Reading and signing was not discussed pursuant to FRCP Rule 30(e).)

Page 186

CERTIFICATE

STATE OF WASHINGTON )
                     ) ss
COUNTY OF CLARK      )

I, Nicole A. Bulldis, RPR, a Certified Shorthand Reporter, do hereby certify under the laws of the State of Oregon and the State of Washington:

That the foregoing videotaped deposition upon oral examination of Nellie Q. Barnard was taken stenographically by me on January 30, 2026, and transcribed under my direction;

That the witness was duly sworn by me to testify truthfully, and that the transcript of the deposition is full, true, and correct to the best of my ability;

That I am not a relative, employee, or counsel of any party to this action or relative or employee of such counsel, and that I am not financially interested in the said action or the outcome thereof.

IN WITNESS WHEREOF, I have hereunto set my hand this 3rd day of February 2026.

Nicole A. Bulldis, RPR
OR CSR No. 24-0130
WA CCR No. 3384

47 (Pages 185 to 186)