# Exhibit H

Case 2:22-cv-01599-KKE     Document 307-8     Filed 04/24/26     Page 2 of 19

Legal Ethics, Law. Deskbk. Prof. Resp. § 1-9 (2025-2026 ed.)

**Legal Ethics - The Lawyer's Deskbook On Professional Responsibility**  |  November 2025 Update

Ronald D. Rotunda [a0], John S. Dzienkowski [a1]

**Introduction**

---

# § 1-9 The Scope of the Model Rules of Professional Conduct

**§ 1-9(a) The Text of the ABA Model Rules Scope**

**SCOPE**

**[14] The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.**

**[15] The Rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. The Comments are sometimes used to alert lawyers to their responsibilities under such other law.**

**[16] Compliance with the Rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings. The Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.**

**[17] Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. See Rule 1.18. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.**

**[18] Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. These Rules do not abrogate any such authority.**

**[19] Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.**

**[20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.**

**[21] The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. The Preamble and this note on Scope provide general orientation. The Comments are intended as guides to interpretation, but the text of each Rule is authoritative.**

### § 1-9(b) The 2002 Model Rules Changes to the Scope.

The drafters made three major changes to the Scope section of the 2002 Rules. First, they modified old paragraph 18, now paragraph 20, about the use of the Rules to establish civil liability.[1] Second, they removed paragraph 19 about attorney-client privilege and work product.[2] Finally, they removed paragraph 20 about the lawyer's decision not to reveal confidential information under Rule 1.6.[3]

### § 1-9(c) Scope

### § 1-9(c)(1) Rules of Reason

First, the Scope section advises that the Model Rules are "rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself."[4] The Scope note emphasizes that some of the Rules are imperatives, some are permissive, and others define the nature of the relationship between lawyers and others. "The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the word 'should.' Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules."[5]

### § 1-9(c)(2) Reference to Other Law

The Rules do not purport to exhaust the moral and ethical considerations that any lawyer should consider in determining what action one should take, but they do provide a framework for the ethical practice of law.[6] When a state or federal court adopts the ABA Model Rules as rules of the court, those rules become law, just like the rules of civil procedure are law. However, in determining what actions to take, any lawyer must also examine other law outside of the Rules. For example, one may need to turn to the law of contract and agency to determine whether a lawyer-client relationship exists. Similarly, the evidentiary law of attorney-client privilege, the law of work-product privilege, the law of fiduciaries, the law of contract, the law of tort, any specific statutory provisions (particularly those dealing with the obligations and powers of government lawyers)—these are all relevant in determining the lawyer's obligations.[7]

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 4 of 19

If a lawyer fails to comply with an obligation that the jurisdiction's rules of professional conduct impose, the lawyer is subject to discipline. If the lawyer is disciplined, he or she may be suspended from the practice of law, or disbarred, or subject to a public or private reprimand. The existence and severity of sanctions is an issue that is not discussed in the Model Rules of Professional Conduct, but is found in other law. Consequently, some jurisdictions have followed the lead of the ABA, which has developed model rules governing the procedures and sanctions for legal discipline, as well as proposals to mediate client-lawyer disputes in general and fee disputes in particular. [8]

### § 1-9(c)(3) Relation of the Ethics Rules to the Law of Malpractice and Other Causes of Action

The Scope section of the 1983 Model Rules advised that a lawyer's violation of a Rule should "not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." [9] The section was insistent that the Rules "are not designed to be a basis for civil liability," and that lawyers for parties in litigation should not use the Rules to disqualify their opponents. [10]

However, this determination that the ethics rules should not be used in malpractice cases or in disqualification motions may be likened to whistling past the graveyard. If one is concerned when crossing a graveyard at night, it does no harm to whistle, but the whistling provides no real protection either. In spite of the protestations in the Scope section, courts have often used the legal ethics rules to impose tort liability on lawyers, [11] to reverse criminal prosecutions, [12] and to disqualify lawyers. [13] As one court acknowledged, it is "common lore that the Code, though it literally prescribes only the bases of lawyer discipline, is regularly used by courts to establish the criteria for lawyer disqualification as well." [14]

The drafters of the 2002 Rules modified this paragraph in the Scope because of the court decisions that continued to introduce the Rules as standards in malpractice and other actions. The new paragraph states:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct. [15]

Although this middle ground position is closer to how courts use the Rules, it is likely that courts will continue to fashion jury charges and expert reports without regard to this language.

Many states explicitly copied the ABA's 1983 Scope to the Model Rules, including the comment that the ethics rules are not meant to be enforced outside of legal discipline. [16] But, as the federal district court recognized in Harrison v. Fisons Corp., [17] while the preamble to the Florida ethics rules states that they are not to be invoked as procedural weapons in litigation, courts have consistently relied on ethics codes to establish standards for ruling on claimed conflicts of interest. In fact, the Tenth Circuit instructed lawyers that the ABA Model Rules reflect the "national standard" to be used in ruling on disqualification motions. [18] Recall that these Model Rules are not law in their own right; the ABA only proposes that states adopt them.

Courts have even raised the legal ethics rules sua sponte and used them to disqualify lawyers. [19] Courts have also relied on these same ethics rules when they reject fee arrangements that violate them. [20] Lawyers often object to this transposition of legal ethics into the realm of disqualification motions and malpractice, but it is a natural and virtually inevitable progression.

The rules of ethics are judicially imposed court rules. It is more than a little inconsistent for a court to promulgate a rule stating that a lawyer cannot represent a particular client because to do so would violate Rule 1.6 (governing confidences and secrets)

of a former client, and then allow the lawyer to appear before the court in blatant violation of the Rule—particularly when the purpose of that Rule is to protect that former client.

Similarly, it is not logical for a court to promulgate an ethics rule requiring that contingent fees be in writing [21] and then enforce an oral contract to the detriment of a party whom the Rule was drafted to protect. [22]

Courts have often applied the ethics rules in lawyer malpractice suits. Judges are hardly consistent on this question, [23] and some do state that a violation of an ethics rule does not establish malpractice. [24] On the other hand, other judges have ruled that the Rules of Professional Conduct establish the lawyer's fiduciary obligations, violation of which is malpractice.

Thus, Rizzo v. Haines [25] held:

> We further believe that expert testimony was not needed to detail the fiduciary obligations of an attorney who engages in financial transactions with his client, since these obligations are established by law, the Code of Professional Responsibility, and the Model Rules of Professional Conduct. [26]

Rizzo v. Haines goes so far as to say that a violation of the ABA's Model Rules—Rules proposed by the ABA but *not* yet adopted by the jurisdiction—"establishe[s]" a violation of the lawyer's obligation, so that the plaintiff does not even need expert evidence to prove a violation. [27]

Other cases do not go that far, but they do treat violation of the Rules as evidence of negligence for malpractice purposes or creating a rebuttable presumption of malpractice. [28] Some cases allow the expert witness to consider violation of an ethics rule in evaluating the lawyer's conduct, [29] or allow the expert witness to quote from the ethics rules (but do not allow the witness to testify as to the source of the rule). [30]

One court has categorized the various approaches in the case law into four different classifications:

> First, some courts hold that professional ethical standards conclusively establish the duty of care and any violation constitutes negligence per se. Second, a minority of courts finds that a professional ethical violation establishes a rebuttable presumption of legal malpractice. Third, a large majority of courts treat professional ethical standards as evidence of the common law duty of care. Finally, one court has found professional ethical standards inadmissible as evidence of an attorney's duty of care. [31]

The Restatement of the Law Governing Lawyers has adopted the third alternative: in the situation where the lawyer may be civilly liable, plaintiff's proof of a violation of the ethics rules or any statute that regulates the conduct of lawyers does not establish liability per se. However, the trier of fact may consider this violation as an aid in understanding and applying the basic principle requiring that a lawyer who owes a duty of care must exercise the competence and diligence that lawyers in similar circumstances normally exercise. If the lawyer has represented that she will exercise greater competence or diligence, then the lawyer is held to that higher standard. [32]

Thus, the Restatement of the Law Governing Lawyers has embraced what is really an unremarkable conclusion: a lawyer's violation of the ethical rules can lead to malpractice liability. As the Restatement acknowledges, in a strict sense: "the lawyers codes are no more than [rules enforceable through the disciplinary machinery]. Indeed, in the preambles to the codes careful efforts are made to limit the legal effect of the code provisions to that context. However, that effort is futile, and necessarily so." [33] The Restatement goes on to explain:

> The lawyer codes unmistakably help define standards of conduct relevant to civil liability claims against members of our profession. [34]

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 6 of 19

The Restatement repeats these caveats and notes that general tort principles apply the regulatory standards of conduct against the members of any profession, even though the ethics codes seek to skirt the relationship between the rules governing lawyers and the lawyers' malpractice liability. [35] Thus, while the professional ethics rules are used to discipline lawyers for professional misconduct, the effect of the rules go beyond that use. Courts also use the ethics rules to disqualify lawyers because of a conflict of interest or other misconduct. As another judicial sanction in a civil case, the judge may exclude evidence obtained in violation of recognized standards of professional conduct. [36] Or, the court may require the lawyer to forfeit some or all of the lawyer's fees because of ethical lapses. [37] If the attorney's conduct is particularly egregious, the court may even impose the very harsh penalty of dismissing the pending litigation. [38] Moreover, the standards of professional conduct can be relevant even in the context of criminal prosecution of a lawyer. [39]

In any malpractice action, the plaintiff is typically required to prove three separate elements:

> **1.** The employment of the attorney or other basis for duty; **2.** The failure of the attorney to exercise ordinary skill and knowledge; and **3.** That such negligence was the proximate cause of damage to the plaintiff. [40]

It will often be the case that, in order for the plaintiff to prove the failure of an attorney to exercise the ordinary skill and knowledge expected of any ethical attorney, it will be very helpful to show a violation of the Rules of Professional Conduct. [41] The plaintiff will argue that a reasonable lawyer will follow the Rules of Professional Conduct (element #2 above), that a failure to follow the Rules is a failure to follow the standard of care expected of a reasonable lawyer, and that this violation was the proximate cause of harm to the plaintiff (element #3 above). Even if one argues that a violation of the lawyer's obligations is not (in the words of Rizzo v. Haines) "established" by the Rules of Professional Conduct, a violation of the Rules will still be helpful to a plaintiff proving a malpractice case. [42]

Plaintiff, of course, still must show damages and causation resulting from the violation of any Rule that was drafted to protect the plaintiff. [43] The lawyer may have violated a Rule, such as the Rule prohibiting commingling of clients' funds, [44] but if that violation did not cause the plaintiff any damage (for example, if the funds were promptly returned and any interest due on the use of the funds was promptly paid), then the lawyer is still subject to professional discipline (because the lawyer did violate a disciplinary rule), but is not subject to malpractice liability (because the plaintiff suffered no damages).

### § 1-9(c)(4) The Role of Expert Testimony on the Meaning and Application of the Rules of Professional Responsibility

The Restatement explains that proof of a violation of a rule or statute regulating the conduct of lawyers "may be considered by a trier of fact as an aid in understanding and applying" the principle that a lawyer must exercise the competence and diligence normally exercised by lawyers in similar circumstances or has breached a fiduciary duty to a client. However, proof that the lawyer violated the rule or statute is only relevant to the extent that "(i) the rule or statute was designed for the protection of persons in the position of the claimant," and that "(ii) proof of the content and construction of such a rule or statute is relevant to the claimant's claim." [45]

Given that a lawyer's violation of the ethical rules, at the very least, may show malpractice, the next question is the extent to which a malpractice plaintiff (or a party seeking to disqualify a lawyer or succeed on another motion based on violation of the ethics rules) may use expert opinion to provide testimony to the jury or judge on the meaning of one or more of the ethics rules governing lawyers.

A similar question arises in the case of a lawyer who wishes to use the ethics rules as a defense to a disqualification motion or malpractice claim. The normal tort principle is that the trier of fact may consider the content and interpretation of any relevant statute or rule, including a rule of professional conduct governing lawyers, designed for the protection of persons in the position

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

Case 2:22-cv-01599-KKE   Document 307-8   Filed 04/24/26   Page 7 of 19

of the person relying on this rule. [46]   Hence, we have the same question as to whether the lawyer may rely on expert testimony to prove that ethics rules required her to engage in action that the plaintiff now attacks.

Courts typically require the use of expert testimony in legal malpractice cases, unless the misconduct is so obvious that no reasonable juror could fail to understand that there has been a breach, such as, when a lawyer fails to appear in court, or does not file suit within limitations period, or fails to notify the client of his withdrawal. [47]   In that limited class of cases, a party need not rely on expert testimony because the claim is "based on the common knowledge exception or violation of an explicit Rule of Professional Conduct, or a combination of both." [48]

If courts normally require expert testimony, and the lawyer's violation of the ethics rules (or the lawyer's reliance on the ethical rules as a defense to liability) is relevant, then one would expect expert testimony on the meaning of the ethics rules. That, in fact, is the general rule. However, in the case of expert testimony on the meaning of an ethics rule, a few courts argue that the question of the meaning and application of the rules governing lawyers is one of law, and thus the general rule is that the court does not accept expert testimony as to what domestic law is. [49]

Under a theory in which the meaning and application of the legal ethics rules are "law," the court—not the expert witness— should instruct the jury as to what the ethics rule in question means and how it applies in the particular case. [50]   Even if the expert purports to testify about facts or opinion, the court will not allow the expert to testify about the ultimate legal conclusion; the judge alone instructs the jury as to what is the law. [51]   In that situation, it follows that the litigant should not need to present expert testimony because the judge will instruct the jury as to the "law" governing the ethical obligations of the lawyer, and the judge has already ruled that he or she will now allow testimony as to meaning and application of the ethics rules, because the judge instructs as to the law.

However, that simply-stated proposition—the judge, not the expert witness, instructs the jury as to what is the law—is as many layered as an onion. Exactly what is "law" and what is "fact" in the context of the meaning and application of the rules governing the practice of law?

Ultimately, "law" is what the judge decides (even if that decision incorporates "facts"), and "fact" is what the judge instructs the jury to decide. Although this definition is certainly circular, we see its application routinely in questions involving summary judgment and other judge-jury allocation questions. Civil procedure calls such questions a "mixed question of law and fact." In a tort case, when the jurors write on the verdict sheet: "we find that the defendant was negligent," is that a statement about the law or a statement about the facts? When the trial judge overrules the jury and concludes that the defendant was not negligent, is the judge making a statement about law or fact? Similarly, in a criminal case, when the jury finds that the defendant is "guilty," it is making either a finding about a legal proposition or a finding about a factual proposition.

Courts typically say no witness, expert or otherwise, can testify about domestic law, but they may testify and give their opinion whether, on the facts as stipulated or found by a trier of fact, the legal standard as given by the court has been satisfied. Thus, the ethics expert, in opining about matters of legal ethics, will be able to testify that "yes," [or "no"], assuming that in Jurisdiction A the standard of care is the minimum required by the ethics rules, and assuming further that facts X, Y, and Z are true, it is my opinion that, all things considered, "Lawyer *L* did [or did not] measure up to that standard of care or conduct." Indeed, even courts that prohibit expert testimony on the meaning and application of the legal ethics rules in particular circumstances concede that experts may give "limited testimony on mixed questions of law and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue and not opine on the ultimate legal conclusion." [52]

Thus, ==the general rule is that the expert witness may testify about violation of ethics rules.== The expert may testify how lawyers, in practice, apply or interpret a particular rule, what lawyers view as "reasonable" in making a conflicts check, when lawyers regard it as necessary to inform a client of a conflict, when lawyers, in practice, view a conflict as "reasonably foreseeable," and so forth. In legal malpractice cases, courts often require expert testimony and, increasingly, malpractice cases are built on ethical violations, such as conflict of interests. As one court noted:

> It is clear that there can be instances where noncompliance with the Code of Professional Responsibility does not result in malpractice. Before legal malpractice can occur, the client must have incurred damages which were directly and proximately caused by the attorney's malpractice. Because of the very nature and complexity of the

Code of Professional Responsibility and the conduct of legal matters, expert testimony is required to support the allegations except in those cases which are so patently obvious as to negate this requirement.[53]

Thus, many courts allow or require expert witnesses to testify on the meaning and application of the ethics rules in a malpractice case or a disqualification motion based on alleged ethical violations. As one commentator has noted, if a court allows the introduction of the ethics rules into evidence or a jury instruction explaining the Rules, but does not allow any expert testimony, that would "permit a jury of lay persons to decide a legal malpractice case without expert testimony." This argument is particularly persuasive in "those situations explicitly governed by the Rules, such as the Rules dealing with conflicts of interest." Yet, even in other cases, and "even when the Rules are explicit, the complexity of the transaction or underlying case may be such that a lay person could not understand how a lawyer should have acted under the circumstances without expert testimony. Also, proof of a generic ethical duty, such as the duty to represent a client competently, obviously is of no more assistance to the jury than is a generic charge of the law of negligence."[54]

Another commentator, Professor Williams Hodes, reminds us of a useful caution, that when the expert witness is a lawyer, there is the risk that the witness testimony will be "disguised advocacy." Because the expert witness is a lawyer, "the lawyer responsible for presenting the case will too often push the witness into disguised testimony about the historical facts, thus usurping the jury's function, or disguised testimony about the law, thus unseating the judge."[55]

The general rule when the trier of fact considers either the content or construction of a statute or rule is that the expert witness, in testifying, may rely on the statute or rule in forming his or her expert opinion and—

> may testify as to its construction and application to the circumstances in question. Such a witness may rely on the usual aids to construction, such as official comments, judicial and ethics-committee opinions construing the rule or statute, and professional literature. The procedural law of the jurisdiction determines such issues as the qualifications required for such a witness and whether the party calling the witness has satisfied its burden of coming forward as to the issues in question. The court may instruct the jury as to the content and construction of the statute or rule and its bearing on the issue of care, under the general principles governing jury instructions. A dispute as to whether a statute or rule may properly be considered by the trier of fact is decided by the tribunal.[56]

If the court allows expert testimony as to the meaning of the ethics rules and how lawyers typically apply and understand them in a given situation, there is the question of who is competent to testify on this issue. If the expert witness may testify on the meaning, application, and interpretation of an ethics rule, the next issue is how the court decides whether the proffered witness is qualified. Normally, the court will consider someone an expert based on his or her knowledge of the applicable rules, his or her knowledge of and contribution to the legal literature, and his or her involvement in bar activities or committees that create or interpret the professional norms.[57]

However, Cicero v. Borg-Warner Automotive, Inc.[58] rejected that principle. In this case, an employee who had been fired filed an age discrimination claim under a state law. The employer moved for summary judgment, which the trial court granted. The trial court then issued an order to show cause why the employee and his lawyers should not be sanctioned under Federal Rule 11. The trial court, hearing the various motions, ultimately concluded that sanctions were not warranted against the lawyers or their client for filing complaint or prosecuting case. However, in reaching this conclusion, the court also held that the law professor and lawyers whom the employee's lawyers retained did not qualify as experts on ethical requirements of prosecuting employment discrimination cases.

The court's reasoning in Cicero would likely disqualify most experts testifying on legal ethics. For example, the court argued that one's publication of various law review articles on ethics did not qualify him because his articles were not peer-reviewed. It is a fact of life that, for the great majority of law reviews, law students make the decision whether to accept and how to edit articles for publication.[59] The expert witness was a legal analyst on television, but those positions are also not peer reviewed. The proffered expert was a member of employment-related committees of various local bar associations, but that did not qualify him as an expert on the ethical requirements of prosecuting an employment discrimination case, for purposes of arguing that

sanctions were not warranted against the plaintiff's lawyers in this employment discrimination case, because, the court said, membership on such committees did not connote expertise. The court conceded that membership in these groups implies an interest in this area of law, but it "does not necessarily connote expertise, as any attorney can select himself to be a member of these organizations." The fact that an expert witness is named in a publication listing the best lawyers in the country, was similarly insufficient to qualify him as an expert because the court in Cicero said, there was no evidence demonstrating who the publication's decision-makers were, their qualifications, or what criteria were used in reaching their decision. The professor had twenty years of experience practicing employment discrimination law, but that was not enough to qualify him as an expert witness according to the court, because time in service did not necessarily lead to expertise. [60]

Given its reasoning in not accepting these lawyers as expert witnesses as to what kinds of lawyer conduct constitute "reasonable" actions in the prosecution of an employment discrimination, the Cicero court candidly acknowledged: "The court is not certain whether there is such a thing as an 'expert' in these areas; it may well be that the only sources of 'expertise' are the courts and professional bodies charged with administering them. This issue was not raised and remains unresolved for purposes of this order." [61]

The growth potential of Cicero is unclear. Cicero is correct that many law reviews are not peer-reviewed in the sense that law professors do not make the decision as to which articles to accept. However, legal ethics experts (and courts) rely on the articles that noted authorities in the field publish, so these articles are generally accepted in the field, which is more than is required in expert testimony generally. [62] Moreover, courts consistently cite and rely on law review articles as evidence of the law. Scholars in the field also rely on and cite these articles. The case law on expert testimony routinely allows experts to rely on these articles in giving their opinions. [63]

Cicero argued that "only courts and professional bodies administering legal ethics rules may be experts." [64] It is unclear, however, why one would accord special expertise to members of these professional bodies given the fact that, nowadays, they often contain lay members, but not consider a lawyer who has been researching and writing about legal ethics and cited by the courts for many years. [65]

In one sense that may be true. If a person, blindfolded, throws darts at a target, he could do that for 20 years and we would not say that he has "experience," because he did not have the opportunity to learn from his mistakes or to improve through practice. But the verdict of the marketplace tends to value true experience. Lawyers do not practice blindfolded: a lawyer who has argued 20 cases before the U.S. Supreme Court tends to be able to charge more than one who has argued one case, just as a lawyer who has labored for 20 years in jury trial work is considered more expert, more experienced, and more valued than a lawyer who has never tried a case. Experience counts in these other areas; should legal ethics be any different?

It may be that Cicero was simply averse to the notion that there should be any expert testimony about the application, meaning, and interpretation in the legal community. If so, that is the view of the minority of cases. [66]

## § 1-9(c)(5) Fee Forfeitures

Some courts deny a lawyer part or all of her fee for ethics violations on the grounds that the client should be excused from the obligation to pay fees to a lawyer who breaches a fiduciary duty to the client. This remedy does not necessarily require a plaintiff to show damages, because the lawyer should not be allowed to collect a fee during the time that she was in a conflict of interest (or during the time she engaged in another ethical violation), as she should not have been representing the client at all. Sometimes this remedy is applied in conflict-of-interest cases. [67]

The court will impose forfeiture of all or part of the lawyer's fee as a remedy for ethics violations only in the special situation where the lawyer has engaged in a "clear and serious" violation of her duty to her client. [68] The court should take into account several important factors—the gravity and timing of the violation; the lawyer's willfulness; the effect of the violation on the value of the lawyer's work for the client; any other threatened or actual harm to the client; and the adequacy of other remedies. [69]

If fee forfeiture occurs, it extends only to fees. It does not extend to disbursements that a lawyer has made on behalf of the client if the disbursement has conferred a benefit on the client. [70]

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

Case 2:22-cv-01599-KKE Document 307-8 Filed 04/24/26 Page 10 of 19

**§ 1-9(c)(6) The Lawyer's Obligation to Keep Secret Information About the Client**

The Scope section under the 1983 Rules made several important comments on Rule 1.6, *Confidentiality of Information*. There is no explanation why these comments were included here rather than under Rule 1.6. The drafters of the 2002 Rules did delete several of these comments, but this discussion is retained because many states continue to use this language.

First, these comments make clear that the lawyer's duty to hold client information confidential is a duty that begins when the "lawyer agrees to consider whether a client-lawyer relationship shall be established." [71] The lawyer may decide that she will not take the case (she is too busy for a case of that complexity, or the case conflicts with a trial scheduled at the same time, etc.), but the duty imposed by Rule 1.6 exists when the lawyer "agrees to consider" whether to accept the client. This is retained in the 2002 Rules.

Second, while Rule 1.6 governs the lawyer's ethical duty to keep the client's confidences, the Rule does not govern the judicial application of the attorney-client evidentiary privilege, or the work-product privilege. [72] The Rule 1.6 obligation, as discussed in greater detail below, is broader than either the evidentiary privilege or the work-product privilege. A judge may determine, in enforcing a subpoena against a lawyer, that certain information is not within either the evidentiary privilege or the work-product privilege and thus the lawyer must reveal the information. But the lawyer's obligation to comply with the subpoena does not give the lawyer carte blanche to broadcast that information.

If the information is not "generally known," [73] the lawyer should keep it confidential and not proclaim it to the world, even though he must comply with the subpoena. For example, if the lawyer is ordered to reveal certain client information to a grand jury, he should not then tout and publicize it to the world at large, because the information has not been widely distributed and may never be known outside the grand jury room.

*Iowa Supreme Court Attorney Disciplinary Board v. Marzen* [74] illustrates the distinction between "generally known" and "knowable but not generally unknown." The court appointed a lawyer to represent a woman in a hospitalization commitment proceeding. He later agreed to represent her in other matters, including a dispute with her mother and a child-custody proceeding. During an interview with a television news reporter, the lawyer revealed that the woman earlier sued and received a settlement from a parole officer whom she claimed had engaged in sexual misconduct. The lawyer argued he had done nothing wrong because information about the prior suit was available from public sources, but the court disagreed. However, while the information was knowable, it was not generally known, until the lawyer made it known. The ethical requirement of maintaining client confidentiality is broader than information protected by the attorney-client privilege. It appeared that the lawyer's comments were intended to defame his own client. The court imposed an indefinite suspension not to exceed six months.

Finally, the Scope acknowledges that Rule 1.6 gives the lawyer discretion to disclose information in certain circumstances. The lawyer "may reveal" client information, for example, "to prevent reasonably certain death or substantial bodily harm." [75] But, the purpose of such exceptions is to give lawyers certain discretion, and the exercise of such discretion "should not be subject to reexamination," because that would be "incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure." [76] This language, which was included in the 1983 Scope, was deleted in 2002.

The caveat that the 1983 Scope offered probably would not protect lawyers. Assume, for example, that a client tells his lawyer that the client is likely to kill a material witness. Rule 1.6 allows (but does not require) the lawyer to reveal that information. The 1983 Scope section advised us that the lawyer's decision not to reveal this information is a decision that should not be subject to reexamination. However, we can expect that if the client commits the murder the relatives of the deceased will sue the lawyer for failing to notify the appropriate parties when the ethics rules did not require the lawyer to remain silent. Despite the 1983 Scope's caveat, we should not be surprised if a court holds such a lawyer liable in tort. Other professionals have been found liable, [77] and the hope expressed that the lawyer's exercise of discretion found in Rule 1.6 "should not be subject to reexamination," may be worth no more than a magnificent bequest in a pauper's will.

The Restatement of the Law Governing Lawyers considered this issue in a specific section dealing with a lawyer's duty of care to certain non-clients. One proposed subsection of that section, § 73(5), focused on a lawyer's liability to a non-client when the

client threatens a crime involving imminent death or serious bodily injury. Proposed (but *not* adopted) section 73(5) proposed that a lawyer should be liable to a non-client—

> when and to the extent that circumstances known to the lawyer make it clear that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent the client from committing a crime imminently threatening to cause death or serious bodily injury to an identifiable person who is unaware of the risk and the lawyer's act has facilitated the crime. [78]

In spite of the limited liability that this subsection imposed (especially in light of the requirement that the lawyer's action had to have "facilitated the crime") the Council of the American Law Institute ordered that it be deleted from the final version. [79] As the Comment (also not adopted) to this subsection notes: "Holding a lawyer liable to a victim of the client for failing to undertake such reasonable measures does not discourage any proper lawyer conduct, and can benefit the client by preventing the wrong." [80]

Lawyers should not take too much solace from the ALI's official position, because it is the position that many states have rejected. The ALI Reporter's Note advised: "As of February, 1996, the professional rules of 10 states required lawyers to disclose confidences when necessary to prevent a crime likely to cause death or serious bodily injury, while virtually every other state permitted but did not require such disclosure." [81]

© 2025 by The American Bar Association

---

### Footnotes

| | |
|---|---|
| a0 | Doy and Dee Henley Chair and Distinguished Professor of Jurisprudence, Chapman University School of Law. |
| a1 | Dean John F. Sutton, Jr. Chair in Lawyering and the Legal Process, The University of Texas at Austin. |
| 1 | *See* 1983 Scope, paragraph 18. |
| 2 | *See* 1983 Scope, paragraph 19. |
| 3 | *See* 1983 Scope, paragraph 20. |
| 4 | Scope, Comment 14. |
| 5 | Scope, Comment 14. |
| 6 | Scope, Comment 15. |
| 7 | Scope, Paragraph 16, 17, 18. |
| 8 | The ABA Standards for Imposing Lawyer Sanctions (1992). The ABA Model Rules for Lawyer Disciplinary Enforcement (2002) (procedures to govern lawyer discipline). The ABA Model Rules for Fee Arbitration (Feb. 23, 1995). The ABA Model Rules for Mediation of Client-Lawyer Disputes (Aug. 1998). |
| 9 | 1983 Scope, Paragraph 18, which read in full as follows: |

"[18] Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty."

Scope, Paragraph 18.

See cases discussed in, *e.g.,* Note, *The Model Rules as a Guide for Legal Malpractice*, 3 GEORGETOWN J. LEGAL ETHICS 609 (1993); Note, *The Evidentiary Use of the Ethics Code in Legal Malpractice: Erasing a Double Standard*, 109 HARV. L. REV. 1102 (1996).

There is much debate in the literature on this issue. *See* Thomas D. Morgan, *an Introduction to The Debate Over Fee Forfeitures*, 36 EMORY L.J. 755 (1987) (Symposium: Government Intrusion into the Attorney-Client Relationship); Thomas D. Morgan, *Sanctions and Remedies for Attorney Misconduct*, 19 S. ILL. U. L.J. 343 (1995); John Leubsdorf, *Legal Malpractice and Professional Responsibility*, 48 RUTGERS L. REV. 1010 (1995); Daniel L. Draisen, *The Model Rules of Professional Conduct and Their Relationship to Legal Malpractice Actions: A Practical Approach to the Use of the Rules*, 21 J. OF LEGAL PROFESSION 67 (1996–1997).

*E.g.,* Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), holding that there was a conflict of interest rendering a criminal trial unfair when the law firm that represented a defendant in a criminal case also represented the prosecutor sued in his personal capacity in an unrelated civil matter. The conviction must be reversed in the absence of the criminal defendant's knowing and intelligent waiver.

*E.g.*, IBM v. Levin, 579 F.2d 271 (3d Cir.1978), where the court disqualified a law firm that represented Levin in an antitrust suit against IBM while representing IBM on various labor law matters. The law firm had no continuing retainer from IBM and no specific assignment from IBM on the day that it filed the antitrust complaint against IBM, but the law firm had accepted legal assignment from IBM both before and after it had filed the antitrust complaint.

*See also, e.g.,* Robert C. Hacker & Ronald D. Rotunda, *Attorney Conflicts of Interest*, 2 CORPORATION L. REV. 345 (1979); Ronald D. Rotunda, *Conflict Problems When Representing Members of Corporate Families*, 72 NOTRE DAME L. REV. 655 (1997).

These issues are discussed in more detail below, in connection with the various Model Rules dealing with conflicts of interest.

United States v. Bullock, 642 F.Supp. 982, 984 n. 4 (N.D.Ill.1986).

2002 Rules, Scope, Paragraph 20.

Model Rules, Scope, Comment 18.

Harrison v. Fisons Corp., 819 F.Supp. 1039, 1041 (M.D.Fla.1993).

Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1383 (10th Cir.1994).

*E.g.,* Robert C. Hacker & Ronald D. Rotunda, *Standing, Waiver, Laches, and Appealability in Attorney Disqualification Cases*, 3 CORPORATION LAW REVIEW 82 (1980).

*E.g.,* Holstein v. Grossman, 616 N.E.2d 1224 (Ill.App. 1 Dist. 1993), which refused to enforce an oral fee-sharing agreement between lawyers because the client had not consented in writing, as required by the state rule based on ABA Model Rule 1.5(e)(1).

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 13 of 19

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

*Contrast, e.g.,* Shimrak v. Garcia-Mendoza, 912 P.2d 822 (Nev.1996), a case of a fee dispute between a private investigator and a law firm. The court rejected the argument that the investigator was equally at fault, noting that the ethics rules apply only to lawyers, not to lay investigators and that, in the court's view, not enforcing the contract would be unfair to the lay investigator. Note that the court's enforcement of a contract that appears to violate public policy (the policy expressed in the court rules of ethics) serves to reward lay people who contract in knowing violation of the ethics rules.

Rule 1.5(c). *E.g.,* Estate of Pinter by Pinter v. Mc Gee, 679 A.2d 728 (N.J.Super.App.Div.1996), holding that a law firm violated the ethics rule by entering into a contingent fee agreement without a written retainer signed by the firm and the client, and could not circumvent the rule by recovering on quantum meruit basis. *Accord* Vaccaro v. Estate of Gorovoy, 696 A.2d 724, 727 (N.J. Super. App. Div.1997) (lawyers cannot benefit from their failure to comply with the requirements of Rules of Professional Conduct, Rule 1.5 by enforcing an agreement that violates that rule).

However, some authorities regard this rule as too harsh, and—while they will not enforce an oral contingent fee contract—they will allow quantum meruit recovery. Restatement of the Law Governing Lawyers, Third, § 39 (2000). In Gagne v. Vaccaro, 766 A.2d 416 (Conn. 2001), a lawyer entered into a contingent fee agreement with his client, but it was not reduced to a writing. Then, a second lawyer replaced the first one and this other lawyer successfully pursued the matter and collected a contingent fee. The first lawyer wanted a fair share of the fee earned. The lack of a written agreement is not enough to deny him all fees in cases where he had acted loyally, and his work had contributed to the final outcome. In those circumstances, quantum meruit recovery is appropriate.

Restatement of the Law Governing Lawyers, Third, § 52(2)(c) (2000), concluding that, in a case involving the lawyer's civil liability, the trier of fact, in determining whether the lawyer violated a standard of care, may consider whether the lawyer violated an ethics rule or statute regulating the lawyer's conduct—

"to the extent that (i) the rule or statute was designed for the protection of persons in the position of the claimant and (ii) proof of the content and construction of such a rule or statute is relevant to the claimant's claim."

*See* Lawrence J. Latto, *The Restatement of The Law Governing Lawyers: A View from the Trenches*, 26 Hofstra L. Rev. 697, 722–23 (1998) (footnotes omitted):

"What many, too many, courts have said about the materiality of a violation of a provision of the ethical codes to a lawyer's civil liability is, for the most part, shameful nonsense. The same holds true of the courts' comments regarding the relevance of those provisions to whether a lawyer has adequately fulfilled his duties or has performed services with adequate care. Much of this sorry state is attributable to the pernicious disclaimers in the preambles to the codes …. Professor Hazard, who as Reporter for the Kutak Commission that initially produced the Model Rules might be thought to bear a share of the responsibility, dismissed these efforts to deny that the Rules had anything to do with civil liability as 'predictably futile, however, if not fatuous.' "

*See, e.g.,* Astarte, Inc. v. Pacific Industries Systems, Inc., 865 F.Supp. 693 (D.Colo.1994) (Rules of Professional Conduct neither create private causes of action nor establish standards of civil liability).

Rizzo v. Haines, 555 A.2d 58 (Pa.1989).

555 A.2d at 67, citing Model Code of Professional Responsibility, EC 5-5, Model Rules of Professional Conduct, Rule 1.8(c).

**Expert Testimony** Grimm v. Fox, 33 A.3d 205 (Conn. 2012). Whether plaintiff needs expert testimony to support a legal malpractice claim is a question of law, so appellate review is plenary. The normal rule is that plaintiff needs to provide expert testimony. The exception to the general rule requiring expert testimony is limited to situations where the defendant lawyer has essentially "done nothing whatsoever" to represent his or her client's interest.

Despite the court's critical language of defendants (plaintiff client's former attorneys) for violating basic rules of appellate procedure, the former client must still present expert testimony in his legal malpractice action. This expert testimony is necessary to establish whether the lawyer's violations of the basic rules of appellate procedure were, in fact, a breach of the requisite standard of care in the specific circumstances of the client's divorce appeal.

*See also* Day v. Rosenthal, 170 Cal.App.3d 1125 (Cal. App. 1985):

"The standards governing an attorney's ethical duties are conclusively established by the Rules of Professional Conduct. They cannot be changed by expert testimony. If an expert testifies contrary to the Rules of Professional Conduct, the standards established by the Rules govern and the expert testimony is disregarded."

*E.g.,* Waldman v. Levine, 544 A.2d 683 (D.C.1988) holding that an expert may rely on the ethics rules to determine negligence and the standard of care in legal malpractice cases. Mayol v. Summers, Watson & Kimpel, 585 N.E.2d 1176 (Ill. App. 4 Dist. 1992), *appeal denied,* 596 N.E.2d 630 (Ill.1992), holding that the judge may issue jury instructions that quote from the ethics rules governing lawyers just like a judge, in other negligence cases, quotes from statutes and ordinances in giving instructions:

"Juries in legal malpractice suits may properly consider standards of professional ethics pertaining to attorneys because such suits involve allegations of conduct that does not conform to minimum professional standards …. Furthermore, it is well established that jury instructions may quote portions of statutes and ordinances where (1) the jury has heard evidence that defendant has violated the quoted portions of the statute or ordinance, and (2) plaintiff alleges the violation breached a duty owed to him by defendant …. Like most statutes and ordinances, attorney disciplinary rules establish minimum standards of conduct and are intended to protect the general public. For these reasons, we hold that jury instructions may quote attorney disciplinary rules in legal malpractice cases to the same extent as they may quote statutes and ordinances in instructions in other types of negligence cases."

Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400 (Tenn.1991).

Hizey v. Carpenter, 830 P.2d 646 (Wash. 1992).

Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C., 453 S.E.2d 719, 721 (Ga.1995) (internal case citations omitted).

**Violations of ethics rules as evidence of malpractice.** *E.g.,* Pressley v. Farley, 579 So.2d 160 (Fla.Dist.Ct.App.1991) (rule violations not negligence per se, although admissible as some evidence of negligence).

**Violations of ethics rules not admissible as evidence of malpractice.** In contrast, Hizey v. Carpenter, 830 P.2d 646 (Wash.1992) concluded that professional ethical standards are never admissible as evidence of a lawyer's duty of care.

Restatement of the Law Governing Lawyers, Third, §§ 52(1), 2(3) (2000).

Restatement of the Law Governing Lawyers, Third, Proposed Final Draft No. 1, at xxii (ALI, March 29, 1996).

Restatement of the Law Governing Lawyers, Third, Proposed Final Draft No. 1, at xxii (ALI, March 29, 1996). *See also* Restatement of the Law Governing Lawyers, Third, § 6 ("Judicial Remedies Available to Client or Nonclient for Lawyer Wrongs") (2000). *Cf. id.* at § 7 ("Judicial Remedies Available to Lawyer for Client Wrongs"). This text does not focus on client wrongs because the Model Rules of Professional Responsibility govern lawyers, not clients.

*See* Restatement of Torts, Second, §§ 286 to 288C, § 874A. Restatement of the Law Governing Lawyers, Third, Foreword at volume 1, p. xxi (2000).

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 15 of 19

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

**Exclusion of Evidence in Civil Cases.** We would expect the evidence to be excluded in a civil case, not a criminal case, where the courts do not favor exclusion unless there is a constitutional violation.

As to exclusion in a civil case, *see, e.g.*, Faison v. Thornton, 863 F.Supp. 1204 (D.Nev.1993), ruling that because the lawyers, in a civil case, committed "flagrant" violation of Nevada rule prohibiting ex parte communications with opposing party represented by counsel, it was not unfair to exclude evidence obtained during the lawyer's ex parte communications and to require those lawyers to pay the opposing parties' attorney fees as a sanction for their violation. The evidence showed that the lawyers conducted several telephone conversations and then had a five-hour meeting with the opposing party knowing that he was represented by counsel.

Restatement of the Law Governing Lawyers, Third, § 37 ("Partial or Complete Forfeiture of Lawyer's Compensation") (2000).

Link v. Wabash Railroad Co., 370 U.S. 626 (1962). In this case, which arose out of an automobile accident, the trial court dismissed the action, sua sponte, for failure to prosecute, and plaintiff appealed. The Supreme Court, speaking through Justice Harlan, held that the trial judge had inherent power to dismiss without affording notice or providing an adversary hearing, and did not abuse its discretion in dismissing when plaintiff's counsel failed to appear at duly scheduled pretrial conference, in view of the excuse offered and the prior history of case. Justices Black and Douglas, and Chief Justice Warren dissented.

United States v. Bronston, 658 F.2d 920 (2d Cir.1981), *cert. denied*, 456 U.S. 915 (1982).

Rizzo v. Haines, 405 A.2d at 494, quoting RONALD MALLEN & VICTOR LEVIT, LEGAL MALPRACTICE 123 (1977).

*See also, e.g.,* Restatement of the Law Governing Lawyers, Third, § 53 (2000). Schenkel v. Monheit, 405 A.2d 493 (Pa. Super 1979); Curran v. Stradley, Ronon, Stevens & Young, 521 A.2d 451 (Pa. Super 1987).

Restatement of the Law Governing Lawyers, Third, § 52(2)(c) (2000).

*E.g.,* Mirabito v. Liccardo, 4 Cal.App.4th 41 (Cal. App. 1992), holding that an expert witness may consider the state rules of ethics in determining what the relevant standard of care is for the lawyer being sued for malpractice.

Restatement of the Law Governing Lawyers, Third, §§ 53, 115 (2000). Restatement of the Law Governing Lawyers, Third, § 175 (Tent. Draft No. 8, March 21, 1997); Restatement of the Law Governing Lawyers, Third, § 75 (Proposed Final Draft No. 2, Apr. 6, 1998).

Rule 1.15. *See also* ABA Model Rule on Financial Recordkeeping (1983) and ABA Model Rules for Trust Account Overdraft Notification (1988). The ABA Model Rules for Trust Account Overdraft Notification can be found on the ABA Center for Professional Responsibility website.

Restatement of the Law Governing Lawyers, Third, § 52(2)(c) (2000). This principle is the general tort rule, which is that sometimes, for tort purposes, the standard of conduct defined by a law or by a regulation will not be adopted. *See* Restatement of Torts, Second, § 288 (1965):

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively:

(a) to protect the interests of the state or any subdivision of it as such, or (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or (c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or (d) to protect a class of persons other than the one whose interests are invaded, or (e) to protect another interest than the one invaded, or (f) to protect against other harm than that which has resulted, or (g) to protect against any other hazards than that from which the harm has resulted."

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 16 of 19

46 Restatement of the Law Governing Lawyers, Third, § 52(2)(c) (2000), at comment *f*.

47 Carlson v. Morton, 745 P.2d 1133 (Mont.1987).

48 Wilburn Brewer, Jr., *Expert Witness Testimony in Legal Malpractice Cases*, 45 SO. CAROLINA L. REV. 727, 745 (1994). This article is part of a symposium on Legal Malpractice.

49 *See, e.g.*, Note, *Expert Legal Testimony*, 97 HARV. L. REV. 797, 797 (1984): "it remains black-letter law that expert legal testimony is not permissible."

**Expert Testimony on Meaning of Foreign Law.** Note, however, that the black letter rule is that legal experts may give their opinion as to the meaning of foreign law. *See, e.g.,* Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir.1997).

50 Day v. Rosenthal, 170 Cal.App.3d 1125 (Cal. App. 1985), *cert. denied*, 475 U.S. 1048 (1986). The court used the Rules of Professional Conduct in lieu of expert testimony and specifically held that any expert testimony contrary to the Rules was not admissible. 170 Cal.App.3d at 1147. The court explained that the Rules of Professional Conduct set forth a lawyer's ethical duties and expert testimony cannot change that.

*See* Cornell v. Wunschel, 408 N.W.2d 369, 378 (Iowa 1987), holding that expert testimony as to ethics standards is not required in this case: "our code of professional responsibility clearly sets forth the standard of disclosure. It is then the jury's duty, as in a legal malpractice case, to compare the attorney's conduct with the appropriate standard. We conclude the trial court did not err in instructing the jury on the ethical standard clearly announced in Canon 5 of our code of professional responsibility."

Fishman v. Brooks, 487 N.E.2d 1377, 1381–82 (Mass.1986), stating: "Expert testimony concerning the fact of an ethical violation is not appropriate …. A judge can instruct the jury (or himself) concerning the requirements of ethical rules."

In re Initial Public Offering Securities Litigation, 174 F.Supp.2d 61 (S.D.N.Y.2001). In this case, many of the defendant underwriters moved to disqualify the district judge. "In support of their motion, the moving defendants have proffered the affidavits and declarations of Professors Geoffrey Hazard and Charles Wolfram as experts in judicial ethics. For the reasons that follow, these declarations must be precluded." *Id.* at 62. The court then ruled that it would not accept expert opinion on a recusal motion because "the testimony of an expert on matters of domestic law is inadmissible for any purpose." *Id.* at 64.

51 *E.g.,* Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 510 (2d Cir.1977). Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir.1992); Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir.1989), holding that an engineer's testimony that defendant was negligent was an improper legal conclusion; Weston v. Washington Metro. Area Transit Auth., 78 F.3d 682, 684 n. 4 (D.C.Cir.1996), holding that an "expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702." United States v. Feliciano, 223 F.3d 102, 121 (2d Cir.2000), holding that, in evaluating the admissibility of expert testimony, "this Court requires the exclusion of testimony [that] states a legal conclusion."

52 In re Initial Public Offering Securities Litigation, 174 F.Supp.2d 61 (S.D.N.Y.2001). In this case, many of the defendant underwriters moved to disqualify the district judge, who refused to disqualify himself and refused to accept expert testimony that urged his recusal. However, the court still acknowledged that experts may testify on questions of mixed law and fact.

*See also* In re Air Disaster at Lockerbie, Scotland, 37 F.3d 804, 826–27 (2d Cir.1994), holding that an expert's testimony that defendants engaged in "fraud" and "deceit" was admissible because the words were used in colloquial fashion, but the statement that defendants violated federal regulations was inadmissible as a legal conclusion; Specht v. Jensen, 853 F.2d 805, 809–10 (10th Cir.1988) (en banc).

53 Northwestern Life Insurance Co. v. Rogers, 573 N.E.2d 159, 163–64 (Ohio 1989).

§ 1-9 The Scope of the Model Rules of Professional Conduct, Legal Ethics, Law....

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 17 of 19

Wilburn Brewer, Jr., *Expert Witness Testimony in Legal Malpractice Cases*, 45 SO. CAROLINA L. REV. 727, 744 (1994) (footnotes omitted). *See also* Cleckner v. Dale, 719 S.W.2d 535 (Tenn.Ct.App.1986). Restatement of the Law Governing Lawyers, Third, § 52, Comment *g* (2000):

"Accordingly, a plaintiff alleging professional negligence or breach of fiduciary duty ordinarily must introduce expert testimony concerning the care reasonably required in the circumstances of the case and the lawyer's failure to exercise such care. Such expert testimony is unnecessary when it would be plain to a nonlawyer or is established as a matter of law that the lawyer's acts constitute negligence (for example, when a lawyer allegedly let the statute of limitations expire or withdrew without notifying a client) or breach of fiduciary duty."

W. William Hodes, *Navigating Some Deep and Troubled Jurisprudential Waters: Lawyer-Expert Witnesses and the Twin Dangers of Disguised Testimony and Disguised Advocacy*, 6 ST. MARY'S J. LEGAL MAL. & ETHICS 180, 220 (2016). Hodes argues that the court should never permit expert testimony on legal motions addressed to the court; disguised testimony should be replaced with candor about the limitations of expert testimony and active disclosure about assumptions; and the court should consider bifurcated trials to separate historical facts from evaluative facts. 6 ST. MARY'S J. LEGAL MAL. & ETHICS 180, 216-220.

Restatement of the Law Governing Lawyers, Third, § 52, Comment *g*.

Cleckner v. Dale, 719 S.W.2d 535 (Tenn.Ct.App.1986). Plaintiffs filed a legal malpractice action against their lawyer for his conduct in a real estate transaction. The appellate court held that the trial court erred in precluding plaintiffs from presenting expert testimony on the lawyer's standard of care representing clients in a real estate closing and whether Dale's conduct in this case met that standard. In addition, the question whether the lawyer met the appropriate standard of conduct was a question of fact; and the trial court usurped the role of the jury by assuming the role of an expert on the standard of conduct. The court bluntly stated, among other things, that: "The trial court, assuming the role of an expert, undertook to define the standard of professional conduct the jury should apply in this case. This was improper." 719 S.W.2d at 541–54.

Restatement of the Law Governing Lawyers, Third, § 52, Comment *g*: "An expert opinion of what constitutes proper conduct in the circumstances of the case may be based on the expert's own experience and judgment and on the expert's knowledge of applicable rules and statutes, of literature discussing how lawyers do or should behave, and of the conduct and belief of lawyers." (internal citations omitted).

Cicero v. Borg-Warner Automotive, Inc., 163 F.Supp.2d 743 (E.D.Mich.2001).

Ronald D. Rotunda, *The Role of Law Reviews: The Extreme Centrist Position*, 62 INDIANA L.J. 1 (1986).

163 F.Supp.2d at 747–50.

163 F.Supp.2d at 747 n.3.

The leading case governing the court's admission of expert testimony is Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), which allows a court to accept expert testimony even if it is not "generally accepted" because "general acceptance" is not a necessary precondition to the admissibility of expert evidence. *See also* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). The fact that law review articles are generally accepted as authority, even by courts, should indicate that the testimony is more likely to be accepted, not less likely.

United States v. Locascio, 6 F.3d 924, 938 (2d Cir.1993): "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions. [In this case, the expert witness] was entitled to rely upon hearsay as to such matters as the structure and operating rules of organized crime families … , since there is little question that law enforcement agents routinely and reasonably rely upon such hearsay in the course of their duties." United States v. Daly, 842 F.2d 1380, 1387 (2d Cir.1988), *cert. denied*, 488 U.S. 821 (1988): "[I]f experts

Case 2:22-cv-01599-KKE    Document 307-8    Filed 04/24/26    Page 18 of 19

in the field reasonably rely on hearsay in forming their opinions and drawing their inferences, the expert witness may properly testify to his opinions and inferences based upon such hearsay."

163 F.Supp.2d at 747 n.3.

Cicero v. Borg-Warner Automotive, Inc., 163 F.Supp.2d 743, 749 (E.D.Mich.2001).

Restatement of the Law Governing Lawyers, Third, § 52, Comment *g* (2000).

*E.g.,* Moses v. McGarvey, 614 P.2d 1363 (Alaska 1980), holding that former corporate lawyers who represented shareholders until they were disqualified for a conflict of interest should be denied all attorney fees.

Jeffry v. Pounds, 67 Cal.App.3d 6 (Cal.Ct.App.1977). A law firm competently represented a personal injury plaintiff, then—in the middle of his client's case—the lawyer filed a divorce case against the plaintiff on behalf of the wife of the plaintiff. The court held that the firm was not entitled to fees for the period after it took the wife's case but was not required to forfeit the fees for the period before doing so.

City of Little Rock v. Cash, 644 S.W.2d 229 (Ark.1982). The court denied a fee to a lawyer who defended the city in a police misconduct suit while also suing the same city and successfully attacking its privilege tax.

Crawford v. Logan, 656 S.W.2d 360 (Tenn.1983), holding that the court may require the lawyer to forfeit fees (totally or partially) when the lawyer violates the ethics rules. The court held that a tape recording of an interview with the woman who had allegedly engaged in adulterous relations with the lawyer's divorced client's husband came within the ambit of the disciplinary rule requiring that the lawyer, after being discharged by client, deliver to the client all "papers and property" to which the client was entitled. The supreme court remanded so that the lower court could decide whether the lawyer's ethics violation prejudiced his client in the trial of the divorce action, and therefore should result in a fee forfeiture.

*E.g.,* Pringle v. La Chapelle, 73 Cal.App.4th 1000 (Cal.App.1999). The lawyer sued a corporation and its Chief Executive Officer to recover fees. The court held that even if the defendant was correct that the lawyer had violated the ethics rules relating to securing consent in cases of dual representation, this violation did not automatically result in a forfeiture of fees. The court upheld the trial court's judgment for the lawyer.

*Compare* Burrow v. Arce, 997 S.W.2d 229 (Tex.1999) Clients filed suit against attorneys who had represented them in personal injury litigation, demanding forfeiture of all the attorney fees for alleged breaches of the lawyers' fiduciary duty, fraud, violations of the Deceptive Trade Practices Act, negligence, and breach of contract. The 11th District Court entered summary judgment for the attorneys, and the clients appealed. The Houston Court of Appeals, 958 S.W.2d 239, affirmed in part, and reversed and remanded in part. Both the attorneys and the clients petitioned for review.

Justice Hecht, of the Texas Supreme Court, held that: (1) conclusory assertions in summary judgment affidavits of experienced personal injury trial lawyers that clients' settlement agreements were all fair and reasonable were insufficient to establish as a matter of law that the clients suffered no actual damages as a result of alleged misconduct by their attorneys; but (2) a client need not prove actual damages to obtain forfeiture of an attorney's fee due to the attorney's breach of duty to the client; and (3) additional plaintiffs were entitled to be added as parties by the amended pleadings.

Restatement of the Law Governing Lawyers, Third, § 37 (2000).

Restatement of the Law Governing Lawyers, Third, § 37, Comment *e* (2000).

Scope, Comment 17.

1983 Scope, Comment 19. The ABA deleted this language in 2002.

73    *See* Rule 1.9(c)(1).

74    Iowa Supreme Court Attorney Disciplinary Board v. Marzen, 779 N.W.2d 757 (Iowa 2010).

75    Rule 1.6(b)(1).

76    1983 Scope, Comment 20.

77    The leading case is Tarasoff v. Regents of the University of California, 551 P.2d 334, 340 (Cal. 1976), *vacating*, 529 P.2d 553 (Cal. 1974). In this case a psychotherapist knew of a planned murder and did not warn the victim. The court held that the psychotherapist should have warned the victim or the police or taken other necessary steps. Failure to do that stated a cause of action. *See also,* Restatement of the Law of Torts, Second, § 321.

Hawkins v. King County, 602 P.2d 361 (Wash.Ct.App.1979) involved a lawyer. The court held this lawyer not liable to a non-client victim when the lawyer (and the victim) knew that the client was dangerous, but the lawyer had no information that client planned to assault anyone.

78    Restatement of the Law Governing Lawyers § 73(5) (Tent. Draft No. 8, Mar. 21, 1997) (footnote omitted). The footnote explains that the reason this section is placed in brackets—and not adopted by the ALI —is because the Council of the ALI in 1996, by a vote of 17-14, directed that this subsection and the accompanying Comment i "be deleted from the text tentatively approved." The Council, for the information of members, "authorized the printing of the deleted Subsection and Comment in Tentative Draft No. 8. Restatement of the Law Governing Lawyers § 73(5) (Tent. Draft No. 8, Mar. 21, 1997), at 19 n.1."

79    *See* Restatement of the Law Governing Lawyers § 73(5) (Tent. Draft No. 8, Mar. 21, 1997), at 19 n.1.

80    *See* Restatement of the Law Governing Lawyers § 73(5), Comment *i* (Tent. Draft No. 8, Mar. 21, 1997), at 31. This Comment, like § 73(5), was *not* adopted by the ALI. Restatement of the Law Governing Lawyers § 73(5) (Tent. Draft No. 8, Mar. 21, 1997), at 19 n.1.

81    Restatement of the Law Governing Lawyers § 73(5) (Tent. Draft No. 8, Mar. 21, 1997), Reporter's Note to Comment *i*, at 42. *See also id.* at n.4. The "Duty of Care to Certain Nonclients" is now found at Restatement of the Law Governing Lawyers, Third, § 51 (2000). There is no longer any subsection 51(5).

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.